**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| BCause Mining LLC, ) | Judge Janet S. Baer |
| ) | |
| Debtor/Debtor-in-Possession. ) | Case No. 19-10562 |
| ) | |

**OBJECTION OF VIRGINIA ELECTRIC AND POWER COMPANY d/b/a DOMINION ENERGY VIRGINIA TO THE MOTION TO PROVIDE ADEQUATE ASSURANCE OF PAYMENT FOR CONTINUED UTILITY SERVICE**

Virginia Electric and Power Company d/b/a Dominion Energy Virginia ("Dominion"), by counsel, hereby objects to the *Motion to Provide Adequate Assurance of Payment For Continued Utility Service* (the "Utility Motion")(Docket No. 4), and sets forth the following:

**Introduction**

Despite the fact that Dominion is the Debtor's largest utility provider, and one of only two utilities listed on Exhibit "A" to the Utility Motion, the Debtor did not contact Dominion regarding Dominion's request for adequate assurance of payment prior to filing the Utility Motion. In the Utility Motion, the Debtor proposes to provide no adequate assurance of payment to Dominion because it held a prepetition deposit in the amount of $1,587,200. That proposal does not make sense because: (1) The Debtor was aware from the information contained in their Voluntary Petition that they owed Dominion at least $1,459,267.38 as of the Petition Date, leaving only a small portion of the prepetition deposit available for post-petition charges; and (2) Section 366(c)(4) of the Bankruptcy Code expressly provides that Dominion can recoup prepetition deposits against the prepetition debt without notice or court order. Accordingly, as set forth herein, Dominion expects to offset the entire $1,587,200 prepetition

deposit it held against the prepetition debt that the Debtor owed to Dominion totaling approximately $1.7 million. Furthermore, the Debtor's filing of the Utility Motion prior to attempting to contact Dominion and the one other utility to attempt to resolve their adequate assurance of payment requests was an unnecessary waste of the limited financial resources of the Debtor's estate.

Dominion is seeking a two-month cash deposit in the amount of $1.59 million from the Debtor, which is an amount that Dominion is authorized to obtain pursuant to applicable state law. Based on all the foregoing, this Court should deny the Utility Motion as to Dominion because the amount of Dominion's post-petition deposit request is reasonable under the circumstances and should not be modified.

### Facts

### Procedural Facts

1.     On April 11, 2019 (the "Petition Date"), the Debtor commenced its case under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that is now pending with this Court. The Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

### The Utility Motion

3.     On the Petition Date, the Debtor filed the Utility Motion.

4.     The Notice of Motion attached to the Utility Motion reflects that a hearing on the Utility Motion is scheduled for April 19, 2019 at 9:30 a.m., even though Section 366(c)(2) states that the Debtor has thirty (30) days to provide adequate assurance of payment that is satisfactory to Dominion.

5. The Debtor claims that its Chapter 11 filing "was triggered by a judgment entered in favor of WESCO and a garnishment of BCause LLC's bank account, from which all of the Debtor's bills are paid, including bills for utilities such as Dominion Energy, which has threatened a shut-off of the Debtor's utilities for non-payment, as of April 12, 2019." Utility Motion at ¶ 9.

6. In the Utility Motion, the Debtor seeks to avoid the applicable legal standards under Sections 366(c)(2) and (3) by seeking Court approval to avoid providing Dominion with adequate assurance of payment because Dominion held a prepetition deposit. Utility Motion at ¶ 16. As Section 366(c)(4) allows Dominion to offset prepetition deposits against the prepetition debt, it is not clear why the existence of the Dominion prepetition deposit should form the basis for denying Dominion post-petition security.

7. Furthermore, the Utility Motion does not address why this Court should consider modifying, if at all, the amount of Dominion's adequate assurance request pursuant to Section 366(c)(2). Rather, without providing any specifics, the Utility Motion merely states that "its proposal for adequate assurance of payment for continued utility services is fair and reasonable." Utility Motion at ¶ 17.

### The Debtor's Cash Collateral Motion

8. On the Petition Date, the Debtor filed the *Motion of Debtor For Authority To Use Cash Collateral and Related Relief* (the "Cash Collateral Motion")(Docket No. 3). Attached as Exhibit "A" to the Cash Collateral Motion is the budget for the period from the Petition Date through May 13, 2019 (the "Budget").

