# EXHIBIT A

## APPLICATION FOR BUSINESS CREDIT

Confidential


WESCO

The business entity hereby applying for credit from WESCO Distribution, Inc., including any and all of its subsidiaries, affiliates and unincorporated divisions as such may exist from time to time ("WESCO"), is referred to as the "Applicant" for purposes of this Application for Business Credit ("Application"). This Application shall consist of this information page and the Terms and Conditions attached hereto and made a part hereof (the "Terms and Conditions.")

* Indicates required field.

### APPLICANT INFORMATION

- *Applicant Name: Bcause Mining
- *Phone: (757) 761-3669
- Fax: ( )
- *Street Address: 277 Bendix Road Suite 420
- AP E-Mail: mike@bcause.com
- *City: Virginia Beach
- *State: VA
- *Zip: 23452
- AP Contact Name: Michael Adolphi
- Phone: (757) 761-3669
- Fax: ( )
- *Main Line of Business: FINTECH
- *Date Established:
- Dun & Bradstreet #:

- ☐ Corporation:
  - ☐ Division of
  - ☑ Subsidiary of Bcause, LLC
- ☐ Sole Proprietorship
- ☐ Partnership
- ☑ Limited Liability Company — BCAUSE MINING  EIN: 82-2810783
- ☐ Other (please specify):

### OWNERS, PARTNERS, MEMBERS or OFFICERS (Please note: Social Security Number is not required if Applicant is a corporation.)

| *Name: | *Title: | *SSN: | *Name: | *Title: | *SSN: |
|---|---|---|---|---|---|
| | | | | | |

### REFERENCES

- *Bank Reference: TowneBank
- *Account Number:
- *Trade Reference:
- *Account Number:
- City/State: VABeach, VA
- E-Mail: judy.carr@townebank.com
- City/State:
- E-Mail:
- *Phone: (757) 249-7622
- *Fax: ( )
- *Phone: ( )
- *Fax: ( )

- *Trade Reference:
- *Account Number:
- Trade Reference:
- Account Number:
- City/State:
- E-Mail:
- City/State:
- E-Mail:
- *Phone: ( )
- *Fax: ( )
- Phone: ( )
- Fax: ( )

TAX STATUS ☑ Taxable ☐ Exempt (Attach exemption certificate)     ☑ Check here to receive your invoices from WESCO electronically.

☑ Check here to receive your statements from WESCO electronically.     Email address to be sent to: accounting@bcause.com

### AGREEMENT AND ACKNOWLEDGMENT

The undersigned hereby warrants and represents (i) that he or she is a duly authorized representative of the Applicant with full legal authority to bind the same by the execution of this Application and (ii) that the information set forth in this Application is provided for the purpose of obtaining credit from WESCO and is true and correct. The undersigned hereby acknowledges and agrees (i) that WESCO may obtain information concerning the Applicant from any credit-granting institution, (ii) that this Application shall govern WESCO's review of Applicant's credit history and shall constitute the agreement between Applicant and WESCO governing the provision of credit upon WESCO's subsequent acceptance by any means, whether written or oral, of Applicant's request for credit, (iii) that effective upon any acceptance by WESCO of this Application, all sales of goods or services to Applicant will be governed by WESCO's standard terms and conditions of sale as they are posted at http://www.wescodirect.com/direct/corporate/terms_wesco.htm and as the same may be modified from time to time and (iv) that WESCO's provision of credit for the supply of goods and services shall constitute fair and sufficient consideration in exchange for the applicability of such standard terms and conditions of sale. The undersigned agrees and acknowledges that terms of payment shall be net 30 days and that past due balances are subject to service charges at the rate of 1 ½ percent per month; provided, however, that such terms may change based upon revisions to WESCO's standard terms and conditions of sale as the same may be in effect from time to time and that undersigned will be liable for all collection costs incurred by WESCO, including without limitation, attorney's and collection agency fees and the related disbursements. WESCO reserves the right to convert any payment into electronic funds at their discretion.

