**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BCause Mining LLC, | ) | Case No. 19-10562 |
| | ) | |
| Debtor. | ) | Honorable Janet S. Baer |
| | ) | |

**NOTICE OF WESCO DISTRIBUTION'S MOTION (I) TO DISMISS
THE DEBTORS' BANKRUPTCY CASES, OR, IN THE ALTERNATIVE,
(II) FOR RELIEF FROM THE AUTOMATIC STAY**

To:    ATTACHED SERVICE LIST

PLEASE TAKE NOTICE that on May 8, 2019 at 10:00 a.m., or as soon thereafter as counsel may be heard, I shall appear before the Honorable Janet S. Baer, Bankruptcy Judge, in Courtroom 615 in the United States Bankruptcy Court in the Everett McKinley Dirksen Federal Building, 219 S. Dearborn Street, Chicago, Illinois, or any Judge who may be sitting in her stead, and shall present the attached Motion (i) to Dismiss the Debtors' Bankruptcy Cases, or, in the Alternative, (ii) for Relief from the Automatic Stay, a copy of which is attached hereto and herewith served upon you.

Dated:  April 26, 2019

/s/  David A. Agay
David A. Agay (ARDC No. 6244314)
Shara Cornell (ARDC No. 6319099)
McDONALD HOPKINS LLC
300 North LaSalle Street, Suite 1400
Chicago, Illinois 60654
Telephone:  (312) 280-0111
Facsimile:  (312) 280-8232
dagay@mcdonaldhopkins.com
scornell@mcdonaldhopkins.com

-and-

Maria G. Carr (OH 0092412) (*pro hac vice* motion pending)
McDONALD HOPKINS LLC
600 Superior Avenue, E., Suite 2100
Cleveland, OH 44114
Telephone:  (216) 348-5400
Facsimile:   (216) 348-5474
mcarr@mcdonaldhopkins.com

{8059150: }

<u>**CERTIFICATE OF SERVICE**</u>

      I, David A. Agay, hereby certify that on April 26, 2019, I caused a true and correct copy of the forgoing *Motion (i) to Dismiss the Debtors' Bankruptcy Cases, or, in the Alternative, (ii) for Relief from the Automatic Stay* to be served via the CM/ECF system or U.S. mail on the following interested parties:

**Via ECF:**

David A Agay on behalf of Creditor Wesco Distribution, Inc.
dagay@mcdonaldhopkins.com,
mbrady@mcdonaldhopkins.com;bkfilings@mcdonaldhopkins.com

Jamie L Burns on behalf of Creditor W-R2 Jefferson Owner VIII, LLC
jburns@lplegal.com, rwilliamson@lplegal.com;ikropiewnicka@lplegal.com

Scott R Clar on behalf of Debtor 1 BCause LLC, a Virginia limited liability company
sclar@cranesimon.com, mjoberhausen@cranesimon.com;asimon@cranesimon.com

Shara C Cornell on behalf of Creditor Wesco Distribution, Inc.
scornell@mcdonaldhopkins.com,
mbrady@mcdonaldhopkins.com;lburrell@mcdonaldhopkins.com

Jeffrey C Dan on behalf of Debtor 1 BCause LLC, a Virginia limited liability company
jdan@cranesimon.com, sclar@cranesimon.com;mjoberhausen@cranesimon.com

Shelly A. DeRousse on behalf of the Official Committee Of Unsecured Creditors
sderousse@freeborn.com, bkdocketing@freeborn.com;jhazdra@ecf.inforuptcy.com

Devon J. Eggert on behalf of Creditor Committee Official Committee Of Unsecured Creditors
deggert@freeborn.com, bkdocketing@freeborn.com;jhazdra@ecf.inforuptcy.com

Elizabeth L. Janczak on behalf of Creditor Committee Official Committee Of Unsecured Creditors
ejanczak@freeborn.com, bkdocketing@freeborn.com;jhazdra@ecf.inforuptcy.com

Marc Ira Fenton on behalf of Creditor W-R2 Jefferson Owner VIII, LLC
mfenton@lplegal.com, skiolbasa@lplegal.com;ikropiewnicka@lplegal.com

Marc Ira Fenton on behalf of Debtor 1 BCause LLC, a Virginia limited liability company
mfenton@lplegal.com, skiolbasa@lplegal.com;ikropiewnicka@lplegal.com

Patrick S Layng
USTPRegion11.ES.ECF@usdoj.gov

**Via Regular Mail**

Paul Bozych
Nielsen, Zehe & Antas, P.C.
Wesco Distribution, Inc.
55 W. Monroe St., Ste. 1800
Chicago, IL 60603

Seth A. Robbins
Robbins Law Group
1100 N. Glebe Rd., Ste. 1010
Arlington, VA 22201

AlphaCraft Technologies, LLC
601 Railroad Ave.
South Boston, VA 24592

Matthew B. Kirsner
Eckert Seamans
919 East Main St., Ste. 1300
Richmond, VA 23219

Abacus Solutions, LLC
1190 Kennestone Circle NW, #120
 Newborn, GA 30056

Amazon Web Services, Inc.
410 Terry Avenue North
Seattle, WA 98109-5210

Brian Sayler
48 Bensam Place
Haledon, NJ 07508

Alison Zizzo
Midgett-Pret-Olansen
2901 S. Lynnhaven Rd., Ste. 120
Virginia Beach, VA 23452

Gaylene Watson
Dominion Energy Virginia
2700 Cromwell Drive
Norfolk, VA. 23509

Kristopher C. Russell
Key Account Manager

Capital Counsel, L.L.C.
700 13th Street, NW, 2nd Floor
Washington, DC 20005

Century Link
1025 Eldorado Blvd.
Broomfield, CO 80021

Ciniva, LLC
251 Granby Street
Norfolk, VA 23510

Crystal Clear Communications
3180 N. Lake Shore Drive, #20C Chicago, IL 60657

FIS Systems International LLC 601 Riverside Ave.
Jacksonville, FL 32204

Jones, Madden & Council, PLC
5029 Corporate Woods Drive, #190 Virginia Beach, VA 23462

Katten Munchin Rosenman LLP
525 W. Monroe St.
Chicago, IL 60661

LeClairRyan
4405 Cox Road, #200
Glen Allen, VA 23060

Nasdaq
One Liberty Plaza, 50th Floor
New York, NY 10006

Paychex of New York LLC 8215 Forest Point Blvd., #150 Charlotte, NC 28273
Adam.bleifeld@softvision.com

