**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| BCAUSE MINING LLC, et al., | Case No. 19-10562 (Jointly Administered) |
| Debtors/Debtors-in-possession. | Honorable Janet S. Baer |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' SUPPLEMENTAL
OBJECTION TO WESCO DISTRIBUTION'S MOTION (I) TO DISMISS
THE DEBTORS' BANKRUPTCY CASES, OR, IN THE ALTERNATIVE,
(II) FOR RELIEF FROM THE AUTOMATIC STAY**

The Official Committee of Unsecured Creditors (the "*Committee*") of BCause Mining LLC ("*Mining*") and BCause LLC ("*BCause*" together with Mining, the "*Debtors*"), by and through its undersigned counsel, submits this objection (the "*Objection*") to the motion (the "*Motion*") (ECF No. 35) of WESCO Distribution, Inc. ("*WESCO*") to dismiss the Debtors' bankruptcy cases or, alternatively, for relief from the automatic stay. In support of this Objection, the Committee states as follows:

### INTRODUCTION

WESCO seeks dismissal of the Debtors' bankruptcy or, in the alternative, modification of the automatic stay. There is no cause for dismissal at this juncture and, importantly, dismissal will put unsecured creditors in a worse position than in these bankruptcy cases. Likewise, WESCO cannot meet its burden for its request for modification of the automatic stay because it is not only adequately protected by the value of the Debtors' assets which exceeds WESCO's claims, but also by the adequate protection payments it has been receiving.

As of the date of this Response, the case is only 47 days old. Even so, the Committee sees opportunities for restructuring or liquidating the Debtors' assets in bankruptcy. The Debtors have a consistent income of $1 million per month under current contracts. If they reduce their expenses, they can expand their net cash flow to allow for payments to creditors. They can also expand cash flow by procuring new contracts, which would result in very little additional expenses since most of the Debtors' costs are fixed overhead and would not be subject to any pre-petition security interests. If the current contracts dry up and the Debtors are unable to find new ones, they could market their businesses as a going concern or liquidate their $10 million in assets. All of these options have the potential for recovery to unsecured creditors. In contrast, dismissal would only harm creditors as the Debtors' assets would be liquidated and, most likely, be paid solely to WESCO.

With respect to stay modification, an examination of the priority of WESCO's claims and liens reveals that it is clearly oversecured. WESCO has no valid security interests or liens in the assets of BCause, including the approximately $912,000 of cash on the Petition Date, because BCause never granted WESCO any security interests, the judgment and garnishment are preferences, and WESCO even garnished the wrong entity. WESCO's secured claim is also significantly less than $1.9 million because nearly half of its claim stems from a debt owed not to WESCO, but to an affiliate. For these reasons, the Committee requests that the Court deny the Motion.

**RELEVANT FACTUAL BACKGROUND**

On December 4, 2017, Mining and WESCO entered into the Application for Business Credit (the "*Credit Application*") pursuant to which Mining purportedly granted WESCO a security interest in its assets. (Motion, Exhibit B.) Subsequently, WESCO and its affiliate

2

Communications Supply Corp. ("*CSC*"), sold Mining certain equipment for two separate phases of Mining's operations. Mining paid WESCO and CSC for all of the Phase I debt, but left a balance of $1,183,146.70 for Phase II. *See* WESCO and CSC Transaction History attached hereto as Exhibit 1. Of that amount, $639,445.72 related to WESCO invoices and $543,700.98 related to CSC invoices. *Id.*

On or about December 5, 2018, Mining and WESCO entered into a promissory note and confession of judgment (the "*Promissory Note*") in the amount of $1,358,610.51. (Motion, Exhibit D.) On information and belief, the amount of the Promissory Note reflected the principal amount of the WESCO and CSC invoices plus interest. Mining defaulted under the repayment terms of the Promissory Note and on March 1, 2019, WESCO obtained a judgment (the "*Judgment*") against Mining and BCause, among others. (Motion, Exhibit E.) WESCO recorded the Judgment in Illinois and obtained a non-wage garnishment issued to Lakeside Bank Community Development, LLC from the Circuit Court of Cook County on April 2, 2019 which was served on April 3, 2019. (Motion, Exhibits I and L.)

