IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Case No. 19-10562 |
| | ) | |
| BCause Mining, LLC, et al. | ) | Judge Janet S. Baer |
| | ) | |
| Debtors/Debtors-in-Possession. | ) | Chapter 11 |

**MEMORANDUM OF DEBTORS IN RESPONSE TO MOTION OF WESCO DISTRIBUTION (I) TO DISMISS THE DEBTORS' BANKRUPTCY CASES, OR, IN THE ALTERNATIVE, (II) FOR RELIEF FROM THE AUTOMATIC STAY**

BCause Mining LLC, ("BCause Mining") and BCause LLC ("BCause LLC"), Debtors/Debtor-in-Possession (collectively, "Debtors") by and through their counsel, Scott R. Clar and the law firm of Crane, Simon, Clar & Dan, hereby respond to the Motion of Wesco Distribution ("Wesco") (I) to Dismiss the Debtors' Bankruptcy Cases, or, in the Alternative, (II) for Relief from the Automatic Stay ("Motion"), and in support thereof, state as follows:

**I. Introduction and relevant Facts**

1.      On April 11, 2019, BCause Mining filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  On April 12, 2019, BCause LLC filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code (collectively, the "Petition Dates").

2.      The Debtors have been managing their financial affairs as Debtors-in-Possession since the Petition Dates.  No trustee or examiner has been appointed to serve in these reorganization cases.  A Committee of Unsecured Creditors was appointed on April 24, 2019 ("Committee").

3.      BCause Mining is in the crypto currency mining business, which is the process of producing digital currency using cryptography and high-powered computers known as mining

1

rigs, or miners. BCause Mining does not itself mine, but is a service provider that hosts a mining venue for its customers.

4. BCause Mining is a limited liability company formed in Virginia and provides a state of the art mining facility in Virginia Beach, Virginia, and maintains offices located at 130 S. Jefferson Street, Suite 101, Chicago, Illinois, 60661.

5. BCause Mining is wholly owned by BCause LLC, which is a limited liability holding company also formed in Virginia.

6. BCause Mining's Chapter 11 filing was triggered by a judgment entered in favor of Wesco in the approximate amount of $1,900,000 and a garnishment of BCause LLC's bank account, from which all of BCause Mining's bills are paid, including bills for utilities such as Dominion Energy, which threatened a shut-off of BCause Mining's utilities for non-payment, as of April 12, 2019.

7. BCause Mining does not have any employees, as all employees are employed by BCause LLC, which employs twenty-seven (27) full time and four (4) part time employees in BCause Mining's Chicago and Virginia Beach locations.

8. On May 8, 2019, this Court entered an Order directing the joint administration of the BCause Mining and BCause LLC Chapter 11 cases, for procedural purposes only, subject to Bankruptcy Rule 1015(b).

9. On April 26, 2019, Wesco filed the Motion, which seeks either dismissal of the Debtors' chapter 11 cases or relief from the automatic stay. The Motion should be denied.

## II.  The Debtors' Post Petition Activities And Plans For The Future

### A. The Debtors' Post Petition Activities

10. Since the Petition Dates, the Debtors have successfully entered into three (3) interim cash collateral orders, the last of which allowed the Debtors to spend every dollar in the budgets attached.  Each budget showed a positive cash flow at the end of the period reported, and at no time does Wesco's purported[1] collateral decrease beyond its value as of the Petition Date.  The Debtors' Chapter 11 cases are barely over 45 days old, and Wesco's motion is premature.

11. The Court has previously expressed its concerns about the Debtor's future plans, which will be addressed herein to show continued and increased positive cash flow.  Significantly, both the Committee and, upon information and belief, the Debtors' largest unsecured creditor, BMG, oppose Wesco's Motion.

12. The Debtors' objective for entering chapter 11 was to reorganize and to eliminate perceived errors made by previous management, in order to facilitate a successful exit from Chapter 11 for the benefit of <u>all</u> creditors and parties in interest.

13. The Debtors believe there is significant value in the Debtors' assets, far exceeding the amount of Wesco's purported secured claim, and that BCause's ongoing cash flow, combined with reduction of expenses and plans for increased revenue, mitigate in favor of a possible plan of reorganization.

14. A significant reduction of expenses is represented by shifting expenses of BCause LLC relating to non-debtor entities owned by BCause LLC such as BCause Spot LLC, as will be explained later in this response.

---

[1] Both the Committee and BMG, the Debtors' single largest unsecured creditor, are in the process of investigating the validity of Wesco's purported security interest.  In addition, the Committee's Response to Wesco's Motion, will address the issue of whether Wesco's purported lien BCause LLC's bank account represents a preference pursuant to Section 547 of the Bankruptcy Code.

15. The Debtors are contemplating a plan of reorganization that would combine a partial repayment of debt with conversion of debt into equity; and a reasonable period for repayment of debt.

### B. The Short-Term Future

16. Attached hereto as **Group Exhibit A** is a "slide deck" summarizing the Debtors' future plans, along with budgets representing proposed reductions in the Debtors' expenses (the "Slide Deck").

