# EXHIBIT A

# OFFICE LEASE

| | |
|---|---|
| Property Address: | Greenwich Centre<br>192 Ballard Court<br>Virginia Beach, Virginia 23462 |
| Lessor: | Greenwich Centre Investors, L.C. |
| Lessee: | BCause LLC |
| Commencement: | March 1, 2018 |
| Expiration: | April 30, 2021 |

1

# OFFICE LEASE

THIS LEASE (the "Lease") is made as of February 22 2018, by and between Greenwich Centre Investors, L.C., a Virginia limited liability company ("Lessor"), and BCause LLC, a Virginia limited liability company ("Lessee").

1.     **DESCRIPTION OF PREMISES.** Lessor, in consideration of the rents to be paid by Lessee and other covenants of Lessee contained herein, does hereby lease to Lessee the premises described below (the "Premises"):

Suite 303, consisting of 1,959 rentable square feet, located in a building (the "Building") commonly known as Greenwich Centre, 192 Ballard Court, Virginia Beach, Virginia 23462, as outlined on the attached Exhibit A.

2.     **TERM.** The term of this Lease (the "Term") shall be for a period of thirty-eight (38) months, commencing on the 1st day of March, 2018(the "Commencement Date"), and ending at midnight on the 30th day of April, 2021 (the "Expiration Date").

3.     **RENT.** Lessee agrees to pay Lessor, without demand, deduction or offset, annual rent for the Term of this Lease in the amount of Thirty-Five Thousand Two Hundred Sixty Two and No/100 Dollars ($35,262.00) per annum, payable monthly in advance on the Commencement Date and on the first business day of each and every subsequent month in the amount of Two Thousand Nine Hundred Thirty Eight and 50/100 Dollars ($2,938.50). If the Term of this Lease shall commence or expire on a day other than the first day of a calendar month, the rent for any partial month shall be pro-rated. Monthly rent, as well as all other amounts payable by Lessee to Lessor hereunder (all of which will constitute rent and is sometimes collectively referred to herein as "additional rent") shall be deposited by Lessor within ten (10) days after receipt thereof and shall be held by Lessor, or Lessor's agent, in Lessor's operating account. All rent payments shall be paid to Lessor's Managing Agent at its address specified in paragraph 31 below, or such other place as Lessor designates in writing.

4.     **ACCEPTANCE OF PREMISES.** Occupancy of the Premises by Lessee shall constitute its acceptance of same, except for latent defects and deficiencies specified in writing by Lessee to Lessor within ten (10) days after Lessee's occupancy. Lessee acknowledges that Lessor has not made any warranties or representations, oral or written, as to the use or fitness of the Premises for any particular purpose, except for general office use. Lessor shall not be responsible for obtaining any governmental approvals or permits necessary to enable Lessee to occupy or use the Premises (other than the certificate of occupancy and other approvals related to work done by Lessor to construct the Premises), same being the sole responsibility of Lessee. Lessor shall not be responsible for obtaining any certificates of occupancy or other approvals required in connection with construction work done by Lessee or contractors engaged by Lessee. Lessor shall deliver, and Lessee shall accept, the Premises in "as is" condition.

5.     **(a)     DELAY IN COMMENCEMENT.** If Lessor, due to delay in construction or for any other reason whatsoever, cannot deliver possession of the Premises to Lessee on the Commencement Date, this Lease shall not be void or voidable and Lessor shall not be liable to Lessee for any loss or damage resulting therefrom, but shall confirm in writing the actual Commencement Date and Expiration Date of this Lease in a form substantially similar to Exhibit B.

   **(b)     EARLY POSSESSION.** If Lessee occupies the Premises prior to the Commencement Date, the Commencement Date shall be considered the date such occupancy

2

begins and shall not advance the termination date; however, Lessee shall pay rent for such period.

**6.     USE AND COMPLIANCE WITH LAW.** The Premises shall be used only for general office purposes, and for no other purpose without Lessor's prior written consent. Lessee shall not use the Premises for any unlawful purpose or so as to constitute a nuisance. Lessee covenants and agrees to comply with all restrictive covenants and ordinances and regulations of governmental authorities applicable to the Premises; provided, however, that Lessee shall not be required to modify the Premises to comply with any subsequently enacted governmental requirements unless same are applicable because of Lessee's particular use of the Premises (other than general office use).

**7.     SIGNS.** Lessee shall not, without the prior written consent of Lessor and the architectural review committee having jurisdiction over the Building, place any signs or advertising matter or material on the exterior or interior of the Building. If Lessor approves any signage or advertising matter or material, Lessee shall remove same at the termination or expiration of this Lease.

**8.     QUIET ENJOYMENT AND COVENANT OF TITLE.** Lessor covenants that it has full right and power to execute this Lease and to grant the estate demised herein, and the Lessee, upon payment of the rents herein reserved and performing the terms, conditions, and covenants herein contained, shall peacefully and quietly have, hold, and enjoy the Premises during the full Term of this Lease, and any extension hereof, from all persons claiming through Lessor.

**9.     LESSOR'S SERVICES.** (a) Lessor shall furnish the following services to Lessee at Lessor's cost on and during each business day (excluding Saturdays, Sundays and legal holidays):

(i)     Elevator service (if elevators are in the Building).

(ii)     Daily janitorial service and supplies for the Common Areas in the Building and Premises, Monday through Friday after normal business hours of the Building as established or as may be amended by Lessor.

(iii)     Heating and air conditioning during the appropriate seasons at levels similar to those maintained in similar Class "A" office buildings during normal business hours (8:00 a.m. to 6:00 p.m. Monday through Friday and 9:00 a.m. to 1:00 p.m. on Saturdays).

(iv)     Hot and cold water as required for drinking, cleaning and lavatory purposes.

(v)     Electricity supplied through the Building's 110-volt 20 amp circuits for lighting purposes and for operation of small business machines and equipment (e.g., fax machines, personal computers and similar equipment). If Lessee desires dedicated or 220-volt electrical circuits, or wishes to install electrical equipment which will cause usage of electricity within the Premises to be above normal electrical usage for general office space, Lessee shall obtain Lessor's written consent prior to installing such equipment or circuits. Any additional electrical circuits approved shall be installed by Lessor at Lessee's expense. Lessor may consider, among other relevant factors, the effects of the electrical load of the Premises upon the Building's circuits in giving or withholding its consent. Lessor may also require that Lessee pay periodically the additional direct expense of electricity supplied through Lessee's special circuits or excess electricity usage, including the cost of installing any necessary meters.

(b)     Lessor shall not be liable for the interruption of any of the above-mentioned services caused by strikes, lockouts, accidents or other causes beyond the reasonable control of Lessor. Any interruption of service shall never be deemed an eviction or disturbance of Lessee's use and possession of the Premises or any part thereof, or render Lessor liable to Lessee for damages, or relieve Lessee from performance of Lessee's obligation under this Lease, unless the interruption is the result of gross negligence by Lessor. Lessor shall use its best efforts to restore the interrupted service within a reasonable time after interruption if the cause of interruption is subject to Lessor's control.

3

(c)     Lessor shall also provide exterior maintenance of the Building and its appurtenant grounds and facilities (the "Project"), including, but not limited to, parking lot repairs, landscape maintenance, structural repairs and roof repairs, so that the Project is maintained as a first class office building property.

**10.     OPERATING EXPENSES:** Lessee shall pay to Lessor during the term hereof, in addition to the rent, Lessee's Share, as hereinafter defined, of all Operating Expenses, as hereinafter defined, in excess of the Base Year, as hereinafter defined, during each calendar year of the Term commencing with calendar year 2019, in accordance with the following provisions:

(a)     "Lessee's Share" is defined, for purposes of this Lease, as the percentage derived by dividing the rentable square footage of the Premises by the total rentable square footage of the Building.

