## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BCause Mining LLC, | ) | Judge Janet S. Baer |
| | ) | |
| Debtor/Debtor-in-Possession. | ) | Case No. 19-10562 |
| | ) | |

### ORDER APPROVING STIPULATION BETWEEN THE DEBTOR AND VIRGINIA ELECTRIC AND POWER COMPANY d/b/a DOMINION ENERGY VIRGINIA

This matter is before the Court for approval of the *Stipulation* between the Debtor and Virginia Electric and Power Company d/b/a Dominion Energy Virginia (the "Stipulation") partially resolving the *Objection of Virginia Electric and Power Company d/b/a Dominion Energy Virginia To the Motion to Provide Adequate Assurance of Payment For Continued Utility Service* (the "Objection") (Docket No. 7). The Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 1408 and 1409, the Court being fully advised in the premises, and good cause having been shown, it is

**NOW THEREFORE, IT IS HEREBY ORDERED** that:

1. The Stipulation attached hereto at Exhibit "A" is hereby approved.

2. This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

DATED this ___ day of June, 2019.

BY THE COURT:

_____
Hon. Janet S. Baer
United States Bankruptcy Court Judge

EXHIBIT "A"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| BCause Mining LLC, ) | Judge Janet S. Baer |
| ) | |
| Debtor/Debtor-in-Possession. ) | Case No. 19-10562 |
| ) | |

**STIPULATION BETWEEN THE DEBTOR AND VIRGINIA ELECTRIC
AND POWER COMPANY d/b/a DOMINION ENERGY VIRGINIA PARTIALLY
RESOLVING THE OBJECTION OF VIRGINIA ELECTRIC AND POWER COMPANY
d/b/a DOMINION ENERGY VIRGINIA TO THE MOTION TO PROVIDE ADEQUATE
ASSURANCE OF PAYMENT FOR CONTINUED UTILITY SERVICE**
[Relates to Docket Nos. 4, 7 and 77)

The Debtor and Virginia Electric and Power Company d/b/a Dominion Energy Virginia ("Dominion")(the Debtor and Dominion collectively, the "Parties"), as reflected by the signatures of their respective undersigned counsel below, hereby agree and stipulate to partially resolve the *Objection of Virginia Electric and Power Company d/b/a Dominion Energy Virginia To the Motion to Provide Adequate Assurance of Payment For Continued Utility Service* (the "Objection") (Docket No. 7), as follows:

### Recitals

1.   On January 17, 2019, the Debtor entered into an Agreement for Electric Service with DEV (the "Agreement") under which the Debtor will be billed under Schedule 10 of DEV's Terms and Conditions ("Schedule 10").  A true and accurate copy of the Agreement and Schedule 10 are collectively attached to this Stipulation as **Exhibit 1**.

2.      On April 11, 2019 (the "Petition Date"), the Debtor commenced its case under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that is now pending with this Court. The Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

3.      On the Petition Date, the Debtor filed the *Motion to Provide Adequate Assurance of Payment For Continued Utility Service* (the "Utility Motion")(Docket No. 4).

4.      On April 16, 2019, Dominion filed the Objection.

5.      On April 23, 2019, Dominion issued a bill to the Debtor in the amount of $238,588.48 for the service period of April 11, 2019 to April 22, 2019.

6.      On May 6, 2019, the Debtor sent a payment to Dominion in the amount of $660,000 as an estimated payment for charges from the Petition Date to May 11, 2019, which Dominion has received.

7.      On May 22, 2019, the Debtor sent a payment to Dominion in the amount of $700,000 via wire transfer tender as an estimated advance payment for post-petition charges incurred by the Debtor from Dominion from May 12, 2019 to June 11, 2019, which Dominion received and applied to the Debtor's outstanding invoices leaving a credit of $528,853.76 on the Debtor's account with Dominion for billed charges through May 19, 2019.

8.      Based on the Debtor's daily usage, Dominion believes the Debtor's charges through June 11, 2019 will be in amount equal to the $528,853.76 credit.

