# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| BCAUSE MINING LLC, *et al.*, | Case No. 19-10562 <br> (Jointly Administered) |
| Debtors/Debtors-in-possession. | Honorable Janet S. Baer |
| BCAUSE MINING LLC and BCAUSE LLC, | |
| Plaintiff, | Adv. No. 19-_____ |
| v. | |
| WESCO DISTRIBUTION, INC., | |
| Defendant. | |

## COMPLAINT OBJECTING TO PROOFS OF CLAIM AND FOR OTHER RELIEF

BCause Mining LLC ("*Mining*") and BCause LLC ("*BCause Holding*," together with Mining, the "*Debtors*"), debtors and debtors-in-possession in the above-captioned bankruptcy cases, by and through their undersigned counsel, brings this complaint (the "*Complaint*") against WESCO Distribution, Inc. ("*WESCO*"). In support of the Complaint, the Debtors state as follows:

### INTRODUCTION

1. The Debtors bring this action to contest, invalidate and avoid certain security interests WESCO claims to have in the Debtors' assets and to otherwise object to WESCO's claims against the Debtors.

2. As set forth in greater detail below, the Debtors are entitled to judgment in their favor and against WESCO, finding *inter alia*: (i) just prior to the bankruptcy filings, WESCO obtained avoidable liens on certain of the Debtors' real and personal property; (ii) portions of WESCO's claim are unenforceable and unsecured under applicable state law; and (iii) BCause Holdings' guaranty of WESCO's debt is avoidable as a fraudulent transfer.

### The Parties

3. BCause Holding is a Virginia limited liability company with its principal place of business located in Virginia Beach, Virginia.

4. Mining is a Virginia limited liability company with its principal place of business in Virginia Beach, Virginia.

5. Mining is the wholly-owned subsidiary of BCause Holding.

6. WESCO is a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania.

### Jurisdiction and Venue

7. This Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2) and § 1334.

8. This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and venue is proper in the Northern District of Illinois under 28 U.S.C. §§ 1408 and 1409.

9. The statutory predicates for the relief requested in this Complaint are 28 U.S.C. § 2201, 11 U.S.C. §§ 502, 506, 547, 548, and 550, and Virginia Statute § 8.01-433.

### Factual Background

10. Mining was incorporated in Virginia on September 15, 2017 and operates a state-of-the-art facility (the "*Facility*") in Virginia Beach, Virginia.

2

11. Mining operates the Facility as a hosting venue for cryptocurrency miners and generates approximately $1 million per month in revenues from its mining customers.

12. Section 4.1(a) of BCause Holdings' operating agreement provides, in relevant part:

> The business affairs of the Company shall be managed by its "Board of Managers", the members of which shall be elected as provided in Section 4.2. The Board of Managers shall direct, manage, and control the business of the Company to the best of its ability and shall have full and complete authority, power, and discretion, subject to Section 3.1, to make any and all decisions, and to do any and all things which the Board of Managers deems necessary or desirable for that purpose.

13. A true and correct copy of the Amended and Restated Operating Agreement of BCause LLC is attached hereto as Exhibit A.

14. Paragraph 4.1(a) of Mining's operating agreement includes the same quoted language as BCause Holdings' operating agreement. *See* Operating Agreement of BCause Mining LLC, attached hereto as Exhibit B.

**A. The WESCO Credit Application and Sale of Equipment**

15. On December 4, 2017, Mining and WESCO entered into an Application for Business Credit (the "*Credit Application*") pursuant to which Mining purportedly granted WESCO a security interest in its assets. A true and correct copy of the Credit Application is attached hereto as Exhibit C.

16. Between December 2017 and May 2018, WESCO and another company, Communications Supply Corp. ("*CSC*"), sold Mining certain equipment for two separate phases of Mining's operations.

17. Mining believed WESCO and CSC to be separate companies and purchased different sets of equipment from each company.

18. Mining never understood that WESCO acted as a representative or agent for CSC.

19. Mining paid WESCO and CSC for nearly all of the Phase I debt with the exception of $874.90 to CSC, but left a balance of $1,183,146.70 for Phase II. *See* WESCO and CSC Transaction History attached hereto as <u>Exhibit D</u>.

20. Of that amount, $639,445.72 related to WESCO invoices and $543,700.98 related to CSC invoices.

### B. WESCO's Alleged Perfection of Its Liens

21. More than seven months after Mining signed the Credit Application and nearly two months after WESCO and CSC last sold equipment to Mining, WESCO filed a UCC-1 financing statement against Mining on July 17, 2018. A true and correct copy of the UCC-1 financing statement is attached hereto as <u>Exhibit E</u>.

