**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BCause Mining LLC, *et al*. | ) | Case No. 19-10562 |
| | ) | |
| Debtors. | ) | Honorable Janet S. Baer |
| | ) | |
| | ) | Hearing Date: July 23, 2019 |
| | ) | Hearing Time: 9:30 a.m. |

**NOTICE OF MOTION**

TO:   See Attached Service List

**PLEASE TAKE NOTICE** that on **July 23, 2019 at 9:30 a.m.** or as soon thereafter as counsel may be heard, I shall appear before the **Honorable Janet S. Baer** of the United States Bankruptcy Court for the Northern District of Illinois, or any other judge sitting in her place and stead, in Courtroom 615, Everett McKinley Dirksen, 219 South Dearborn Street, Chicago, Illinois, and shall then and there present the **BMG OPERATIONS LTD.'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY**, a copy of which is attached and herewith served upon you, and shall pray for the entry of an order in conformity with the prayer of said pleading.

**AT WHICH TIME AND PLACE** you may appear if you so see fit.

Dated: July 15, 2019

Respectfully submitted,

BMG OPERATIONS, LTD.

By:   */s/ Christina M. Sanfelippo*

Brian L. Shaw
Christina M. Sanfelippo
FOX ROTHSCHILD LLP
321 North Clark Street, Suite 1600
Chicago, Illinois 60654
(312) 517-9200  telephone
(312) 517-9201  facsimile
bshaw@foxrothschild.com
csanfelippo@foxrothschild.com

187326\00001\99377034.v1

**CERTIFICATE OF SERVICE**

      Christina M. Sanfelippo, an attorney, certifies that she caused to be served a true copy of the above and foregoing notice and attached pleading upon the Electronic Mail Notice List through the ECF System which sent notification of such filing via electronic means on July 15, 2019, or First Class U.S. Mail on July 16, 2019, as indicated.

                                                   */s/ Christina M. Sanfelippo*

**Mailing Information for Case 19-10562**
**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- David A Agay   dagay@mcdonaldhopkins.com, mbrady@mcdonaldhopkins.com;bkfilings@mcdonaldhopkins.com
- Sarah K Angelino   sangelino@schiffhardin.com, edocket@schiffhardin.com
- Jamie L Burns   jburns@lplegal.com, rwilliamson@lplegal.com;ikropiewnicka@lplegal.com
- Maria G Carr   mcarr@mcdonaldhopkins.com, bkfilings@mcdonaldhopkins.com
- Scott R Clar   sclar@cranesimon.com, mjoberhausen@cranesimon.com;asimon@cranesimon.com
- Shara C Cornell   scornell@mcdonaldhopkins.com, mbrady@mcdonaldhopkins.com;lburrell@mcdonaldhopkins.com
- Jeffrey C Dan   jdan@cranesimon.com, sclar@cranesimon.com;mjoberhausen@cranesimon.com
- Shelly A. DeRousse   sderousse@freeborn.com, bkdocketing@freeborn.com;jhazdra@ecf.inforuptcy.com
- Devon J Eggert   deggert@freeborn.com, bkdocketing@freeborn.com
- Marc Ira Fenton   mfenton@lplegal.com, skiolbasa@lplegal.com;ikropiewnicka@lplegal.com
- J Mark Fisher   mfisher@schiffhardin.com, edocket@schiffhardin.com;sricciardi@schiffhardin.com
- Elizabeth L Janczak   ejanczak@freeborn.com, bkdocketing@freeborn.com
- Patrick S Layng   USTPRegion11.ES.ECF@usdoj.gov
- Jennifer M McLemore   jmclemore@williamsmullen.com, avaughn@williamsmullen.com
- Christina Sanfelippo   csanfelippo@foxrothschild.com, orafalovsky@foxrothschild.com
- Brian L Shaw   bshaw@foxrothschild.com, cknez@foxrothschild.com
- Arthur G Simon   asimon@cranesimon.com, sclar@cranesimon.com;slydon@cranesimon.com
- Jason M Torf   jason.torf@icemiller.com

**Parties Served Via United States First Class Mail**

John M Craig
Law Firm of Russell R Johnson III, PLC
14890 Washington Street
Haymarket, VA 20169

