# EXHIBIT A

# Equipment Rent to Own Agreement

This Equipment Rent to Own Agreement ("Agreement") is made and entered into on July __, 2019 by and between:

(1) Bcause Mining LLC with its address at 192 Ballard Court, Suite 303, Virginia Beach, VA 23462 ("the Renter"), and
(2) SBI Crypto Co., Ltd. with its address at 1-6-1 Roppongi, Minato-ku, Tokyo, Japan ("the Owner")

The Renter and Owner are referred to as individually "Party" and collectively "Parties".

WHEREAS

(A) The Owner owns 3,500 cryptocurrency miners that were previously hosted at the Renter's hosting facility and are still located at the same facility in storage;
(B) Both Parties acknowledge these miners are in various conditions of operability, some of which may be damaged and in need of repair or replacement parts to operate;
(C) The Renter agrees to repair these miners at its own cost in order for the Renter to exclusively use and operate the repaired miners; and
(D) The Renter and Owner intend that ownership of all repaired miners and other related equipment shall transfer to the Renter upon full completion of this Agreement by way of rental payments made to the Owner being applied to the Purchase Price during the rental period.

NOW THEREFORE THIS AGREEMENT WITNESSES that in consideration of the promises, mutual covenants and agreements herein and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

### Article 1. Equipment

1. The Owner owns 3,500 Bitmain Antminer S9 cryptocurrency miners ("Miners") that are currently in storage located at the Renter's datacenter at 5465 Greenwich Road, Virginia Beach, VA. The list of Miner serial numbers is provided in Appendix A.
2. The primary components of the Miners are two (2) case fans, one (1) controller pcb board, and three (3) pcb hashboards ("Primary Components").

3. The Renter agrees to bear all costs of labor and parts, including but not limited to fans, power supply units ("psu"), and electronic PCB boards from within the Miners or through external procurement to repair as many Miners to the extent desired for rented use by the Renter.
4. "Equipment" shall be comprised of the Miners, Primary Components, power supply units, and any other related parts described in this Article 1.
5. The Renter shall not use any Equipment from the Owner's spare stocks or other equipment located in the Renter's datacenter without separate written consent by the respective owner of such parts or components.
6. While the Renter is diagnosing and repairing the 3500 Miners, the Renter shall provide a full list of serial numbers of all 3500 Miners regardless of selection. The Renter shall provide this report weekly until repair and diagnosis has finished, and shall provide updates to the report if there are any changes to the information contained within. The report shall classify equipment and provide, but not be limited to the following information:
    a. Serial numbers and list of equipment waiting for diagnosis;
    b. Serial numbers and list of equipment in diagnosis/repair process;
    c. Serial numbers and list of equipment that was repaired or diagnosed as operational;
    d. Serial numbers and list of equipment that has been diagnosed unrepairable and will not be selected for rental:
        i. Notes of any Miner serial numbers that do not contain all Primary Components and which components are missing;
    e. Total count of Components from unrepairable miners or miners that will not be selected, categorized as follows:
        (1) Broken fans
        (2) Broken hashboards
        (3) Broken controller boards
        (4) Working fans
        (5) Working hashboards
        (6) Working controller boards
7. After the Renter has completed the repair work it desires to do, the Renter shall return all unrepaired miners, removed and unused parts and Primary Components or Equipment into boxes and place the Equipment on shipping pallets and store in a secure location at the Renter's datacenter.
8. Notwithstanding Article 1.7 above, all extra hashboards deemed to be in working condition that have been removed but not placed into a repaired Miner shall be placed into the Owner's separate spare inventory.

## Article 2. Selection of Equipment to be Rented

1. The Renter will select Miners identified by its serial number and any other equipment or parts that the Renter wishes to rent, and provide the Owner a list of selected equipment before renting or operating the equipment.
2. The Renter may not operate the selected Equipment until the Owner accepts the selected equipment list in writing. The Owner shall not withhold acceptance without reasonable cause.
3. No Miner or Primary Components or parts except approved Equipment for rent may be used by the Renter, and the Owner retains full rights (including sale, use, relocation, disposal) to any remaining non-rented Equipment after the Owner has approved the Equipment to be rented.
4. The Renter shall operate rented Equipment only for the intended purposes of the said Equipment.
5. Both Parties agree that the Renter shall be responsible for all costs relating to the operation and use of the rented Miners and Equipment, and all economic value gained by the use of rented Miners and Equipment shall be for the benefit of the Renter alone.

