# IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| BCAUSE MINING, LLC | : | Case No. 19-10562 |
| | : | Honorable Janet S. Baer |
| Debtor. | : | |

## RESPONSE OF HOFFLAND PROPERTIES TO DEBTOR'S MOTION FOR EXTENSION OF TIME TO ASSUME OR REJECT LEASE FOR NON-RESIDENTIAL REAL ESTATE

Hoffland Properties, Inc. ("Hoffland"), by its undersigned Counsel, in response to the Motion for Extension of Time to Assume or Reject Lease for Non-Residential Real Estate (the "Motion"), filed by the Debtor, BCause Mining, LLC (the "Debtor") states as follows:

### Factual Background

1. Hoffland, as Lessor, entered into a Triple Net Lease (with Rider) (as amended, the "Lease") with the Debtor dated November 1, 2017, whereby Hoffland leased to the Debtor a commercial warehouse condominium located at Unit B, 5465 Greenwich Road, Virginia Beach, Virginia (the "Leased Premises"). A copy of the Lease is attached to the Debtor's Motion as **Exhibit A**.

2. The Leased Premises consist of approximately 105,861 square feet of space and the common elements appurtenant thereto. The current month rental is $61,624, payable in advance on the first business day of each and every month (See Lease, paras 3 and 10).

3. The Debtor filed its voluntary Chapter 11 Petition on April 11, 2019, and has continued in possession of the Leased Premises, continuing to derive a reported monthly income of $1 million from the use of the Leased Premises.

4. While Hoffland is mindful of the singular importance of this location to the Debtor's reorganization efforts, there are significant defaults, not involving the payment of monthly rent, which must be cured in order for this Lease to be assumed. Any plan of reorganization should provide for the cure of these defaults in order for any assumption extension to be approved.

5. First and foremost, the premises currently does not have an operable fire suppression system due to the Debtor's removal of the previous system and failure to complete a replacement system. The Debtor's own testimony has established that it will cost $217,000 to complete the partially completed replacement system. The Lease cannot be assumed, nor should any kind of substantial assumption extension be considered, without a definite plan to complete this required life/safety system and a definite funding commitment.

6. Second, Section 13 of the Lease, on page 4, states that the Debtor was not to make any modifications to the premises without Hoffland's consent. Nevertheless, substantial modifications were made to the premises, but no such consent was obtained. Extensive damage has occurred to the premises as a result of the Debtor's additional unauthorized modifications, and appropriate reserves should be set aside to protect Hoffland at the termination of the Lease. Based in part on an estimate from a contractor and discussions with knowledgeable commercial real estate agents, the more significant of the known, unauthorized modifications and the damages that have resulted from them are as follows:

    a) damages to the roof as a result of the holes cut in it for the installation of 90 large industrial roof fans - $200,000;

    b) damages for the removal of a wall and the removal of multiple overhead doors – $230,315; and

      c)    damages for holes drilled in the concrete floor – unspecified amount to be determined upon the vacating of the premises.

7.    Third, paragraph 5 of Rider no. 1 on page 20 of the Lease requires the Debtor to post a $3.4 million letter of credit as security for its obligations under the Lease. To date, no such letter of credit has been posted, but it, or similar security, will be required in order for the Debtor cure its defaults and assume the Lease.

### **Applicable Law**

8.    "The court may extend the period [for assumption or rejection of unexpired leases], prior to the expiration of the 120-day period, for 90 days on the motion of the trustee or lessor for cause." 11 U.S.C. § 365(d)(4)(B)(i).

9.    "The factors for consideration in determining whether cause for an extension are well established." Key Plaza I, Inc. v. Kmart Corp., No. 02 C 4086, 2003 WL 115240, at *4 (N.D. Ill. Jan. 13, 2003).

10.    Among other things, Courts consider:

- "[w]hether the lessor has a reversionary interest in the building built by the debtor on the landlord's land;

- "[w]hether the debtor has had time to intelligently appraise its financial situation and potential value of its assets in terms of the formulation of a plan;"

- "[w]hether the lessor continues to receive rental payments and whether the debtor fails to pay the rent reserved in the lease;"

- "[w]hether the lessor will be damaged beyond compensation available under the Bankruptcy Code due to the debtor's continued occupation;"

- "[w]hether the debtor has failed or is unable to formulate a plan when it has had more than enough time to do so;" and

- "[a]ny other factors bearing on whether the debtor has had a reasonable amount of time to decide to assume or reject the lease."

Id. at *4-5 (quoting Escondido Mission Vill. L.P. v. Best Prod. Co., 137 B.R. 114, 117 (S.D.N.Y. 1992)).

11.  When a lessee-debtor has failed to properly maintain the premises or pay for same, the lessor can be damaged beyond compensation available under the Code. See, e.g., In re Muir Training Techs., Inc., 120 B.R. 154, 159–60 (Bankr. S.D. Cal. 1990) ("At least one lessor may have been damaged beyond compensation available under the Bankruptcy Code because the premise's maintenance suffered due to Muir's failure to contribute its pro-rata share.").

12.  Substantial defaults exist under the Lease of the Debtor's only operating location, that must be cured as part of the Lease's assumption. In this case, the debtor's ongoing operations have not shown the ability to fund substantial capital outlays, such as those required to cure defaults under the Lease.  Indeed, the loss of one of the Debtor's largest customers, litigation with another of its largest customers and its contractor makes the availability of new equity essential to the assumption of the Lease, the cure of defaults thereunder and the adequate assurance of future performance thereunder.  Otherwise customers and creditors will not have the confidence needed to "bet" on the debtor's survival and make their own investment in plant and equipment.  While such an equity investment may come under a plan, the failure to timely file, fund and confirm a plan that explicitly deals with the Lease should terminate any such extension.

**Relief Requested**

WHEREFORE, Hoffland respectfully requests that, before the Debtor be granted an extension to assume or reject its Lease with Hoffland that the Debtor provide a plan (or in its plan of reorganization) to cure the substantial defaults which exist under the Lease and to fund that cure and that any extension be subject to termination in the event that the debtor fails to perform that plan or timely obtain the funding therefor.  Hoffland reserves the right to require the Debtor to

perform all other obligations under the Lease through the date of assumption or rejection of the Lease.

**HOFFLAND PROPERTIES, INC.**

By: /s/ J. Mark Fisher
J. Mark Fisher, Esq.
Sarah K. Angelino
Schiff Hardin LLP
233 South Wacker Drive
Suite 7100
Chicago, IL 60606
(312) 258-5500
mfisher@schiffhardin.com
sangelino@schiffhardin.com

*Counsel for Hoffland Properties, Inc.*

## CERTIFICATE OF SERVICE

I, J. Mark Fisher, an attorney, certify that on this 5th day of August, 2019, a true and correct copy of the foregoing was served on all counsel of record via Notice of Electronic Filing by filing with the Court's CM/ECF System.

By: /s/ J. Mark Fisher
J. Mark Fisher, Esq.
Schiff Hardin LLP
233 South Wacker Drive
Suite 7100
Chicago, IL 60606
(312) 258-5500
mfisher@schiffhardin.com

CH2\22394334.2