**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BCause Mining LLC, *et al*. | ) | Case No. 19-10562 |
| | ) | |
| Debtors. | ) | Honorable Janet S. Baer |
| | ) | |

**BMG OPERATIONS LTD.'S REPLY IN SUPPORT**
**OF ITS MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

BMG Operations LTD. ("BMG") respectfully states as follows for its reply in support of *BMG Operations LTD.'s Motion for Relief from the Automatic Stay* (the "Motion") [Dkt. No. 184],[1] and in response to the objections (collectively, the "Objections") filed by WESCO Distribution, Inc. ("WESCO") [Dkt. No. 196], the above-captioned debtors (the "Debtors") [Dkt. No. 198], and the Official Committee of Unsecured Creditors (the "Committee") [Dkt. No. 200]:

**INTRODUCTION**

The Objections largely mischaracterize or misinterpret the relief requested by BMG in the Motion. To be clear, BMG is seeking to modify the automatic stay so that it can immediately terminate the Hosting Agreement *for cause* due to the Debtor's material and incurable breaches. In the alternative, if the Court will not authorize BMG to immediately terminate the Hosting Agreement on the basis of the Debtor's material breaches, then BMG seeks to modify the automatic stay so that it may immediately remove its miners from the Facility in order to mitigate damages caused by the Debtor's actions and issue a notice of non-renewal of the Hosting Agreement. In addition, BMG seeks to modify the automatic stay in order to setoff its post-petition monthly hosting fees and obligations against the damages caused by the Debtor's material post-

---

[1] All capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

1

187326\00001\100860243.v2

petition breaches of the Hosting Agreement. By this request, BMG seeks to be relieved of its monthly obligation to prepay hosting fees until such time as an agreed reconciliation of its recent damages can be determined. This request is made all the more urgent since July 10, 2019, when the Debtors unilaterally shut down BMG's ability to mine at the Facility altogether.

While BMG originally supported the Debtors' efforts in these cases, BMG made the decision to file its Motion as a result of the significant damage done to its miners on June 9, 2019, as well as the Debtors' related and subsequent conduct giving rise to continuing and other material breaches of the Hosting Agreement. The June 9, 2019 Surge Event caused damage to BMG's miners because the power strips that the miners were plugged into had no surge protection feature. *See* Supplemental Affidavit of Joseph Chin, attached hereto as **Exhibit A**. The Debtor's failure to ensure the normal function and condition of its Facility's engineering and technical infrastructure and electrical network constitutes a material breach of the Hosting Agreement. The Motion details this breach and well as several other material breaches. While the Debtors, the Committee, and WESCO filed Objections to the Motion, they failed to dispute several key points. Accordingly, it is undisputed that:[2]

- BCause Mining disconnected BMG's miners on July 10, 2019 and refused to provide hosting services to BMG after that date despite the fact that BMG had already paid for hosting services through July 31, 2019 (*see* Motion, ¶19);

- the Debtor's decision to suspend hosting services to BMG coupled with the damage to BMG's property on June 9, 2019 constitute material and incurable breaches of the Hosting Agreement (*see* Motion, ¶18);

- the Debtor's failure to perform its obligations under the Hosting Agreement also constitutes a material breach (*see* Motion, ¶21);

---

[2] *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007) ("A failure to oppose an argument permits an inference of acquiescence and acquiescence operates as a waiver.") (quotation omitted).

187326\00001\100860243.v2

- the Debtor's failure to ensure the normal function and condition of its Facility's electrical network caused no less than 325 of BMG's miners to be destroyed or materially damaged to the point of no operation (*see* Motion, ¶21);

- the Debtor failed to notify BMG of the July 9, 2019 damage within the timeframe required by the Hosting Agreement, failed to repair the miners or have the miners sent out for repair, and failed to otherwise mitigate the damage to BMG's miners (*see* Motion, ¶21);

- any attempt by the Debtor to cure these material breaches in the 30-day cure period would be futile (*see* Motion, ¶23); and

- BMG has no way to properly mitigate its damages absent the relief requested in the Motion (*see* Motion, ¶24).

