IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Case No. 19-10562 |
| | ) | |
| BCause Mining, LLC, | ) | Judge Janet S. Baer |
| | ) | Chapter 11 |
| debtor/debtor-in-possession. | ) | (Jointly Administered) |

**AMENDED EXHIBIT A**
**MOTION FOR APPROVAL OF SETTLEMENT PURSUANT TO**
**RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY**
**<u>PROCEDURE ON SHORTENED NOTICE</u>**

**<u>DEBTORS' COUNSEL:</u>**
Scott R. Clar (Atty. No. 06183741)
Crane, Simon, Clar & Dan
135 S. LaSalle Street, Suite 3705
Chicago, Illinois 60603
312-641-6777
sclar@cranesimon.com

## SETTLEMENT AGREEMENT

This settlement agreement (this "Settlement Agreement") by and between: (i) BMG Operations Ltd. ("BMG"); (ii) BCause Mining LLC ("Mining"); and (iii) BCause LLC ("LLC" and together with Mining, the "Debtors," and together with BMG, the "Parties," and each, a "Party") is made and entered into as of September ___, 2019 ("Execution Date").

## RECITALS

**WHEREAS**, on April 11, 2019 ("Mining Petition Date"), Mining filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code, that is now pending before the United States Bankruptcy Court for the Northern District of Illinois ("Bankruptcy Court") as Case No. 19 B 10562 ("Mining Case");

**WHEREAS**, on April 12, 2019 ("LLC Petition Date" and together with Mining Petition Date, the "Petition Dates"), LLC filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code, that is now pending before the Bankruptcy Court as Case No. 19 B 10731 ("LLC Case" and together with Mining Case, "Cases");

**WHEREAS**, on November 30, 2017, Debtors and BMG entered into a Hosting Services Agreement (the "Hosting Agreement"), pursuant to which Mining agreed to provide services and to host BMG's crypto currency mining computer equipment units (collectively, "Miners") at its datacenter in Virginia Beach, Virginia (the "Facility"). As consideration for Mining's hosting services, BMG agreed to pay in advance a monthly hosting fee (the "Monthly Hosting Fee");

**WHEREAS**, in February and March 2018, BMG agreed to advance to the Debtors certain funds in addition to the Monthly Hosting Fee. In total, BMG advanced the Debtors in excess of $7,749,000.00 (the "Advance");

**WHEREAS**, BMG and the Debtors also agreed that the Advance would be repaid in part through monthly $70,000 set offs against the Monthly Hosting Fees due Mining (the "Setoff Credits");

**WHEREAS**, as of the Petition Dates, the balance remaining on the Advance net of pre- and post-petition Setoff Credits was $6,808,599.64 (the "Advance Claim");

**WHEREAS**, in or around September 2018, BMG advanced $750,000 to the Debtors (the "Customs Advance") to pay for $746,531.94 in fees imposed by U.S. Customs and Border Protection ("USCBP") on account of the importation of BMG's Miners. However, the Debtors never paid these amounts to USCBP;

**WHEREAS**, on June 9, 2019, there was an electrical issue at Mining's Facility that resulted in the destruction of or damage to 325 Miners (the "Surge Event"). As a direct result of the Surge Event, 177 Miners were destroyed and 148 Miners were damaged. These 325 Miners remain offline, unable to generate revenue for BMG;

**WHEREAS**, following the Surge Event, in July of 2019, BMG withheld its September hosting fee as it attempted to ascertain the full extent of the damage to its 325 Miners and to BMG's cashflow resulting from a reduced number of Miners operating at the Facility;

**WHEREAS**, on July 10, 2019, the Debtors disconnected BMG's remaining, operational Miners at the Facility due to BMG's non-payment of the September hosting fee, and then the Debtors reconnected BMG's remaining, operational Miners to the Debtors' own mining software and began mining bitcoin for themselves using BMG's Miners without BMG's permission;

**WHEREAS**, on July 15, 2019, BMG filed *BMG Operations Ltd.'s Motion for Relief from the Automatic Stay* [Dkt. No. 184] (the "Stay Motion"), seeking the entry of an order granting BMG relief from the automatic stay to (i) allow BMG to immediately terminate its Hosting

Agreement with Mining or, in the alternative, (ii) permit BMG to immediately remove its property from the Facility and issue a notice of non-renewal of the Hosting Agreement, and (iii) permit BMG to set off its damages caused by the Surge Event against its monthly hosting payments;

**WHEREAS**, on July 30, 2019, the Debtors filed the *Response of the Debtors to BMG Operations LTD.'s Motion for Relief from the Automatic Stay* [Dkt. No. 198] (the "Response"), disputing many of the allegations and requests for relief in the Stay Motion;

