**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

```
------------------------------------------------- x
In re:                                            :    Chapter 11
                                                  :
BCAUSE MINING, LLC                                :    Case No. 19-10562
                                                  :
                                                  :    Honorable Janet S. Baer
                  Debtor.                         :
------------------------------------------------- x
```

## RESPONSE OF HOFFLAND PROPERTIES TO
## MOTION FOR AUTHORITY TO SELL ASSETS PURSUANT TO
## SECTION 363(b) OF THE BANKRUPTCY CODE AND SHORTEN NOTICE

Hoffland Properties, Inc. ("Hoffland"), by its undersigned Counsel, in response to the Motion for Authority to Sell Assets Pursuant to Section 363(b) of the Bankruptcy Code and Shorten Notice (the "Motion") (ECF #250), filed by the Debtor, BCause, LLC (the "Debtor" and collectively with BCause Mining, LLC, the "Debtors") states as follows:

### Preliminary Statement

The Debtors' continued possession of its only operating location is presumably essential to the consummation of the Debtor's obligations outlined in the Motion. However, in addition to the usual concerns involving a sale of the Debtor's assets to insiders, the Motion, like the other pleadings recently filed by the Debtors in these Cases, ignores the substantial lease defaults that exist regarding these premises.

The cure of these lease defaults is not only essential to a feasible reorganization of these Cases but also is an underlying premise of the Debtor's completion of its obligations under the Motion. In short, selling one business only makes sense if the remaining business can survive.

Thus the Debtor must present a credible plan to cure these lease defaults that is satisfactory to Hoffland and the Court before this Motion is approved.

## Factual Background

1. Hoffland, as Lessor, entered into a Triple Net Lease (with Rider) (as amended, the "Lease") with the Debtor BCause Mining, LLC ("Mining") dated November 1, 2017, whereby Hoffland leased to Mining a commercial warehouse condominium located at Unit B, 5465 Greenwich Road, Virginia Beach, Virginia (the "Lease Premises"). A copy of the Lease is attached hereto as **Exhibit A**.

2. The Leased Premises consist of approximately 105,861 square feet of space and the common elements appurtenant thereto. The current month rental is $61,624, payable in advance on the first business day of each and every month (See Lease, paras 3 and 10).

3. The Debtor filed its voluntary Chapter 11 Petition on April 11, 2019, and has continued in possession of the Leased Premises.

4. On August 1, 2019 Mining filed its Motion for Extension of Time to Assume or Reject Lease for Non-Residential Real Estate (the "Extension Motion") (ECF No. 202) seeking to extend what was then the August 9, 2019 deadline to assume or reject the Hoffland Lease.

5. Just four days later, on Monday, August 5, 2019, Hoffland filed a Response of Hoffland Properties to Debtor's Motion for Extension of Time to Assume or Reject Lease for Non-Residential Real Estate (the "Extension Motion Response") (ECF No. 207) whereby Hoffland detailed the significant and substantial defaults which had to be cured under the Lease, if even possible, for the Lease to be assumed.

6. These Lease defaults included the following:

a. The premises currently does not have an operable fire suppression system due to Mining's removal of the previous system and its failure to pay for the completion of a replacement system. Mining's own testimony has established that it will cost $217,000 to complete the partially completed replacement system.[1]

b. Second, Section 13 of the Lease, on page 4, states that Mining was not to make any modifications to the premises without Hoffland's prior written consent. Nevertheless, substantial modifications were made to the premises, but no such consent was obtained. Extensive damage has occurred to the premises as a result of Mining's additional unauthorized modifications, and appropriate reserves should be set aside to protect Hoffland at the termination of the Lease. Based in part on an estimate from a contractor and discussions with knowledgeable commercial real estate agents, the more significant of the known, unauthorized modifications and the damages that have resulted from them are as follows:

i. damages to the roof as a result of the holes cut in it for the installation of 90 large industrial roof fans - $200,000;

ii. damages for the removal of a wall and the removal of multiple overhead doors – $230,315; and

iii. damages for holes drilled in the concrete floor – unspecified amount to be determined upon the vacating of the premises.

---

[1] This amount does not take into account the payment of whatever additional amounts the current installer would require to be paid for work already performed before returning to complete the work, or whatever increased amount would be incurred if the work were to be performed by a replacement contactor.

   c. Third, paragraph 5 of Rider no. 1 on page 20 of the Lease requires Mining to post a $3.4 million letter of credit as security for its obligations under the Lease. To date, no such letter of credit has been posted, but it, or similar security, will be required in order for the Debtor to cure its defaults and assume the Lease.