9. The Debtor contends that the Budget itemizes the Debtor's cash needs during

the relevant period. However, the Budget reflects that the Debtor only budgeted $600,000 (total budgeted expenditures are $672,032) for Dominion in the first month of the case. The foregoing amount is an insufficient amount to pay post-petition charges owed to Dominion for the first month of the case and does not contain any sums to provide Dominion with a post-petition deposit.

**Facts Concerning Dominion**

10. Dominion provided the Debtor with prepetition utility goods and/or services and has continued to provide the Debtor with utility goods and/or services since the Petition Date.

11. Under Dominion's billing cycle, the Debtor receives approximately one month of utility goods and/or services before Dominion issues a bill for such charges. Once a bill is issued, the bill is due and payable upon presentation and becomes past due on the next bill date. A late payment charge of 1 1/2% per month will be imposed at the next bill date on all past due balances if at least 28 days have elapsed since the previous bill date. If the Debtor fails to pay the bill after the issuance of the past due notice, Dominion issues a notice that informs the Debtor that it has at least 10 days from the issuance of the notice to cure the arrearage or its service will be disconnected. Accordingly, under Dominion's billing cycle, the Debtor would receive more than two months of unpaid charges before Dominion could cease the supply of goods and/or services for a post-petition payment default.

12. In order to avoid the need to bring witnesses and have lengthy testimony regarding Dominion's regulated billing cycle, Dominion requests that this Court, pursuant to Rule 201 of the Federal Rules of Evidence, take judicial notice of Dominion's billing cycle. Pursuant to the foregoing request and based on the voluminous size of the applicable

4

documents, Dominion's web site link to the following tariffs and/or state laws, regulations and/or ordinances is as follows:

[https://www.dominionenergy.com/library/domcom/media/home-and-small-business/rates-and-regulation/residential-business-rates-shared/virginia/entire-filed-tariff.pdf?la=en](https://www.dominionenergy.com/library/domcom/media/home-and-small-business/rates-and-regulation/residential-business-rates-shared/virginia/entire-filed-tariff.pdf?la=en)

13. Subject to a reservation of Dominion's right to supplement its post-petition deposit request if additional accounts belonging to the Debtor is subsequently identified, Dominion's post-petition deposit request is as follows:

| **Utility** | **Number of Accounts** | **Estimated Prepetition Debt** | **Deposit Request** |
|---|---|---|---|
| Dominion | 1 | $1,700,000 | $1,590,000 (2-month) |

14. Dominion held a prepetition deposit in the amount of $1,587,200 that it will recoup against prepetition debt pursuant to Section 366(c)(4) of the Bankruptcy Code. None of the prepepetition deposit will remain after the foregoing recoupment.

## Discussion

### A.  THE UTILITY MOTION SHOULD BE DENIED AS TO DOMINION.

Sections 366(c)(2) and (3) of the Bankruptcy Code provide:

> (2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility;
>
> (3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

As set forth by the United States Supreme Court, "[i]t is well-established that 'when the statute's language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms.'" *Lamie v. United*

*States Trustee*, 540 U.S. 526, 534, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004) (*quoting Hartford Underwriters Ins. Co.* v. *Union Planters Bank, N. A.,* 530 U.S. 1, 6, 120 S. Ct., 1942, 147 L. Ed. 2d 1 (2000)). *Rogers v. Laurain (In re Laurain)*, 113 F.3d 595, 597 (6th Cir. 1997) ("Statutes . . . must be read in a 'straightforward' and 'commonsense' manner."). A plain reading of Section 366(c)(2) makes clear that a debtor is required to provide adequate assurance of payment satisfactory to its utilities on or within thirty (30) days of the filing of the petition. If a debtor believes the **amount** of the utility's request needs to be modified, then the debtor can file a motion under Section 366(c)(3) requesting the court to modify the **amount** of the utility's request under Section 366(c)(2).

In this case, the Debtor filed the Utility Motion to improperly shift the focus of its obligations under Section 366(c)(3) from modifying the amount of the adequate assurance of payment requested under Section 366(c)(2) to setting the form and amount of the adequate assurance of payment acceptable to the Debtor. Accordingly, this Court should not reward the Debtor for its failure to comply with the requirements of Section 366(c) and deny the Utility Motion as to Dominion.