* SIGNATURE: Michael Adolphi     * TITLE: COO     * DATE: 12/4/17

### PERSONAL GUARANTY

In consideration of credit being extended by WESCO to Applicant, I/we hereby personally guarantee to WESCO payment of any obligation of Applicant and agree to be bound to pay WESCO on demand any sum that may become due to WESCO from Applicant. It is understood and agreed that this guaranty shall be a primary, absolute, continuing and irrevocable guaranty and indemnity for such indebtedness and will not be subject to any counterclaims, set-offs, other deductions or defenses. I/We hereby waive notice of default, non-payment or non-performance, dishonor, protest, presentment, diligence, promptness, creation, renewal, accrual, extension, proof or reliance and agree to be bound by all applicable terms and conditions set forth in this Application, including the Terms and Conditions. This Guaranty will not be released, discharged, terminated, modified, affected or impaired by any occurrences or circumstances whatsoever, including without limitation, any insolvency, bankruptcy, reorganization or other similar proceeding affecting Applicant or its assets or any negotiations or course of dealing between WESCO and the Applicant. If any of the undersigned is not an "applicant for credit" under 12 C.F.R. Section 202.2(e) of the regulations enacted under the Equal Credit Opportunity Act of 1974 ("ECOA"), such person acknowledges that (a) this guaranty has been executed to provide credit support for Applicant under this Application, and (b) such party was not required to execute this guaranty in violation of 12 C.F.R Section 202.7(d) of ECOA. This guaranty shall be binding upon the heirs, administrators, successors and assigns of the undersigned.

| Print Name: | Date: | Print Name: | Date: |
|---|---|---|---|
| SSN: (Sign) JOINTLY AND INDIVIDUALLY    Date: | | SSN: (Sign) JOINTLY AND INDIVIDUALLY    Date: | |
| Witness: | | Witness: | |

**TERMS AND CONDITIONS OF APPLICATION FOR BUSINESS CREDIT**

Applicant hereby agrees and acknowledges the following: 12 / 4 / 17 *Date:   *Signature: _[signature]_

1. WESCO and any of its employees, officers or agents (collectively, "WESCO Parties") hereby are authorized to contact the trade and bank references identified in this Application and to obtain such additional information as they may require concerning Applicant's creditworthiness, and Applicant hereby waives any and all claims against, and fully releases from liability, any and all WESCO Parties with respect to any such inquiry.

2. Any representatives of any of the trade or bank references identified in this Application are authorized to disclose to the WESCO Parties any information pertaining to Applicant's credit history requested by any WESCO Parties, including, without limitation, information regarding Applicant's loans, accounts, purchases or other financial transactions involving the bank or trade reference in the past, present and future, and Applicant hereby waives any and all claims against, and fully releases from liability, any such representatives with respect to any such disclosure.

3. At any time while this Application is pending and throughout any period during which WESCO has extended business credit to Applicant for which it has not yet been reimbursed, WESCO may obtain credit reports (including, without limitation, consumer credit reports) regarding Applicant as well as its principal(s), proprietor(s) and/or guarantor(s) in connection with the extension or continuation of business credit provided by WESCO to Applicant pursuant to or in connection with this Application. Applicant hereby consents to the use of any such credit report consistent with the Federal Fair Credit Reporting Act as set forth in U.S.C. §§ 1681 et seq. Furthermore, WESCO is authorized to share information regarding the extension of business credit to Applicant pursuant to this Application, including, without limitation, Applicant's future credit record with WESCO, with any credit-reporting agency if such information is specifically requested from WESCO.

4. Applicant will give WESCO at least 15 calendar days' prior written notice of any development that may adversely affect Applicant's financial condition, including, without limitation, (a) the institution by or against Applicant of proceedings in bankruptcy or any other procedure for the settlement of debts, (b) Applicant's making an assignment for the benefit of its creditors, (c) Applicant's inability to pay Applicant's expenses as they accrue due to lack of sufficient funds, (d) Applicant's dissolution or other event pursuant to which it ceases to do business, and (e) any change in the business form in which Applicant conducts business, such as (i) the incorporation of a sole proprietorship, (ii) the addition of a partner to a partnership, limited partnership, limited liability partnership, or a limited liability limited partnership, or (iii) the addition of members to a limited liability corporation. Any notice provided hereunder will be sent by courier or U.S. first-class mail (postage prepaid and return receipt requested) to: WESCO Distribution, Inc., Attention: Financial Services, 225 West Station Square Drive, Suite 700, Pittsburgh, PA 15219.

5. WESCO may reject this Application in its sole and absolute discretion. WESCO may cancel or modify Applicant's business credit granted as a result of this Application at any time in WESCO's sole and absolute discretion.

6. Upon WESCO's request at any time, Applicant shall provide to WESCO, within ten business days, Applicant's most current regularly prepared financial statements, including, without limitation, a full and complete statement of Applicant's assets and liabilities.