Endurance IT Services, LLC
295 Bendix Road, #300
Virginia Beach, VA 23452

BitGo, Inc.
2443 Ash Street
Palo Alto, CA 94306

HK Cryptocurrency Mining LLC
470 Park Avenue South
New York, NY 10016

{8059150: }

Customer Service and Strategic Partnerships
Dominion Energy Virginia
2700 Cromwell Drive
Norfolk, VA 23509

BMG Operations Ltd.
44 Church Street
St. John's, Antigua

Amazon Web Services, Inc.
410 Terry Avenue North
Seattle, WA 98109-5210

EF Fallon, Kevin
2800 252nd Ave.
Salem, WI 53168

Silbar Security Corporation
1508 Technology Drive, #101
Chesapeake, VA 23320

Solutrix
5469 Greenwich Road
Virginia Beach, VA 23462

Inate One LLC
1083 Independence Blvd., #206
Virginia Beach, VA 23455

Zhouyang (Mason) Song
2930 Barnard Street, #7204
San Diego, CA 92110

Tradehelm, Inc.
27 N. Wacker Dr., 103
Chicago, IL 60606

Endurance IT Services, LLC
295 Bendix Road, #300
Virginia Beach, VA 23452

US Customs & Border Protection
6650 Telecom Drive, #100
6650 Telecom Drive, #100
Indianapolis, IN 46278

CSC
3462 Solution Center
Chicago, IL 60677-3004

AlphaCraft Technologies, LLC
601 Railroad Ave.
South Boston, VA 24592

Pro Window, Inc.
Attn: Justice White, Mgr.
1604 Virginia Beach Blvd.
Virginia Beach, VA 23452

Matthew B. Kirsner
Eckert Seamans
919 East Main St., Ste. 1300
Richmond, VA 23219

BFPE International
PO Box 791045
Baltimore, MD 21279-1045

Bay Technologies
4501 Bainbridge Blvd., #200
Chesapeake, VA 23320

CB Critical Systems
Attn: Gregory Crone
11816 Mason Park Way
Glen Allen, VA 23059

Professional Heating & Cooling, Inc.
3306 Arizona Avenue
Norfolk, VA 23513

United HealthCare
PO Box 94107
Palatine, IL 60094

/s/ David A. Agay

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BCause Mining LLC, | ) | Case No. 19-10562 |
| | ) | |
| Debtor. | ) | Honorable Janet S. Baer |
| | ) | |

**WESCO DISTRIBUTION'S MOTION (I) TO DISMISS THE DEBTORS'**
**BANKRUPTCY CASES, OR, IN THE ALTERNATIVE,**
**(II) FOR RELIEF FROM THE AUTOMATIC STAY**

WESCO Distribution, Inc. ("WESCO") hereby moves (the "Motion") the Court, pursuant to sections 105(a), 1112(b) and 362(d)(1)&(2) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 1017, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Local Rules of the United States Bankruptcy Court for the Northern District of Illinois[1] for an order:

(a) (i) dismissing the chapter 11 cases of BCause Mining LLC ("BCause Mining") (Case No. 19-10562) and its parent, BCause LLC ("BCause LLC" and together with BCause Mining, the "Debtors") (Case No. 19-10731 and together with Case No. 19-10562, the "Chapter 11 Cases") or, in the alternative, (ii) granting relief from the automatic stay pursuant to section 362(d); and

(b) granting WESCO such other and further relief as is just and proper.

In support thereof, WESCO states as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] A copy of the Required Statement (Form G-4) required by Local Rule 4001-1 for motions for relief from stay is attached hereto as Exhibit A.

3.      The statutory bases for the relief requested herein are sections 105(a), 1112(b) and 362(d)(1)&(2) of the Bankruptcy Code.

## BACKGROUND ON WESCO'S INTERESTS

4.      On December 4, 2017, BCause Mining executed that certain Application for Business Credit, attached hereto as <u>Exhibit B</u> (the "<u>Application</u>").  Paragraph 10 of the Application grants a blanket lien in favor of WESCO in all assets of BCause Mining, including all BCause Mining cash, cash equivalents, and accounts, and proceeds thereof.  Attached hereto as <u>Exhibit C</u> is the UCC financing statement filed with respect to WESCO's security interests and liens (the "<u>UCC-1</u>").

5.      On December 5, 2018, BCause Mining (as judgement debtor) and BCause LLC (as guarantor) executed that certain Virginia Promissory and Confessed Judgment Note in the principal amount of $1,358,610.51, attached hereto as <u>Exhibit D</u>.  The Debtors defaulted on the note and on March 1, 2019, WESCO entered and filed that certain Confession of Judgment in the principal amount of $1,896,349.34 with the Circuit Court of Arlington County, Virginia, attached hereto as <u>Exhibit E</u> (the "<u>Confession of Judgment</u>"), against BCause LLC and BCause Mining, among others.  The time to vacate the Confession of Judgment has expired, and the judgment has gone final.  VA St. § 8.01-433.  Attached hereto as <u>Exhibit F</u> and <u>Exhibit G</u> is the Foreign Judgment registered in Cook County, Illinois, on April 2, 2019.  Accordingly, after the Confession of Judgment was entered in Virginia, WESCO followed the appropriate steps to register the Confession of Judgment in Illinois.  The Confession of Judgment creates a lien in favor of WESCO under Virginia law attaching to BCause Mining and BCause LLC's real property, attaching as of the date of entry of the Confession of Judgment on March 1, 2019.  *See* VA St. §§ 8.01-431, 8.01-434 (noting that a lien for a confessed judgment "shall attach and be

{8060266: }                                            2

binding from the time such judgment is recorded on the judgment lien docket of the county or city in which land of the defendant lies").[2]  Attached hereto as <u>Exhibit H</u> are the relevant Virginia statutes.