On the Petition Date, BCause had a deposit bank account at Lakeside Bank (the "*Lakeside Account*") containing $911,942 (the "*Cash*"). (Doc. 78, 19-10731.) BCause also listed deposits and prepayments (the "*Deposits*") in its schedules valued at $371,259.

## OBJECTIONS

WESCO cannot meet its burden of proof on either its request for dismissal or for modification of the automatic stay because the Debtors have a strong possibility of reorganizing in these cases and WESCO is oversecured and adequately protected. The Debtors should be allowed to attempt to reorganize or sell assets before the far-reaching remedies of dismissal or stay modification are imposed. Nevertheless, in the event the Court entertains WESCO's request

to dismiss or convert these cases, the Court should convert the cases to chapter 7 to protect the best interests of all the Debtors' creditors.

**I.   Dismissal is Not Proper or in the Best Interest of the Creditors**

WESCO asserts three bases for cause for dismiss:  1) inability to effectuate substantial confirmation of a confirmed plan; 2) substantial or continuing loss to or diminuition of the estate and the absence of a reasonable likelihood of rehabilitation; and 3) the Debtors filed the bankruptcy cases solely to trigger the automatic stay.  None of these causes are compelling at this early stage of these bankruptcy cases and under the current facts.

> A. <u>At this Early Stage in the Case, the Debtors Have Demonstrated a Reasonable Likelihood of Rehabilitating and Confirming a Plan and their Assets are Not Diminishing</u>

Based on the Debtors' prior testimony and the Committee's understanding of their ongoing efforts, the Debtors have many opportunities to generate additional revenue or market their assets for sale in order to create value for the estates and yield a distribution to the Debtors creditors.  This includes signing up additional mining customers and a possible revenue-share relationship.  Moreover, less than two months into these cases, the Debtors have already begun efforts to cut their expenses by identifying executory contracts for rejection and reducing employee headcount.

These efforts are more than sufficient to satisfy the low bar for reasonable likelihood of confirming a chapter 11 plan, which are not evaluated as stringently as they are later on in a case. *In re Aurora Memory Care, LLC*, 589 B.R. 631, 642 (Bankr. N.D. Ill. 2018) (under section 1112(b) of the Bankruptcy Code); *In re Bovino*, 496 B.R. 492, 507 (Bankr. N.D. Ill. 2013) (under section 362(d)(2) of the Bankruptcy Code, explaining that "[e]arly on in a bankruptcy case, a debtor may be given a greater benefit of the doubt as to the success of a proposed feasible

4

plan."). These bankruptcy cases are in their infant stages and dismissal now would be a grave error. Considering the value of the Debtors' assets and that the alternative of dismissal would effectively destroy the Debtors' entire enterprise, the Debtors should be given the benefit of the doubt that they can confirm a feasible plan.

### B. Dismissal is Not in the Best Interests of the Debtors' Estates

As explained below, WESCO's liens should be challenged. Dismissal will remove the ability of unsecured creditors to bring a challenge, because section 547 of the Bankruptcy Code is not available outside of bankruptcy and WESCO will certainly immediately institute its aggressive collection tactics, thereby devastating the Debtors' businesses before creditors have the opportunity to challenge the propriety of WESCO's garnishment. Dismissal would <u>only</u> benefit WESCO, who would then sweep all of the Debtors' cash and obliterate any possibility the Debtors might have to turn around their businesses and maximize the value of their assets for <u>all</u> creditors.

## II. WESCO is Oversecured and Adequately Protected[1]

As discussed in detail below, WESCO's request for relief from the automatic stay should be denied because WESCO is significantly oversecured and it is adequately protected. In particular, Mining is generating at least $1 million in revenues per month and its equipment is worth at least $1 million in a liquidation. In contrast, WESCO's secured debt is, at best, approximately $745,000 (the amount scheduled by the Debtors) because it has no secured claim against BCause's assets and the portion of its debt relating to CSC is unsecured.

---

[1] The below analysis of WESCO's claim and liens is not meant to be comprehensive. The Committee believes there may be additional bases to challenge WESCO's claim and liens, which can be addressed at a later date.