17. According to the Slide Deck, the Debtors current business revenue is approximately $12.1 million. The Debtors' profit margins have improved due to power rate change and implementation of new software, as well as other operational improvements.

18. In accord with testimony elicited during previous hearings in connection with the Debtors use of cash collateral, interest in "hosting," the lifeblood of BCause Mining's business, has increased due to the increase in the price of bitcoin.

19. The Debtors' expenses have been or will be reduced by at least $40,000 per month in accordance with the budgets already submitted and approved. If no further changes are made, the Debtors project $72,898 in increased cash flow over the period covered by the budgets already submitted and approved.

### D. The Proposed Improvements in the Mining/Holding Budgets

20. The additional cash flow referenced above includes through September 6, 2019, $173,148 of bankruptcy related charges, which the Debtors have the ability to pay, and which will not exist outside of Chapter 11.

21. In addition to the reduction of expenses previously referenced herein, the Debtors are in the process of either implementing or negotiating the following potential cost reductions:

- A rejection of the Debtors' corporate office lease in Virginia Beach VA, as of August 1, 2019, and obtaining a smaller corporate office, at a savings of approximate. $1,500 per month.

- The Debtors have discussed, but do not have an agreement, as to subleasing a portion of BCause Mining's operational facility with an estimated savings of approximately $2,000 per month;

- BCause Mining is attempting to renegotiate a portion of the Dominion Energy Power Agreement, with an estimated savings of $5,800 per month; or

- BCause Mining is discussing generating power on site, using equipment from GPC Green Energy and natural gas from Virginia Natural Gas, at an estimated savings of $37,000; or

- Moving BCause Mining's operational facility to North Carolina in conjunction with Cube Hydro, a hydro-electric power company in North Carolina, at an estimated savings of $60,000 per month on power and facility costs. The cost of moving from BCause Mining's current facility would be absorbed in the rate schedule after the move, thereby eliminating any need for an immediate outlay of cash for moving costs.

### D. Summary of Key Elements of Debtors' Continued Operations

22. Substantial cost reductions are still available to the Debtors, beyond the labor costs already eliminated, and the Debtors are already showing a positive cash flow.

### III. Argument

### A. There is No Basis for Dismissal of the Chapter 11 Cases

23. The party seeking dismissal or conversion pursuant to section 1112(b) of the Bankruptcy Code bears the burden of proving cause for such dismissal or conversion, by a preponderance of the evidence, *In re 4 C Solutions, Inc.*, 289 B.R.354, 364

5

(Bkrtcy.C.D.Ill. 2003) citing *Matter of Woodbrook Associates,* 19 F.3d 312, 317 (7th Cir. 1994).

24.    To establish cause for dismissal or conversion pursuant to Section 1112(b)(1) of the Bankruptcy Code, the movant must establish "(1) continuing loss to or diminution of the estate and (2) absence of a reasonable likelihood of rehabilitation" *4 C Solutions, Inc.* at 364, citing *In re Gonic Realty Trust,* 909 F.2d 624, 627 (1st Cir. 1990). To establish continuing loss to or diminution of the estate, the movant must prove that the debtor is maintaining post-petition, a negative cash flow position or that there is economic depreciation of its assets. *4 C Solutions, Inc.* at 364, citing *In re Schriock Const., Inc.,* 167 B.R. 569, 575 (Bankr.D.N.D. 1994). Here, Wesco cannot show and has not shown any loss or diminution of the estate, and the Debtors have demonstrated a reasonable likelihood of rehabilitation.

25.    "The earlier in the Chapter 11 case, the more reluctant courts are, absent some compelling justification, to abort the statutory confirmation process by ordering conversion or dismissal. *In re Chris-Marine U.S.A., Inc.,* 262 B.R. 118 (Bankr.M.D.Fla.2001). The two recognized policies underlying Chapter 11 are preserving going concerns and maximizing property available to satisfy creditors. *Bank of America Nat. Trust and Savings Assn. v. 203 North LaSalle Street Partnership,* 526 U.S. 434, 453, 119 S.Ct. 1411, 143 L.Ed.2d 607 (1999). Generally, if continuing a Chapter 11case would promote these two goals, then the case should probably not be converted or dismissed. *In re Oriental Co-op. Ass'n,* 256 B.R.508, 511 (Bankr.W.D.Okla. 2000)." *In re 4 C Solutions, Inc.* at 364. The Debtors' chapter 11 cases are currently 47 days old.

26. Wesco asserts that dismissal is appropriate as the Debtors are unable to effectuate a plan as provided by Section 1112(b)(4)(M) of the Bankruptcy Code. "This provision tests whether it is reasonable to expect that a plan can be confirmed within a reasonable period of time. *In re Woodbrook Assocs.,* 19 F.3d 312 (7th Cir. 1994). *In re C 4 Solutions, Inc.* at 365. Wesco cannot and has not demonstrated that it is unreasonable to expect that a plan can be confirmed by the Debtors within a reasonable period of time. The Debtors' cost-cutting measures show that cash will be available to confirm a plan of reorganization.