(b)     "Base Year" is defined, for purposes of this Lease, as the actual Operating Expenses incurred during the calendar year 2018.

(c)     "Operating Expenses" is defined, for purposes of this Lease, as all costs incurred by Lessor, if any, for:

(i)     The operation, repair and maintenance, in neat, clean, good order and condition, of the following:

(aa)     The Common Areas, including, but not limited to, lobbies, stairways (excluding stairways constructed within any tenant's space), loading and unloading areas, trash areas, roadways, sidewalks, walkways, driveways, roof, elevators, landscaped areas, striping, bumpers, irrigation systems, lighting facilities, fences and gates and the Meeting Facility (excluding costs directly related to the use thereof by individual tenants of the Building or any other person);

(bb)     Trash disposal services;

(cc)     Tenant directories;

(dd)     Fire detection systems including sprinkler system maintenance and repair;

(ee)     Security services;

(ff)     Administrative wages and salaries' and a management fee for the manager of the Building;

(gg)     Janitorial service;

(hh)     Any other service to be provided by Lessor that is elsewhere in this Lease stated to be an "Operating Expense;"

(ii)     Any deductible portion of an insured loss concerning any of the items or matters described in this paragraph;

(iii)     The cost of the premiums for all liability, property and loss of rents/business interruption insurance policies maintained by Lessor in connection with the Building;

(iv)     The amount of the real property tax to be paid by Lessor;

(v)     The cost of all utilities for the Building and land, including, but not limited to, the cost of water and sewer services and power for heating, lighting, air conditioning and ventilating and the cost of maintenance and repair of these systems;

(vi)     Any amounts, including, but not limited to, insurance premiums which are paid as assessments to the unit owners' association of the Condominium to the extent that such amount is in payment of costs otherwise described herein as "Operating Expenses."

(d)     The inclusion of the improvements, facilities and services set forth in paragraph 10(c)(i) of the definition of Operating Expenses shall not be deemed to impose an obligation upon Lessor to either have said improvements or facilities or to provide those services unless Lessor has agreed elsewhere in this Lease to provide the same or some of them.

(e)     Lessee's Share of the increase in Operating Expenses shall be payable by Lessee within ten (10) days after a reasonably detailed statement of actual expenses is presented to

4

Lessee by Lessor. At Lessor's option, however, an amount may be estimated by Lessor from time to time of Lessee's Share of the increase in annual Operating Expenses and the same shall be payable monthly during each twelve-month period of the Lease term, on the same day as the rent is due hereunder. In the event that Lessee pays Lessor's estimate of Lessee's Share of Operating Expenses as aforesaid, Lessor shall deliver to Lessee within sixty (60) days after the expiration of each calendar year a reasonably detailed statement showing Lessee's Share of the increase in the actual Operating Expenses incurred during the preceding year. If Lessee's payments under this paragraph during said preceding year exceed Lessee's Share as indicated on said statement, Lessee shall be entitled to credit the amount of such overpayment against Lessee's Share of the increase in Operating Expenses next falling due. If Lessee's payments under this paragraph during said preceding year were less than Lessee's Share as indicated on said statement, Lessee shall pay to Lessor the amount of the deficiency within ten (10) days after delivery by Lessor to Lessee of said statement. Failure by Lessor to timely provide any statement shall not constitute a waiver by Lessor of its rights to payments due pursuant to this Section, and the obligations hereunder shall survive the expiration or other termination of this Lease.

    (f)    If occupancy of the Building during any calendar year during the term of this Lease (including the Base Year) is less than 95%, then the Variable Operating Expenses, as hereinafter defined, for the calendar year shall be "grossed up" to that amount of Operating Expenses that, using reasonable projections, would normally be expected to be incurred during the calendar year if the Building was 95% occupied during the entire calendar year. Variable Operating Expenses, include but are not limited to, management fees, real estate taxes, insurance premiums, utilities, and snow removal. Variable Operating Expenses have a direct proportional relationship to occupancy levels in the Building and will be grossed up based on the average of the occupancy rates during the year in question.

    **11.**    **ALTERATIONS BY LESSEE.**  Lessee shall not make any alterations to the Premises without obtaining Lessor's prior written consent, which consent shall not be unreasonably withheld as to non-structural alterations. Any and all alterations, additions, or other improvements made by Lessee, with or without the consent of Lessor, regardless of how attached (except movable trade fixtures), shall become immediately upon installation and thereafter remain the property of Lessor, without compensation therefor to Lessee, unless otherwise agreed in writing by Lessor; provided, however, Lessor shall have the right to require that Lessee, upon the termination or at the expiration of this Lease, remove any or all such alterations, additions and improvements and restore the Premises to their original condition, normal wear and tear excepted, unless such right has been waived in writing by Lessor. The costs of operating, maintaining, repairing, and replacing any supplemental heating, ventilating, and air conditioning unit (the "Additional HVAC") serving only the Premises shall be borne solely by Lessee. Such installation of the Additional HVAC shall be subject to Lessor's prior written consent and approval. The Additional HVAC shall include installation of a separate meter for the operation of the Additional HVAC, at Lessee's sole expense. Lessor shall have the right to require that Lessee, at Lessee's sole cost expense, upon the termination or at the expiration of this Lease, remove the Additional HVAC and restore the Premises and Building to their original condition.

    **12.**    **USE OF THE PARKING FACILITIES.**  Lessee and its employees and customers shall have the non-exclusive right, in common with Lessor, other tenants of the Building and their respective employees, guests and customers, to park automobiles in the parking area provided by Lessor, subject to such reasonable rules and regulations as Lessor may impose from time to time, including the designation of specific areas in which automobiles of Lessee, its employees, guests and customers must be parked. Lessee shall be entitled to four (4) vehicle parking spaces per one thousand (1,000) square feet of office area leased, unreserved and unassigned, and shall not use more parking spaces than said number.

**13.   SUBLEASING AND ASSIGNMENT.**  Lessee and any approved assignee or approved subtenant may not assign their rights under this Lease or the applicable sublease, or sublet the whole or any part of the Premises, without the prior written consent of Lessor.  Even if Lessor's consent is given, no subletting or assignment shall release Lessee from any obligation pursuant to this Lease or alter the primary liability and obligation of Lessee to pay the rent and to perform all other obligations to be performed by Lessee hereunder.  Acceptance of rent by Lessor from an assignee or subtenant who has not been approved by Lessor shall not waive the default created by failure to obtain Lessor's consent.  As a condition of approving any proposed assignee or subtenant, Lessor may require such financial and other information concerning the proposed assignee or subtenant that Lessor deems appropriate.  Approval of a proposed sublease or assignment in any one instance shall not affect Lessor's right to approve all subsequent assignments and subleases.  Lessor shall be furnished with a duplicate executed original of all subleases and assignments.  If Lessee requests Lessor's consent of an assignment of Lessee's interest in this Lease, Lessor may, at its option, elect to terminate this Lease as of the effective date of the proposed assignment.  If Lessee requests Lessor's consent to a sublease, Lessor may, at its option, elect to terminate this Lease as of the effective date of the proposed sublease as to the portion of the Premises which Lessee desires to sublease, and if such option to terminate is elected by Lessor, rent under this Lease shall be adjusted as of the effective date of the partial termination and Lessee shall pay as additional rent on demand the cost of any demising walls required to separate the space as to which this Lease has been terminated from the remainder of the Premises.