### Stipulation

9.      On or before June 11, 2019, the Debtor shall tender to Dominion a payment in the amount of $660,000 via wire transfer tender as an estimated advance payment for post-petition charges incurred by the Debtor from Dominion from June 12, 2019 to July 12, 2019.

10. On or before July 9, 2019, the Debtor shall tender to Dominion a payment in the amount of $660,000 via wire transfer tender as an estimated advance payment for post-petition charges incurred by the Debtor from Dominion from July 12, 2019 to August 11, 2019.

11. The Debtor represents and agrees that it shall reduce its usage to 500 kW on peak-hours on Day A Classification days as that term is defined in the parties Agreement for Electric Service dated January 17, 2019 and Schedule 10 to Dominion's Terms and Conditions ("Peak A Days").

12. If the Debtor fails to tender a payment required by this agreement, Dominion can terminate service to the Debtor after providing the Debtor and their counsel with written notice of the payment default and three (3) business days to cure the default (the "Cure Period"). If the Debtor cures the payment default within the Cure Period, Dominion cannot terminate service for the payment default. The notices required by this paragraph shall be sent via email to:

    A.    Scott R. Clar, Esq.
           Jeffrey C. Dan, Esq.
           Crane, Simon, Clar & Dan
           135 S. LaSalle Street, Suite 3705
           Chicago, Illinois 60603
           Email: sclar@cranesimon.com, jdan@cranesimon.com

    B.    Thomas Flake
           BCause LLC
           5469 Greenwich Road
           Virginia Beach, VA 23462
           Email: t.g.flake@bcause.com

13. The Debtor represents that all post-petition payments made to Dominion are authorized pursuant to the terms and conditions governing the Debtors' use of cash collateral or any budgets in connection with the foregoing.

14. This Stipulation may be executed in identical counterparts, any of which may be

transmitted by facsimile or email, and each of which shall constitute an original and all of which taken together shall constitute one and the same instrument.

15. This Stipulation may not be amended, supplemented or otherwise altered except by written agreement of the Parties.

16. On or before July 15, 2019, the parties agree to enter into a payment agreement for charges for the next six (6) month post-petition period. If the parties are unable to reach an agreement on or before July 15, 2019, the parties agree to jointly seek a hearing before the Bankruptcy Court hold a hearing on or before August 15, 2019 to address adequate assurance of payment pursuant to Section 366(c) for the next six (6) months.

**Agreed To As To Form And Substance:**

/s/ Russell R Johnson III
Russell R. Johnson III
John M. Craig
Law Firm of Russell R. Johnson III, PLC
2258 Wheatlands Drive
Manakin-Sabot, Virginia  23103
Telephone: (804) 749-8861
E-mail: russell@russelljohnsonlawfirm.com

*Counsel for Virginia Electric and Power Company d/b/a Dominion Energy Virginia*


/s/ Jeffrey C. Dan
Scott R. Clar, Esq.
Jeffrey C. Dan, Esq.
Crane, Simon, Clar & Dan
135 S. LaSalle Street, Suite 3705
Chicago, Illinois 60603
Email: sclar@cranesimon.com, jdan@cranesimon.com

*Debtor's Counsel*

# EXHIBIT 1

AGMT 20183

# Agreement for Electric Service

This Agreement, made this 17th day of January, 2019, by and between Virginia Electric and Power Company, a Virginia Corporation, doing business as Dominion Energy Virginia, (hereinafter called the Company), and BCause Mining, LLC, the bona fide owner or lessee of the premises described in Paragraph First, below (hereinafter called the Customer).

Witnesseth: That in consideration of the mutual covenants and agreements contained herein the parties hereto contract and agree with each other as follows:

First -- The Company shall furnish to the Customer, and the Customer shall purchase from the Company, at a mutually agreed upon Delivery Point, Electric Service required by the Customer upon the premises situated at 5465 Greenwich Road, Virginia Beach, Virginia, 23462, in the operation of a data center.