22. The UCC-1 financing statement did not list CSC as a secured party.

### C. The Promissory Note

23. On or about December 5, 2018, Frederick J. Grede, then-chief executive officer of Mining, signed a promissory note and confession of judgment (the "*Promissory Note*") in the amount of $1,358,610.51 in favor of WESCO. A true and correct copy of the Promissory Note is attached hereto as <u>Exhibit F</u>.

24. Mr. Grede also signed the Promissory Note on behalf of BCause Holdings and its subsidiaries, BCause Trust, Inc., BCause Spot LLC, BCause Derivatives Exchange LLC, and BCause Clear LLC, as guarantors of Mining's obligations under the Promissory Note.

25. Paragraph 4 of the Promissory Note provided that in the event Mining or the guarantors failed to perform any duty under the Promissory Note or make any payments contemplated by the Promissory Note, WESCO was authorized to apply for a confession of judgment in the amount of:

4

(a) $1,358,610.51 plus 12% interest from December 5, 2018 forward, less amounts previously paid;

(b) 24% interest per annum commencing from April 27, 2018; and

(c) Attorneys' fees in the amount of 35% of the Default Obligation (as defined in the Promissory Note).

26. On information and belief, the amount of the Promissory Note reflected the principal amount of the WESCO and CSC invoices plus interest.

27. The Promissory Note was negotiated by Mr. Grede and Ann Cresce, Mining's then-general counsel.

28. However, neither Mr. Grede nor Ms. Cresce were members of BCause Holdings' board of managers and Mr. Grede did not received approval from the board prior to signing the Promissory Note on behalf of Mining, BCause Holdings, or BCause Holdings' subsidiaries.

**D. The Confession of Judgment and Garnishment**

29. On March 1, 2019, WESCO entered and filed a confession of judgment (the "*Judgment*") in the principal amount of $1,896,349.34 with the Circuit Court of Arlington County, Virginia (the "*Virginia Court*") based upon asserted default under the Promissory Note.

30. On April 2, 2019, WESCO recorded the Judgment in Illinois.

31. WESCO obtained non-wage garnishments (the "*Illinois Garnishments*") issued to Lakeside Bank Community Development, LLC and Lakeside Bank relating to the Debtors from the Circuit Court of Cook County on April 2, 2019 which were served on April 3, 2019. True and correct copies of the Illinois Garnishments are attached hereto as Group Exhibit G.[1]

---

[1] WESCO has not attached a copy of a garnishment purportedly issued to Lakeside Bank relating to Mining in the Illinois state court, but understands that WESCO takes the position it has in fact issued and served such a garnishment.

5

32. WESCO also issued garnishments (the "*Virginia Garnishments*" together with the Illinois Garnishments, the "*Garnishments*") to Lakeside Bank Community Development, LLC and Lakeside Bank relating to the Debtors from the Virginia Court on April 1, 2019 and April 3, 2019, respectively. True and correct copies of the Virginia Garnishments are attached hereto as Group Exhibit H.[2]

### E. The Bankruptcy Filings

33. On April 11, 2019 (the "*Mining Petition Date*"), Mining filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*").

34. On April 12, 2019 (the "*BCause Holding Petition Date*," together with the Mining Petition Date, the "*Petition Dates*") BCause Holding filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

35. On the Petition Date, BCause Holdings had a deposit bank account at Lakeside Bank (the "*Lakeside Account*") containing $911,942 (the "*Cash*").

36. WESCO filed proofs of claim against the Debtors on April 26, 2019 asserting a secured claim in the amount of $1,915,137.77, copies of which are attached hereto as Group Exhibit I.

### COUNT I
### Avoidance of Alleged Liens Arising from Judgment and Garnishments as Preferential Transfers Pursuant to Section 547 of the Bankruptcy Code

37. The Debtors repeat, reallege, and incorporate each and every allegation contained in Paragraphs 1 through 36 of this Complaint as if fully set forth herein.

---

[2] WESCO has not attached a copy of a garnishment purportedly issued to Lakeside Bank relating to Mining in the Virginiah Court, but understands that WESCO takes the position it has in fact issued and served such a garnishment.

6

38. During the ninety (90) day period immediately preceding the Petition Dates, WESCO obtained liens (the "*Real Property Liens*") on the Debtors' real property by virtue of the entry of the Judgment.