Freeborn & Peters LLP
311 South Wacker Drive Suite 3000
Chicago, IL 60606

Russell R Johnson
Law Firm of Russell R Johnson III, PLC
2258 Wheatlands Drive
Manakin Sabot, VA 23103

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BCause Mining LLC, *et al*. | ) | Case No. 19-10562 |
| | ) | |
| Debtors. | ) | Honorable Janet S. Baer |
| | ) | |

**BMG OPERATIONS LTD.'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

BMG Operations LTD. ("BMG") hereby moves the Court, pursuant to 11 U.S.C. § 362(d)(1), Fed. R. Bankr. P. 4001(d) and Local Rule 4001-1,[1] for the entry of an order granting BMG relief from the automatic stay to (i) allow BMG to immediately terminate its Hosting Agreement with BCause Mining LLC (the "Debtor") or, in the alternative, (ii) permit BMG to immediately remove its property from the Facility and issue a notice of non-renewal of the Hosting Agreement, and (iii) permit BMG to setoff its monthly hosting payments against its damages caused by the Debtor's conduct. In support of the Motion, BMG respectfully states as follows:

**JURISDICTION**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 362(d)(1) of the Bankruptcy Code and Bankruptcy Rule 4001(d).

---

[1] The Required Statement form required by Local Rule 4001-1 is attached hereto as **Exhibit 1**.

## BACKGROUND

3. On November 30, 2017, BMG and the Debtor entered into a Hosting Services Agreement (the "Hosting Agreement"),[2] pursuant to which the Debtor agreed to provide services and to host BMG's crypto currency mining computer equipment units at its datacenter in Virginia Beach, Virginia (the "Facility").

4. The Hosting Agreement has a two year term and renews automatically for additional one year terms unless either party expresses an intention to not renew by written notice at least two months before the expiration of the term. *See* Exhibit 2, Art 9(1). Accordingly, BMG must give a notice of non-renewal by September 30, 2019 in order to avoid automatic renewal of the Hosting Agreement.

5. As consideration for the Debtor's hosting services, BMG pays the Debtor a monthly hosting fee. *See* Exhibit 2, Art. 2(1), App. D. The Debtor presents BMG with an invoice for the monthly hosting fee two months in advance, payable 30 days net, so that BMG can make payments in advance of the month in which the hosting service is to be rendered. *See* Exhibit 2, Art. 2(1)(c). The Hosting Agreement provides for a 10-business-day grace period before payments are considered past due. *Id*. at App. C(3).

6. Under the terms of the Hosting Agreement, the Debtor is obligated to ensure the normal function and condition of the engineering and technical infrastructures, as well as the electrical network, within the Facility. *See* Exhibit 2, App. B(5). The Debtor is also contractually obligated to immediately inform BMG of any emergencies that complicate or worsen the provision of service, to mitigate the consequences of such emergencies, and to take all reasonable measures for the preservation of BMG's equipment. *Id.* at App. B(11), (12). In addition, the Debtor is

---

[2] A copy of the Hosting Agreement is attached hereto as **Exhibit 2.**

obligated to respond to any under-performing equipment within one hour from detection by the monitoring system and must restore full operation of the miners within four hours from detection unless repairs are required. *Id.* at App. A. Should the miners require repairs by a manufacturer or third-party repairer, the Debtor must ship the miners out within two working days of detection. *Id*.

7. The Hosting Agreement further provides that the Debtor is to indemnify and hold harmless BMG from any and all losses, costs, liabilities, damages and expenses resulting from any breach of the Hosting Agreement. *See* Exhibit 2, Art. 8(3). In addition, the Debtor is obligated to maintain insurance or indemnity protection for BMG's miners. *See Id.* at Art. 8(4).

8. Currently, BMG hosts 4,500 miners at the Debtor's Facility. BMG's fleet of 4,500 miners generates net revenues of $9,969.23 per day (assuming BTC network hash power of 72.628 EH/S) and approximately $309,046 per 31-day month. *See* Affidavit of Joseph Chin, attached hereto as **Exhibit 3**.

9. On June 9, 2019, there was an electrical issue at the Debtor's Facility, which resulted in the destruction or damage of 325 of BMG's miners (the "Surge Event").[3] *Id.* As a direct result of the Surge Event, 177 miners were destroyed and 148 miners were damaged. *Id.*

10. To date, the 325 miners damaged during the Surge Event remain offline. As of July 15, 2019, BMG has lost approximately $25,920 in gross revenue ($720 per day for 325 miners) as a direct result of the Surge Event, as those 325 miners are offline, unable to generate revenue. *Id.* BMG's damages will continue to accrue at this rate until the miners are returned to service.