## Article 3. Rental Payments

1. The total purchase price for each named Equipment is as follows, unless otherwise agreed upon by the Parties ("Purchase Price"):

| Equipment | Purchase Price | Rental Payment |
|---|---|---|
| S9 Miner | $225.00  Two hundred twenty-five dollars | $37.5 |
| Spare fan | $23.00  Twenty-three dollars | $3.84 |
| New PSU | $125.00  One hundred twenty-five dollars | $20.84 |
| Used PSU | $65.00  Sixty-five dollars | $10.84 |
| Controller board | $20.00  Twenty dollars | $3.34 |

2. Rental Payments shall be one sixth the Purchase Price of the Equipment listed above, rounded up to the nearest cent.
3. The period of rent for each rented Equipment shall be six (6) consecutive months, subject to Article 7. Termination.
4. The Renter shall pay the Owner the Rental Payments for all rented Equipment by the 30th day of each month to the Owner's designated bank account for six (6) consecutive months.

5. Rental Payment for any Miner repaired and approved for rent before the 15th day of a calendar month shall be due by the 30th day of the same month.
6. The Parties agree that each month's rent payment shall be applied towards the purchase of the corresponding Equipment.
7. If a Rental Payment is paid late, Renter agrees to pay the full outstanding amount with interest at an annual rate of five (5%) percent by the end of the following month in which the Rental Payment is due.
8. Both parties agree if Renter fails to complete the contemplated purchase of the rented equipment for any reason, no refunds or credits shall be dued to the Renter.

### Article 4. Taxes and Other Laws

1. Renter shall comply with all laws and regulations regarding possession, rental, use, or maintenance of the Equipment.
2. Renter shall promptly pay all taxes, fees, licenses, governmental charges, together with any penalties or interest thereon, relating to the possession, rent, use, or maintenance of the Equipment.

### Article 5. Transfer of Ownership Title

1. Renter shall have no claim to ownership nor partial ownership until ownership is legally transferred according to this agreement.
2. Ownership title of the equipment shall transfer immediately from Owner to Renter upon receipt of the outstanding balance of the Purchase Price of the Equipment to be owned, or after five (5) business days after confirmation by the Owner that the sixth Rental Payment has been made, whichever is the earlier.
3. Renter shall keep the equipment free and clear of any liens or other encumbrances, and shall not permit any act where Owner's title or rights may be negatively affected before ownership title has been transferred from the Owner to Renter.
4. Upon request, the Owner shall provide the Renter a list of serial numbers of Miners when ownership title has transferred from the Owner to the Renter as evidence of the title transfer.

### Article 6. Maintenance, Damage and Loss

1. Renter will at its sole expense, maintain the equipment for the duration of the Rental term.
2. During the duration of the lease, damage to any repaired Equipment, Miners, or Primary Components shall be repaired by the Renter at the Renter's expense.

3. In the event of loss of any Equipment, Miner, or Primary Components under the care of the Renter shall be replaced or compensated by the Renter to the Owner at the rates stated in this Agreement, unless otherwise agreed upon by both Parties.

## Article 7. Term and Termination

1. The rental term of this agreement shall be six (6) months after the last repaired miner is put into service, or upon full payment of outstanding balance of the Purchase Price of all Equipment to be purchased by the Renter.
2. The Renter may terminate the rent arrangement under this Agreement out of convenience prior to the completion of the term in Article 7.1, upon thirty (30) days prior notice. In such a case, the Renter shall immediately cease use of all rented Equipment and prepare the Equipment for return to the Owner.

## Article 8. Default

1. <u>BCause Liquidation</u>: This Agreement shall be automatically terminated upon resolution by the Renter's board of managers to liquidate Bcause LLC or Bcause Mining LLC. In case of such a resolution, the Renter shall immediately cease use of all rented Equipment and prepare the Equipment for return to the Owner.
2. <u>Termination for Cause</u>: If either Party defaults in any material respect in the performance of any of its duties or obligations set forth in this Agreement, including late Rental Payment by more than thirty (30) days ("Default"), and such Default is not substantially cured within forty-five (45) days after a written notice is given to the defaulting Party specifying the nature of the default, then the Party not in default may, by giving another written notice thereof to the defaulting Party, terminate this Agreement.

## Article 9. Liabilities

1. The Owner shall not be responsible for any damage or fatigue or value erosion to property, equipment, or personnel of the Renter or third-party in the repair, maintenance, or operation of the Equipment.

## Article 10. Governing Law and Dispute Resolution

1. <u>Governing Law:</u> This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without reference to principles of conflicts of laws.
2. <u>Dispute Resolution:</u> The exclusive jurisdiction and venue for any action arising out of or relating to the subject matter of this Agreement shall be the courts of the State of New York or the United States District Court for the District of New York.


IN WITNESS WHEREOF, the Parties hereto have caused this Equipment Rental Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized. This Agreement shall be executed in two originals and each Party shall retain one original respectively.


**Bcause Mining LLC**                              **SBI Crypto Co., Ltd.**


---------------------------------                  ---------------------------------
Name:                                              Name:          Carson Blake Smith
Title:                                             Title:  Representative Director
Date:                                              Date:

**Appendix A:** Serial Numbers of Miners