Notably, after filing its Motion, BMG learned more disturbing news. On July 10, 2019, instead of disconnecting BMG's miners entirely, the Debtors chose to connect BMG's miners to their own mining software and began mining bitcoin for themselves using BMG's property ***without BMG's permission***.[3] So, the Debtors are now mining bitcoin using BMG's miners, refusing BMG's request that its miners be returned to it, and collecting profits from their mining activities without any compensation, consideration, or even proper notice to BMG. These acts amount to conversion of BMG's property. The Debtors troubling—not to mention ***illegal***—actions are all the more reason why cause exists to grant BMG relief from the automatic stay. BMG has already suffered significant harm at the hands of the Debtors, and it will continue to suffer if the automatic stay is not immediately modified.

---

[3] Interestingly, the Debtors' Objection makes no mention of their unilateral decision to appropriate BMG's miners and run their own mining software on the miners for their own profit.

**ARGUMENT**

**I. BMG's Motion Is Procedurally Proper.**

Contrary to the Debtor's contention, BMG's Motion is procedurally proper. The Debtors' contention that BMG's requested relief necessitates a declaratory finding of BMG's interest in the subject property and its right to turnover and possession of the subject property borders on the absurd. *See* Debtors Obj., ¶23.

BMG is seeking to exercise its contractual rights and terminate the Hosting Agreement for cause – i.e., the Debtor's post-petition breach. Not one party opposing the Motion disputes BMG's assertions that BCause Mining breached the Hosting Agreement or that the miners are the property of BMG. Furthermore, section 5(1) of the Hosting Agreement explicitly states: "[t]he parties acknowledge and agree that the Units mentioned in this Agreement are the sole property of BMG. *In no event shall BCause claim the ownership of any such Units*." Upon termination of the Hosting Agreement, the Debtor is **contractually obligated** to return BMG's miners "as soon as reasonably possible[.]" *See* Motion, Ex. 2, App. B(10). In light of these contractual provisions, there can be no good faith dispute as to BMG's interest in the miners and its right to turnover and possession of the miners. *See Valley Forge Plaza Assocs. v. Schwartz*, 114 B.R. 60, 62 (E.D. Va. 1990) ("A debtor in bankruptcy has no greater rights or powers under a contract than the debtor would have outside of bankruptcy.").

The case law that the Debtors cite in support of the argument that the Motion is procedurally improper is inapposite. In *Matter of Perkins*, the creditors had filed a motion seeking an order requiring the Teachers' Retirement System of the State of Illinois to turn over funds in debtor's account to the trustee. 902 F.2d 1254, 1256 (7th Cir. 1990). The creditors contended that the funds were property of the estate. *Id*. Here, BMG seeks to terminate the Hosting Agreement.

4

As a result, the provision of the Hosting Agreement that obligates the Debtor to return BMG's property to it as soon as reasonably possible upon termination is triggered. The property in question is not property of the bankruptcy estate but property of BMG.

In *In re Lionel Corp.*, the creditor sought an order directing the debtor to pay forthwith all administration expenses due and owing to the creditor and terminating the lease between the creditor and the debtor. 23 B.R. 224, 225 (Bankr. S.D.N.Y. 1982). The *In re Lionel Corp.* opinion proffers scarce legal reasoning in support of its holding. However, the court did state that the creditor's motion "seeking relief with respect to the recovery of money, the recovery of property, and the determination of an interest in property" was procedurally defective as such relief was "appropriate only in the context of an adversary proceeding." *Id.* at 225. Here, the Motion does not seek to compel the Debtors to pay BMG its administrative expenses in full, as was requested in *In re Lionel Corp.*[4] And while BMG does seek to terminate the Hosting Agreement and have its miners returned, BMG has the contractual right to do so and there is no need for the Court to determine the parties' interests in the miners because the Hosting Agreement states that the miners are the sole property of BMG. At bottom, the Debtors have failed offer any evidence to support their argument that a motion for stay relief on the basis of breach of contract must be pursued as an adversary proceeding.