**WHEREAS**, prior to the execution of this Settlement Agreement, Mining provided BMG with an accounting of all bitcoins and other digital assets Mining generated from its unauthorized use of the Miners since July 10, 2019, and the associated expenses incurred in the mining activity. The total value of these assets as of the Execution Date is approximately $350,000.00, and this amount is currently held by Mining for the benefit of BMG (the "BMG Funds");

**WHEREAS**, to avoid the costs and risks of further litigation of the claims and issues between the Parties, the Parties have determined to resolve their disputes on the terms of, and subject to the conditions set forth in, this Settlement Agreement;

**WHEREAS**, each of the Parties to this Settlement Agreement agrees to bear its own costs and expenses, including attorneys' fees, arising out of the matters related to this Settlement Agreement; and

**WHEREAS**, this Settlement Agreement will become binding upon the Bankruptcy Court's order approving this Settlement Agreement becoming final and non-appealable (the "Effective Date").

**NOW, THEREFORE**, in consideration of the promises aforesaid and the mutual covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1. **Recitals Incorporated.** The recitals and prefatory phrases and paragraphs set forth above are hereby incorporated in full as mutually agreed representations of fact and made a part of this Settlement Agreement.

2. **Control of BMG's Miners**. Mining will, upon the Execution Date, restore to BMG control over BMG's Miners located at the Facility, and the Debtors expressly agree that they will not use any of BMG's equipment other than for the exclusive benefit of BMG.

3. **Termination of Hosting Agreement**. The Parties agree that the Hosting Agreement will terminate on October 31, 2019 (the "Termination Date"). Following the Termination Date, on or after November 1, 2019, BMG shall be permitted to remove all of its the Miners from the Debtors' Facility at BMG's expense. The Debtors shall reasonably cooperate with BMG regarding the removal of the Miners from the Debtors' Facility.

4. **Hosting Fees**. Within five business days after the Effective Date, BMG will pay to Mining three months of Monthly Hosting Fees that are due or will come due under the Hosting Agreement for the period ending October 31, 2019 (i.e., Monthly Hosting Fees that were due in July ($250,000) and August ($250,000), and will come due in September ($250,000) for October services under the Hosting Agreement) (the "Hosting Settlement Fees"). Upon tendering these Hosting Settlement Fees to Mining, BMG will have no further payment obligations to the Debtors for hosting fees or otherwise under any agreements between the Parties.

5. **Bitcoin and Proceeds**. Within five business days after the Effective Date, Mining shall transfer to BMG all of the BMG Funds. Alternatively, on the Effective Date, instead of requiring a transfer of the Hosting Settlement Fees and a separate transfer of the BMG Funds, the Parties may agree to a single transfer between the Parties in an amount that reflects the net of the obligations between the Parties, the BMG Funds and the Hosting Settlement Fees, $400,000.00.

6. **BMG's Claim**. BMG's proof of claim filed in Mining's bankruptcy case, identified on the claims' register as claim no. 17 ("Claim No. 17"), shall be allowed in the total amount of $7,558,599.64. Claim No. 17 is freely transferrable by BMG. Claim No. 17 is comprised of:

(a) The Lending Arrangement Balance of $6,808,599.64; plus

(b) The $750,000 Customs Advance; provided, however, that the Customs Advance amount shall be reduced on a dollar-for-dollar basis by any plan payments paid to USCBP by the Debtors on account of USCBP's claim for fees arising from the importation of the Miners.

7. **Plan of Reorganization**. BMG agrees to vote in favor of the proposed plan of reorganization of the Debtors (the "Plan") provided that (a) the terms of the Plan are consistent with the terms of this Settlement Agreement, (b) Claim No. 17 is treated in the same manner as the claims of all other general unsecured creditors are treated under the Plan, and (c) the Plan provides for not less than an 80% distribution to general unsecured creditors on account of their allowed claims, with such payments to be completed in four years or less.

8. **Mutual Releases**.

(a) Upon the Effective Date, BMG, its present and former agents, officers, managers, employees, attorneys, affiliates, subsidiaries and successors (the "BMG Releasing Parties"), release and forever discharge, as of the Execution Date, each Debtor, its present and former agents, officers, managers, employees, subsidiaries, attorneys, and successors (the "Debtor Released Parties"), of and from any claims, damages, actions, suits, causes of action, rights, liens, demands, obligations and/or liabilities based upon or arising from or in any manner relating to (i) the Hosting Agreement; (ii) any physical damage to BMG's Miners at the Facility occurring on or prior to the Execution Date; (iii) BMG's loss of income as a result of damage to the Miners

in the Surge Event; (iv) Mining's conversion of BMG's Miners; and (v) any pre- or post-petition refunds and/or Setoff Credits that Mining may owe under the Hosting Agreement or Advance Claim, *provided, however*, that nothing contained herein shall be deemed to release any obligations that each Debtor has under this Settlement Agreement, BMG's allowed Claim No. 17, or the Plan.