 7. The Debtors' financial condition makes it virtually impossible to post the letter of credit and fund the cure of these unauthorized modifications to the premises.

 8. Hoffland's Lease Extension Response previously stated that any plan of reorganization should address the resolution of these defaults. This issue was not addressed, however, by Debtors' Combined Plan of Reorganization and Disclosure Statement filed on August 7, 2019 (ECF No. 212) or Debtor's First Amended Combined Plan of Reorganization and Disclosure Statement ("Plan") filed on August 30, 2019 (ECF No. 251). The resolution of these Lease defaults is a requirement for the assumption of the Lease, and the assumption of the Lease is absolutely essential to the feasibility of the Plan. Without a cure of the Lease defaults the Plan cannot be confirmed.[2]

 9. At the hearing on the Lease Extension Motion on September 4, 2019, counsel for Hoffland briefly outlined the substantial lease defaults (for a second time), the importance of this Lease to the Debtors' reorganization efforts, and Hoffland's ongoing concern about the ability of the Debtors to cure these defaults in order to be able to assume the Lease.

---

[2] In section 6.6 of the Plan, on page 23, the Debtors state that default claims for the assumption of leases must be filed within 30 days following Confirmation. But the Bankruptcy Code requires that defaults be cured (or adequate assurance of their cure be provided) at the time of assumption, not at some future date selected by the Debtors. See In re UAL Corp., 635 F.3d 312, 319 (7th Cir. 2011), as amended on denial of reh'g (Apr. 13, 2010). The ability of the Debtor to cure defaults and assume the lease is key to the feasibility of the Plan, as the premises are the only location occupied by the Debtor for hosting or performing the mining of cryptocurrency.

10. On September 4, 2019, the Court entered an Order Extending Time to Assume or Reject Lease for Non-Residential Real Estate, ECF #266, extending the time for Mining to assume or reject the Hoffland Lease to October 9, 2019.

11. To date, no significant discussions have taken place as to how to resolve the outstanding defaults under the Lease.  Hoffland will not agree to any further Lease extensions, as required, or to the assumption of the Lease, without the resolution of these outstanding defaults through an agreed cure.  The letter of credit requirement is particularly important to Hoffland since it has for some time been seeking to sell the premises as part of a §1031 tax free exchange.  The objective of selling the premises (rather than being the long term landlord of the Debtor) was the reason for granting to the Debtor an option to purchase the premises.  Since the Debtor failed to exercise the option, the lease required the posting of a substantial letter of credit to enhance the marketability of the property with Mining, a startup, as tenant.  These business considerations remain as important to Hoffland today as they were at the time the Lease was executed.

12. By the present Motion, the Debtor seeks to sell a portion of its membership interest in Spot in order to focus its business on the hosting of cryptocurrency mining activity and of mining cryptocurrencies for its own account.  Selling these assets now (as opposed to under a Plan) only makes sense if the Plan is feasible or rendered feasible by the cost savings generated by the sale.  Hence, the merits of the Motion implicitly rest on the continued occupancy of the premises.  However, the Motion fails to deal with the inability to assume the Lease because of the lack of any credible plan to cure the substantial existing defaults under the Lease.

13.     If the Debtor cannot deal with the impending loss of its mining premises in Virginia Beach, it should not be selling its other assets off piecemeal. Rather, a chapter 7 trustee should consider all of the Debtor's assets as a whole and decide how best to liquidate them.

WHEREFORE, Hoffland respectfully requests that before the Debtor's sale of a portion of its Membership Interest be approved, it address how the likely loss of its mining premises will affect the transaction.

**HOFFLAND PROPERTIES, INC.**

By:     */s/ J. Mark Fisher*
J. Mark Fisher, Esq.
Sarah K. Angelino
Schiff Hardin LLP
233 South Wacker Drive
Suite 7100
Chicago, IL 60606
(312) 258-5500
mfisher@schiffhardin.com
sangelino@schiffhardin.com

*Counsel for Hoffland Properties, Inc.*

**CERTIFICATE OF SERVICE**

I, Sarah K. Angelino, an attorney, certify that on this 16th day of September, 2019, a true and correct copy of the foregoing was served on all counsel of record via Notice of Electronic Filing by filing with the Court's CM/ECF System.

By:     */s/ Sarah K. Angelino*
Sarah K. Angelino
Schiff Hardin LLP
233 South Wacker Drive
Suite 7100
Chicago, IL 60606
(312) 258-5500
mfisher@schiffhardin.com