Moreover, in the Utility Motion, the Debtor fail to address why this Court should modify the amount of Dominion's request for adequate assurance of payment. Under Section 366(c)(3), the Debtor has the burden of proof as to whether the amount of Dominion's adequate assurance of payment request should be modified. *See In re Stagecoach Enterprises, Inc.***,** 1 B.R. 732, 734 (Bankr. M.D. Fla. 1979) (holding that the debtor, as the petitioning party at a Section 366 hearing, bears the burden of proof). However, the Debtor does not provide the Court with any evidence or factually supported

6

documentation to explain why the amount of Dominion's adequate assurance request should be modified. Accordingly, the Court should deny the relief requested by Debtor in the Utility Motion and require the Debtor to comply with the requirements of Section 366(c) with respect to Dominion.

### B. THE COURT SHOULD ORDER THE DEBTOR TO PROVIDE THE ADEQUATE ASSURANCE OF PAYMENT REQUESTED BY DOMINION PURSUANT TO SECTION 366 OF THE BANKRUPTCY CODE.

Section 366(c) was amended to overturn decisions such as *Virginia Electric and Power Company v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997), that held that an administrative expense, without more, could constitute adequate assurance of payment in certain cases. Section 366(c)(1)(A) specifically defines the forms that assurance of payment may take as follows:

> (i) a cash deposit;
> (ii) a letter of credit;
> (iii) a certificate of deposit;
> (iv) a surety bond;
> (v) a prepayment of utility consumption; or
> (vi) another form of security that is mutually agreed upon between the utility and the debtor or the trustee.

Section 366 of the Bankruptcy Code was enacted to balance a debtor's need for utility services from a provider that holds a monopoly on such services, with the need of the utility to ensure for itself and its rate payers that it receives payment for providing these essential services. *See In re Hanratty*, 907 F.2d 1418, 1424 (3d Cir. 1990). The deposit or other security "should bear a reasonable relationship to expected or anticipated utility consumption by a debtor." *In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 883 (Bankr. E.D.N.Y. 1986). In making such a determination, it is appropriate for the Court to consider "the length of time

necessary for the utility to effect termination once one billing cycle is missed." *In re Begley*, 760 F.2d 46, 49 (3d Cir. 1985).

Dominion bills the Debtor on a monthly basis for the charges already incurred by the Debtor in the prior month. Dominion then provide the Debtor with approximately 28 days to pay the bill before a late charge may be assessed, the timing of which is set forth in applicable state laws, tariffs and/or regulations. Based on the foregoing state-mandated billing cycle, the minimum period of time the Debtor could receive service from Dominion before termination of service for non-payment of post-petition bills is approximately two (2) months. Moreover, even if the Debtor timely pays its post-petition utility bill, Dominion still has potential exposure of approximately 60 days or more based on its billing cycle. Furthermore, the amount of Dominion's deposit request is the amount that the applicable public service commission, which is a neutral third-party entity, permits Dominion to request from its customers. Dominion is not taking the position that the deposit that it is entitled to obtain under applicable state law is binding on this Court, but, instead is introducing that amount as evidence of the amount that the applicable regulatory entity permits Dominion to request from its customers.

Finally, the Debtor's proposed Budget reflects that the Debtor only budgeted $600,000 for Dominion in the first month of the case, which is an insufficient amount to pay post-petition charges owed to Dominion for the first month of the case. Moreover, the foregoing amount does not provide any money for the payment of a post-petition deposit to Dominion.

WHEREFORE, Dominion respectfully requests that this Court enter an order:

1. Denying the Utility Motion as to Dominion;

2. Awarding Dominion post-petition adequate assurance of payment pursuant to Section 366 in the amount and form satisfactory to Dominion, which is the form and amount requested herein; and

3. Providing such other and further relief as the Court deems just and appropriate.

Dated: April 16, 2019
/s/ Jason M. Torf
Jason M. Torf (Atty. No. 6256778)
ICE MILLER LLP
200 W. Madison Street, Suite 3500
Chicago, Illinois 60606
Telephone: (312) 726-6244
Email: Jason.Torf@icemiller.com

and

Russell R. Johnson III
John M. Craig
Law Firm of Russell R. Johnson III, PLC
2258 Wheatlands Drive
Manakin-Sabot, Virginia 23103
Telephone: (804) 749-8861
E-mail: russell@russelljohnsonlawfirm.com
john@russelljohnsonlawfirm.com

*Counsel for Virginia Electric and Power Company d/b/a Dominion Energy Virginia*

## **<u>CERTIFICATE OF SERVICE</u>**

   I hereby certify that on April 16, 2019, a true and correct copy of the foregoing *Objection* was served via the Court's CM/ECF electronic notification system on all parties requesting same.

        <u>/s/ Jason M. Torf</u>
        Jason M. Torf