7. The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning applicants is the Federal Trade Commission, ECOA Compliance, Washington, DC 20581.

8. Applicant hereby agrees and acknowledges that it is its intent in executing this Application that all sales made by WESCO to Applicant based upon any credit extended by WESCO to Applicant pursuant to or in connection with this Application will be governed by WESCO's standard terms and conditions of sale as the same may be in effect from time to time.

9. The validity, interpretation and performance of this Agreement and any dispute arising under, pursuant to or in connection with the execution, performance or termination hereof will be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, without reference to any conflicts of law principles. The sole and proper venue for any dispute arising out of this Application and any subsequent credit relationship resulting from this Application shall be in the state and Federal courts situated in Pittsburgh, Pennsylvania, depending upon (a) which has the appropriate subject matter jurisdiction and (b) the amount in controversy. Applicant hereby agrees to the personal jurisdiction of said courts and waives any objection to personal jurisdiction, including objections based upon inconvenience of forum.

10. To secure the full and timely payment by Applicant to WESCO of all now existing and hereafter arising amounts due WESCO, Applicant hereby grants to WESCO a priority security interest and lien in and to all goods, inventory, equipment and fixtures sold to Applicant by WESCO from time to time, and all other assets of Applicant, Including, without limitation, all of Applicant's now existing or owned or hereafter arising or acquired (a) accounts; (b) goods for sale, lease or other disposition by Applicant which have given rise to Accounts and have been returned to or re possessed or stopped in transit by Applicant; (c) chattel paper, electronic chattel Paper, tangible chattel paper, documents of title, instruments, documents, general intangibles, payment intangibles, letter of credit rights, letters of credit and supporting obligations; (d) goods, including, without limitation, inventory, equipment, fixtures, trade fixtures and vehicles; (e) investment property; (f) deposits, cash and cash equivalents and any property of Applicant now or hereafter in the possession, custody or control of WESCO; (g) deposit accounts held with any depository institution; (h) all other personal property of Applicant of any kind or nature; and (i) all commercial tort claims (the "Assets") and all cash and non-cash proceeds of all of the fore going property, including, but not limited to, proceeds of all insurance policies insuring the foregoing. Applicant hereby authorizes WESCO to file and perfect any and all statutory lien rights and any rights under indemnity or performance bonds at any time following submission of this Application regardless of whether payment is due to WESCO under WESCO's payment terms with Applicant. Applicant shall execute and deliver to WESCO, at any time and from time to time, all agreements, instruments, documents and other written matter (the "Supplemental Documentation"), that WESCO may request, in form and substance acceptable to WESCO, to perfect and maintain perfected WESCO's priority security interest and lien in and to the Assets and/or other lien or bond rights provided herein, and to otherwise consummate the transactions contemplated by this paragraph. Applicant, irrevocably, hereby makes, constitutes and appoints WESCO, and all persons designated by WESCO for that purpose, as Applicant's true and lawful attorney and agent-in-fact, to sign the name of Applicant on the Supplemental Documentation if required, and to deliver such Supplemental Documentation to such persons as WESCO may reasonably elect. Applicant hereby authorizes WESCO to prepare and file any Uniform Commercial Code ("UCC") financing statements, amendments to UCC financing statements and any other filings or recordings in all jurisdictions WESCO deems appropriate without Applicant's signature, and authorizes WESCO to describe the collateral in such financing statements in any manner WESCO deems appropriate.

11. This Application sets forth all of the terms and conditions applicable to the parties relating to the matters specified in this Application and supersedes all prior and contemporaneous agreements and understandings, negotiations, inducements, representations or conditions, whether oral or written, whether express or implied, with respect to such matters, provided that WESCO may modify the credit agreement comprised of this Application upon written notice to Applicant in WESCO's sole and absolute discretion from time to time.