6.      On April 1, 2019, that certain Garnishment Summons and Suggestion for Summons in Garnishment issued in the Arlington County, Virginia Circuit Court (the "<u>Garnishment</u>"), for the total balance of $1,915,137.77, naming BCause LLC and BCause Mining as the Judgment Debtors and Lakeside Bank ("<u>Lakeside</u>") as the Garnishee.  Attached hereto as <u>Exhibit I</u> and <u>Exhibit J</u> are the Garnishment Summons issued on April 1, 2019, from the Arlington County, Virginia Circuit Court, and the Garnishment Summons issued in Cook County on April 2, 2019.  Pursuant to the Garnishment, Lakeside has to withhold the cash in the account up to the total balance on the Garnishment.  The Garnishment, together with the writ of *fieri facias* integrated into the Garnishment, creates a lien in favor of WESCO under Virginia law, attaching to both the cash in the Lakeside bank account and to the bank account itself.  *See* VA St. §§ 8.01-511, 8.01-478 (providing that the writ of *fieri facias* may be levied on money, bank notes, and chattels of the debtor).   Attached hereto as <u>Exhibit K</u> are the relevant Virginia statutes providing the basis for the lien. The Garnishment was appropriately served on Lakeside (as Garnishee), as detailed in the service affidavits attached hereto as <u>Exhibit L</u>.[3]

7.      On April 11, 2019 – just days after the Garnishment Summons was served – Bcause Mining filed its bankruptcy petition. BCause LLC then filed its bankruptcy petition on April 12, 2019.

---

[2] VA St. § 8.01-434 provides that the Confession of Judgment also may be a basis for execution against a judgment debtor's personal property.
[3] WESCO is filing proofs of claim contemporaneously with the filing of this Motion.

8.      BCause LLC and BCause Mining both filed motions to use WESCO's cash collateral [D.I. 5 and D.I. 3, respectively] in the Chapter 11 Cases.  WESCO objected to both motions [D.I. 13 and D.I. 9, respectively], and the Court entered orders granting the Debtors limited relief to pay certain expenses for one week [D.I. 20, D.I. 20, respectively].

9.      BCause LLC thereafter filed a supplement to its cash collateral motion on April 23, 2019 [D.I. 24], including updated budgets for both of the Debtors.  Both of the updated budgets assume future receiables from existing customer contracts that will allow the Debtors to bearely break even during the budget periods.  Neither of the budgets reflect any top-line revenue growth or meaningful reduction in expenses.

10.      After a second interim hearing on the Debtors' cash collateral motions on April 24, 2019, the Debtors and BCause reached an interim agreement for use of WESCO's cash collateral through May 8, 2019.  In addition to payments already approved, the interim agreement, among other things, allows the Debtors to use WESCO's cash collateral for the limited purpose of paying an additional payroll cycle of $86,500.00, certain vendor payments of approximately $4,000.00 in the aggregate, and Dominion Energy $660,000.  These payments are expressly conditioned upon confirmation of the Debtors' receipt of $1,021,252.00 in expected revenue during the week of May 3 (the "Receipts").  The Court scheduled a further hearing on the Debtors' interim use of cash collateral for May 8, 2019.

**DEBTORS' CASH COLLATERAL MOTIONS AND SUPPLEMENT**

11.      As demonstrated in WESCO's objections to the cash collateral motions, and at the April 18 and April 24, 2019 hearings, the Debtors filed these cases for one reason: to forestall WESCO's Garnishment.  As further demonstrated in the Debtors' cash collateral motions and

supplement thereto, the Debtors have no path to reorganizing and cannot confirm a chapter 11

plan in either of the Chapter 11 Cases.

12.     Specifically, the pleadings and evidence presented in connection with the cash

collateral motions and the supplement established that, among other things: (a) the Debtors are

not engaged in any formal or informal marketing process to sell the company or raise new

capital; (b) the Debtors have never had positive income and do not have a business plan for

achieving that goal; (c) the Debtors' expenses exceed their revenues, and they can only generate

new income if the price of bitcoin increases dramatically (a dubious prospect at best); (d) the

Debtors' existing customer contracts expire in 2019, and the market for hosting bitcoin miners is

competitive; (e) the Debtors have not yet developed a viable budget for these Chapter 11 Cases,

(f) the estates may be administratively insolvent, (g) the Debtors seem to have proposed in their

amended budgets, without justification, that the Court allow them to use WESCO's cash

collateral to pay certain prepetition unsecured claims of employees and to prepay postpetition

claims of Dominion Energy; (h) the Debtors cannot make appropriate adequate protection

payments to WESCO; and (i) even with the supposed "informal" proposals to invest "$250,000"

into the Debtors, that amount will not suffice to enable a reorganization and confirm a chapter 11

plan.

13.     Most concerning from WESCO's perspective are the Debtors' statements on the

record that they may seek to avoid WESCO's liens against one or both of the Debtors

(notwithstanding the Debtors' failure to file anything in that regard or even articulate a rationale

for doing so) but in the meantime would be transferring money between BCause Mining and

BCause LLC, rather than retaining the status quo pending resolution of such alleged disputes.

BCause LLC's supplement to the cash collateral motions and the Debtors' presentation at the

April 24 hearing provided nothing to clarify or resolve these issues. The Debtors currently seem to be wasting away at the expenses of their creditors. The Court should take action to preserve the estates.

14.    In short, the Debtors filed these cases hoping they could burn through WESCO's cash so they could extend their operations for a few weeks. Presumably for that reason, the Court to date has only allowed the Debtors to make limited and specific expenditures for a total of three weeks and set a further hearing date of May 8, 2019. At this hearing, the Debtors must finally present the Court with a viable path forward, as the Court admonished the Debtors at both the April 18 and April 24 hearings.

## **RELIEF REQUESTED**

15.    The Bankruptcy Code expressly protects against debtors trying to use chapter 11 as nothing more than a delay tactic and to compel secured creditors to involuntarily fund chapter 11 cases without any protection of their interests or compensation. Among the mechanisms under the Bankruptcy Code, WESCO can seek dismissal or relief from the automatic stay. Absent immediate relief, the Debtors will just continue to use these Chapter 11 Cases for no purpose other than to harm WESCO's interests.

16.    The Debtors cannot present a valid purpose for these Chapter 11 Cases. Therefore, WESCO respectfully requests that the Court enter an order: (a) (i) dismissing each of the Chapter 11 Cases, or, in the alternative, (ii) granting WESCO relief from the automatic stay pursuant to section 362 of the Bankruptcy Code to proceed against any and all of the Debtors'

colalteral;[4] (b) waiving the 14-day stay imposed by Bankruptcy Rule 4001(a)(3); and (c) granting

such other and further relief as is just and proper.