5

A. <u>WESCO's Secured Claim Against BCause's Assets is Avoidable and Unenforceable</u>

WESCO's alleged secured claim against BCause's assets is avoidable and unenforceable because WESCO never had a security interest in BCause's assets, any liens granted by the Judgment and Garnishment are avoidable preferences, and the Garnishment was issued against the wrong entity.

*i. WESCO Has No Security Interest Against BCause's Assets*

First and foremost, WESCO never had a security interest in any of BCause's assets because BCause never granted WESCO a security interest and WESCO never perfected one. BCause Mining, not BCause LLC, was the applicant on the Application for Business Credit. (Motion, Exhibit B.) Furthermore, WESCO did not perfect any purported security interest because it filed a UCC financing statement only against BCause Mining. (Motion, Exhibit C.)

*ii. WESCO's Alleged Liens in BCause's Assets are Avoidable Preferences*

The only possible way WESCO could assert a lien against BCause's assets, including its cash in Lakeside, is via the Judgment and Garnishment. The Judgment was entered March 1, 2019 and the Garnishment was issued on April 2, 2019, both of which fall within 90 days priors to the Petition Date. Section 547(b) of the Bankruptcy Code permits a trustee to avoid as a preference:

any transfer of an interest of the debtor in property—

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
> > (A) on or within 90 days before the date of the filing of the petition; or

6

> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if—
>> (A) the case were a case under chapter 7 of this title;
>> (B) the transfer had not been made; and
>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). The Judgment and Garnishment which purportedly grant WESCO liens against BCause's assets certainly fall within the definition of a preference because: (i) WESCO was a creditor, (ii) the liens were on account of an antecedent debt owed by BCause to WESCO, (iii) BCause is presumed insolvent within the preference period (11 U.S.C. § 547(f)), (iv) the liens took effect within the 90-day preference period, and (v) the liens raised WESCO from an unsecured creditor to a secured creditor, allowing it to receive more than it would had the liens not been granted. *See e.g. Barre v. Kennedy (In re Neighborhood Barre, LLC)*, 596 B.R. 667 (Bankr. N.D. Ill. 2019) (holding that citation lien on debtor's property acquired during preference period was an avoidable preference); *Karim v. Bayview Loan Servicing, LLC (In re Karim)*, 582 B.R. 193 (Bankr. N.D. Ill. 2018) (holding that judgment creditor's citation lien on a check payable to debtors was an avoidable preference).

### iii. WESCO's Garnishment is Unenforceable Against BCause's Property

Even if WESCO's Garnishment were not a preference, WESCO still does not have a perfected lien in BCause's primary asset – the Cash in the Lakeside Account. The Garnishment was issued to "Lakeside Bank Community Development, LLC." (Motion, Exhibits I and J.) Illinois law only creates a lien on the "property **held by the garnishee** at the time of the service of garnishment summons[.]" 735 ILCS 5/12-707 (emphasis added). However, the entity which actually has possession of the Lakeside Account is Lakeside Bank, an Illinois chartered banking

7

corporation. Upon information and belief, Lakeside Bank Community Development, LLC is an entity which invests in various community development activities, not itself a banking corporation which would hold deposit accounts for banking customers. Since WESCO did not serve a garnishment summons on the correct entity, it has no lien on the Lakeside Account or the Cash.

WESCO may try to skirt its failed garnishment by arguing that the assets of BCause, particularly the Lakeside Account, are proceeds of Mining's assets, against which WESCO asserts a perfected security interest under Virginia's version of the Uniform Commercial Code (the "*UCC*"). Such argument fails because Mining and BCause are separate legal entities and section 332 of Article 9 dictates that a transferee of cash proceeds takes the cash free of any security interest in cash proceeds. VA Code Ann. §8.9A-332(a).