27 "Statements of opposition by creditors at the outset of a Chapter 11 case, however, no matter how strident, are not dispositive of a motion to dismiss because a plan may be confirmed notwithstanding such opposition. *Matter of Bergeron,* 218 B.R. 1003, 1007 (Bankr. E.D.La. 1998)." *In re C 4 Solutions, Inc.* at 365.

### B. There is No Basis for Modifying the Automatic Stay

28. Courts generally consider certain factors in determining whether to modify the automatic stay for cause pursuant to Section 362(d)(1) of the Bankruptcy Code. Those factors include "interference with the bankruptcy, good or bad faith of the debtor, injury to the debtor and other creditors if the stay is modified, injury to the movant if the stay is not modified, and the proportionality of the harms from modifying or continuing the stay." *In re Bovino,* 496 B.R.492, 502 (Bkrtcy. N.D.Ill. 2013) citing, *Milne v. Johnson (In re Milne),* 185 B.R. 280, 283 (N.D.Ill. 1995).

29. No single factor is outcome determinative. *In re Bovino,* at 502. The courts must weigh the factors within the context of the relevant circumstances and with respect to the costs and benefits of maintaining the stay. *In re Bovino*, at 502, citing, *In*

7

re Comdisco, Inc., 271 B.R. 273, 276 (Bkrtcy.N.D.Ill. 2002). "Cause," which would support relief from the automatic stay pursuant to Section 362 of the Bankruptcy Code, is a lack of adequate protection, which as defined in the Bankruptcy Code was intended by Congress to prevent a loss of value of a secured creditor's interest in property during the pendency of the bankruptcy case. *In re Bovino,* at 502, citing, *United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.* 484 U.S.365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). Adequate protection is not intended to compensate the creditor for the delay by the bankruptcy filing in enforcing its rights to its property. *In re Addison Properties Ltd. Partnership,* 185 B.R. 766, 769 (Bkrtcy.N.D.Ill. 1995), citing, *Timbers of Inwood.*

30. The burden of proof is on the movant to demonstrate that there is a decline in the value of its collateral. *In re Bovino* at 506, citing, *In re Bivens,* 317 B.R. 755, 770 (Bkrtcy.N.D.Ill. 2004). Wesco has not and cannot demonstrate that there is a decline in the value of its purported collateral, consisting of the Debtors' cash and accounts receivable. This Court said as much on May 8, 2019, when the Court remarked that Wesco is adequately protected.

31. To obtain relief pursuant to Section 362(d)(2) the debtor must lack equity in the property in question, and that property must be necessary to an effective reorganization. *In re Bovino* at 506. The Debtors <u>have</u> equity in Wesco's purported collateral, and the property is definitely necessary to an effective reorganization.

32. "'Necessary to an effective reorganization' under section 362(d)(2) requires that the property in question must be essential for reorganization in that there must be "a reasonable possibility of a successful reorganization within a reasonable time." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S.

8

365, 375-76, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). In a Chapter 11, this requires a showing that reorganization is impossible without the property and an inquiry by the court as to whether the Debtor can propose a feasible plan within a reasonable timeframe." *In re Bovino* at 507.

33. "Early on in a bankruptcy case, a debtor may be given a greater benefit of the doubt as to the success of a proposed feasible plan. *In re Cadwell's Corners P'ship,* 174 B.R. 744, 759 (Bankr.N.D.Ill. 1994) (Katz, J.); *see also Morrow,* 495 B.R. at 386 (explaining that the filing of a bankruptcy case gives debtor's [sic] a 'breathing spell,' which allows a debtor time to attempt a reorganization plan)." *In re Bovino* at 507.

## Conclusion

34. Wesco's Motion should be denied as premature. The Debtors have demonstrated i) that there could be a plan or reorganization confirmed in a reasonable time; ii) Wesco's purported collateral has a value in excess of the amount of Wesco's purported secured claim; iii) The Debtor's cost reduction measures will result in increased cash flow, with the possibility of additional cost reductions in the future; and (iv) Wesco has not established continuing loss to or diminution of the Debtors' estates.

WHEREFORE, BCause Mining LLC and BCause LLC, Debtors/Debtors-in-Possession herein, respectfully requests the entry of an Order:

A) denying the Motion of Wesco Distribution (1) to Dismiss the Debtors' Bankruptcy Cases, or, in the Alternative, (II) for Relief from the Automatic Stay; and

 B) for such other relief as this Court deems appropriate.

               BCause Mining LLC, and BCause LLC
               Debtors/Debtors-in-Possession

               By:/s/ Scott R. Clar
                One of their attorneys

**DEBTORS' COUNSEL:**
Scott R. Clar (Atty. No. 06183741)
Crane, Simon, Clar & Dan
135 S. LaSalle Street, Suite 3705
Chicago, Illinois 60603
312-641-6777
sclar@cranesimon.com
W:\MJO2\BCause Mining LLC\Mem in Resp to MTD.MEM.docx