Notwithstanding anything in this Lease to the contrary, Lessee further agrees that any assignment or sublease shall be subject to the following additional limitations:  (i) in no event shall Lessee assign or sublet all or any portion of the Premises to any existing tenant of the Building or its subtenant or assignee unless the Building is one hundred percent (100%) leased, or Lessor consents to such assignment or sublease; (ii) in no event shall the proposed subtenant or assignee be a person or entity with whom Lessor or its agent is negotiating and to or from whom Lessor, or its agent, has given or received any written or oral proposal within the past six (6) months regarding a lease of space in the Building; and (iii) Lessee shall not publicly advertise the rate for which Lessee is willing to sublet the Premises (excluding customary broker proposals or requests for proposals); and all public advertisements of the assignment of the lease or sublet of the Premises, or any portion thereof, shall be subject to prior written approval by Lessor, such approval not to be unreasonably withheld or delayed.  Said public advertisement shall include, but not be limited to, the placement or display of any signs or lettering on the exterior of the Premises or on the glass or any window or door of the Premises or in the interior of the Premises if it is visible from the exterior.

**14.   CARE OF PREMISES.**  Lessee agrees to take good care of the Premises, and shall not suffer or permit any waste or injury thereto.  Lessee shall pay for all repairs to the Project necessary due to the acts of Lessee, its employees, agents, customers or guests, or their use of the Project.  Upon the expiration or termination of this Lease, Lessee shall surrender the Premises in as good condition as Lessee obtained same on the Commencement Date, reasonable wear and tear excepted.

**15.   DAMAGE TO PREMISES.**  If the Premises shall be damaged by fire, the elements, unavoidable accident or other casualty, but are not thereby rendered untenantable in whole or in part, Lessor shall promptly at its expense cause such damage to be repaired, and rent shall not be abated.  If by reason of such occurrence the Premises shall be rendered partially untenantable, Lessor shall promptly at its own expense cause the damage to be repaired, and rent meanwhile shall be abated for the period of untenantability in proportion to the portion of the Premises rendered untenantable.  If by reason of such occurrence all of the Premises are rendered untenantable, Lessor shall promptly at its expense cause the damage to be repaired, and rent shall

6

abate until the Premises are again tenantable, unless within thirty (30) days after said occurrence Lessor shall give Lessee written notice that the estimated time necessary to reconstruct the destroyed Premises is in excess of one hundred eighty (180) days after commencement of reconstruction and Lessee elects to terminate this Lease by written notice to Lessor given within fifteen (15) days after receipt of Lessor's notice. If so terminated, this Lease and the tenancy hereby created shall cease as of the date of casualty and all rent shall be abated as of such date. Lessor shall not be obligated to reconstruct or repair the Building or Premises except to the extent insurance proceeds have been received with respect to the event causing the damage. Lessor shall not be required to repair, replace or insure any property which the Lessee may be entitled to remove from the Premises. No damages, compensation or claims shall be payable by Lessor for inconvenience, loss of business or other consequential damages arising from any casualty, maintenance, repair or restoration of the Premises, Building or Project. All rent paid in advance shall be apportioned in accordance with the foregoing provisions as of the date of damage; however, if the damage results wholly or in part from the fault of Lessee, its agents, contractors, employees or invitees, Lessee shall not be entitled to termination or any abatement or reduction in rent. Notwithstanding the foregoing to the contrary, Lessor shall not be obligated to repair damage or restore the Building or the Premises if Lessor's lender does not make insurance proceeds available for such purpose and Lessor is unable to obtain alternative financing within six (6) months after Lessor's receipt of notice that its lender refuses to make the insurance proceeds available, after having made good faith efforts to obtain such alternative financing.

    **16.**    **LIABILITY.** Lessor and its agents shall not be liable for any injury to persons or loss or damage to property resulting from any cause other than the gross negligence or willful misconduct of Lessor, its agents and employees. Lessee shall indemnify and save Lessor harmless from all suits, actions, damages, liability and expense arising from or out of any occurrence in, upon, at or the occupancy or use by Lessee of the Premises, and occasioned wholly or in part by any act or omission of Lessee, its agents, contractors, employees, invitees, licensees or visitors. To this end, Lessee shall at all times during the term of this Lease or any renewal thereof carry with an approved insurance carrier licensed to operate in the state in which the Premises are located, Comprehensive General Liability Insurance including Blanket Contractual Liability coverage naming Lessor as an additional named insured, with limits of liability of not less than $1,000,000 combined single limit for personal injury and property damage. A duplicate original or agent certified copy of such insurance policy shall be furnished to Lessor upon request. Lessee shall notify Lessor promptly of any accident or loss in the Premises or of any defects therein or in the equipment and fixtures thereof of which Lessee has knowledge.

    **17.**    **INSPECTION OF PREMISES.** Lessor and Lessor's agents shall have, upon 48 hours notice to Lessee, free access during normal business hours to the Premises for the purposes of inspection, maintenance and repair. Lessor shall have the right to show the Premises to prospective tenants during the last one hundred eighty (180) days of the Term of this Lease.

    **18.**    **HAZARDOUS MATERIALS.** (a) Without Lessor's prior written consent, Lessee shall not cause or permit any Hazardous Material to be brought upon, kept or used in or about the Premises by Lessee, its agents, employees, contractors or invitees, except for small quantities of such Hazardous Material incidental to Lessee's business.

    (b)    Any Hazardous Material permitted on the Premises as provided in Section 18(a) and all containers therefor, shall be used, kept, stored and disposed of in a manner that complies with all federal, state and local laws or regulations applicable to this Hazardous Material.

    (c)    Lessee shall not discharge, leak or emit, or permit to be discharged, leaked or emitted, any material into the atmosphere, ground, sewer system or any body of water, if that material (as is reasonably determined by the Lessor or any governmental authority) does or may pollute or contaminate the same or may adversely affect (aa) the health, welfare or safety of

persons, whether located on the Premises or elsewhere, or (bb) the condition, use or enjoyment of the building or any other real or personal property and which would result in a violation of applicable environmental laws.

(d)     At the commencement of each Lease year, Lessee shall disclose to Lessor the names and approximate amounts of all Hazardous Material that Lessee intends to store, use or dispose of on the Premises in the coming Lease year.  In addition, at the commencement of each Lease year (beginning with the second Lease year), Lessee shall disclose to Lessor the names and amounts of all Hazardous Material that to Lessee's knowledge were actually used, stored or disposed of on the Premises, if those materials were not previously identified to Lessor at the commencement of the previous Lease years.

(e)     As used herein, the term "Hazardous Material" means (aa) any "hazardous waste" as defined by the Resource Conservation and Recovery Act of 1976, as amended from time to time, and regulations promulgated thereunder; (bb) any "hazardous substance" as defined by the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended from time to time, and regulations promulgated thereunder; (cc) any oil, petroleum products and their by-products, other than those used in automotive or recreational activity, boats or motorcycles which are stored on the Premises in accordance with all applicable laws and minor leakage and spills which are, upon written request of Lessor, promptly cleaned up; and (dd) any substance that is or becomes regulated by any federal, state, or local governmental authority.

(f)     Lessee hereby agrees that it shall be fully liable for all costs and expenses related to the use, storage and disposal of Hazardous Material kept on the Premises by the Lessee, and the Lessee shall give immediate notice to the Lessor of any violation or potential violation of the provisions of Section 18(b).  Lessee shall defend, indemnify and hold harmless Lessor and its agents from and against any claims, demands, penalties, fines, liabilities, settlements, damages, costs or expenses (including without limitation, attorneys' and consultants' fees, court costs and litigation expenses) of whatever kind or nature, known or unknown, contingent or otherwise, arising out of or in any way related to (aa) the presence, disposal, release or threatened release of any such Hazardous Material that is on, from or affecting the soil, water, vegetation, buildings, personal property, persons, animals or otherwise; (bb) any violation of any laws applicable thereto.  The provisions of this Section 18(f) shall be in addition to any other obligations and liabilities Lessee may have to Lessor at law or in equity and shall survive the transactions contemplated herein and shall survive the termination of this Lease.