The term of this agreement shall be for an initial period ending ~~one-year~~ See Term of Agreement Schedule 10 Paragraph Second below ~~after the commencement of the initial billing period hereunder and shall continue thereafter until either party gives the other ninety (90) days written notice of termination.~~ Notwithstanding this initial term, the Customer may discontinue purchasing Electricity Supply Service from the Company at any time in accordance with the Company's applicable rate schedules, Terms and Conditions, Virginia Law, and Commission rules for changing energy suppliers. Discontinuance of Electricity Supply Service from the Company does not relieve either party from the obligations under this agreement with respect to the Electric Delivery Service or other products and services as may be addressed herein.

The normal facilities providing Electric Service to the Customer shall have a capacity to serve a 30-minute mean load not to exceed 22,719 kVA. If Electric Service is provided hereunder through new service facilities, the parties hereto shall make every reasonable effort to commence to provide and to receive Electric Service not later than the --- of ---, ---. In the event that the Company is unable to provide Electric Service or the Customer is unable to receive Electric Service on this date, the date can be changed by mutual consent.

Second -- The characteristics of Electric Service hereunder, the voltage at which it will be metered and, where applicable, other special provisions, are as follows:

### Service Characteristics

Electricity supplied will be three phase, four wire, wye connected at approximately 19,900/34,500 volts and 60 hertz through a Company owned primary metering cabinet. All transformers and interconnecting primary cable behind the metering cabinet will be installed, owned and maintained by the Customer.

### Metering Characteristics

Electricity will be primary metered at approximately 19,900/34,500 volts.

### Service Voltage

Service voltage is defined as Primary.

### Term of Agreement - Schedule 10

The term of this agreement shall be for an initial period of one year (12 months) from the effective date hereof. For the first year of this agreement, service shall be provided under Schedule 10 - Large General Service. Service shall continue thereafter under Schedule 10 for additional one year periods unless either party requests discontinuation of

Customer _____    Company _____
                    Date Printed: 1/17/19
                    Page 1 of 5


Dominion Energy

AGMT 20183

the application to Schedule 10 by giving sixty days written notice of discontinuation prior to the end of the initial one year period or any successive one year period. In such case and upon discontinuation of the application of Schedule 10, purchases of electricity shall be made from the Company for the remainder of the initial period in accordance with the applicable schedule as may be selected by the Customer from time to time. Notwithstanding the provisions for the discontinuation of Schedule 10 as described herein, upon completion of the initial term, this agreement may be terminated by either party by giving the other ninety days written notice of termination.

### Availability – Schedule 10

This schedule is not available at a location until such time that the Company has installed all necessary metering equipment. This schedule is not available to Customers participating, either directly or indirectly through a third-party curtailment service provider, in any PJM Interconnection, LLC Demand Response Program or any Company-sponsored peak-shaving demand response program.

### Selection of Rate Schedule 10

The Customer agrees to assume the liability for the selection of Rate Schedule 10 in accordance with Section VIII, Paragraph C of the Company's Terms and Conditions.

### Demand Minimums

The Schedule 10 Contract Demand will be 22,680 kW, but shall be subject to change prior to the effective date of this agreement to equal any higher demand measured at this location, and thereafter shall be modified as provided in the rate schedule. At such time as the customer may elect billing under a schedule other than Schedule 10, the kW of demand used to determine any minimum charges shall not be less than 19,138 kW (the "Contract Minimum Demand"). When such other schedule includes a separately stated distribution demand charge, the only demand subject to this Contract Minimum Demand shall be the distribution demand.

Notwithstanding the initial term of this agreement as set forth in Paragraph "First" of this Agreement above, the Schedule 10 Contract Demand and/or the Contract Minimum Demand, as the case may be (the "Demand Minimums") shall be applicable throughout the term of this Agreement, and in any event for not less than 12 months from the effective date of such Demand Minimums.