39. During the ninety (90) day period immediately preceding the Petition Dates, WESCO obtained liens (the "*Bank Liens*" together with the Real Property Liens, the "*Liens*") on the Lakeside Account by virtue of serving the Garnishments.

40. WESCO was a creditor of the Debtors, within the meaning of section 101(10)(A) of the Bankruptcy Code, at the time of the transfer of the Liens.

41. The attachment of the Liens to the Debtors' real and personal property constituted a transfer of an interest of the Debtors in property.

42. The transfer of the Liens was made to or for the benefit of WESCO, within the meaning of section 547(b)(1) of the Bankruptcy Code.

43. The transfer of the Liens was made for or on account of an antecedent debt owed by the Debtors to WESCO before such transfer was made.

44. The Debtors were insolvent on the date of the transfer of the Liens and the Debtors are each presumed to be insolvent in the ninety (90) days prior to the Petition Date, pursuant to section 547(f) of the Bankruptcy Code.

45. The transfer of the Liens was made on or within ninety (90) days prior to the Petition Dates.

46. The transfer of the Liens enabled WESCO to receive more than it would receive if:

   (a) The Debtors' cases were cases under chapter 7 of the Bankruptcy Code;

   (b) Such transfer had not been made; and

(c) WESCO received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

47. By reason of the foregoing, the Debtors may avoid the transfer of the Liens as a preferential transfer pursuant to section 547(b) of the Bankruptcy Code.

**COUNT II**
**Declaratory Judgment Determining Validity and Enforceability of**
**Promissory Note as Unauthorized Pursuant to 11 U.S.C. § 502(b)(1)**

48. The Debtors repeat, reallege, and incorporate each and every allegation contained in Paragraphs 1 through 47 of this Complaint as if fully set forth herein.

49. The Debtors' operating agreements provide that the Debtors are managed by their board of managers who shall direct, manage, and control their businesses and have full and complete authority and discretion to do all things the board deems necessary for that purpose.

50. The Promissory Note is governed by the laws of the Commonwealth of Virginia pursuant to Paragraph 13 of the Promissory Note.

51. The Promissory Note constituted a settlement of WESCO's and CSC's dispute with Mining regarding payments due to WESCO and CSC from Mining.

52. Under the provisions of the Debtors' operating agreements, the Debtors' board of managers must approve business decisions such as the execution of the Promissory Note.

53. The Promissory Note was signed by Frederick J. Grede as chief executive officer of the Debtors and on behalf of the non-debtor guarantors.

54. However, Mr. Grede did not have the legal authority to execute the Promissory Note on behalf of the Debtors.

55. Mr. Grede did not obtain the approval of the Debtors' board of managers prior to executing the Promissory Note, nor did he request such authority.

56. Accordingly, the Debtors are entitled to a determination, pursuant to applicable Virginia law, that the Promissory Note is unenforceable against the Debtors because it was executed by an individual who lacked the authority to do so.

57. WESCO's claim as based upon the Promissory Note should therefore be disallowed pursuant to 11 U.S.C. § 502(b)(1).

58. Pursuant to 28 U.S.C. § 2201, this Court is authorized to declare the rights and other legal relations of the Debtors and WESCO with respect to the enforceability of the Promissory Note.

## COUNT III
### Declaratory Judgment Determining Validity and Enforceability of Attorneys' Fees Provision in Promissory Note Pursuant to 11 U.S.C. § 502(b)(1)

59. The Debtors repeat, reallege, and incorporate each and every allegation contained in Paragraphs 1 through 58 of this Complaint as if fully set forth herein.

60. The Promissory Note is governed by the laws of the Commonwealth of Virginia pursuant to Paragraph 13 of the Promissory Note.

61. Paragraph 4 of the Promissory Note provides that upon a default, WESCO shall be entitled to a confession of judgment which included "reasonable attorneys' fees in the amount of thirty-five percent (35%) of the Default Obligation."

62. The "Default Obligation" included interest at 12% per annum from December 5, 2018 and 24% per annum from April 27, 2018.

63. The Debtors' estimate that the attorneys' fees portion of WESCO's asserted claim is more than $400,000.

64. Under Virginia law, contractual attorneys' fees must be reasonable and take into consideration factors such as the time and effort expended, the complexity of the services, the

value of the services, the results obtained, and whether the services were necessary and appropriate.

65. The Promissory Note's attorneys' fees provision of a flat 35% of the default obligation is not reasonable, bears no relationship to WESCO's time and effort expended, the complexity of the services, the value of the services, the results obtained, or whether the services were necessary and appropriate.