11. In order to replace the 177 miners that were destroyed in the Surge Event, BMG will have to spend at least $639 per unit (for used miners, if they are available on the market), for

---

[3] While the affidavit of Mr. Chin describes the power event as a "surge," it was subsequently learned that the damage to the BMG miners likely resulted from the shutdown of BCause Mining's cooling fans without a corresponding shutdown of the miners residing and operating in the BCause Mining Facility.

a total replacement cost of at least $113,103.[4] *Id.* BMG will have to spend approximately $450 per unit to repair the 148 damaged miners, for a total repair cost of $66,600. *Id.* Based on BMG's calculations, to date, the Surge Event caused BMG to suffer damages in an amount no less than $205,623 ($25,920 in monthly gross revenue, $113,103 in replacement costs, and $66,600 in repair costs).

12. Following the Surge Event, BMG has attempted to reconcile the full extent of the damages to its miners. In connection with those efforts, BMG chose to take advantage of the 10-business-day grace period provided in the Hosting Agreement and hold off on making any payment towards the September hosting fee until it could determine the extent of its damages.

13. On July 10, 2019, Shawn Dailey, the Debtor's Director of Technology, emailed BMG advising that he had been instructed to suspend mining for CoinGeek[5] at Bcause until the Debtor received communication regarding the outstanding July hosting fee pre-payment (which would pay for hosting during the month of August 2019). *See* Chin Affidavit, Exhibit 3. The Debtor suspended the operations of BMG's miners on July 10, 2019 despite having been paid to provide these services through at least July 31, 2019. This cessation of services of the remaining miners will only increase BMG's damages.

14. Notably, it does not appear that the Debtors have the resources, financial or otherwise, necessary to cure its breaches under the Hosting Agreement or pay damages to BMG for its post-petition breaches.

---

[4] In light of the limited availability of new and used miners, it is unrealistic that BMG could replace all of its damaged miners at this low price. The initial purchase costs of the miners ranged from $1,983.48 to $2,133.88 in 2018. However, in an abundance of caution, BMG has utilized this price point only for purposes of this Motion and reserves its right to assert damages for the entire cost of replacing its miners.

[5] CoinGeek is a name under which BMG does business.

**RELIEF REQUESTED**

15. BMG respectfully requests the entry of an order modifying the automatic stay to allow BMG to terminate immediately the Hosting Agreement for cause due to the Debtor's material and incurable breaches. In the alternative, if the Court will not authorize BMG to terminate the Hosting Agreement despite the Debtor's material breaches, then BMG requests the entry of an order modifying the automatic stay to allow BMG to immediately remove its property from the Facility in order to mitigate damages and issue a notice of non-renewal of the Hosting Agreement. Additionally, BMG seeks to modify the automatic stay in order to setoff its monthly hosting fees and obligations against the damages caused by the Debtor's material post-petition breaches of the Hosting Agreement.

**BASIS FOR RELIEF REQUESTED**

16. Section 362(d)(1) mandates that a court must accord relief from the automatic stay to any party who establishes "cause" for the relief. There is no definition of the term "cause" as used in section 362(d)(1). *In re Betzold*, 316 B.R. 906, 915 (Bankr.N.D.Ill.2004) (Schwartz, J.) (citing *In re Fernstrom Storage and Van Co.*, 938 F.2d 731, 735 (7th Cir.1991)). The determination of whether cause exists to lift the stay is a fact-intensive inquiry made on a case-by-case basis. *Id*. The bankruptcy court must look at the totality of the circumstances, balance the inherent hardships on all parties, and base its decision on the degree of hardship and the overall goals of the Bankruptcy Code. *In re Opelika Mfg. Corp.*, 66 B.R. 444, 449 (Bankr. N.D. Ill. 1986).