## II. BMG'S Requested Relief Is Permitted Under Hosting Agreement.

The Hosting Agreement allows BMG to terminate for cause if the Debtor defaults in any material respect in the performance of its duties or obligations. *See* Motion, Ex. 2, Art. 9(3). While the Hosting Agreement does provide for a 30-day cure period during which the defaulting party – i.e., the Debtor – can attempt to substantially cure any material breach, *see* Motion, Ex. 2, Art.

---

[4] As soon as practicable after BMG is able to liquidate the amount of its post-petition damages, it expects to bring a Motion to Compel Payment of Administrative Claim arising from the Debtors' post-petition breaches.

9(3), it is *undisputed* that any attempt by the Debtor to cure these material breaches would be futile. But even if the Debtor could cure the material breaches relating to BMG's miners outlined in the Motion, the Debtor has still failed to maintain the Facility in the manner required under the Hosting Agreement. For example, the landlord of the Facility, Hoffland Properties ("Hoffland"), in its *Response of Hoffland Properties to Debtor's Motion for Extension of Time to Assume or Reject Lease for Non-Residential Real Estate* [Dkt. No. 207] (the "Hoffland Response"), contends that the Facility "currently does not have an operable fire suppression system" and it will cost approximately $217,000 to complete the system. *See* Hoffland Response, ¶5. The Debtor is contractually obligated to provide a fire prevention system at the Facility. *See* Motion, Ex. 2, App. B(5). It is doubtful that the Debtors have the resources, financial or otherwise, necessary to pay damages to BMG for its post-petition breaches of the Hosting Agreement, and also finance an operable fire suppression system in the Facility.

Therefore, while the Hosting Agreement does not explicitly provide for immediate termination for cause, under the circumstances this expedited termination is appropriate. BMG should not have to continue to accrue damages stemming from the Debtor's actions for an additional 30 days or be forced to incur continued risk that is inherent with its miners remaining in BCause Mining's Facility. And finally, the Debtor should not be able to continue to benefit from its misappropriation of BMG's property.

### III. BMG Is Entitled To The Right Of Setoff.

First, without taking a position as to which state (or country) law applies, BMG is entitled to a right of setoff under all applicable laws. The Hosting Agreement states that the agreement shall be governed by the laws of Singapore. *See* Motion, Ex. 2, Art. 10(6). Singapore law recognizes the right of set-off. *See* Section 88(1) of the Bankruptcy Act ("Where there have been

any mutual credits, mutual debts or other mutual dealings between a bankrupt and any creditor, the debts and liabilities to which each party is or may become subject as a result of such mutual credits, debts or dealings shall be set-off against each other and only the balance shall be a debt provable in bankruptcy."); *see also Armada (Singapore) Pte Ltd. v. N. China Shipping Co., (BVI)*, No. 09 CIV. 5069(WHP), 2010 WL 481061, at *3 (S.D.N.Y. Jan. 14, 2010) (recognizing the right of set-off under Singapore law); *see also* Section 219 of the Insolvency, Restructuring And Dissolution Act 2018. Additionally, the two states most connected to the dispute, Illinois and Virginia, both recognize the right of setoff. *See, e.g.*, *Birdsong Corp. v. Battaglia*, Case No. 03 C 604, 2004 WL 1557948 (N.D. Ill. July 8, 2004) ("Illinois recognizes the common law right of setoff, provided that valid and enforceable offsetting obligations are held in the same capacity by the respective parties.") (citing *In re Doctors Hosp. of Hyde Park, Inc.*, 337 F.3d 951, 955 (7th Cir. 2003); *see also In re Circuit City Stores, Inc.*, No. 08-35653, 2009 WL 4755253, at *3 (Bankr. E.D. Va. Dec. 3, 2009) ("[I]n Virginia, a setoff must be a debt … and that against which it is to be set off must likewise be a debt." "In order for a debt due to be used as a setoff, the party seeking the setoff must show that the debts are mutual, which means the debts are due and owing between the same parties.").