(b) Upon the Effective Date, each Debtor, its present and former agents, officers, managers, employees, attorneys, subsidiaries, and successors (the "Debtor Releasing Parties"), release and forever discharge, as of the Execution Date, BMG and its present and former agents, officers, managers, employees, attorneys, subsidiaries, affiliates and successors (the "BMG Released Parties"), of and from any claims, damages, actions, suits, causes of action, rights, liens, demands, obligations and/or liabilities based upon or arising from or in any manner relating to (i) the Hosting Agreement, (ii) the Advance Claim and (iii) any pre- or post-petition refunds and/or Setoff Credits that BMG may owe or claim under the Hosting Agreement or with respect to the Advance Claim, *provided, however*, that nothing contained herein shall be deemed to release any obligations that BMG has under this Settlement Agreement or the Plan.

9. **Court Approval.** The Debtors shall promptly file and present a motion to the Bankruptcy Court seeking approval of this Settlement Agreement. The Motion shall request relief requiring that the order approving the Settlement Agreement be effective immediately.

10. **Resolution of Stay Motion.** Promptly after the Effective Date, BMG shall take all actions necessary to withdraw the Stay Motion.

11. **Enforcement of this Settlement Agreement.** Notwithstanding anything in this Settlement Agreement to the contrary, to the extent that an action is brought to enforce any provisions of this Settlement Agreement or the Plan, the prevailing party in that action shall be entitled to an award of its reasonable attorneys' fees and costs of maintaining the action.

12. **Jurisdiction.** This Settlement Agreement shall be construed and governed by the laws of the Commonwealth of Virginia and the Bankruptcy Court shall retain jurisdiction to interpret and enforce the provisions of this Settlement Agreement.

13. **Amendment of Agreement.** This Settlement Agreement shall not be amended except by a writing signed by all of the Parties hereto.

14. **Binding Effect.** This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors, including a subsequently appointed bankruptcy trustee, personal representatives, heirs, legatees, executors, administrators and assigns, as applicable.

15. **Entire Agreement.** This Settlement Agreement constitutes the entire agreement of the Parties hereto as to the subject matter hereof. The undersigned acknowledge that there are no communications or oral understandings contrary, different, or that in any way restrict this Settlement Agreement, and that all prior agreements or understandings within the scope of the subject matter of this Settlement Agreement are, upon the execution and delivery of this Settlement Agreement, superseded, null and void.

16. **Execution by Electronic Signatures and in Counterparts.** The Parties agree that electronic signatures shall have the same force and effect as original signatures. This Settlement Agreement may be executed in one or more counterparts, each counterpart to be considered an original portion of this Settlement Agreement.

17. <u>Construction</u>. The Parties agree that each has reviewed this Settlement Agreement with its counsel and that each Party fully understands and voluntarily accepts all the provisions contained in this Settlement Agreement. The Parties further agree that this Settlement Agreement was the product of negotiations between the Parties and that any rule of construction that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Settlement Agreement.

18. <u>Severability</u>. In the event that any one or more provisions contained in this Settlement Agreement shall for any reason be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof, and this Settlement Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

19. IN WITNESS WHEREOF, the Parties hereto, each by persons duly authorized, have caused this Settlement Agreement to be executed as of the day and year first written above.

| BMG OPERATIONS LTD. | BCAUSE MINING LLC |
|---|---|
| By: _[signature]_ | By: _____ |
| Printed Name: B. ALTHEA GAGE | Printed Name: _____ |
| Its: Director | Its: _____ |
| | BCAUSE LLC |
| | By: _____ |
| | Printed Name: _____ |
| | Its: _____ |

40820855

17. **Construction.** The Parties agree that each has reviewed this Settlement Agreement with its counsel and that each Party fully understands and voluntarily accepts all the provisions contained in this Settlement Agreement. The Parties further agree that this Settlement Agreement was the product of negotiations between the Parties and that any rule of construction that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Settlement Agreement.

18. **Severability.** In the event that any one or more provisions contained in this Settlement Agreement shall for any reason be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof, and this Settlement Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

19. **IN WITNESS WHEREOF**, the Parties hereto, each by persons duly authorized, have caused this Settlement Agreement to be executed as of the day and year first written above.

**BMG OPERATIONS LTD.**

By: _____

Printed Name: _____

Its: _____

**BCAUSE MINING LLC**

By: _____/s/ TGF/_____

Printed Name: ___Thomas G. Flake___

Its: ___Acting CEO_____

**BCAUSE LLC**

By: _____/s/ TGF/_____

Printed Name: ___Thomas G. Flake___

Its: ___Acting CEO_____

40820855