12. All sales of goods and services to Applicant shall be governed by WESCO's standard terms and conditions of sale as they are posted at http://www.wescodirect.com/direct/corporate/terms_wesco.htm and as the same may be modified from time to time, including but not limited to the following terms:

    A. **Disclaimer of Warranties.** WESCO shall use its best reasonable efforts to obtain from its suppliers for the direct benefit of both WESCO and Buyer such warranties as are normally offered by such suppliers in connection with the Goods being supplied by them. WESCO shall give Buyer all reasonable assistance as may be required to enforce such warranties. **EXCEPT FOR THE FOREGOING, WESCO HEREBY DISCLAIMS AND EXCLUDES ANY AND ALL OTHER WARRANTIES REGARDING GOODS AND SERVICES, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTY OF MERCHANTABILITY, THE IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, IMPLIED WARRANTIES AGAINST DEFECTS IN DESIGN, MATERIALS AND WORKMANSHIP, AND THE WARRANTY AGAINST REDHIBITORY DEFECTS. WITH REGARD TO ANY AND ALL GOODS PURCHASED BY BUYER PURSUANT TO OR IN CONNECTION WITH THIS AGREEMENT, WESCO HEREBY DISCLAIMS AND EXCLUDES ANY AND ALL WARRANTIES THAT GOODS WILL CONFORM TO SPECIFICATIONS, DESIGNS OR SAMPLES AND WARRANTIES AGAINST PATENT, COPYRIGHT, TRADEMARK, AND ANY OTHER TYPES OF INTELLECTUAL PROPERTY RIGHT INFRINGEMENT UNDER THE LAWS OF ANY NATION, INCLUDING, WITHOUT LIMITATION, THE LAWS OF THE UNITED STATES OF AMERICA.**

    B. **Exclusive Remedy.** Buyer's EXCLUSIVE remedy against WESCO for any claim for, or arising out of any in a Good tendered to Buyer is the repair or replacement of the Good, or alternatively, at WESCO's sole election, a refund of the purchase price of the Good. Buyer's EXCLUSIVE remedy against WESCO arising out of any defect in, or in connection with, any Service provided hereunder is the re-performance of that Service or, at WESCO's sole election, a refund of the purchase price of the Service. These exclusive remedies will only be available to Buyer for one year after the Good is tendered or Service is provided to Buyer, and WESCO's obligations under this section will be void unless Buyer provides WESCO with notice of the defect in the Good or Service within 30 days of discovery of the defect. Any Good returned to WESCO for repair, replacement or refund under this section will be returned by Buyer in accordance with WESCO's return material authorization procedures then in effect.

    C. **Limitation of Liability.** NOTWITHSTANDING ANYTHING ELSE CONTAINED HEREIN TO THE CONTRARY, IN NO EVENT WILL: (A) WESCO BE LIABLE TO BUYER FOR ANY CIRCUMSTANTIAL, CONSEQUENTIAL, CONTINGENT, EXEMPLARY, INCIDENTAL, INDIRECT, LIQUIDATED, MATERIAL, PUNITIVE, SPECIAL, SPECULATIVE OR OTHER DAMAGES, INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOST PROFITS, SALES OR REVENUES, COST OF REPLACEMENT GOODS, LOST BUSINESS OR BUSINESS INTERRUPTIONS, OR ATTORNEYS FEES OR COURT COSTS ARISING IN ANY MANNER PURSUANT TO OR IN CONNECTION WITH THE AGREEMENT, THE GOODS OR THE SERVICES (EVEN IF WESCO IS MADE AWARE OF THE POTENTIAL FOR SUCH DAMAGES); AND (B) WESCO'S TOTAL LIABILITY RELATED TO ANY GOOD OR SERVICE EXCEED THE PURCHASE PRICE OF SUCH GOOD OR SERVICE.

## WESCO DISTRIBUTION, INC. TERMS AND CONDITIONS OF SALE - 011107

1. **WESCO'S Terms and Conditions Control the Agreement.**
   A. These terms and conditions are incorporated into and made a part of the agreement or proposal ("Agreement") by WESCO Distribution, Inc. and any of its domestic subsidiaries, unincorporated divisions or affiliates ("WESCO") to sell to the named Buyer the goods referenced on the face of this document ("Goods") and services (including, without limitation, any material management, assembly and kitting services, and engineering and design services (whether performed by WESCO or a subcontractor)) referenced on the face of this document ("Services"). The Agreement expressly limits Buyer's acceptance to these terms and conditions. Buyer may reject the Agreement by not ordering or receiving any Goods or Services. The Agreement does not constitute an acceptance by WESCO of any offer or counteroffer of Buyer, and WESCO hereby rejects any additional, different, or inconsistent terms, conditions or limitations contained in or incorporated by reference in any forms, purchase orders or other documents of Buyer that already have been or hereafter may be presented to WESCO with respect to the Agreement.
   B. If Buyer has submitted or will submit additional and/or different terms and conditions to WESCO, or submit a counteroffer to WESCO, WESCO's subsequent performance will not be construed as either acceptance of Buyer's additional and/or different terms and conditions or Buyer's counteroffer, nor will WESCO's subsequent performance be viewed as a willingness to accept any provision of the Uniform Commercial Code, as adopted by any State or Commonwealth, that is contrary or in addition to any of the terms and conditions hereof.