## BASIS FOR RELIEF REQUESTED

**I.      The Chapter 11 Cases Should be Dismissed Pursuant to Section 1112(b) of the Bankruptcy Code**

17.      Pursuant to section 1112(b) of the Bankruptcy Code, a bankruptcy court "has

broad discretion to dismiss or convert a chapter 11 case for cause." *Northbrook Loans, LLC v.*

*BlackAMG*, 555 B.R. 680, 682 (N.D. Ill. 2015).  A party moving for dismissal carries the initial

burden of demonstrating "cause," and the Court then must dismiss if a movant meets its burden

of proof.  *In re Draiman*, 450 B.R. 777, 826 (Bankr. N.D. Ill. 2011); *In re Dovetail, Inc.*, No. 07

B 72820, 2008 WL 5644889 at *3, (Bankr. N.D. Ill. Dec. 31, 2008).  Section 1112(b) of the

Bankruptcy Code provides a list of non-exclusive factors for use in evaluating whether to dismiss

or convert a chapter 11 case. 11 U.S.C. § 1112(b)(4).  These factors include, but are not limited

to: substantial or continuing loss or diminution of the estate and the absence of a reasonable

likelihood of rehabilitation; gross mismanagement; unauthorized use of cash collateral

substantially harmful to one or more creditors; failure to comply with a court order; and inability

to consummate a chapter 11 plan.  11 U.S.C. § 1112(b).  The Court determines whether "cause"

exists on a case by case basis and may include factors outside those expressly enumerated under

Bankruptcy Code section 1112(b).  *See In re Waterworks, Inc.*, 538 B.R. 445, 457-458 (Bankr.

---

[4] This includes, but is not limited to, WESCO's enforcement of the Garnishment, the Confession of Judgment, and the action *in detinue* currently pending against BCause Mining in the Circuit Court for the County of Arlington, Virginia (Case No. CL19001212-00).

N.D. Ill. 2015).  Filing a bankruptcy case solely to trigger the automatic stay constitutes one of

these outside factors.  *In re Tekena USA, LLC*. 419 B.R. 341, 346 (Bankr. N.D. Ill. 2009).[5]

18.     In connection with section 1112(b)(4)(A) of the Bankruptcy Code, a reasonable

likelihood of rehabilitation "refer[s] to the debtor's ability to restore the viability of its business."

*Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 516 (8th Cir. 2004); *In re Rey*, Nos. 04-B-35040, 04-

B-22548, 06-B-4487, 2006 WL 2457435, at *6 (Bankr. N.D. Ill. Aug. 21, 2006) ("rehabilitation"

under section 1112(b)(4)(A) "is not the technical one of whether the debtor can confirm a plan,

but, rather, whether the debtor's business prospects justify continuance of the reorganization

efforts").  Without a reasonable turnaround plan, the Court should not allow the Debtors to

accrue additional administrative costs while other prepetition creditors remain unpaid.  In *In re

LG Motors*, 422 B.R. 110, 116 (Bankr. N.D. Ill. 2009), for example, this Court dismissed the

chapter 11 case of a debtor that lost a critical license to sell larger vehicles.  The debtor in *LG

Motors* failed to present evidence the business could reinstate its license or turn a profit selling

alternative small automobiles, and the debtor also had a continuing net loss every month for the

first eight months of the year.  *Id.* at 117 ("the company was simply collecting and liquidating its

accounts receivable, [and was] not an active company creating new profits").

19.     The Court also should dismiss on account of the Debtors' "inability to effectuate

substantial consummation of a confirmed plan." 11 U.S.C. § 1112(b)(4)(M).[6]  A debtor cannot

---

[5] Judge Cox listed additional factors courts may consider in the *Tekena USA* case, 419 B.R. at 346.  These factors
include: few or no unsecured creditors; previous bankruptcy filings by the debtor or a related entity; improper
prepetition conduct by a debtor; the petition effectively allows a debtor to evade court orders; a debtor owes few
debts to non-moving creditors; filing a petition on the eve of foreclosure; a debtor has no major assets other than a
foreclosed property; a debtor lacks any ongoing business or employees; no possibility of reorganizing; a debtor's
income will not allow it to operate; filing of a petition despite lack of pressure from non-moving creditors; the case
essentially involves resolution of a two-party dispute; formation of the debtor and receipt of title to major assets
immediately before filing of the petition; and filing of the petition solely to trigger the automatic stay.

consummate a plan when a debtor "lacks the capacity to formulate a plan or to carry one out," *In re Preferred Door Co*., 990 F.2d 547, 549 (10th Cir. 1993), and the Court should not allow a case to continue "if the court determine[s] that it [is] unreasonable to expect that a plan could be confirmed." *In re Woodbrook Assoc.,* 19 F.3d 312, 316 (7th Cir. 1994); *Aurora Memory Care*, 589 B.R. at 642 (a debtor's unrealistic, speculative plan for financing and reorganization did not present a reasonable prospect of reorganization through a plan or otherwise; the "optimistic but hollow declarations from [a debtor's principal] about hopes for funding" did not suffice to prevent dismissal).

### A.    Cause Exists to Warrant Dismissal of the Debtors' Chapter 11 Cases

20.    Here, the Debtors admit they filed Chapter 11 Cases on account of the Garnishment and to trigger the automatic stay.  Absent the bankruptcy filings, WESCO would be realizing against the Lakeside account.  The evidence and statements at the April 18 and April 24 cash collateral hearings demonstrated that the Debtors' estates continue to lose value through operational losses and asset depreciation – losses the Debtors seek to fund through cash in the Lakeside account.  The Debtors have no idea of the current value (if any) of their non-cash assets, having not conducted an appraisal, market test, or other form of valuation, and the Debtors have no plan for restructuring or emerging from chapter 11.

21.    Also, at the April 18 hearing, the Debtors presented evidence that they never have generated positive income, and their viability depends solely on the whims of the bitcoin market, which does not bode well for the Debtors.  The Debtors' Chief Financial Officer testified at the April 18 hearing that the Debtors (and more particularly, BCause Mining, since BCause LLC

---

[6] Although, "'inability to effectuate a plan' ground for dismissal was removed from the Bankruptcy Code in the 2005 amendments, it continues to be a viable basis for dismissal because the listed examples of cause are not exhaustive." *In re Aurora Memory Care, LLC*, 589 B.R. 631, 640 (Bankr. N.D. Ill. 2018), citing *In re DCNC N.C. I, L.L.C.*, Nos. 09-3775, 09-3776, 2009 WL 3209728, at *5 (E.D. Pa. Oct. 5, 2009).

does not generate revenue) likely will not grow their top-line revenue so long as the price of

bitcoin remains depressed.  In 2018, the Debtors recorded a loss of over $2.5 million, with the

Debtors continuing to lose money on a monthly basis.  *See* Debtors' financial statements at D.I.