BCause, as debtor in possession, has the rights and powers of a trustee. *In re Hearing Help Express, Inc.*, 575 B.R. 175, 182 (Bankr. N.D. Ill. 2017); 11 U.S.C. §1107(a). The "strong arm clause" of section 544(a) "vests a trustee with rights of a hypothetical lien creditor whose lien was perfected at the time of the bankruptcy petition was filed." *In re Marston*, 417 B.R. 766, 770 (Bankr. N.D. Ill. 2009); 11 U.S.C. §544(a). In doing so, the trustee is representing the interests of the unsecured creditors as a whole. *Id*. at 771 ("when the trustee sues on behalf of the debtor, the trustee is really suing on behalf of the creditors of the debtor."). BCause stands in the shoes of a lien creditor with respect to the cash in its bank account and has a priority over any interest WESCO has in the Lakeside Account.

The only exception provided by section 332 to cash proceeds being transferred free of security interests is when the transferee "acts in collusion with the debtor in violating the rights of the secured party." VA Code Ann. §8.9A-332(a). To show collusion under section 332, the

secured creditor has to pass a tremendously high bar. If a transferee receives the cash in the ordinary course of business, even with knowledge of the security interest, the collusion standard cannot be satisfied. *In re Machinery, Inc.*, 342 B.R. 790, 798 (Bankr. E.D. Mo. 2006); *Orix Financial Services, Inc. v. Kovacs*, 167 Cal. App. 4th 242, 247-48 ( Cal. App. 2008). Section 332 puts no duties on the transferee and does not require a showing of change in position or reliance on the transfer. *Orix Financial Services, Inc. v. Kovacs*, 167 Cal. App. 4th at 247-48. The *Orix Financial* court recognized that pursuant to the drafters' comments to section 332, "a protected transferee need not be a creditor at all, but may have been paid by mistake or otherwise have provided no value to the debtor in exchange for the payment." *Id*. at 250.

BCause routinely in the ordinary course of business received transfers of cash from Mining or its customers, as many separate but related entities receive intercompany transfers in the ordinary course of business. The payments were not being made for the purpose of violation of the rights of WESCO. Therefore, the collusion exception to section 332 cannot be met and WESCO's security interest in Mining's cash, if any, was extinguished upon transfer to BCause.

B. <u>WESCO's Claim Relating to Amounts Owed to CSC is Not Secured</u>

Additionally, WESCO's alleged secured claim against the Debtors actually consists of two separate debts – an amount originally owed to WESCO of $745,756.08 (per the Debtors' Schedules) and an amount originally owed to CSC of $626,305.84 (per the Debtors' Schedules). Any amounts allegedly owed to WESCO which stem from the debt originally owed to CSC are unsecured because CSC never filed a UCC-1 financing statement to perfect its alleged security interest. WESCO and CSC are clearly separate legal entities, albeit affiliates. Only WESCO filed a UCC-1 financing statement. Because CSC never perfected any security interest it may

have been granted,[2] WESCO cannot claim that CSC's portion of the obligation owed by the Debtors is secured.

Based on the foregoing, WESCO is clearly oversecured because its secured claim is, at best, $745,000 which is less than the liquidation value of Mining's equipment let alone its other assets. This equity cushion provides WESCO with appropriate adequate protection and, accordingly, the Court should deny WESCO's request for relief from the automatic stay.

## CONCLUSION

Based on the foregoing, the Committee respectfully requests that the Court deny the Motion because WESCO is adequately protected, dismissal is not appropriate at this stage of the Debtors cases and is not in the best interests of the Debtors' estates.

Dated: May 28, 2019

**FREEBORN & PETERS LLP**

By: /s/ Elizabeth L. Janczak
      One of Its Attorneys

Shelly A. DeRousse
Devon J. Eggert
Elizabeth L. Janczak
311 South Wacker Drive, Suite 3000
Chicago, IL 60606
Tel:    312.360.6000
Fax:   312.360.6520
Email:  sderousse@freeborn.com
          deggert@freeborn.com
          ejanczak@freeborn.com

*Counsel for Official Committee of Unsecured Creditors of BCause Mining LLC and BCause LLC*

---

[2] The Committee understands that WESCO will likely contend that Mining granted WESCO and any affiliates a security interest in its assets in the Credit Application. The Committee disputes WESCO's contention that the Credit Application could grant a security interest to a broad swath of unnamed entities, but as no affiliates perfected any purported security interests the Committee believes it to be moot.