19.     **INDEMNIFICATION.** Each party hereto agrees to indemnify and hold the other party and its agents and employees harmless from any and all claims, damages, liabilities or expenses arising out of (aa) Lessee's use of the Premises or the Building, (bb) any and all claims arising from any breach or default in the performance of any obligation of the other party and/or (cc) gross negligence or willful misconduct of the other party, its agents or employees.  Lessee agrees to procure and keep in force during the Term hereof a contractual liability endorsement to its public liability policy, specifically endorsed to cover the indemnity provision of this section.  Lessee further releases Lessor and Lessor's agents and employees from liability for any damages sustained by Lessee or any other person claiming by, through or under Lessee due to the Premises, the Building, or any part thereof or any appurtenances thereto becoming out of repair, or due to the happening of any accident including, but not limited to, any damage caused by water, snow, windstorm, tornado, gas, steam, electrical wiring, sprinkler system plumbing, heating and air conditioning apparatus and from any acts or omissions of co-tenants or other occupants of the Building.  Lessor and Lessor's agents and employees shall not be liable for any damage to or loss of Lessee's personal property, inventory, fixtures or improvements, from any cause whatsoever except the affirmative acts of proven gross negligence of Lessor, and then only to the extent not covered by insurance required to be obtained by Lessee in accordance with Section 16 hereof.

20. **RULES AND REGULATIONS.** Lessee shall during the Term of this Lease, at its sole cost and expense, comply with all valid laws, ordinances, regulations, orders and requirements of any governmental authority which may be applicable to the Premises or to the use, manner of use or occupancy thereof, whether or not the same shall interfere with the use or occupancy of the Premises. Lessee shall give prompt notice to Lessor of any notice it receives of the violation of any law or requirement of any public authority with respect to the Premises or use or occupation thereof. The rules and regulations attached to this Lease as Exhibit C shall be and are hereby made a part of this Lease. Lessee, its employees, customers and guests shall perform and abide by such rules and regulations, and any amendments or additions to such rules and regulations as may be made from time to time by Lessor.

21. **CONDEMNATION.** If all or a part of the Premises sufficient to render same unusable for Lessee's purposes (in Lessor's reasonable judgment) or all means of access to the Premises shall be condemned for a period in excess of one hundred eighty (180) days or sold under threat of condemnation, this Lease shall terminate and Lessee shall have no claim against Lessor or to any portion of the award in condemnation for the value of any unexpired Term of this Lease. Lessee may seek to recover independently compensation from the condemning authority for moving expenses, the value of any of Lessee's property taken (other than Lessee's leasehold interest in the Premises) or other compensable loss or damage. In the event of a temporary taking of one hundred eighty (180) days or less, this Lease shall not terminate, but the Term hereof shall be extended by the period of the taking and the rent shall abate in proportion to the area taken for the period of such taking.

22. **DEFAULT AND REMEDIES.** (a) If Lessee does not pay any rent or other sum payable by Lessee pursuant to this Lease and such default continues for a period of ten (10) days after written notice is given to Lessee (provided, however, that no written notice shall be required if Lessor has previously given written notice of failure to pay rent during the then current calendar year), or if Lessee shall fail to perform any other covenant, agreement, or obligation of Lessee pursuant to this Lease and such default continues for thirty (30) days after written notice thereof is given to Lessee, or if Lessee should become bankrupt or insolvent or any debtor proceedings are taken by or against Lessee, or if Lessee vacates or attempts to vacate the Premises, then Lessor shall have the following rights and remedies:

(i)    Lessor may terminate this Lease by written notice to Lessee, in which event this Lease, all rights of Lessee, and all duties of Lessor shall immediately cease and terminate, and Lessor may re-enter and take possession of the Premises, remove all persons and property from the Premises and store such property in a public warehouse or elsewhere at the cost of, and for the account of, Lessee and enjoy the Premises free of Lessee's estate pursuant to this Lease, without prejudice, however, to any and all rights of action against Lessee that Lessor may have for rent, damages, or breach of this Lease, in respect of which Lessee shall remain and continue liable notwithstanding such termination;

(ii)    Lessor shall have the right to re-enter the Premises and remove all persons and property from the Premises and store such property in a public warehouse or elsewhere at the cost of, and for the account of Lessee, without terminating this Lease. Lessor shall have the right to take such action without service of notice except as may be expressly required herein or by applicable law and without resort to legal process (unless required by law) and without being deemed guilty of trespass or becoming liable for any loss or damage which may be occasioned thereby. If Lessor elects to re-enter the Premises as aforesaid, Lessor may, at any time thereafter, elect to terminate this Lease by giving written notice to Lessee of such election. Whether or not Lessor elects to re-enter the Premises or takes possession of the Premises pursuant to legal proceedings or pursuant to any notice required by law, Lessor may, at its option, re-let the Premises or any portion thereof for the benefit of Lessee for such Term or Terms (whether shorter or longer

9

than the Term of this Lease) and at such rental and upon such other Terms and conditions as Lessor, in its sole discretion, deems advisable, and, at the expense of Lessee, Lessor shall have the right to make such repairs or alterations to the Premises as Lessor deems necessary in order to re-let same. Provided this Lease has not been terminated by Lessor, upon each such re-letting all rentals actually received by Lessor from such re-letting applicable to the unexpired Term of this Lease shall be applied as follows: First, to the payment of any costs and expenses of such re-letting, including costs incurred by Lessor for brokerage fees, legal fees and alterations and repairs to the Premises; Second, to the payment of any indebtedness other than rent due hereunder from Lessee; Third, to payment of any unpaid portion of rent then due. On the scheduled expiration date of this Lease, Lessor shall pay the residue, if any, to Lessee. No such re-entry or taking of possession of the Premises by Lessor shall be construed or shall operate as an election by Lessor to terminate this Lease unless written notice of termination is given by Lessor to Lessee, or this Lease is terminated by an order or decree of a court of competent jurisdiction.

(iii)    All rent (annual rent and all payment of additional rent reasonably ascertainable) for the remainder of the then current Term shall become due and payable, at the option of Lessor; or,

(iv)    Lessor may lock up the Premises and preclude Lessee's access thereto. Lessee grants to Lessor a security interest in all of Lessee's property located in the Premises, and agrees to execute and deliver such financing statements and other instruments as may be necessary to perfect such security interest;

(b)    In addition to all remedies specified in this Lease, Lessor shall have all remedies available pursuant to applicable law.

(c)    No re-entry, taking possession of, or repair of the Premises by Lessor, termination of this Lease or any other action taken by Lessor as a result of any default of Lessee shall relieve Lessee of any of its liabilities or obligations hereunder which arose prior to or by reason of such termination, whether or not the Premises are re-let.

(d)    All remedies of Lessor shall be cumulative. Election by Lessor to exercise any remedy shall not prevent or be deemed a waiver of Lessor's right to thereafter exercise any other remedy.

(e)    Lessee agrees to pay upon demand all costs, fees and expenses (including, without limitation, court costs and reasonable attorney's fees) incurred by Lessor in enforcing this Lease.

23.    **HOLDING OVER.** If Lessee remains in possession of the Premises after the expiration or termination of the Term of this Lease without Lessor's written consent, such possession shall, at Lessor's option, (a) be a tenancy at sufferance only, during which tenancy at sufferance annual rent shall be due and payable at 150% of the annual rent due for the last Term, or (b) result in an extension of this Lease on a month-to-month basis, upon the terms and conditions applicable to the last year of the preceding Term, except annual rent, which shall be at 150% of the rent due during the last month of the Term. All other provisions of this Lease shall remain in force during the period of any such tenancy at sufferance or month-to-month renewal. Acceptance of rent by Lessor during any holdover tenancy at sufferance shall not waive the default created by Lessee's holdover or Lessor's option to select the tenancy created by the holdover.

24.    **SURRENDER OF PREMISES.** Lessee shall surrender the Premises at the expiration or sooner termination of the Lease Term, broom-cleaned, with all rubbish removed, free of subtenancies, and in good condition and repair, reasonable wear and tear excepted. Lessee shall deliver all keys to Lessor or Lessor's agent.