Company and Customer agree that, in any and all events, the Demand Minimums shall survive the termination of this Agreement in accordance with the provisions of Paragraph "Second" of this Agreement above ("Term of Agreement – Schedule 10"), and shall remain in force and govern for as long as Customer purchases Electric Service from Company at and for the premises set forth in paragraph "First" of this agreement.

### Contract Dollar Minimum

The minimum charge shall be as provided for in the applicable rate schedule. However, effective with initial billing month after the effective date of this Agreement, the minimum charge – excluding charges for fuel and taxes – will not be less than $116,725 per billing month.

### Terms and Conditions and Rate Schedules

The Company's Terms and Conditions and Rate Schedules referenced in this Letter Supplement may be located in their entirety on the Company's internet web site at: https://www.dominionenergy.com/large-business/rates-and-regulation

Customer ____

Company ____
Date Printed: 1/10/19
Page 2 of 5


Dominion Energy

AGMT 20183

### Customer Owned Generation

Customer owned generators must be connected in accordance with Section 190 of the Company's "Information and Requirements for Electric Service". Under no circumstance will parallel operation of the Customer's generator with the Company's system be allowed without prior written approval by the Company. Only an open transition, break before make, transfer scheme is authorized. Unapproved parallel operation may cause significant damage to Company and/or Customer owned equipment for which the Customer agrees to accept responsibility and liability

Third -- The sheets attached hereto are made a part hereof and are designated as follows:

Exhibit "A" -- One Line Diagram of Electric Service Facilities

Fourth -- In the event the Company is unable to secure and/or maintain adequate rights, easements, franchises and other necessary authorizations, the Company shall not be obligated to render service.

Fifth -- The provision of Electric Service under this agreement shall be subject to all applicable Terms and Conditions of service on file with the appropriate regulatory Commission and such Terms and Conditions are incorporated into this agreement by reference. The provisions of this agreement, all rate schedules, and the Terms and Conditions of service are subject to modification at any time in the manner prescribed by law. When the agreement is so modified, it shall supersede the provisions hereof and the rate schedules, if any, that are attached hereto and made a part hereof.

Sixth -- The Customer shall not assign this agreement without the express written consent of the Company. The Company shall have the right to assign this agreement to any entity, including an affiliated entity, that acquires or otherwise succeeds to the Company's business.

Seventh -- This agreement and the applicable rate schedules and Terms and Conditions of the Company on file with the State Corporation Commission embody the entire agreement between the parties hereto and supersede all prior agreements and understandings, if any, relating to the subject matter hereof and thereof. Any claim(s) which either party hereto may have or assert in any manner arising out of the provision of Electric Service prior to the date of this agreement at the premises specified in paragraph First of this agreement shall be decided without respect to this agreement.

Eighth -- This agreement shall be binding upon the Company only when accepted by its duly authorized agent and shall not be modified by any promise, agreement or representation of any agent or employee of the Company unless incorporated in writing in this agreement before such acceptance.

Ninth -- The Customer warrants that it is a legal business entity duly organized and existing under the laws of the Commonwealth of Virginia, and the individual executing this agreement on behalf of the Customer has been duly authorized to execute this agreement on the Customer's behalf.

Tenth -- In the event any provision, or any part or portion of any provision, of this agreement shall be declared by a court of competent jurisdiction to be unlawful, invalid, void or otherwise unenforceable, the remainder of this agreement shall be severable and remain enforceable. Only the provision (or part or provision thereof) so declared shall be considered unlawful, invalid, or otherwise unenforceable.

Eleventh -- This agreement shall be governed by and constructed in accordance with the laws of the Commonwealth of Virginia, without regard to conflict of laws provisions.