66. Accordingly, the Debtors submit that the attorneys' fees provision in the Promissory Note is unenforceable under applicable law and to the extent WESCO's claim includes attorneys' fees based upon this provision, WESCO's claim should be disallowed pursuant to 11 U.S.C. § 502(b)(1).

67. Pursuant to 28 U.S.C. § 2201, this Court is authorized to declare the rights and other legal relations of the Debtors and WESCO with respect to the enforceability of the attorneys' fees provision in the Promissory Note.

## COUNT IV
**Avoidance of Promissory Note Guaranty as Fraudulent Transfer With Respect to BCause Holdings Pursuant to 11 U.S.C. § 548(a)(1)(B),**

68. The Debtors repeat, reallege, and incorporate each and every allegation contained in Paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69. BCause Holdings incurred certain guaranty obligations under the Promissory Note.

70. BCause Holdings incurred the guaranty obligations under the Promissory Note within two years prior to the BCause Holdings Petition Date.

71. Prior to the execution of the Promissory Note, BCause Holdings did not owe any debt to WESCO or CSC.

72. BCause Holdings was not a party to the Credit Application and BCause Holdings did not purchase any equipment from WESCO or CSC.

73. BCause Holdings did not receive any direct financial benefit from incurring more than $1.3 million in contingent payment obligations under the Promissory Note and to the extent it received any indirect financial benefit, such benefit was significantly less than the hefty guaranty obligations it incurred.

74. Accordingly, BCause Holdings did not receive reasonably equivalent value in exchange for its guaranty obligations under the Promissory Note.

75. BCause Holdings was insolvent on the date of the Promissory Note or became insolvent as a result of incurring its obligations under the Promissory Note.

76. Specifically, on a consolidated basis the Debtors' December 2018 unaudited financial balance sheet showed total equity of $1.3 million. However, the Debtors' fixed assets were listed on a "book value" basis of approximately $14 million and the actual fair market value and liquidation value of those assets is significantly less than book value.

77. Moreover, the fixed assets are owned by Mining, not BCause Holdings and BCause Holdings had no revenues of its own independent of Mining's operations.

78. Accordingly, on the date BCause Holdings incurred the obligations under the Promissory Note, it was:

    (a) insolvent or became insolvent as a result of the obligations;

    (b) was engaged in business or a transaction, or were about to engage in business or a transaction, for which any property remaining with BCause Holdings was an unreasonably small capital; or

(c) Intended to incur, or believed they would incur, debts that would be beyond its ability to pay as such debts matured.

79. For these reasons, BCause Holdings may avoid the guaranty obligations it incurred to WESCO under the Promissory Note as fraudulent under section 548(a)(1)(B) of the Bankruptcy Code.

## COUNT V
### Recovery of Avoided Transfer Pursuant to Section 550 of the Bankruptcy Code

80. The Debtors repeat, reallege, and incorporate each and every allegation contained in Paragraphs 1 through 79 of this Complaint as if fully set forth herein.

81. WESCO was either: (a) the initial transferee of the transfer of Liens, (b) the entity for whose benefit the transfers was made; or (c) an immediate or mediate transferee of an initial transferee.

82. Upon the avoidance of the Liens under section 547 and/or 548 of the Bankruptcy Code, the Debtors may recover the transfer or the value thereof from WESCO or any mediate or immediate transferee pursuant to section 550 of the Bankruptcy Code.

83. By reason of the foregoing, the Debtors may recover the transfer of the Liens or the value thereof from WESCO pursuant to section 550 of the Bankruptcy Code.

## COUNT VI
### Declaratory Judgment Determining Validity, Priority, and Enforceability of WESCO's Claim Relating to CSC's Debt Pursuant to 11 U.S.C. § 506(b)

84. The Debtors repeat, reallege, and incorporate each and every allegation contained in Paragraphs 1 through 83 of this Complaint as if fully set forth herein.

85. On information and belief, WESCO's asserted secured claim against the Debtors includes approximately $543,700.98 plus additional interest related to invoices payable to CSC.

86. On information and belief, CSC is not entitled to any attorneys' fees or interest on account of its claim.

87. Under Virginia law, a security interest in most personal property, including equipment, is perfected by filing a financing statement in the state in which a debtor is organized. Va. Code §§ 8.9A-301; 8.9A-307; 8.9A-310; 8.9A-312

88. CSC did not perfect any alleged security interest it may have had in Mining's assets because it did not file a UCC-1 financing statement.