17. Factors generally looked to in determining whether to modify the stay for cause include interference with the bankruptcy, good or bad faith of the debtor, injury to the debtor and other creditors if the stay is modified, injury to the movant if the stay is not modified, and the proportionality of the harms from modifying or continuing the stay. *In re Milne*, 185 B.R. 280,

283 (N.D. Ill. 1995). Cause to lift the stay exists when the stay harms the creditor and lifting the stay will not unjustly harm the debtor or other creditors. *In re Opelika Mfg. Corp.*, 66 B.R. at 448.

### I. Cause Exists To Modify The Automatic Stay To Allow BMG To Immediately Terminate The Hosting Agreement.

18. The Debtor's decision to suspend hosting services to BMG coupled with the damage to BMG's property from the power surge on June 9, 2019 constitute material and incurable breaches of the Hosting Agreement. These material and incurable breaches by the Debtor give rise to the requisite cause for BMG to modify the automatic stay and immediately terminate the Hosting Agreement.

19. By this Motion, BMG seeks to modify the stay so that it may proceed to enforce its bargained for right to terminate for cause under the Hosting Agreement. The Hosting Agreement provides that either party may terminate the agreement for cause if the other party defaults in any material respect in the performance of its duties or obligations. *See* Exhibit 2, Art. 9(3). Here, the Debtor's decision to suspend BMG's hosting services despite the fact that BMG has ***already paid*** the Debtor for such services through July 31, 2019, as well as the fact that BMG's payment could not be deemed past due until July 15, 2019, constitute a material breach.

20. The Debtor's wrongful refusal to provide services that BMG has already paid for will cause BMG an additional approximate loss of $309,046 per 31-day month. *See* Exhibit 3, Chin Affidavit. Furthermore, the Debtor's refusal to perform under the Hosting Agreement, *i.e.*, to provide mining services for July, relieves BMG of its obligation to perform under the contract. *See In re Walbran*, No. 00 B 23784, 2000 WL 33668035, at *3 (Bankr. N.D. Ill. Nov. 22, 2000) ("[A] breach or repudiation by one party to a contract relieves the other party of the obligation to perform and takes a contract out of executory status for the purpose of § 365.").

21. The Debtor's failure to perform its obligations under the Hosting Agreement also constitutes a material breach. The Debtor's failure to ensure the normal function and condition of its Facility's electrical network—as it is required to do under the terms of the agreement—caused no less than 325 of BMG's miners to be destroyed or materially damaged to the point of no operation. Not only did the Debtor fail to prevent this damage, but it also failed to notify BMG of the damage within the timeframe required by the Hosting Agreement, failed to repair the miners or have the miners sent out for repair, and failed to otherwise mitigate the damage to BMG's miners. Based on BMG's calculations, the Surge Event caused BMG to suffer damages in an amount no less than $205,623 ($25,920 in monthly gross revenue, $113,103 in replacement costs, and $66,600 in repair costs), and these damages continue to accrue daily.

22. In light of these material and incurable breaches, the totality of the circumstances favor modification of the automatic stay. By failing to provide BMG services under the Hosting Agreement, the Debtor breached its obligations to BMG thereby depriving BMG of a substantial, bargained-for benefit, *i.e.*, mining service for BMG's miners. Allowing BMG to terminate the Hosting Agreement would not interfere with the Debtor's bankruptcy case because BMG has the contractual right to terminate the Hosting Agreement for cause. The automatic stay is not designed to deprive parties of the benefit of their bargain. *See Valley Forge Plaza Assocs. v. Schwartz*, 114 B.R. 60, 62 (E.D. Va. 1990) ("A debtor in bankruptcy has no greater rights or powers under a contract than the debtor would have outside of bankruptcy.").

23. The Hosting Agreement does provide for a 30-day cure period during which the defaulting party can attempt to substantially cure any material breach. *See* Exhibit 2, Art. 9(3). However, any attempt by the Debtor to cure these material breaches would most likely be futile. The post-petition damage to BMG's property gives rise to significant administrative claim which

increases daily. *See In re Atl. Container Corp.*, 133 B.R. 980, 992 (Bankr. N.D. Ill. 1991); *In re United Trucking Service, Inc.*, 851 F.2d 159, 162 (6th Cir. 1988). It is clear from the Debtor's financials that the estate does not have the resources to pay BMG's administrative claim and cure the material breaches within the next 30 days.