Second, BMG understands that it must ultimately move for allowance of an administrative expense claim against Debtor BCause Mining. The Motion was not intended as an end-run around an appropriate procedural vehicle for asserting and gaining allowance of its post-petition claims against the Debtor. Instead, BMG simply seeks to hold off in making additional payments to the Debtors until the full amount of its damages can be calculated and until it can be determined whether the Debtor will be able to compensate BMG for the damages.[5]   The right of setoff is

---

[5] BMG's Motion was filed on July 15, 2019 – the last day of the 10-business-day grace period before BMG's payment to BCause Mining for September hosting fees would be considered past due.

7

intended to avoid "the absurdity of making A pay B when B owes A.'" *See Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995). Considering that BMG has already sunk over ***eight million dollars*** into the Debtor's operations,[6] and that was before the instant exposure and losses, BMG would be unjustly harmed if it were forced to continue paying the Debtor for hosting services while being denied such services and calculating the full extent of its damages that have resulted from the Debtors' multiple material breaches.

**IV. BMG's Revenue Loss Calculations Are Not "Vastly Overinflated."**

As of the date of the Motion, BMG had suffered damages in an amount no less than $205,623[7] in connection with the 325 miners damaged at the Facility. *See* Motion, ¶21. Of that amount, approximately $25,920 in damages was attributed to a loss of monthly gross revenue. *Id*. In addition, the Debtor's wrongful refusal to provide services that BMG has already paid for will cause BMG an additional approximate loss of $309,046 per 31-day month. *See* Motion, ¶20. The Committee argues that BMG's calculations of its lost revenue were "vastly overinflated" because its calculations assume a bitcoin price of $12,000 USD. *See* Committee's Obj., 3. Instead, the Committee argues that BMG should have used an average bitcoin price of $10,365.99—$1,634.01 less than BMG's assumed bitcoin price. *Id*. The Committee does not explain how a 15% difference in bitcoin price has such a drastic impact on BMG's loss of revenue calculations. But even if it did, the magnitude of BMG's lost revenue has no impact on BMG's right of setoff.

---

[6] *See* BMG's Proof of Claim, attached hereto as **Exhibit B**.

[7] This amount in all actuality is grossly deflated as it is unknown how long it will take, or how much it will cost, to obtain replacement miners. As of the filing of the Motion, prices for replacement miners ranged from $639 (for used equipment) up to and over $8,000 (for new equipment). For purposes of the Motion, BMG relied on the conservatively low $639 figure.

**V. The Debtors' Unsupported Allegations Fail To Demonstrate That BMG Breached The Hosting Agreement.**

As an initial matter, the Debtor failed to respond to allegations that it breached the Hosting Agreement and did not dispute that it suspended BMG's hosting services or that significant damage was done to BMG's property due to an overheating event on June 9, 2019. Instead, the Debtor countered BMG's assertions with unsupported allegations that BMG *also* breached the Hosting Agreement.

First, the Debtors point to a truncated quotation of section 9(2)b. of the Hosting Agreement in support of the contention that BMG is responsible for an unamortized balance of $2.6 million relating to capital expenditures. *See* Debtors Obj., ¶¶ 12, 17. But section 9(2)b of the Hosting Agreement is inapplicable here. Under section 9(2), BMG may terminate the Hosting Agreement *for convenience* if the fees paid by BMG under the terms of the agreement are "greater than the value of the cryptocurrency mined as a result of the services provided by BCause for a period of two consecutive months…." *See* Motion, Ex. 2, Art. 9(2). Section 9(2) states that BMG shall not be subject to a termination fee for terminating for convenience provided that the sub-clauses are satisfied and BMG is liable for all of BCause's direct and indirect damages arising from termination of the service. *See Id* at Art. 9(2)b.

But BMG seeks to terminate the Hosting Agreement *for cause* pursuant to section 9(3). *See* Motion, ¶19. Section 9(3) provides that either party may terminate the Hosting Agreement for cause if the other party defaults in any material respect in the performance of its duties or obligations. *See* Motion, Ex. 2, Art. 9(3). This section explicitly states: "[i]f BMG terminates this Agreement in accordance with this Article 9(3), BMG shall not be subject to a Termination Fee." This provision makes no reference to section 9(2)b. or any liability relating to any remaining portions of contracted electrical service and remaining amortization on improvements.