2. **Prices.**
   A. Unless otherwise agreed to by WESCO in writing, WESCO's prices for the Goods and Services will be the prices stated on the face of this document or WESCO's standard prices for such Goods and Services as of the date hereof, provided that, where standard prices for Goods in the quantities ordered as calculated by WESCO extend beyond two decimal places, WESCO shall round such prices for Goods to the nearest two decimal places for purposes of determining Buyer's payment obligation with respect to such Goods; provided, however, that WESCO may change the price for the Goods and Services in accordance with any change to its standard pricing for such Goods and Services prior to the date of shipment of Goods or performance of Services, as the case may be.
   B. The prices of any and all Goods and Services shall be confidential, and Buyer shall not disclose such prices to any unrelated third party. WESCO and Buyer acknowledge and agree that money damages for any and all breaches of Buyer's obligation not to disclose the price of any Goods or Services is both incalculable and insufficient and that any such breach would irreparably harm WESCO. Therefore, in the event of an actual or prospective breach of the obligation of Buyer not to disclose the prices of any Goods and Services, WESCO shall be entitled to a permanent and/or a preliminary injunction to prevent or remedy such breach and shall have the right to specific enforcement of this Agreement against Buyer in addition to any other remedies to which WESCO may be entitled at law or in equity.

3. **Specifications.** Unless WESCO has expressly agreed otherwise in writing, it is Buyer's responsibility to ensure that the Goods and Services are the ones that it has requested and that all specifications and quantities are correct. WESCO HEREBY EXPRESSLY DISCLAIMS ANY AND ALL REPRESENTATIONS AND WARRANTIES THAT GOODS AND SERVICES CONFORM TO ANY SPECIFICATIONS, DRAWINGS, DESIGNS, OR SAMPLES.

4. **Shipment of Goods; Performance of Services.**
   A. Shipment of all Goods shall be made F.O.B. point of shipment (Ex Works WESCO's facility per INCOTERMS 2000 for international shipments). Buyer shall bear the risk of loss and damage to Goods after delivery to the point of shipment.
   B. Any shipping dates for Goods or performance dates for Services given in advance of actual shipment of Goods or performance of Services are WESCO's best estimates for informational purposes only, and deliveries of Goods and performance of Services will be made subject to prior orders on file with WESCO. Unless otherwise agreed to by WESCO in writing, WESCO may, in its sole discretion, use any commercial carriers for shipment of the Goods. WESCO will use its reasonable efforts to comply with Buyer's requests as to method and route of transportation, but WESCO reserves the right to use an alternate method or route of transportation, whether or not at a higher rate.
   C. Unless otherwise agreed to by WESCO in writing, Buyer will pay all insurance costs in connection with delivery of the Goods, if any, and be responsible for filing and pursuing claims with carriers for loss of, or damage to, Goods in transit.
   D. Buyer is responsible for obtaining at its sole cost and expense any and all necessary licenses and permits for the Goods and Services, including, without limitation, any licenses and permits for transportation.
   E. If Buyer is unable to receive the Goods when they are tendered, Buyer will be liable to WESCO for any losses, damages, or additional expenses incurred or suffered by WESCO as a result of Buyer's inability to receive the Goods.
   F. Buyer immediately will inspect all Goods upon its receipt of them and will be deemed to accept the Goods upon receipt. Any claims for shortages or discrepancies will be waived by Buyer unless made in writing to WESCO within five days of receipt of the Goods.
   G. For wire and cable, delivery length tolerance is ± 10%. Cutting and Reel charges will apply when other than standard manufacturer lengths are requested and delivery lead-times may be adjusted.
   H. WESCO may cancel in whole or in part any order for Goods or Services under the Agreement at any time.
   I. Until Buyer has fully and finally paid all amounts owed to WESCO for any Goods, Buyer shall hold such Goods in trust for WESCO, and WESCO may repossess them if Buyer fails to pay for them in a timely fashion.