17-1.  In response to these challenges, the Debtors have not presented a turnaround plan, or even

a process or transaction that could result in value for stakeholders.  Thus, from the outset of these

Chapter 11 Cases, there is a "substantial or continuing loss to or diminution of the estate," and an

"absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A).

22.    Furthermore, without a business to salvage, the Debtors cannot confirm or

consummate a chapter 11 plan of reorganization.  11 U.S.C. § 1129(a)(11) (debtors must show

"[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further

financial reorganization, of the debtor"); *In re Repurchase Corp.*, 332 B.R. 336, 342 (Bankr.

N.D. Ill. 2005) (a demonstration of success not required, but debtor must give a "reasonable

assurance of commercial viability"); *Aurora Memory Care*, 589 B.R. at 642 ("a debtor facing a

motion under section 1112(b) must still how that a reorganization is plausible and not "a mere

financial pipe dream").  Based on the lack of progress to date, the timeline indicated by the

Debtors' amended budgets attached to the supplement to the cash collateral motion (through

June 7) certainly does not allow for enough time in bankruptcy to confirm a chapter 11 plan.

Indeed, the Debtors' amended budgets show that the Debtors are barely breaking even and could

be administratively insolvent; by definition, this precludes confirmation of a chapter 11 plan. 11

U.S.C. § 1129(a); *Aleshire v. Wells Fargo Bank, N.A.*, 589 B.R. 154, 160 (N.D. Ill. 2018)

(inability to pay post-petition taxes and payments pursuant to proposed plan was cause for

dismissal).  In addition to their administrative insolvency, the Debtors' financial position renders

it unlikely at best that the Debtors could confirm a plan over WESCO's non-acceptance under

section 1129(b)(2)(A) of the Bankruptcy Code.  In this regard, while the Debtors no doubt would

argue that they may seek to avoid WESCO's liens, the Debtors have yet to file such an action

and have not even accounted for legal costs (including in relation to avoidance actions) as part of

their budgets.

23.     Upon WESCO demonstrating "cause" for dismissal or conversion, the burden

shifts back to the Debtors to demonstrate "unusual circumstances establishing that converting or

dismissing the case is not in the best interests of creditors and the estate."  11 U.S.C.

§ 1112(b)(2); *In re Waterworks*, 538 B.R. 445, 457 (Bankr. N.D. Ill. 2015).  The Bankruptcy

Code does not define "unusual circumstances," but the phrase "contemplates conditions that are

not common in most chapter 11 cases." *LG Motors,* 422 B.R. at 11.  Furthermore, the Debtors

must demonstrate a reasonable likelihood that the Court will confirm a plan within the

timeframes established in the Bankruptcy Code and "reasonable justification" for the issues

WESCO has set forth as cause for dismissal. 11 U.S.C. § 1112(b)(2)(B)(i-ii).  As already

discussed, the Debtors cannot make such a showing.  These Chapter 11 Cases involve debtors

that filed chapter 11 cases to avoid execution on a judgment and that "ha[ve] no prospect of

obtaining [] post-petition financing." *Aurora Memory Care*, 531 B.R. at 642.  Similarly,

"[n]othing about the case suggests that the Code's purposes would be 'better served by

maintaining the case' in chapter 11." *Id.*

**B.     Dismissal is More Appropriate than Conversion, and Dismissal is in the Best
         Interest of the Debtors' Creditors and Estates**

24.     After a court determines that cause exists to dismiss a chapter 11 case, the court

must also consider whether dismissal is in the best interest of the creditors and the estate.

*Northbrook Loans, LLC v. BlackAMG*, 555 B.R. 680, 682 (N.D. Ill. 2015) (noting a court may

consider "which option is in the best interest of creditors and the estate by comparing 'the

creditors' interests in bankruptcy with those they would have under state law.'") (citing *In re*

*Superior Siding & Window, Inc.*, 14 F.3d 240, 242 (4th Cir. 1994)).  In addition, section 105(a)

of the Bankruptcy Code allows the court to issue "any order, process or judgment to carry out the

provisions of this title."  Here, the Court should dismiss rather than convert to chapter 7.

Irrespective of whether the Debtors proceed within or outside of this Court's supervision,

WESCO will be the Debtors' senior secured creditor.  Dismissal avoids the time and extra

expense involved in a conversion, and the Debtors and creditors will revert to their rights under

state law.  *In re Bartle*, 560 F.3d 724, 730 (7th Cir. 2009).

25.     When considering whether to dismiss or convert, the Court should consider

whether the estate's economic value "is greater in or out of bankruptcy." *Id.*  As already

discussed, in bankruptcy, the Debtors' estates will quickly evaporate at WESCO's expense.

Outside of bankruptcy, WESCO can immediately proceed against its collateral.  The Debtors

have not (and cannot) show that in bankruptcy they can realize higher and better value for the

Debtors' creditors and other stakeholders, or that creditors other than WESCO can obtain a better

recovery.  Unsecured creditors will recover only after WESCO is paid is full, whether inside or

outside of bankruptcy.  To the extent the Debtors want to argue they can avoid WESCO's liens

in bankruptcy, the Debtors would have to avoid WESCO's liens against both BCause Mining

*and* BCause LLC.  Other than vague statements at the April 18 hearing, the Debtors have not

articulated a foundation for subverting WESCO's liens against either of the Debtors, explained

how they would pay for it, or shown that the Debtors or creditors cannot pursue such actions

(which are meritless ) through state law remedies. [7]

26.     In a similar case, the Northern District of Illinois considered whether a

bankruptcy court abused its discretion in granting a secured creditor's motion to dismiss a

debtor's bankruptcy, instead of converting a chapter 11 case. *Northbrook Loans*, 555 B.R. at

680.   In the *Northbrook Loan* case (as in this case) a secured creditor with a filed judgment

sought dismissal, and (like here) that creditor's "interests [were] secure in either [state court or

bankruptcy]." *Id*. at 682.  Taking note that other creditors also supported dismissal, and also that

the parties did not raise allegations of fraud or bad faith by the secured creditor, the Court "[did

not] really see the need for bankruptcy court intervention," and dismissed the case, and the

district court affirmed this decision. *Id*. at 683, citing *In re Babayoff*, 445 B.R. 64, 82 (Bankr.