25.    **INFORMATION CONCERNING LESSEE.** Lessee shall furnish within fifteen (15) days after request from Lessor such current information concerning the financial condition of Lessee as Lessor may reasonably require. Such financial information shall include (but is not necessarily limited to) a financial statement dated not more than twelve (12) months prior to

Lessor's request.   Such financial statement shall be prepared in accordance with generally accepted accounting principles and certified by a certified public accountant. A general partner or officer of Lessee shall furnish a certification to Lessor to the effect that there either has or has not been any material adverse change in the financial condition of Lessee since the date of the financial statement submitted, and if such certification states that there has been a material adverse change, furnishing such details concerning same as Lessor may request.

26.    **AUTHORITY OF LESSEE.** Lessee shall furnish to Lessor within fifteen (15) days after request from Lessor such corporate resolutions, certificates of incumbency, partnership resolutions, partnership agreements, legal opinions or other information as Lessor may reasonably request in order to confirm that the execution and delivery of this Lease has been duly authorized by Lessee and that the person(s) executing this Lease on behalf of Lessee were duly authorized to do so. All such corporate or partnership resolutions, certificates or agreements shall be certified as being duly adopted and/or in full force and effect, without amendment, by an appropriate officer or partner of Lessee.

27.    **SECURITY DEPOSIT.** Lessee shall deposit with Lessor upon Lessee's execution of the Lease and thereafter maintain with Lessor the sum of $2,938.50 which shall be held by Lessor, without interest to Lessee, as security for the full and faithful performance by Lessee of Lessee's obligations pursuant to this Lease. If Lessee fails to pay any amount which Lessee is obligated to pay pursuant to this Lease, Lessor may, at its option (but Lessor shall be not obligated to), apply any portion of such security fund to the amount owed by Lessee. Any such application by Lessor shall not waive the default created by Lessee's failure to pay. If any portion of the security deposit is so applied by Lessor, Lessee shall, within ten (10) days after demand from Lessor, restore the security deposit held by Lessor to its original amount. The security deposit, less amounts properly charged against same, shall be refunded to Lessee within thirty (30) days after Lessee has paid all amounts owed and performed all of its obligations pursuant to this Lease.

28.    **SUBORDINATION.** This Lease is subject and subordinate to all security liens, mortgages, deeds of trust and related financing instruments which may now or hereafter affect the Premises or the Project, and to all renewals, modifications, consolidations, replacement, amendments and extensions thereof, unless Lessor or any lender secured by a mortgage, deed of trust or similar security instrument elects to make this Lease superior to same, which it may do at its option. Lessee shall execute within ten (10) days after request any certificate, subordination agreement, priority agreement or other form of instrument in confirmation of such subordinate or superior status that Lessor may request. Lessee hereby irrevocably appoints Lessor its attorney in fact to execute and deliver any such instrument on behalf of Lessee, if Lessee fails or refuses to execute or deliver same as required hereby. Lessee shall also execute within ten (10) days after request an agreement with any lender pursuant to which Lessee agrees to give such lender notice of any default by Lessor pursuant to this Lease, agrees to accept performance by such lender of appropriate curative action, and agrees to give such lender a minimum period of sixty (60) days after Lessee's notice to such lender for the lender to cure Lessor's default prior to Lessee terminating this Lease due to Lessor's default. Lessee hereby irrevocably appoints Lessor its attorney in fact to execute and deliver any such instruments on behalf of Lessee, if Lessee fails or refuses to execute or deliver same as required hereby.

29.    **ESTOPPEL STATEMENT.** Within ten (10) days after request therefor by Lessor, Lessee agrees to deliver in recordable form a certificate prepared by Lessor, substantially in the form attached hereto as Exhibit D, to any proposed mortgagee or purchaser of the Premises or to Lessor certifying (if such is the case) that this Lease is in full force and effect, that there are no defense or offsets thereto, or stating those claimed by Lessee, and such other facts related to this Lease, the Premises or Lessee as Lessor may request. If Lessee does not execute and return such certificate as required above, Lessee hereby irrevocably appoints Lessor as its attorney in fact to

11

execute such certificate on behalf of Lessee.

**30.    NOTICES.** Any notices required pursuant to this Lease shall be in writing. Addresses to which notices shall be sent are as follows:

| | |
|---|---|
| **TO LESSEE:** | BCause LLC<br>192 Ballard Court, Suite 303<br>Virginia Beach, VA 23462<br>Attn: Michael Adolphi |
| **TO LESSOR:** | Greenwich Centre Investors, L.C.<br>c/o Robinson Development Group, Inc.<br>150 West Main Street, Suite 1100<br>Norfolk, VA 23510 |
| **TO MANAGING AGENT:** | CB Richard Ellis of Virginia, Inc.<br>150 West Main Street, Suite 1100<br>Norfolk, VA 23510 |

Either party may at any time designate by written notice to the other a change of address for notices. All notices, demands and requests which are addressed as provided above and are (i) deposited in the United States mail, registered or certified, postage prepaid, return receipt requested, or (ii) accepted for overnight delivery by a reputable overnight delivery provider, delivery charges prepaid or with delivery not conditioned upon payment of charges, shall be deemed to have been given for all purposes hereunder at the time such notice, demand or request shall be deposited in the United States mail or accepted for delivery by the applicable overnight delivery service.

**31.    PAST DUE RENTS.** Lessee recognizes and acknowledges that if rent payments are not received when due, Lessor will suffer damages and additional expense thereby and Lessee therefore agrees that a late charge equal to ten percent (10%) of the late rent may be assessed by Lessor as additional rental if Lessor has not received any monthly installment of annual rent or other rent or additional rent due pursuant to this Lease within five (5) days after its due date. If any check given in payment of rent is not honored when due, Lessor may require that subsequent rent payments be made by certified or cashier's check. All rent and other sums of whatever nature owed by Lessee to Lessor under this Lease that remain unpaid for more than five (5) days after its due date shall bear interest at the rate of eighteen percent (18%) per annum (or, if lower, the highest lawful rate) from the date due until paid.

**32.    BUILDING NAME.** Lessor reserves the right to change at any time the name, address or designation of the Building without any liability to Lessee.

**33.    RIGHT TO RELOCATE.** If the Premises are less than 2,000 square feet in area, Lessor reserves the right, at its option and upon giving thirty (30) days notice in advance to Lessee, to transfer and remove Lessee from the Premises to any other available offices in the Building of equal size and area. Lessor shall bear the expense of moving Lessee's furniture, fixtures, and other comparable property as well as the expense of any renovations or alterations necessary to make the new space similar in arrangement and layout to the original Premises.

**34.    RENT TAXES.** If applicable now or in the future, in the jurisdiction where the Premises are located, Lessee shall pay as additional rent to Lessor, concurrently with rent upon which such tax is based or within ten (10) days after written request therefor, as directed by Lessor, any state or local sales tax, gross receipts tax, business license tax or other tax, however denominated, imposed directly upon this Lease, the rent paid pursuant to this Lease or the

operation of the Premises as rental property. Lessee shall not be obligated to pay any federal, state or local income tax imposed on Lessor.

35. **AREA OF THE PREMISES.** The usable area of the Premises shall be measured using the American National Standard Method of Measuring Floor Area in Office Buildings, ANSI S65.1-1980, published by the Building Owners and Managers Association International. The rentable area of the Premises shall be the usable area of the Premises plus 12% of such usable area, representing Lessee's portion of the common areas of the Building.

36. **TAXES ATTRIBUTABLE TO LESSEE'S IMPROVEMENTS.** If an increase in real estate taxes assessed on the Building is caused by Lessee's improvements or fixtures in the Premises, Lessee shall pay as additional rent and within ten (10) days after demand therefor from Lessor all of such real estate taxes attributable to such improvements or fixtures.