Customer _____    Company _____
Date Printed: 1/17/19
Page 3 of 5


Dominion Energy

AGMT 20183

| Customer's Full Name | Virginia Electric and Power Company, doing business as Dominion Energy Virginia |
|---|---|
| BCause Mining, LLC | |
| Customer's Federal Tax ID | By _(signature)_ |
| 82-2810783 | |
| By _(signature)_ | Typed or Printed Name of Person Signing |
| Typed or Printed Name of Person Signing | Sue Gesling |
| Thomas Flake | Title |
| Title | Customer Contracts Administrator II |
| CMO | |
| Mail Bill To: | Initial Billing Period Shall Commence On |
| BCause Mining | Jan 23, 2019 |
| 192 Ballard Ct #303 | but not later than ninety (90) days after: 1) the date specified in Paragraph First or 2) the date the facilities are made available to the customer. |
| Virginia Beach Virginia, 23462 | |

Premise ID: 759057172
Account Number: 7591132860

Customer _(initials)_

Company 
Date Printed: 1/07/19
Page 4 of 5

Dominion Energy

AGMT 20183

**Facilities Provided:**

Service provided through pad mount primary metering at 34,500/19,920 volts ahead of Customer owned transformers

Note: Delivery points is at the Line side of Company owned Primary Metering Cabinet

34.5kv

Delivery Point

Company owned Primary Metering Equipment — (M) — 34.5kv — To Customer Owned Facilities
CUSTOMER OWNED CONDUCTORS

BCause Mining, LLC

| LEGEND | VIRGINIA ELECTRIC AND POWER COMPANY doing business as **Dominion Energy Virginia** |
|---|---|
| — — — Company Owned Underground Distribution | One Line Diagram of Electric Service Facilities |
| ·········· Customer Owned Conductors | BCause Mining, LLC |
| (M) Company Owned Primary Metering Equipment | 5466 Greenwich Road<br>Virginia Beach, VA 23462 |

| DRW. | SGG | APP. | | DATE | 01/17/2018 |
|---|---|---|---|---|---|
| SCALE | N.T.S. | | Exhibit "A" | | |

Customer ___

Company 
Date Printed: 1/17/19
Page 5 of 5

Dominion Energy

Virginia Electric and Power Company

## Schedule 10
## LARGE GENERAL SERVICE

I. APPLICABILITY

This schedule is applicable only to non-residential Customers (1) who elect to receive Electricity Supply Service and Electric Delivery Service from the Company and (2) whose peak measured average 30-minute interval demand has reached or exceeded 500 kW during at least three billing months within the previous 12 consecutive billing months immediately prior to the Customer's effective date for service under this schedule. Discontinuance of Electric Service under this schedule shall be in accordance with Paragraph XII. of this schedule.

II. AVAILABILITY

This schedule is not available at a location until such time that the Company has installed all necessary metering equipment. This schedule is not available to Customers electing to participate, either directly or indirectly through a third-party curtailment service provider, in any PJM Interconnection, LLC Demand Response Program or any Company-sponsored peak-shaving demand response program.

III. 30-DAY VARIABLE RATE

    A. Distribution Service Charges

        1. Basic Customer Charge
           Basic Customer Charge $123.10 per billing month.

        2. Plus Distribution Demand Charge

           a. Primary Voltage Customer
| | | |
|---|---|---|
| First 5000 kW of Distribution Demand | @ | $0.940 per kW |
| Additional kW of Distribution Demand | @ | $0.709 per kW |

           b. Secondary Voltage Customer
| | | |
|---|---|---|
| All kW of Distribution Demand | @ | $1.992 per kW |

        3. Plus Distribution kWh Charges

           a. Distribution kWh Charge for All Customers

| | | |
|---|---|---|
| 1) All kWh at Primary or Transmission Service Voltage | @ | 0.0055¢ per kWh |
| 2) All kWh at Secondary Service Voltage | @ | 0.0065¢ per kWh |

(Continued)

Filed 03-15-19             Superseding Filing Effective For Usage On
Electric-Virginia             and After 07-01-18. This Filing Effective
                                         For Usage On and After 04-01-19.