89. WESCO and CSC are separate legal entities.

90. Mining purchased different sets of equipment from WESCO and CSC.

91. Mining never understood that WESCO acted as a representative or agent for CSC.

92. Accordingly, CSC's debt is unsecured and to the extent WESCO's alleged secured claim includes any amount relating to CSC, WESCO's claim should be reduced, recharacterized, or disallowed pursuant to 11 U.S.C. § 506.

93. To the extent that WESCO's alleged secured claim is reduced or recharacterized as unsecured, WESCO is not entitled to adequate protection, including, without limitation, replacement liens or adequate protection payments of interest.

94. Pursuant to 28 U.S.C. § 2201, this Court is authorized to declare the rights and other legal relations of the Debtors and WESCO with respect to the validity, priority and extent of the alleged liens relating to the portion of WESCO's claim which includes CSC's debt.

## COUNT VII
### Declaratory Judgment Determining Enforceability of Judgment Pursuant to 11 U.S.C. § 502(b)(1)

95. The Debtors repeat, reallege, and incorporate each and every allegation contained in Paragraphs 1 through 94 of this Complaint as if fully set forth herein.

96. As set forth in Count II above, the Promissory Note is unenforceable against the Debtors.

97. The Promissory Note was the basis for entry of the Judgment in favor of WESCO and against the Debtors.

98. Moreover, as set forth in Count III of this Complaint, BCause Holdings' obligations under the Promissory Note are avoidable under section 548(a)(1)(B) of the Bankruptcy Code.

99. As set forth in Count IV of this Complaint, on information and belief WESCO's claim includes attorneys' fees of more than $400,000 based upon the Promissory Note which attorneys' fees provision is unenforceable under Virginia law.

100. As set forth in Count VI of this Complaint, on information and belief WESCO's claim includes amounts relating to CSC which are unsecured.

101. To the extent that the Court enters judgment in favor of the Debtors on Counts II-VI, the Judgment is unenforceable pursuant to Virginia Statute § 8.01-433 and accordingly pursuant to 11 U.S.C. § 502(b)(1) WESCO's claim should be disallowed.

102. Pursuant to 28 U.S.C. § 2201, this Court is authorized to declare the rights and other legal relations of the Debtors and WESCO with respect to enforceability of the Judgment, and the Debtors request a declaration that the Judgment be held to be unenforceable in full and disallowing WESCO's claim pursuant to section 502(b)(1) of the Bankruptcy Code.

WHEREFORE, the Debtors requests the entry of a judgment against WESCO granting the following relief:

(a) As to Count I, the entry of judgment in favor of the Debtors and against WESCO avoiding the Liens pursuant to section 547 of the Bankruptcy Code;

(b) As to Count II, the entry of judgment in favor of the Debtors and against WESCO declaring the Promissory Note unenforceable and disallowing WESCO's claims against the Debtors in accordance therewith pursuant to 11 U.S.C. § 502(b)(1);

(c) As to Count III, the entry of judgment in favor of the Debtors and against WESCO declaring the attorneys' fees provision in the Promissory Note unenforceable and disallowing WESCO's claims against the Debtors in accordance therewith pursuant to 11 U.S.C. § 502(b)(1);

(d) As to Count IV, the entry of judgment in favor of BCause Holdings and against WESCO avoiding the Promissory Note guaranty obligations with respect to BCause Holdings pursuant to 11 U.S.C. § 548(a)(1)(B);

(e) As to Count V, the entry of judgment in favor of the Debtors and against WESCO avoiding the transfer of the Liens or the value thereof pursuant to 11 U.S.C. § 550;

(f) As to Count VI, the entry of judgment in favor of the Debtors and against WESCO declaring WESCO's claim relating to CSC's debt unsecured pursuant to 11 U.S.C. § 506(b)

(g) As to Count VII, disallowing WESCO's claim pursuant to Virginia Statute § 8.01-433 and 11 U.S.C. § 502(b)(1);

(h) Assess all fees and costs of this action against WESCO; and

(i)  Grant such other and further relief as is just and proper.

Dated: June 20, 2019

**BCAUSE LLC and BCAUSE MINING LLC,**
Debtors/Debtors-in-Possession/Defendants

By: /s/ Scott R. Clar
    One of Their Attorneys
Scott R. Clar (Atty. No. 06183741)
Arthur G. Simon (Atty. No. 03124481)
Jeffrey C. Dan (Atty. No. 06242750
CRANE, SIMON, CLAR & DAN
135 S. LaSalle Street, Suite 3750
Chicago, IL 60603   Tel: 312.641.6777
Email: asimon@cranesimon.com
      sclar@cranesimon.com
      jdan@cranesimon.com