24.    BMG has already been harmed by the Debtor's actions, and it will continue to suffer if the automatic stay is not immediately modified. BMG's 325 damaged and destroyed miners remain off-line because of the power surge and the remaining miners are offline due to the Debtor's actions. BMG has no way to mitigate its damages. Delaying termination of the Hosting Agreement will only increase BMG's administrative expense claim against the estate.

25.    In contrast, the harm that the Debtor may suffer as a result of BMG exercising its contractual rights, if any, is relatively negligible. The Debtor will likely argue that modifying the stay would deprive it of monthly hosting fees from BMG. However, both parties have bargained for termination rights under the Hosting Agreement. Also, the loss of BMG's monthly hosting fees would be offset by a corresponding decrease in energy costs and would mitigate an administrative claim against the Debtor's estate that will increase daily if such mitigation cannot immediately take place.

26.    At bottom, cause exists to allow BMG to exercise its contractual rights and cut its continuing losses by immediately terminating the Hosting Agreement. BMG should not be forced incur additional damages over the next four months due to the Debtor's material breaches.

**II.   Cause Exists To Modify The Automatic Stay To Allow BMG To Issue A Notice of Non-Renewal And Mitigate Damages**

27.    In the alternative, BMG requests that the Court modify the stay to allow BMG to (i) immediately remove its miners from the Facility so that it may mitigate its damages and (ii) serve the Debtor with a notice of non-renewal.

28. The totality of the circumstances demonstrate that cause exists to modify the automatic stay and grant BMG this alternative relief. BMG has an obligation to mitigate its damages. *See* Restatement (Second) of Contracts § 350 cmt. b (1981)("As a general rule, a party cannot recover damages for loss that he could have avoided by reasonable efforts. Once a party has reason to know that performance by the other party will not be forthcoming, he is ordinarily expected to stop his own performance to avoid further expenditure."). There are four months left under the original term of the Hosting Agreement. *See* Exhibit 2, Art. 9(1). If BMG is unable to promptly act to mitigate its damages, its administrative claim for post-petition damages and breach will continue to increase. An ever increasing administrative claim will also increase the likelihood of the administrative insolvency of this bankruptcy case.

29. Again, the Debtor is refusing to provide mining services to BMG that BMG has already paid for and, as a result, BMG will incur damages of approximately $309,046 per month. *See* Exhibit 3, Chin Affidavit. Even if the Debtor decides to recommence mining on BMG's undamaged miners, BMG will still incur damages of $22,320 per month due to the 325 miners that are offline and the Debtor's failure to provide services and maintenance per the Hosting Agreement. By moving the operating miners to another facility, BMG will be able to cut off its continuing losses caused by the Debtor. Allowing BMG to remove its property from the Debtor's facility in order to mitigate the damages caused by the Debtor's material breaches in no way harms the Debtor. Also, as noted above, removal of the miners will cause a corresponding decrease in energy costs and would mitigate BMG's administrative claim against the estate.

30. In addition, pursuant to the terms of the Hosting Agreement, BMG must give notice of non-renewal by September 30, 2019 in order to avoid automatic renewal. *See* Exhibit 2, Art.

9(1). While BMG does not believe issuing such a notice would violate the automatic stay, BMG seeks authority to give notice of non-renewal to the Debtor out of an abundance of caution.

### III. Cause Exists To Modify The Automatic Stay In Order To Allow BMG To Exercise Its Setoff Rights.

31.   BMG further requests that the Court modify the automatic stay to allow it to setoff certain post-petition debts against its damages caused by the Debtor's conduct pursuant to section 553 of the Bankruptcy Code.

32.   "The allowance of a setoff is a decision that lies within the sound discretion of the bankruptcy court." *Meyer Med. Physicians Grp., Ltd. v. Health Care Serv. Corp.*, 385 F.3d 1039, 1041 (7th Cir. 2004). Described generally, "[t]he right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *See Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995).  In order to exercise setoff rights under section 553, a creditor must prove that there is "mutuality" between its claim against the estate, and the debt sought to be setoff. *In re S.N.A. Nut Co.*, 191 B.R. 117, 120 (Bankr. N.D. Ill. 1996). The general rule is that mutuality of debt is "satisfied when the offsetting obligations are held by the same parties in the same capacity (that is, as obligor and obligee) are valid and enforceable, and (if the issue arises in bankruptcy) both offsetting obligations arise either prepetition or postpetition, even if they arose at different times out of different transactions." *In re Doctors Hosp. of Hyde Park, Inc.*, 337 F.3d 951, 955 (7th Cir. 2003).