Accordingly, contrary to the Debtors' assertion, there are no "obligations" that BMG must satisfy before its equipment can be returned.

Second, the Debtors contend—without an iota of evidence—that BMG has failed to provide sufficient spare parts as required by section 3(7) of the Hosting Agreement in eight (8) of the last eighteen (18) months. Without evidence of such a contention, the Debtors argument is waived. *Cf. Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) (arguments that are "underdeveloped, conclusory, or unsupported by law" are waived). Nonetheless, BMG disputes the Debtors' contention. BMG has used commercially reasonable efforts, as required by the Hosting Agreement, to maintain spare parts inventory with BCause Mining. *See* Exhibit A, Chin Affidavit. Since June 2018, BMG has provided BCause Mining with approximately 1,650 replacement fans and approximately 600 replacement power supply units (PSUs). *Id*. In addition, BCause Mining is in possession of 60 extra miners owned by BMG and BMG authorized BCause Mining to use these extra miners to replace broken units. *Id*.

Third, BMG has not breached the Hosting Agreement by underpaying for pre-petition and post-petition services. As the Debtors noted, the "underpayments" in question were made pursuant to a repayment plan—not because the Debtor had extended credit to BMG but because BMG had advanced approximately ***eight million dollars*** to the Debtor. *See* Exhibit B, BMG's POC.  BMG agreed to allow the Debtor to repay this advance by providing BMG with $70,000.00 credits on its monthly hosting fee advances. *Id*. The current outstanding balance of the advanced funds is approximately $6,954,750.81. *Id*. Indeed, the referenced payment plan was an accommodation given to the Debtor by BMG so that the Debtor could continue to operate its business at a time when it could not pay BMG the amounts owed to it. The Debtors' assertion that these pre-petition setoffs made in connection with this repayment plan were somehow wrongful is without merit as

187326\00001\100860243.v2

evidenced by the Debtors' failure to cite any supporting law. With respect to the post-petition setoffs, BMG understands that it is an issue that such setoffs were taken without Court authority. However, it is not an issue of contract law and thus cannot be considered a breach of the Hosting Agreement. Instead, these post-petition setoffs should be addressed in connection with BMG's assertion of setoff rights for post-petition damages.

Finally, even if there was some merit to the Debtors' assertions that BMG breached the Hosting Agreement, the Debtors failed to explain how BMG's alleged breach precludes its right to terminate the Hosting Agreement for cause. Accordingly, the Court should grant BMG relief from the automatic stay.

**WHEREFORE**, for the reasons stated above, BMG Operations, Ltd. respectfully requests the entry of an order: (a) granting BMG relief from the automatic stay to allow BMG to immediately terminate its Hosting Agreement with BCause Mining LLC; or, in the alternative, (b) granting BMG relief from the automatic stay to permit BMG to immediately remove its property from the Facility and issue a notice of non-renewal of the Hosting Agreement; and (c) granting BMG relief from the automatic stay to setoff its monthly hosting payments against its damages caused by the Debtor's material, post-petition breaches of the Hosting Agreement; (d) providing that the 14-day stay under Fed. R. Bankr. P. 4001(a)(3) is waived; and (e) granting such other and further relief as is just and equitable.

Dated: August 6, 2019    Respectfully submitted,

BMG OPERATIONS, LTD.

By:   */s/ Christina M. Sanfelippo*

Brian L. Shaw
Christina M. Sanfelippo
FOX ROTHSCHILD LLP
321 North Clark Street, Suite 1600
Chicago, Illinois 60654
(312) 517-9200  telephone
(312) 517-9201  facsimile
bshaw@foxrothschild.com
csanfelippo@foxrothschild.com

-and-

Jennifer McLain McLemore
(admitted *pro hac vice*)
WILLIAMS MULLEN
200 South 10th Street
Suite 1600
Richmond, VA 23219
(804) 420-6000  telephone
(804) 420-6507  facsimile