5. **Payment.**
   A. All payments for Goods and Services must be made in United States currency unless specified in writing by WESCO. Payments for Goods and Services will be made by such means as WESCO may specify, such as by check or wire transfer, provided that WESCO may refuse, in its sole discretion, payment by any means, including, without limitation, credit cards.
   B. Payment for Goods and Services is due within 30 days from the date of WESCO's invoice; provided, however, that WESCO reserves the right, in its sole discretion, to require full payment in cash before order entry, shipment, or delivery.
   C. WESCO shall have the right to offset any and all amounts due and owing from WESCO to Buyer under this Agreement, including, without limitation, any chargebacks or rebates, against any amounts due and owing from Buyer to WESCO under this Agreement.
   D. If Buyer defaults in payment, Buyer will be liable for all collection costs incurred by WESCO including, but not limited to, attorneys' and collection agency fees, and all related disbursements.
   E. If Buyer does not pay when payment is due, past due amounts are subject to service charges of one and a half percent (1 ½%) per month or the maximum percentage rate permitted by law, whichever is less.

6. **Taxes.** The purchase price of the Goods and Services does not include transportation taxes and sales, use, excise, import or any similar tax or other governmental charge arising pursuant to or in connection with the sale, purchase, processing, delivery, storage, use, consumption, performance or transportation of the Goods and Services. Buyer is responsible for payment of any transportation taxes, and any present or future sales, use, excise, import or any similar tax or other governmental charge applicable to the Agreement and to the sale and/or furnishing of the Goods and Services.

7. **Cancellation.** Buyer may cancel its order for Goods and/or Services, but only if WESCO agrees to such cancellation in writing and only after Buyer pays reasonable charges for expenses already incurred and commitments made by WESCO in connection with the placement of such order(s).

8. **Disclaimer of Warranties.** WESCO HEREBY EXPRESSLY DISCLAIMS AND EXCLUDES ANY AND ALL REPRESENTATIONS AND WARRANTIES, WHETHER WRITTEN OR ORAL, WHETHER EXPRESS OR IMPLIED, WHETHER ARISING BY CONTRACT, AT LAW, IN EQUITY, BY STRICT LIABILITY OR OTHERWISE, WITH RESPECT TO THE GOODS AND SERVICES, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF MERCHANTABILITY, ANY WARRANY AGAINST DEFECTS IN DESIGN, MATERIALS AND WORKMANSHIP, ANY WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, ANY WARRANTY AGAINST REDHIBITORY DEFECTS, ANY WARRANTY OF GOOD TITLE, AND ANY WARRANTY AGAINST INFRINGEMENT OF THIRD PARTY INTELLECTUAL PROPERTY, INCLUDING, WITHOUT LIMITATION, ANY PATENTS, TRADEMARKS, OR COPYRIGHTS. WESCO shall, however, if given prompt written notice by Buyer of any claim of alleged patent, trademark or copyright infringement with respect to any Goods use its reasonable efforts to secure for Buyer such indemnity rights as the manufacturer may offer with respect to such Goods.

9. **Exclusive Remedy.** Buyer's EXCLUSIVE remedy against WESCO for any claim for, or arising out of any in a Good tendered to Buyer is the repair or replacement of the Good, or alternatively, at WESCO's sole election, a refund of the purchase price of the Good. Buyer's EXCLUSIVE remedy against WESCO arising out of any defect in, or in connection with, any Service provided hereunder is the re-performance of that Service or, at WESCO's sole election, a refund of the purchase price of the Service. These remedies only will only be available to Buyer for one year after the Good is tendered or Service is provided to Buyer, and WESCO's obligations under this Section 9 will be void unless Buyer provides WESCO with notice of the defect in the Good or Service within 30 days of discovery of the defect. Any Good returned to WESCO for repair, replacement or refund under this Section 9 will be returned by Buyer in accordance with WESCO's return material authorization procedures then in effect. Returns for a refund may be subject to restocking fees.

10. **Limitation of Liability.** NOTWITHSTANDING ANYTHING ELSE CONTAINED HEREIN TO THE CONTRARY, IN NO EVENT WILL: (A) WESCO BE LIABLE TO BUYER FOR ANY CIRCUMSTANTIAL, CONSEQUENTIAL, CONTINGENT, EXEMPLARY, INCIDENTAL, INDIRECT, LIQUIDATED, MATERIAL, PUNITIVE, SPECIAL, SPECULATIVE OR OTHER DAMAGES, INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOST PROFITS, SALES OR REVENUES, COST OF REPLACEMENT GOODS, LOST BUSINESS OR BUSINESS INTERRUPTIONS, OR ATTORNEYS FEES OR COURT COSTS ARISING IN ANY MANNER PURSUANT TO OR IN CONNECTION WITH THE AGREEMENT, THE GOODS OR THE SERVICES (EVEN IF WESCO IS MADE AWARE OF THE POTENTIAL FOR SUCH DAMAGES); AND (B) WESCO'S TOTAL LIABILITY RELATED TO ANY GOOD OR SERVICE EXCEED THE PURCHASE PRICE OF SUCH GOOD OR SERVICE.