E.D.N.Y. 2011) ("[t]he possible benefits of conversion must be weighed against the incremental

costs to the estate").

27.     Similarly, the Debtors' cases do not involve any allegations of fraud, bad faith, or

claims that require Bankruptcy Court intervention or for which the Bankruptcy Code would

confer any benefit.  As a result, the Court should dismiss each of the Chapter 11 Cases and allow

WESCO to continue to pursue its state law remedies.

## II.     In the Alternative, WESCO Should Be Granted Relief from the Automatic Stay

28.     The Debtors essentially have admitted they filed these cases as a litigation tactic

to avoid foreclosure on their cash and other assets.  The Debtors have offered little by way of

---

[7] Section 17 of WESCO's terms and conditions (which are integrated into the Application) provides that
Pennsylvania law governs any disputes relating to the Application.  In the event of dismissal, the Debtors and
creditors could pursue avoidance claims under both Pennsylvania and Virginia law.  Both Pennsylvania and Virginia
have enacted statutes for setting aside fraudulent conveyance and other transfers.  *See* 12 Pa. C.S.A. § 5105; *In re
Wettach,* 811 F.3d 99, 104 (3d Cir. 2016) (considering constructively fraudulent claim); VA St. §§ 55-80, 55-81, 55-
82, 55-82.2.

adequate protection and have not presented a viable path towards reorganization.  Thus, if the

Court declines to dismiss these Chapter 11 Cases or converts to chapter 7 cases, WESCO

alternatively believes the Court should lift the automatic stay for "cause" pursuant to sections

362(d)(1)&(2) of the Bankruptcy Code.  The decision of whether or not lift the automatic stay is

"a fact-intensive inquiry made on a case-by-case basis," and is within the sound discretion of the

bankruptcy court.  *In re S. Grain Co.*, 47 F.3d 233, 236 (7th Cir. 1995); *In re Betzold*, 316 B.R.

906, 915 (Bankr. N.D. Ill. 2004).  A court may consider a number of factors when determining

whether to modify the automatic stay, including: "interference with the bankruptcy, good or bad

faith of the debtor, injury to the debtor and other creditors if the stay is modified, injury to the

movant if the stay is not modified, and the proportionality of the harms from modifying or

continuing the stay." *Milne v. Johnson (In re Milne)*, 185 B.R. 280, 283 (N.D. Ill. 1995). None

these factors are determinative, and the costs and benefits of maintaining the stay should be

weighed in light of all of the circumstances.  *In re Comdisco, Inc.*, 271 B.R. 273, 276 (Bankr.

N.D. Ill. 2002); *In re Bovino*, 496 B.R. 492, 502 (Bankr. N.D. Ill. 2013).

29.     The Court can grant relief from the stay for "cause" under section 362(d)(1) for

lack of adequate protection.  11 U.S.C. § 362(d)(1); *see also United Sav. Ass'n v. Timbers of

Inwood Forest Assoc., Ltd.*, 484 U.S. 365 (1988) (noting that adequate protection was intended to

protect against the loss in value of a secured creditor's interest in property of the bankruptcy

estate).  "Cause" is not defined, but is determined on a case by case basis.  *In re Fernstrom

Storage & Van Co.*, 938 F.2d 731, 724 (7th Cir. 1991).

30.     Adequate protection for secured creditors exists "to compensate secured creditors

for the decrease in value of their interest in collateral during the period of a bankruptcy case

before a plan providing for payment is confirmed." *In re Spencer*, 531 B.R. 208, 213 (Bankr.

W.D. Wis. 2015).  If a debtor cannot adequately protect the interests of secured creditors, the

inability to protect these interests may justify allowing the secured creditor relief from the

automatic stay.  *Id*.  Adequate protection can come in a variety of forms, including periodic

payments, additional or replacement liens, and "other relief that provides the 'indubitable

equivalent' to the protections afforded to the creditor outside of bankruptcy." 11 U.S.C. § 361; *In

re Biltwood Props. LLC*, 473 B.R. 70, 74 (Bankr. M.D. Pa. 2012).  Adequate protection may also

be accomplished through the existence of an equity cushion, or "'value in the property, above the

amount owed to the secured creditors . . . that will shield that interest from loss due to a decrease

in the property's value during the time the automatic stay remains in effect.'" *In re Norton*, 347

B.R. 291, 298 (Bankr. E.D. Tenn. 2006).

      31.     In this case, at the April 18 hearing, the Debtors' CFO could not attest to any

meaningful collateral protecting WESCO's interests other than the cash in the Lakeside bank

account and approximately one million in revenues the Debtors expect to receive from existing

customers.[8]  As to the other collateral, the Debtors' CFO could not offer an opinion as to its

current value.  Effectively, therefore, the Debtors seek to secure their use of WESCO's cash

collateral in the Lakeside account through WESCO's replacement liens on these future receipts.

Even if the Debtors actually collect these receivables — which remains to be seen — the

Debtors' amended budgets submitted to date show the Debtors just barely breaking even with

this customer revenue, before even taking account of legal fees and other costs of the Chapter 11

Cases.  Further, the Debtors' newly proposed interest-only adequate protection payments to

WESCO do not suffice to protect WESCO's interest, given the risk that the Debtors may deplete

the cash in the Lakeside account during the Chapter 11 Cases.  In other words, the Debtors seek

---

[8] The Debtors offered no additional testimony on these issues at the April 24 hearing.

for the Court to permit them to use WESCO's cash collateral to fund a money-losing enterprise, with no prospects of turnaround. Eventually, the Debtors will burn through their cash, leaving WESCO to salvage a recovery from the Debtors' remaining (and potentially worthless) assets. Cause exists to lift the automatic stay due to the Debtors' inability to provide adequate protection to WESCO.

32. Alternatively, the Court may grant relief from the stay under section 362(d)(2) of the Bankruptcy Code if no equity exists in the property, and the property is not necessary for an effective reorganization. 11 U.S.C. § 362(d)(2); *In re Mayslake Village-Plainfield Campus, Inc.,* 441 B.R. 309, 324 (Bankr. N.D. Ill. 2010) (granting relief from the stay where property necessary for a reorganization, but realistic reorganization not feasible). As established by the Debtors' and WESCO's filings regarding cash collateral (and WESCO's proofs of claim, filed contemporaneously with this Motion), the Debtors do not have any equity in the property in the Lakeside account. 11 U.S.C. § 362(g)(1); *Fed. Nat'l Mortg. Ass'n v. Dacon Bolingbrook Assoc. Ltd. P'ship*, 153 B.R. 204, 208 (N.D. Ill. 1993) (movant bears the burden of showing that there is no equity in the property). The Debtors bear the burden of proof on other issues in opposing such relief. 11 U.S.C. 362(g)(2).