37. **OVERTIME HVAC.** If heating and air conditioning is required after normal business hours, Lessee agrees to reimburse Lessor at a rate of $40.00 per hour for the overtime usage. Lessee shall reimburse Lessor within thirty (30) days after request. In the event of a rate increase through the utility company, such rate per hour shall be subject to increase. Lessor shall provide thirty (30) days notice of such increase.

38. **DEFINITION OF LEASE YEAR.** The first Lease year is the period beginning on the Commencement Date and ending one (1) year after the last day of the month preceding the month in which the Commencement Date occurs. The second Lease year shall begin on the day after the end of the first Lease year, and shall end one (1) year after the end of the first Lease year. The third and subsequent Lease years shall begin and end on the appropriate anniversary dates of the beginning and ending dates of the second Lease year.

39. **SUCCESSOR AND ASSIGNS.** This Lease shall bind and inure to the benefits of the successors, assigns, heirs, executors, administrators and legal representatives of the parties hereto. This provision shall not give Lessee by implication any right to assign its rights or interest pursuant to this Lease. The provisions of paragraph 13 above govern Lessee's right to assign and sublet.

40. **RELATIONSHIP OF LESSOR AND LESSEE.** It is expressly understood and agreed that Lessor shall not be construed as or held to be a partner, joint venturer or associate of Lessee, it being expressly understood and agreed that the relationship between the parties hereto is and shall at all times remain that of landlord and tenant.

41. **LIMITATION OF LESSOR'S OBLIGATION.** The obligations of Lessor hereunder shall be binding only upon its interest in the Building, and not upon any other assets of Lessor or any partner of Lessor personally. Lessee agrees to look solely to the equity of Lessor in the Building for the satisfaction of any remedies of Lessee or judgment obtained by Lessee as a result of a breach by Lessor of this Lease. Such exculpation of liability shall be absolute and without any exception whatsoever.

42. **PERFORMANCE BY LESSOR AND LESSEE.** If Lessee fails to perform any of its obligations hereunder, Lessor may, at its option (but shall be under no obligation to do so), perform the obligation of Lessee which Lessee has failed to perform. Any amounts advanced in so performing obligations of Lessee shall bear interest at the rate of eighteen percent (18%) per annum (or, if lower, the highest lawful rate) from the date expended until repaid, shall be due and payable on demand, and failure to pay on demand shall constitute an independent event of default hereunder. Payment or performance by Lessor of the obligations of Lessee shall not waive or cure any breach occasioned by Lessee's failure or refusal to pay or perform same.

43. **WAIVER.** Delay in asserting or prosecuting any right, claim or cause of action accruing hereunder is not and shall not be deemed to be a waiver of, and shall not prejudice the same, or any other right, claim or cause of action accruing hereunder at any time. Waiver of any right, claim or cause of action at any time shall not prejudice any other right, claim or cause of

13

action which Lessor may have or which shall thereafter accrue, and shall not waive Lessor's right to assert any other right, claim or course of action. Acceptance by Lessor of rent from Lessee during the existence of any default shall not constitute a waiver of such default, or a waiver of the right of Lessor to insist upon Lessee's strict compliance with the terms of this Lease.

**44.    PARAGRAPH HEADINGS.** The paragraph headings of this Lease are used for convenience only, and are in no way to be construed as a part of this Lease or as a limitation on the scope of the particular provision to which they refer.

**45.    INVALIDITY.** If any provision of this Lease shall be held to be invalid, whether generally or as to specific facts or circumstances, the same shall not affect in any respect whatsoever the validity of the remainder of this Lease, which shall continue in full force and effect. Any provision held invalid as to any particular facts and circumstances shall remain in full force and effect as to all other facts and circumstances.

**46.    GOVERNING LAW.** This Lease and the rights of the parties hereunder shall be interpreted in accordance with the laws of the state of Virginia.

**47.    BROKER'S FEE.** Upon execution of this Lease by both parties, Lessor shall pay to CB Richard Ellis of Virginia, Inc. ("Agent") and Divaris Real Estate, Inc., licensed real estate broker(s), a fee as set forth in a separate agreement between Lessor and said broker(s).

**48.    AGENCY AND OWNERSHIP DISCLOSURE.**

(a)    Lessor and Lessee each acknowledge that, in connection with this Lease:

<u>**Initial One**</u>

___X___        the Agent is representing the Lessor exclusively

<u>or</u>

_____        the Agent is representing the Lessor and Lessee, and Lessor and Lessee expressly consent to the Agent acting as a dual representative by their execution of this Lease and their review and execution of the attached Disclosure of Dual Representation).

(b)    <u>Initial one or both, if applicable:</u>

___X___        One or more principals of Lessor are licensed Virginia real estate brokers or salespersons.

<u>and/or</u>

___X___        Agent and/or one or more brokers or salespersons of Agent has an ownership interest in Lessor.

**49.    REMOVAL OF ELECTRICAL AND TELECOMMUNICATIONS WIRES.** (a) Lessor May Elect to Either Remove or Keep Wires: Within ten (10) days after the expiration or sooner termination of the Lease or at any time that any of the Wires (as defined below) are no longer in active use by Lessee, Lessor may elect ("Election Right") by written notice to Lessee to:

(i)    Retain any or all wires, cables, and similar installations appurtenant thereto ("Wires") installed by Lessee within the Premises or anywhere in the Building outside the Premises, including, without limitation, the plenums or risers of the Building;

(ii)    Remove any or all of the Wires and restore the Premises or the Building, as the case may be, to their condition existing prior to the installation of the Wires ("Wire Restoration Work"). Lessor, at its option, may perform such Wire Restoration Work at Lessee's sole cost and

14

expense; or

(iii)    Require Lessee to perform all or part of the Wire Restoration Work at Lessee's sole cost and expense.

(b)    Compliance with Laws and Discontinuance of Wire Use: Lessee shall comply with all applicable laws with respect to the Wires, subject to Lessor's right to elect to retain the Wires. In the event that Lessee discontinues the use of all or any part of the Wires or is no longer using all or any part of the Wires, Lessee shall within ten (10) days thereafter notify Lessor of same in writing, accompanied by a plan or other reasonable description of the current type, quantity, points of commencement and termination, and routes of the Wires to allow Lessor to determine if Lessor desires to retain same.

(c)    Condition of Wires:  In the event Lessor elects to retain any or all of the Wires (pursuant to paragraph a(i) hereof), Lessee covenants that:

(i)    Lessee shall be the sole owner of such Wires, Lessee shall have the sole right to surrender the Wires, and the Wires shall be free of all liens and encumbrances; and

(ii)    All Wires shall be left in good condition, working order, properly labeled and capped or sealed at each end and in each telecommunications/electrical closet and junction box, and in safe condition.

(d)    Lessor Retains Security Deposit: Notwithstanding anything to the contrary in Section 27 of the Lease, Lessor may retain Lessee's Security Deposit after the expiration or sooner termination of the Lease until one of the following events has occurred with respect to all of the Wires:

(i)    Lessor elects to retain the Wires pursuant to paragraph a(i);

(ii)    Lessor elects to perform the Wire Restoration Work pursuant to paragraph a(ii) and the Wire Restoration Work is complete and Lessee has fully reimbursed Lessor for all costs related thereto; or

(iii)    Lessor elects to require Lessee to perform the Wire Restoration Work pursuant to paragraph a(iii) and the Wire Restoration Work is complete and Lessee has paid for all costs related thereto;

(e)    Lessor Can Apply Security Deposit: In the event that Lessee fails or refuses to pay all costs of the Wire Restoration Work within ten (10) days of Lessee's receipt of Lessor's notice requesting Lessee's reimbursement for or payment of such costs or otherwise fails to comply with the provisions of this Clause, Lessor may apply all or any portion of Lessee's Security Deposit toward the payment of any costs or expenses relative to the Wire Restoration Work or Lessee's obligations under this Clause.