Virginia Electric and Power Company

Schedule 10
LARGE GENERAL SERVICE

(Continued)

III. 30-DAY VARIABLE RATE (Continued)

  b. Plus Distribution kWh Charge for Non-exempt or Non-opt-out Customers

   1) All kWh at Primary or Transmission Service Voltage   @   0.0000¢ per kWh

   2) All kWh at Secondary Service Voltage   @   0.0000¢ per kWh

 4. Plus each Distribution kilowatthour used is subject to all applicable riders, included in the Exhibit of Applicable Riders.

B. Electricity Supply (ES) Service Charges

 1. Electricity Supply Contract Demand Charge
  All kW of ES Contract Demand   @   ($0.074) per kW

 2. Plus Generation Adjustment Demand Charge

  a. Primary Voltage Customer
   First 5000 kW of Demand   @   ($0.397) per kW
   Additional kW of Demand   @   ($0.300) per kW

  b. Secondary Voltage Customer
   All kW of Demand   @   ($0.604) per kW

 3. Plus Generation kWh Charge

 All ES kWh will be categorized according to the following table and billed at the rates specified.

(Continued)

Filed 03-15-19    Superseding Filing Effective For Usage On
Electric-Virginia    and After 07-01-18. This Filing Effective
         For Usage On and After 04-01-19.

Virginia Electric and Power Company

## Schedule 10
## LARGE GENERAL SERVICE

(Continued)

III. 30-DAY VARIABLE RATE (Continued)

a. For the period May 1 through September 30:

| Day Classification | On-Peak Period | On-Peak Rate Per ES kWh | Off-Peak Rate Per ES kWh |
|---|---|---|---|
| A | 11 a.m.- 9 p.m. | 24.2414¢ | 2.6990¢ |
| B | 11 a.m.- 9 p.m. | 2.0675¢ | 1.3453¢ |
| C | 7 a.m.- 10 p.m. | 1.3453¢ | 0.9195¢ |

b. For the period October 1 through April 30:

| Day Classification | On-Peak Period | On-Peak Rate Per ES kWh | Off-Peak Rate Per ES kWh |
|---|---|---|---|
| A | 6 a.m.- noon & 5 p.m.- 9 p.m. | 24.2414¢ | 3.1229¢ |
| B | 6 a.m.-noon & 5 p.m.- 9 p.m. | 2.0675¢ | 1.4425¢ |
| C | 6 a.m.-noon & 5 p.m.- 9 p.m. | 1.4425¢ | 1.1244¢ |

(NOTE: Classification A will apply for no more than 28 days during any calendar year, and classification C will apply for no less than 60 days during any calendar year.)

4. Plus Transmission Demand Charge

   a. All kW of ES Contract Demand for Primary or
      Transmission Service Voltage              @      $0.646 per kW

   b. All kW of ES Contract Demand for
      Secondary Service Voltage                 @      $1.094 per kW

(Continued)

Filed 03-15-19           Superseding Filing Effective For Usage On
Electric-Virginia        and After 07-01-18. This Filing Effective
                         For Usage On and After 04-01-19.

Virginia Electric and Power Company

Schedule 10
LARGE GENERAL SERVICE

(Continued)

III. 30-DAY VARIABLE RATE (Continued)

    5. Plus each Electricity Supply kilowatthour is subject to all applicable riders, included in the Exhibit of Applicable Riders.

    6. Plus each kW of Electricity Supply Contract Demand is subject to all applicable riders, included in the Exhibit of Applicable Riders.

  C. The minimum charge shall be such as may be contracted for.

IV. NOTIFICATION OF DAY CLASSIFICATION

The Generation kWh Charge day classification for each day will be determined by the Company and will be available via a toll-free telephone number after 5 p.m. the preceding day. Should the Company fail to make its determination by 5 p.m., the classification shall default to "C."