33.   The existence of the right of setoff alone constitutes "cause" sufficient to grant relief from the automatic stay to permit the creditor's setoff of mutual claims and debts.  *See In re Nuclear Imaging Sys. Inc.*, 260 B.R. 724, 730 (Bankr. E.D. Pa. 2002) ("[c]ourts have generally concluded that the existence of mutual obligations subject to set-off constitute sufficient 'cause'

to meet the creditor's initial evidentiary burden in seeking relief from the automatic stay"). A creditor can establish a prima facie showing of "cause" under section 362(d)(1) simply by demonstrating its right to setoff. *See Szymanski v. Wachovia Bank, N.A. (In re Szymanski)*, 413 B.R. 232, 243 (Bankr. E.D. Pa. 2009) ("[c]ourts generally recognize that, by establishing a right of setoff, the creditor has established a prima facie showing of 'cause' for relief from the automatic stay[.]") (*citing In re Ealy*, 392 B.R. 408, 414 (Bankr. E.D. Ark. 2008)); *see also United States v. Parrish (In re Parrish)*, 75 B.R. 14, 16 (N.D. Tex. 1987) (reversing the denial of motion to lift stay where the creditor had established right to setoff).

34. BMG and the Debtor hold post-petition claims against one another. BMG accrued its claims against the Debtor as a result of the Debtor's post-petition breaches of the Hosting Agreement. BMG, in turn, owes money to the Debtor for monthly hosting fees for the remaining term of the Hosting Agreement. BMG and the Debtor hold these mutual obligations in the same capacity – as service provider and service receiver. BMG's post-petition claim for damages against the Debtor is valid and enforceable because the Hosting Agreement provides that the Debtor must indemnify BMG from such damages. *See* Exhibit 2, Art. 8(3). Additionally, BMG is required to make prepayments to the Debtor for hosting services at the invoiced price. BMG's obligation to prepay for September services arose post-petition, as will its obligation to prepay for services for any other months under the Hosting Agreement. Therefore, each party is legally bound to make payment to the other on its respective obligations.

35. For the foregoing reasons, BMG has a valid right under section 553 of the Bankruptcy Code to setoff any monthly hosting fees owed to the Debtor against the damages resulting from the Debtor's material breaches of the Hosting Agreement. Consequently, cause

exists under section 362(d)(1) of the Bankruptcy Code to permit BMG relief from the automatic stay in order to effectuate its rights of setoff.

## WAIVER OF BANKRUPTCY RULE 4001

36. BMG respectfully requests that in the event the Motion is granted, that the stay under Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure be waived such that the terms and conditions of the Order approving the Motion shall be immediately effective and enforceable upon its entry to enable BMG to promptly act to mitigate its damages.

**WHEREFORE**, for the reasons stated above, BMG Operations, Ltd. respectfully requests the entry of an order: (a) granting BMG relief from the automatic stay to allow BMG to immediately terminate its Hosting Agreement with BCause Mining LLC; or, in the alternative, (b) granting BMG relief from the automatic stay to permit BMG to immediately remove its property from the Facility and issue a notice of non-renewal of the Hosting Agreement; and (c) granting BMG relief from the automatic stay to setoff its monthly hosting payments against its damages caused by the Debtor's material, post-petition breaches of the Hosting Agreement; (d) providing that the 14-day stay under Fed. R. Bankr. P. 4001(a)(3) is waived; and (e) granting such other and further relief as is just and equitable.

Dated: July 15, 2019

Respectfully submitted,

BMG OPERATIONS, LTD.

By:  */s/ Christina M. Sanfelippo*

Brian L. Shaw
Christina M. Sanfelippo
FOX ROTHSCHILD LLP
321 North Clark Street, Suite 1600
Chicago, Illinois 60654
(312) 517-9200  telephone

        (312) 517-9201 facsimile
        bshaw@foxrothschild.com
        csanfelippo@foxrothschild.com

        -and-

        Jennifer McLain McLemore
        (admitted *pro hac vice*)
        WILLIAMS MULLEN
        200 South 10th Street
        Suite 1600
        Richmond, VA 23219
        (804) 420-6000 telephone
        (804) 420-6507 facsimile