11. **Indemnification.**
    A. Upon prompt notice by Buyer of any claim of U.S. patent, copyright, or trademark infringement with respect to any Goods or Services, WESCO will use its reasonable efforts to secure for Buyer such indemnity rights as the manufacturer may customarily give with respect to such Goods. This Section 10 sets forth Buyer's sole and exclusive remedy against WESCO regarding the infringement by any Goods or Services of any third party intellectual property rights, including, without limitation, any patents or trademarks.
    B. Buyer will indemnify, defend and hold harmless WESCO, its shareholders, officers, directors, employees, agents and representatives from and against all losses, damages, liabilities, costs, and expenses including, but not limited to, property damage, loss of profits or revenue, loss of use of any property, cost of capital, cost of purchased or replacement power or temporary equipment, personal or bodily injury, or death ("Losses"), that may arise pursuant to or in connection with the Agreement, the Goods, or the Services (including, without limitation, Losses arising in connection with the performance of Services on Buyer's premises by WESCO's employees, representatives, agents, or subcontractors), regardless of whether such Losses are suffered directly by Buyer or arise pursuant to or in connection with a third-party suit, claim, counterclaim, demand, judgment or other action (each a "Claim") and regardless of whether or not WESCO or any third-party is proportionately negligent with respect to such Losses and/or Claim, provided that Buyer need not indemnify WESCO for WESCO's obligation, if any, to Buyer under Section 9 above. For the avoidance of doubt and without limitation, this indemnification obligation requires Buyer to pay any judgments against WESCO or any other indemnified party resulting from any Claim, any court costs of WESCO or any other indemnified party in connection with any Claim, and any reasonable attorneys' fees and disbursements incurred by WESCO or any other indemnified party in WESCO's defense of any Claim. WESCO will have the sole and exclusive right to conduct the defense of any Claim at Buyer's sole and exclusive cost and expense. Buyer's indemnification obligation does not depend on the truth or accuracy of any allegations made against WESCO, Buyer or any third party.

12. **Product Suitability.** Goods sold by WESCO are designed to meet stated U.S. safety standards and regulations. Because local safety standards and regulations may vary significantly, WESCO cannot guarantee that the Goods meet all applicable requirements in each locality. Buyer assumes responsibility for compliance with such safety standards and regulations in the localities in which the Goods will be shipped, sold and used. Before purchase and use of any Goods, Buyer should review the product application, and national and local codes and regulations, and verify that the use and installation of the Goods will comply with them.

13. **Ownership.** WESCO shall have and retain all right, title, and interest in and to any and all trade secrets, technical data, sales service and product plans, methodologies, techniques, designs, molds, tools, samples, systems, know-how, expertise and other proprietary information that it may use pursuant to or in connection with any Services, and Buyer shall not obtain a license to, or any other property rights in, any such WESCO property pursuant to or in connection with this Agreement.

14. **Export Controls; Availability; Laws.**
    A. Certain Goods may be subject to export controls under the laws, regulations and/or directives of the United States and various other countries. Buyer must comply with such laws and regulations and not export, re-export or transfer these Goods to any country to which such export, re-export, or transfer is forbidden or without first obtaining all required authorizations or licenses.
    B. Due to government regulations and product availability, not all goods sold by WESCO may be available in every area.
    C. Buyer hereby warrants and represents that it will comply with any and all Laws with respect to the purchase, use, and operation of any and all Goods and Services. For purposes hereof, "Laws" means any international, multinational, national, foreign, federal, state, municipal, local (or other political subdivision) or administrative laws, constitutions, statutes, codes, ordinances, rules, regulations, requirements, standards, policies or guidances having the force of law, treaties, judgments or orders of any kind or nature whatsoever, including, without limitation, any judgment or principle of common law.