33. Even at an early stage in a bankruptcy case, the debtor must still present some evidence that an "effective" reorganization is possible; the debtor must show that there is "a reasonable possibility of a successful reorganization within a reasonable time." *United Sav. Ass'n v. Timbers of Inwood Forest Assoc.*, *Ltd.*, 484 U.S. 365, 366 (1988); *see also In re Cadwell's Corners Partnreship*, 174 B.R. 744, 761 (Bankr. N.D. Ill. 1994). If a reorganization is not feasible in a reasonable time, relief from the automatic stay is warranted. *Mayslake Village,* 44 B.R. at 324 (granting relief from the stay where property was necessary for a reorganization, but

realistic reorganization was not feasible); *see also In re 6200 Ridge, Inc.*, 69 B.R. 837, 842

(Bankr. E.D. Pa. 1987) (relief from stay is required if there is no reasonable likelihood of

reorganization); *Cadwell's Corners,* 174 B.R. at 761 (stay relief granted where debtor failed

"failed to demonstrate any realistic prospect of an effective reorganization").  As of the filing of

this Motion, WESCO's claims and interests in and against the Debtors are not disputed.  The

Debtors have not demonstrated an equity cushion and have not proposed sufficient adequate

protection payments to WESCO.  As detailed above, the Debtors cannot present any plan to

move forward that would allow for an effective reorganization in a reasonable amount of time.

Therefore, this Court should grant WESCO relief from the automatic stay to pursue any and all

of the Debtors collateral, and the Court should not permit the Debtors to continue these Chapter

11 Cases as an exercise in futility.

34.     If the Court declines to dismiss or lift the automatic stay, WESCO will incur

substantial prejudice every week the Debtors are permitted to deplete the estate and expend their

other limited resources.  WESCO has spent significant time and resources trying to collect on its

claims against the Debtors, and the Debtors essentially have admitted they filed these Chapter 11

Cases to forestall the Garnishment and as a last-ditch attempt to prevent the inevitable.

Therefore, WESCO submits that any harm the Debtors may assert does not outweigh the burden

to WESCO if the Court declines to lift the automatic stay.  If the Court declines to dismiss, the

Court should lift the stay so that WESCO can realize against its collateral.

## III.    Cause Exists to Waive Bankruptcy Rule 4001(a)(3)

35.     The Court must make any order granting relief from stay final and non-appealable

upon entry.  Pursuant to Bankruptcy Rule 4001(a)(3), "an order granting a motion for relief from

an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14

days after the entry of the order, unless the court orders otherwise." As already discussed, the Debtors filed the Chapter 11 Cases primarily to delay WESCO's execution of the Confession of Judgment through the Garnishment and other means. If the Court enters an order lifting the stay and allows WESCO to proceed with the Garnishment, but such an order does not go effective immediately, WESCO would simply incur further delay in exercising its remedies, towards no end. WESCO therefore submits that good cause exists for the Court to waive the 14-day stay period in its order granting WESCO relief from the automatic stay.

## NOTICE

36.     Notice of this Motion has been served on the following parties or to their counsel if known: (a) the Debtors; (b) the Official Committee of Unsecured Creditors; (c) the Office of the U.S. Trustee for the Northern District of Illinois; (d) each of the Debtors' top 20 creditors; and (e) all other parties who have requested notice or are otherwise registered on the Court's CM/ECF system in the Debtors' Chapter 11 Cases.

## NO PRIOR REQUEST

37.     No prior request for the relief sought in this Motion has been made to this or any other court.

## CONCLUSION

38.     The Debtors filed these Chapter 11 Cases merely as a stall tactic. The Debtors have not – and cannot – set out any viable plan for the Chapter 11 Cases, and WESCO should not be forced to fund the Debtors' desire to continue to exist under bankruptcy protection. Therefore, cause exists to dismiss the Chapter 11 Cases, and also to lift the automatic stay to allow WESCO to exercise remedies.

{8060266: }                                    18

WHEREFORE, WESCO respectfully requests that this court enter an order, substantially in the form attached hereto: (a) (i) dismissing each of the Chapter 11 Cases, or, in the alternative, (ii) granting WESCO relief from the automatic stay of section 362 of the Bankruptcy Code to proceed with the Garnishment and other methods to enforce the Confession of Judgment; (b) waiving the 14-day stay imposed by Bankruptcy Rule 4001(a)(3); and (c) granting such other and further relief as is just and proper.

*[Remainder of page intentionally blank; signature page follows]*

Dated:  April 26, 2019          /s/  David A. Agay
                                David A. Agay (ARDC No. 6244314)
                                Shara Cornell (ARDC No. 6319099)
                                McDONALD HOPKINS LLC
                                300 North LaSalle Street, Suite 1400
                                Chicago, Illinois 60654
                                Telephone:  (312) 280-0111
                                Facsimile:  (312) 280-8232
                                dagay@mcdonaldhopkins.com
                                scornell@mcdonaldhopkins.com

                                -and-

                                Maria G. Carr (OH 0092412) (*pro hac vice* motion pending)
                                McDONALD HOPKINS LLC
                                600 Superior Avenue, E., Suite 2100
                                Cleveland, OH 44114
                                Telephone:  (216) 348-5400
                                Facsimile:   (216) 348-5474
                                mcarr@mcdonaldhopkins.com

**<u>CERTIFICATE OF SERVICE</u>**

   I, David A. Agay, hereby certify that, on April 26, 2019, I caused a copy of the foregoing **WESCO DISTRIBUTION'S MOTION (I) TO DISMISS THE DEBTORS' BANKRUPTCY CASES; OR, IN THE ALTERNATIVE, (II) FOR RELIEF FROM THE AUTOMATIC STAY** to be electronically filed with the Clerk of Court using the Electronic Case Filing System, and be served via the CM/ECF system or U.S. mail on the following interested parties:

**Via ECF:**

David A Agay on behalf of Creditor Wesco Distribution, Inc.
dagay@mcdonaldhopkins.com,
mbrady@mcdonaldhopkins.com;bkfilings@mcdonaldhopkins.com

Jamie L Burns on behalf of Creditor W-R2 Jefferson Owner VIII, LLC
jburns@lplegal.com, rwilliamson@lplegal.com;ikropiewnicka@lplegal.com

Scott R Clar on behalf of Debtor 1 BCause LLC, a Virginia limited liability company
sclar@cranesimon.com, mjoberhausen@cranesimon.com;asimon@cranesimon.com

Shara C Cornell on behalf of Creditor Wesco Distribution, Inc.
scornell@mcdonaldhopkins.com,
mbrady@mcdonaldhopkins.com;lburrell@mcdonaldhopkins.com

Jeffrey C Dan on behalf of Debtor 1 BCause LLC, a Virginia limited liability company
jdan@cranesimon.com, sclar@cranesimon.com;mjoberhausen@cranesimon.com

Shelly A. DeRousse on behalf of Creditor Committee Official Committee Of Unsecured Creditors
sderousse@freeborn.com, bkdocketing@freeborn.com;jhazdra@ecf.inforuptcy.com

Devon J. Eggert on behalf of Creditor Committee Official Committee Of Unsecured Creditors
deggert@freeborn.com, bkdocketing@freeborn.com;jhazdra@ecf.inforuptcy.com

Elizabeth L. Janczak on behalf of Creditor Committee Official Committee Of Unsecured Creditors
ejanczak@freeborn.com, bkdocketing@freeborn.com;jhazdra@ecf.inforuptcy.com

Marc Ira Fenton on behalf of Creditor W-R2 Jefferson Owner VIII, LLC
mfenton@lplegal.com, skiolbasa@lplegal.com;ikropiewnicka@lplegal.com

Marc Ira Fenton on behalf of Debtor 1 BCause LLC, a Virginia limited liability company
mfenton@lplegal.com, skiolbasa@lplegal.com;ikropiewnicka@lplegal.com

Patrick S Layng
USTPRegion11.ES.ECF@usdoj.gov

**Via Regular Mail**

Paul Bozych
Nielsen, Zehe & Antas, P.C.
Wesco Distribution, Inc.
55 W. Monroe St., Ste. 1800
Chicago, IL 60603

Seth A. Robbins
Robbins Law Group
1100 N. Glebe Rd., Ste. 1010
Arlington, VA 22201

AlphaCraft Technologies, LLC
601 Railroad Ave.
South Boston, VA 24592

Matthew B. Kirsner
Eckert Seamans
919 East Main St., Ste. 1300
Richmond, VA 23219

Abacus Solutions, LLC
1190 Kennestone Circle NW, #120
 Newborn, GA 30056

Amazon Web Services, Inc.
410 Terry Avenue North
Seattle, WA 98109-5210

Brian Sayler
48 Bensam Place
Haledon, NJ 07508

Alison Zizzo
Midgett-Pret-Olansen
2901 S. Lynnhaven Rd., Ste. 120
Virginia Beach, VA 23452

Gaylene Watson
Dominion Energy Virginia
2700 Cromwell Drive
Norfolk, VA. 23509

Capital Counsel, L.L.C.
700 13th Street, NW, 2nd Floor
Washington, DC 20005

Century Link
1025 Eldorado Blvd.
Broomfield, CO 80021

Ciniva, LLC
251 Granby Street
Norfolk, VA 23510

Crystal Clear Communications
3180 N. Lake Shore Drive, #20C Chicago, IL
60657

FIS Systems International LLC 601
Riverside Ave.
Jacksonville, FL 32204

Jones, Madden & Council, PLC
5029 Corporate Woods Drive, #190 Virginia
Beach, VA 23462

Katten Munchin Rosenman LLP
525 W. Monroe St.
Chicago, IL 60661

LeClairRyan
4405 Cox Road, #200
Glen Allen, VA 23060

Nasdaq
One Liberty Plaza, 50th Floor
New York, NY 10006

Paychex of New York LLC 8215 Forest
Point Blvd., #150 Charlotte, NC 28273
Adam.bleifeld@softvision.com

Endurance IT Services, LLC
295 Bendix Road, #300
Virginia Beach, VA 23452

BitGo, Inc.
2443 Ash Street
Palo Alto, CA 94306

{8060266: }                                22

Kristopher C. Russell
Key Account Manager
Customer Service and Strategic Partnerships
Dominion Energy Virginia
2700 Cromwell Drive
Norfolk, VA 23509

BMG Operations Ltd.
44 Church Street
St. John's, Antigua

Amazon Web Services, Inc.
410 Terry Avenue North
Seattle, WA 98109-5210

EF Fallon, Kevin
2800 252nd Ave.
Salem, WI 53168

Silbar Security Corporation
1508 Technology Drive, #101
Chesapeake, VA 23320

Solutrix
5469 Greenwich Road
Virginia Beach, VA 23462

Inate One LLC
1083 Independence Blvd., #206
Virginia Beach, VA 23455

Zhouyang (Mason) Song
2930 Barnard Street, #7204
San Diego, CA 92110

Tradehelm, Inc.
27 N. Wacker Dr., 103
Chicago, IL 60606

Endurance IT Services, LLC
295 Bendix Road, #300
Virginia Beach, VA 23452

HK Cryptocurrency Mining LLC
470 Park Avenue South
New York, NY 10016

US Customs & Border Protection
6650 Telecom Drive, #100
6650 Telecom Drive, #100
Indianapolis, IN 46278

CSC
3462 Solution Center
Chicago, IL 60677-3004

AlphaCraft Technologies, LLC
601 Railroad Ave.
South Boston, VA 24592

Pro Window, Inc.
Attn: Justice White, Mgr.
1604 Virginia Beach Blvd.
Virginia Beach, VA 23452

Matthew B. Kirsner
Eckert Seamans
919 East Main St., Ste. 1300
Richmond, VA 23219

BFPE International
PO Box 791045
Baltimore, MD 21279-1045

Bay Technologies
4501 Bainbridge Blvd., #200
Chesapeake, VA 23320

CB Critical Systems
Attn: Gregory Crone
11816 Mason Park Way
Glen Allen, VA 23059

Professional Heating & Cooling, Inc.
3306 Arizona Avenue
Norfolk, VA 23513

United HealthCare
PO Box 94107
Palatine, IL 60094

/s/ David A. Agay