(f)    No Limit on Right to Sue: The retention or application of such Security Deposit by Lessor pursuant to this Clause does not constitute a limitation on or waiver of Lessor's right to seek further remedy under law or equity.

(g)    Survival:  The provisions of this Clause shall survive the expiration or sooner termination of the Lease.

50.    **ENTIRE AGREEMENT.** This Lease together with the attached Exhibits and Riders referred to herein and specified below, contains the entire agreement of the parties related to this transaction, supersedes all prior negotiations and agreements and represents their final and complete understanding. This Lease may not be modified orally, through course of performance or in any manner other than by agreement in writing, signed by the parties hereto.

51.    **EXHIBITS AND ADDITIONAL PROVISIONS.** The Exhibits designated as A, B, C & D, and Rider(s) designated as No. 1 which are attached hereto and are a part of this Lease, and are incorporated herein as if set forth in full.

15

52.   **COUNTERPART.**  This Lease may be executed in multiple original counterparts, each of which shall be deemed an original, and together they shall constitute one and the same agreement.   Signature on this agreement may be effected by facsimile (with confirmation by transmitting machine) and/or transmitted by portable document format ("pdf") file which shall be treated as an original signature, and any such signature, facsimile, pdf file or copy of this signed agreement shall be construed and treated as the original and shall be binding as if it were the original.

[SIGNATURES ON FOLLOWING PAGE]

[SIGNATURE PAGE TO OFFICE LEASE]

**IN WITNESS WHEREOF**, this Lease has been duly executed by the parties hereto as of the date and year first above written.

LESSOR:

GREENWICH CENTRE INVESTORS, L.C.,
a Virginia limited liability company

By:     Robinson Development Group, Inc.
Its:     Manager

By:     _____
         Thomas E. Robinson
Its:     President

Date:   2/27/18

LESSEE:

BCAUSE LLC,
a Virginia limited liability company

By:     _____
Name:   Michael D. Adolphi
Its:     Chief Operating Officer / Member
Date:   2/22/18

17

# RIDER NO. 1

## DATED _____, 2018

## BY AND BETWEEN

## GREENWICH CENTRE INVESTORS, L.C. ("LESSOR")

## AND

## BCAUSE LLC ("LESSEE")

The following paragraphs are made a part of this Lease, and in the event of any inconsistency between the following paragraphs and any other terms of this Lease, the following paragraphs shall control:

1.  <u>Rent Abatement</u>:  Provided this Lease is in full force and effect and no default by Lessee has occurred hereunder, the rent shall be abated for the first two (2) months of the Lease term (the "Rent Abatement") and therefore the rent shall commence on the third (3rd) month of the Lease term (the "Rent Commencement Date").  All other provisions of the Lease shall be in effect during the Rent Abatement months.  The entire rent otherwise due and payable for the Rent Abatement months shall become immediately due and payable upon the occurrence of a default under the Lease.

2.  <u>Escalation</u>:  The rent, as described in the Lease, shall increase three percent (3%) per annum on the anniversary of the Rent Commencement Date if such date is the first day of the month as outlined below.  If the Rent Commencement Date shall commence on a day other than the first day of a calendar month, the increase shall occur on the first day of the month immediately following the month of the Rent Commencement Date.

| Term | Rate PSF | Annual Rent | Monthly Rent |
|---|---|---|---|
| 03/01/18 – 04/30/18 | $0.00 | $0.00 | $0.00 |
| 05/01/18 - 04/30/19 | $18.00 | $35,262.00 | $2,938.50 |
| 05/01/19 - 04/30/20 | $18.54 | $36,319.92 | $3,026.66 |
| 05/01/20 - 04/30/21 | $19.10 | $37,416.96 | $3,118.08 |

3.  <u>Termination Option</u>:  Lessee shall have a one-time option to terminate this Lease effective at the end of the twenty-sixth(26th) full calendar month of the Lease term provided that (i) the Lease is in full force and effect and no default by Lessee has occurred hereunder, (ii) Lessee has provided Lessor with three (3) months prior written notice (the "Termination Notice"), and (iii) a check in the amount of one (1) month's rent equal to Three Thousand One Hundred Eighteen and 08/100 Dollars ($3,118.08) (the "Termination Penalty") accompanies the Termination Notice.  Failure to pay the Termination Penalty to Lessor at the time the Termination Notice is delivered to Lessor shall make such Termination Notice

18

null and void and of no force and effect whatsoever, and this Lease shall continue in full force and effect as if such Termination Notice had not been given. In the event that Lessee exercises its option as aforesaid, then, in such event, such termination shall be treated as if the term of this Lease had expired and all provisions contained in this Lease pertaining to the rights and obligations of Lessee and Lessor as to and as of the expiration of the term of this Lease shall apply in a like-manner to such early termination. In the event Lessee does not notify Lessor of its intent to terminate three (3) months prior to the end of the twenty-sixth(26th) full calendar month of the Lease term, this Lease shall continue, in full force and effect, throughout the entire Lease term. Lessee's rights described in this option are personal to the original Lessee executing the Lease and may not be exercised or be assigned, voluntarily or involuntarily, by or to any person or entity other than the original Lessee.

## EXHIBIT A
## OUTLINE OF PREMISES



## EXHIBIT B
## SAMPLE FORM OF NOTICE OF LEASE TERM DATES

To: _____        Date: _____

RE:   Office Lease dated _____, 20____, between _____, Lessor, and _____, Lessee, concerning Suite _____, (the "Premises") located at _____.

Dear _____:

In accordance with the above referenced Lease, we wish to advise and/or confirm as follows:

1.    That the Premises have been accepted by Lessee as being substantially complete in accordance with the Lease, and that there is no deficiency in construction.

2.    That Lessee has accepted and is in possession of the Premises, and acknowledges that under the provisions of the Lease, the Term of the Lease is for _____ (__) years, with _____ (__) options to renew for _____ (__) years each, and commenced upon the Commencement Date of _____, 20____ and is currently scheduled to expire on _____, 20____ unless sooner terminated pursuant to any provision of the Lease.

3.    That in accordance with the Lease, rental payment has commenced (or shall commence) on _____, 20____.

4.    If the Commencement Date of the Lease is other than the first day of the month, the first billing will contain a pro rata adjustment. Each billing thereafter, with the exception of the final billing, shall be for the full amount of the monthly installment as provided for in the Lease.

5.    Rent is due and payable in advance on the first day of each and every month during the Term of the Lease. Your rent checks should be made payable to _____ at _____.

6.    The exact number of rentable square feet within the Premises is _____ square feet.

**AGREED AND ACCEPTED:**

LESSEE:
By:              _____
Print Name:  _____
Its:              _____

# EXHIBIT C
# RULES AND REGULATIONS

1. The entrances, lobby and other Common Areas shall be under the exclusive control of Lessor and shall not be obstructed or used by Lessee for any purpose other than their intended purposes.

2. Lessee shall not bring into the Premises or operate therein any engine, boiler, dynamo or machinery of any kind, or carry on any mechanical operations in the Premises, or place any explosive therein, or use any kerosene, oils or burning fluids therein, without first obtaining the written consent of Lessor.

3. If Lessee desires a safe for depositing valuables or securities, Lessor shall have the right to prescribe its weight, size and proper position. Nothing whatsoever shall be brought into the Building by Lessee, its agents, employees, or visitors which has a weight of more than 70 pounds per square foot, unless Lessor approves same and its proper position.

4. No nails are to be driven, the Premises are not to be defaced in any way, no boring or cutting for wires or other purposes is to be done, and no change in electric fixtures or other appurtenances of the Premises is to be made, without prior written consent of Lessor.