V. DETERMINATION OF DISTRIBUTION DEMAND

The Distribution Demand shall be billed only where the service voltage is less than 69 kV. Service voltage is defined as the voltage associated with facilities which the Company would normally provide for the service required by the Customer. The kW of demand billed under III.A.2. shall be the Electricity Supply Contract Demand.

VI. DETERMINATION OF ELECTRICITY SUPPLY PEAK DEMAND AND ELECTRICITY SUPPLY CONTRACT DEMAND

  A. The Company may install metering equipment necessary to determine both the average kW demand during a 30-minute interval and the average kVA demand during a 30-minute interval. The Electricity Supply Peak Demand for the current billing month shall be the higher of:

    1. The highest average kW demand measured during the current billing month, or

    2. 85% of the highest average kVA demand measured during the current billing month.

(Continued)

Filed 03-15-19  
Electric-Virginia

Superseding Filing Effective For Usage On and After 07-01-18. This Filing Effective For Usage On and After 04-01-19.

Virginia Electric and Power Company

Schedule 10
LARGE GENERAL SERVICE

---

(Continued)

VI. DETERMINATION OF ELECTRICITY SUPPLY PEAK DEMAND AND ELECTRICITY SUPPLY CONTRACT DEMAND (Continued)

   B. The Electricity Supply Contract Demand shall be the maximum demand the Company is to supply, but not less than 500 kW. In the event that the Electricity Supply Peak Demand determined for the current billing month exceeds the Electricity Supply Contract Demand, the Electricity Supply Contract Demand shall be increased by such excess demand.

VII. DETERMINATION OF ELECTRICITY SUPPLY ADJUSTMENT DEMAND

   The kW of demand billed under Paragraph III.B.2. shall be the Distribution Demand determined under Paragraph V.

VIII. EXEMPTION AND OPT-OUT PROVISIONS FOR DISTRIBUTION KWH CHARGE

   The Distribution kWh Charge in Paragraph III.A.3.b., above, shall not apply to Customers who are either exempt from or opt-out of such charge pursuant to Virginia Code § 56-585.1 A 5 c.

IX. METER READING AND BILLING

   A. The Company may require that the Customer provide the Company with access to the Customer's telephone service so that the Company may communicate with its metering equipment.

   B. When the actual number of days between meter readings is more or less than 30 days, the Basic Customer Charge, the Distribution Demand Charge, the Electricity Supply Contract Demand Charge, the Generation Adjustment Demand Charge, the Transmission Demand Charge, and the minimum charge of the 30-day variable rate will each be multiplied by the actual number of days in the billing period and divided by 30.

X. SERVICE AVAILABLE

   Normally the Company will supply the equipment necessary and will deliver to the Customer, in accordance with the Company's applicable Terms and Conditions at one Delivery Point mutually satisfactory to the Customer and the Company, 60 cycle alternating current electricity of the phase and voltage desired by the Customer at said Delivery Point, provided electricity of the phase and voltage desired by the Customer is available generally in the area in which electricity is desired.

(Continued)

Filed 03-15-19  
Electric-Virginia

Superseding Filing Effective For Usage On and After 07-01-18. This Filing Effective For Usage On and After 04-01-19.

Virginia Electric and Power Company

Schedule 10
LARGE GENERAL SERVICE

(Continued)

XI.  PARALLEL OPERATION SERVICE

A Customer operating an electric power plant in parallel with the Company's facilities may elect service under this schedule provided that suitable relays and protective equipment are furnished, installed, and maintained at the Customer's expense in accordance with specifications furnished by the Company. The relays and protection equipment shall be subject, at all reasonable times, to inspection by the Company's authorized representative.

XII. TERM OF CONTRACT

The term of contract for the purchase of Electric Service under this schedule shall be in multiples of one year, continuing thereafter for one-year terms unless either party provides sixty days written notice of termination prior to the end of any term.

Filed 03-15-19  
Electric-Virginia

Superseding Filing Effective For Usage On and After 07-01-18. This Filing Effective For Usage On and After 04-01-19.