15. **Interpretation of the Agreement.** None of WESCO's or Buyer's shareholders, directors, officers, partners, managers, employees, agents or representatives have any authority to orally modify or alter in any way the terms and conditions of the Agreement. The terms, conditions, and limitations set forth in the Agreement can be modified, altered, or added to only by a subsequent written instrument signed by an authorized representative of WESCO or by language included on the face hereof. Regardless of how many times Buyer purchases, or has purchased, goods and services from WESCO by whatever means, each time Buyer accepts the Agreement, Buyer and WESCO enter into a separate agreement that will be interpreted without reference to any other agreement between Buyer and WESCO, or what Buyer may claim to be a course of dealing or course of performance that has arisen between Buyer and WESCO. No inconsistent usage of trade or industry custom, if any, prior to, contemporaneous with or subsequent to the making of the Agreement will waive, vary, serve to explain or serve to interpret any of the terms, conditions and limitations of the Agreement. The Agreement is the sole and exclusive agreement with respect to the matters discussed herein and the provision of Goods and Services hereunder, (except for any contemporaneous writing agreed to in writing by WESCO expressly modifying the terms and conditions hereof, which is hereby incorporated herein by reference and made a part hereof) and supersedes all prior and contemporaneous agreements and understandings, negotiations, inducements, representations or conditions, whether oral or written, whether express or implied, with respect to such matters. Failure by WESCO to enforce any of the terms, conditions and limitations of the Agreement will not constitute a waiver of those terms, conditions and limitations or a waiver of any other terms, conditions or limitations of the Agreement, and the failure of WESCO to exercise any right (whether provided by the Agreement, law, equity, or otherwise) arising from Buyer's default under the Agreement will not constitute a waiver of that right or any other rights.

16. **Force Majeure.** WESCO will not be liable for its failure to perform under the Agreement (including, without limitation, the failure to deliver any Goods or perform any Services) due to circumstances beyond its control, including, without limitation, fire, flood, earthquake, pestilence or similar catastrophe; war, act of terrorism, or strike; lack or failure of transportation facilities, shortage of suitable parts, materials or labor; any existing or future law, rule, regulation, decree, treaty, proclamation, or order of any governmental agency; inability to secure fuel, materials, supplies, equipment or power at reasonable prices or in sufficient amounts; act of God or the public enemy; or any other event or cause beyond WESCO's reasonable control, including, without limitation, any delay caused by Buyer (each, a "Force Majeure Event"). If any Force Majeure Event prevents WESCO's performance of any of its obligations under the Agreement, WESCO will have the right to (a) change, terminate or cancel the Agreement, or (b) omit during the period of the Force Majeure Event all or any portion of the quantity of the Goods deliverable during that period, whereupon the total quantity deliverable under the Agreement will be reduced by the quantity omitted. If WESCO is unable to supply the total demands for any Goods to be delivered under the Agreement due to a Force Majeure Event, WESCO will have the right to allocate its available supply among its customers in whatever manner WESCO deems to be fair and equitable. In no event will WESCO be obligated to purchase materials from other than its regular sources of supply in order to enable it to supply Goods to Buyer under the Agreement. No change, cancellation or proration by WESCO will be deemed to be a breach of any clause, provision, term, condition, or covenant of the Agreement.

17. **Choice of Law; Choice of Venue.** The negotiation, execution, performance, termination, interpretation and construction of the Agreement will be governed by the law of the Commonwealth of Pennsylvania, except for Pennsylvania's choice of law rules, and expressly excluding the United Nations Convention on Contracts for the International Sale of Goods. If either WESCO or Buyer brings a lawsuit or any other action arising out of the Agreement against the other party, such party must file its lawsuit or other action in a state or federal court located in Pittsburgh, Pennsylvania. WESCO and Buyer expressly submit to the exclusive jurisdiction of those courts and consent to venue in those courts, and WESCO and Buyer consent to extra-territorial service of process on WESCO and Buyer. In the event of litigation pertaining to any matter covered by the Agreement, each of WESCO and Buyer hereby agree to waive any right that it may have to a jury trial of any or all issues that may be raised in such litigation. Nothing contained in the Agreement will be construed to limit or waive any rights of WESCO under applicable United States federal, state, or local laws. Any provision of the Agreement held to be invalid, illegal or unenforceable will be ineffective to the extent of such invalidity, illegality or unenforceability without affecting the validity, legality and enforceability of the remaining provisions hereof.

18. **Binding Authority.** Any director, officer, employee, representative, or agent of Buyer signing or otherwise entering into this Agreement hereby represents and warrants that he or she is duly authorized to execute and enter into this Agreement on behalf of Buyer.