5. If Lessee desires telephonic or telegraphic connections, Lessor will direct the electricians as to where and how the wires are to be introduced, and without such written directions no boring for wires will be permitted.

6. The Premises shall not be used for the purpose of lodging or sleeping rooms, nor in any way to damage the reputation of the Building; and Lessee shall not disturb or permit the disturbance of other tenants of the Building by the use of musical instruments or other noises, nor by any interface whatsoever. Nothing shall be placed or permitted upon the outside window sills.

7. Lessee or its invitees shall not cause or participate in violent incidents in or on the Premises. All violent incident is defined as a violent or potentially violent situation which necessitates the police being called to resolve.

8. No person or persons, other than employees of the Building shall be employed by Lessee for the purpose of cleaning or taking care of the Premises without the written consent of Lessor. Any person or persons so employed by Lessee (with the written consent of Lessor) shall be subject to, and under the control and direction of Lessor in the use of the Building and its facilities.

9. Lessor shall have the right to exclude or eject from the Building animals of every kind, bicycles, and all canvassers and other persons who conduct themselves in such a manner as to be, in the judgment of Lessor, an annoyance to the tenants or a detriment to the Building.

10. Two keys to the front door of the Premises and two keys to a designated Building entrance will be provided at no cost. A reasonable number of additional keys will be provided upon payment of fees therefor. No locks shall be placed upon any doors of the Premises without first obtaining the written consent of Lessor and furnishing Lessor with keys to same. Lessee will not permit any duplicate keys to be made (all necessary keys to be furnished by Lessor). Upon termination of this lease, Lessee shall surrender to Lessor all keys to an entry door of the Building. Lessee shall pay all costs incurred by Lessor as a result of such loss, including but not limited to, the cost of re-keying the Building entry door(s) and providing new keys to existing tenants of the Building.

11. All persons entering or leaving the Building may be required to identify themselves to watchman by registration or otherwise, and to establish their right to enter or leave the Building. (If Lessee uses the Premises during business days after 7:00 p.m. or prior to 8:00 a.m., or on Saturdays, Sundays or holidays, it shall be responsible for locking the building after entry or exit.)

12. The toilet rooms, water-closets and other water apparatus shall not be used for any purpose other than those for which they are intended, and no sweepings, rubbish, rags or other injurious substances shall be placed therein. The cost of repair of any damage resulting from misuse or abuse by Lessee, its employees or guests shall be borne by Lessee.

13. Lessee may use the Building on nights, weekends, or holidays, without Lessor's consent; provided, however, that if Lessee desires to operate the heating or air conditioning for the Premises on nights, weekends or holidays, Lessee shall pay Lessor for such after hours usage at the rates and upon the terms set forth in the Lease.

14. Lessor reserves all vending rights.

15. Lessor will post on the directory of the Building one name, to be designated by Lessee at no charge. All additional names which Lessee shall desire posted upon said directory must be approved by Lessor, and if so approved a charge may be made for such additional listings.

16. If there are any glass entry doors to the Premises, Lessee must obtain Lessor's prior written approval, which Lessor may give or withhold in its sole discretion, of all furniture, interior finishes and other objects visible through such glass door(s).


Facility Relocation Guide:

Telephone service
Please contact your property manager at least 24 hours in advance for access for your phone installation.

Signs
A suite sign and directory sign will be provided. Your property manager will contact you to verify how you would like your company's name to appear.

Moving Information
In order to ensure a smooth and efficient move-in the following guidelines should be used. The

23

move-in/out must take place outside of normal business hours, i.e., before 8:00 am, after 5:00 pm or during weekends.

- Every possible effort should be made not to disturb the existing Building occupants.
- If there are no special freight or dock facilities in this Building we ask that you take special care not to damage interior finishes.
- Cover traffic flow areas with protective floor covering. Masonite works well.
- Use only the elevator with freight pads. The Building maintenance person will provide you with keys to manually control the elevator, if possible.
- Place padding on all corners along the ingress and egress area.
- The rear entrance should be used to move in all items.
- Removal of all packing material and boxes is the responsibility of the mover.
- Weekends and evenings are preferable move-in times.
- Be courteous and respectful of the other Building occupants and visitors.

Please contact your property manager at least 48 hours in advance to coordinate the specifics of the move-in.

Also, please provide a certificate of liability insurance to the property manager prior to the move-in date. The certificate should name Lessor and CB Richard Ellis of Virginia Inc. as additional insured.

24

## EXHIBIT D
## TENANT ESTOPPEL CERTIFICATE

_____
_____
_____

Re:   Lease dated _____, between _____, as Landlord, and _____, as Tenant, with respect to the leased premises located at _____.

Ladies and Gentlemen:

The undersigned does hereby represent and warrant to you and your successors and assigns, as follows:

1.   That it is a tenant (the "Tenant") under that certain lease with _____ (the "Landlord"), including any and all addenda, amendments and modifications thereto (collectively, the "Lease") attached hereto as Exhibit A and that the instruments attached hereto as Exhibit A constitute a true and accurate copy of the Lease and are listed as follows:

[List original lease and all amendments and modifications]

_____
_____
_____

2.   That the Lease is a valid and subsisting lease and has not been amended, modified, terminated or otherwise altered with respect to the terms or conditions thereof and that the Lease represents the complete understanding of the parties thereto, there being no other agreement between the Landlord and Tenant with respect to the leased premises;

3.   That the undersigned, as Tenant, has accepted and now occupies the leased premises and is in sole possession thereof, that the Lease term began on _____, that the rent and all other charges for said leased premises have been paid to and including _____, and that there has been no prepayment of rent more than one month in advance;

4.   That the following information concerning the Lease is true and correct:

Square Feet of Leased Premises: _____

Expiration Date of Term: _____

Monthly rent under the Lease:
Fixed Rent: _____
Common Area Maintenance/Operating Expenses: _____

25

Real Estate Taxes _____

Insurance: _____

Renewal Option: _____

Amount of Security Deposit: _____

5.      That Tenant has not been given any free rent, partial rent, rebates, rental abatements or rent concessions of any kind except_____ (None if blank);

6.      That the Lease is not in default and is in full force and effect, and that, as of the date hereof, the undersigned is entitled to no credit, off-set, or deduction in rent;

7.      That no event has occurred which with the passage of time or the giving of notice, or both, would constitute a default under the Lease;

8.      That the undersigned has not (i) made an assignment of the Lease or any of the rights thereunder to any other person, corporation or other entity, (ii) subleased all or any portion of the leased premises, or (iii) encumbered or in any way lessened its rights under the Lease;

9.      That any construction, build-out, improvements, alterations, or additions to the leased premises required under the Lease have been fully completed in accordance with the plans and specifications described in the Lease and the existing parking facilities meet the Lease requirements;

10.     That no defense to the enforcement of the rights of the Landlord, including, without limitation, the right to collect rent, can be made by the undersigned for any reason including, without limitation, any of Landlord's prior acts;

11.     That the undersigned, Tenant, has no claim against the Landlord for any security deposit unless set forth in paragraph 4 above;

12.     That Tenant has no knowledge of any past or present use or occupancy of the premises involving the handling, manufacturing, treatment, use, transportation, spillage, leakage, dumping, discharge or disposal of any toxic or hazardous substances or materials or other substances regulated under federal, state or local law;

13.     That Landlord has not given any consent to Tenant (such as, but not limited to, consent to sublease or alter the leased premises) that is required under the Lease before the taking of any action by Tenant;

14.     That there are no actions, whether voluntary or otherwise, pending against the undersigned under the bankruptcy laws of the United States or any state thereof; and

15.     That this certification is made to induce _____ ("Lender") to make a loan to Landlord knowing that the Lender is relying upon the truth and accuracy hereof in making said loan.

DATED this _____ day of _____, 20__.

           _____

By:_____
Name:_____
Title:_____

14731933v1