**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BCause Mining LLC, *et al*. | ) | Case No. 19-10562 |
| | ) | |
| Debtors. | ) | Honorable Janet S. Baer |
| | ) | |

**SUPPLEMENT TO BMG OPERATIONS LTD.'S MOTION FOR RELIEF**
**FROM THE AUTOMATIC STAY AND MODIFIED REQUEST FOR RELIEF**

BMG Operations LTD. ("BMG") hereby submits its supplement to *BMG Operations LTD.'s Motion for Relief from the Automatic Stay* [Dkt. No. 184] (the "Relief Motion"),[1] filed against BCause Mining LLC ("Mining" and together with BCause LLC, the "Debtors"), to present new developments to the Court (the "Supplement"), which occurred after BMG filed its Relief Motion and entered into the Settlement Agreement (as defined herein), and are relevant to the Court's resolution of same:

**INTRODUCTION**

1.   The Debtors filed the 9019 Motion (as defined herein) on September 9, 2019. Pursuant to the terms of the Settlement Agreement that is the subject of the 9019 Motion (the "Settlement Agreement"), the Debtors were to immediately return to BMG the use of its miners (the "Miners"). Shortly after BMG regained control of its Miners, on the evening of September 16, 2019, BMG learned that more than 1,000 of its Miners were out of service. Upon inquiry, BMG learned that while the Debtors were mining bitcoin for themselves using BMG's Miners for about two months, approximately 1,399 of BMG's Miners stopped functioning. Though these

---

[1] All capitalized terms not defined herein shall have the meaning ascribed to them in the Relief Motion.

187326\00001\102428452.v4

Miner failures were known to the Debtors, during the negotiation of the Settlement Agreement, BMG was not made aware of this critical fact.

2.  If BMG had been aware of this extensive damage to its Miners, BMG would have demanded different terms to be incorporated into the Settlement Agreement. However, given the financial circumstances of Mining, it is more likely that the parties would have been unable to reach a settlement at all.

3.  In light of the recently discovered damage to BMG's property, BMG (a) has advised the Debtors that (i) their failure to disclose this material information renders the Settlement Agreement a nullity and/or (ii) their failure to turnover BMG's Miners in proper working order (subject to normal wear and tear) constitutes a material breach of the Settlement Agreement, and (b) has requested that the Debtors withdraw the 9019 Motion.

4.  Accordingly, BMG now also: (a) renews its request for the entry of an order modifying the automatic stay to allow BMG to terminate immediately the Hosting Agreement for cause due to Mining's material, noncurable breaches and fraudulent conduct; (b) seeks relief to immediately retrieve its Miners from the Debtors' Facility; and (c) once again seeks to modify the automatic stay in order to setoff its monthly hosting fees and obligations against the damages caused by Mining's material post-petition breaches of the Hosting Agreement, which BMG believes are in an amount not less than $600,000.00. This figure represents only the cost to replace the damaged machines. At this time BMG cannot calculate the lost revenue from the inoperable machines. As this figure can only be calculated after the daily price of Bitcoin is known on a given day, these lost-revenue damages will have to be quantified at a later time.

**ADDITIONAL BACKGROUND**

5. On July 15, 2019, BMG filed the Relief Motion seeking the entry of an order granting BMG relief from the automatic stay to (i) allow BMG to immediately terminate its Hosting Agreement with Mining or, in the alternative, (ii) permit BMG to immediately remove its property from the Facility and issue a notice of non-renewal of the Hosting Agreement, and (iii) permit BMG to set off its damages caused by the Surge Event against its monthly hosting payments.

6. Notably, after filing its Relief Motion, BMG learned that on July 10, 2019, instead of disconnecting BMG's Miners entirely, the Debtors chose to misappropriate BMG's property and connect BMG's Miners to the Debtors' own mining software mining bitcoin for themselves using BMG's property *without BMG's knowledge or permission*.

7. Objections to the Relief Motion (collectively, the "Objections") were filed by WESCO Distribution, Inc. [Dkt. No. 196], the Debtors [Dkt. No. 198], and the Official Committee of Unsecured Creditors [Dkt. No. 200].

8. On August 8, 2019, at a continued hearing on the Relief Motion, the Debtors and BMG stipulated on the record that the Relief Motion constituted BMG's written notice of defaults as required under Article 9(3) of the Hosting Agreement.

9. After the August 8, 2019 hearing, the Debtors and BMG began settlement discussions to resolve the claims asserted in the Relief Motion, as well as the counterclaims raised by the Debtors in their Objection to the Relief Motion. The parties ultimately reached an agreement to resolve all claims, which was memorialized in the Settlement Agreement.

10. On September 9, 2019, the Debtors filed the *Motion for Approval of Settlement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure on Shortened Notice* [Dkt.

No. 275] (the "9019 Motion"), outlining the terms of the Debtors and BMG's Settlement Agreement and seeking Court approval of the same. A copy of the Settlement Agreement is attached to the 9019 Motion as Exhibit A.

11. As set forth in the 9019 Motion, Settlement Agreement provides, in relevant part:

   i. Mining will restore immediately to BMG control over BMG's Miners located at the Facility; and

   ii. The Settlement Agreement also provides for mutual releases between the Debtors and BMG.

12. On September 16, 2019, after Mining restored control over the Miners to BMG, BMG discovered that approximately 1,399 of its Miners had stopped working during the time the Debtors were mining bitcoin for themselves using BMG's Miners. This critical fact was never disclosed to BMG by the Debtors' principal during settlement negotiations. This is *in addition* to the 325 of BMG's Miners that were previously destroyed or materially damaged in connection with the Surge Event.

13. As detailed in the Relief Motion, the post-petition damage to BMG's 325 Miners, in connection with the Surge Event, gives rise to a significant administrative claim of no less than $205,623. The newly discovered post-petition damage to 1,399 additional Miners will cause BMG's administrative claim to increase daily, given the further expanded inability to create assets with these Miners. The Settlement Agreement does not capture BMG's newly discovered damages. Accordingly, BMG has requested that the Debtors withdraw the 9019 Motion.

14. Notably, it does not appear that the Debtors have the resources, financial or otherwise, necessary to pay damages to BMG for its these newly discovered or the previously known post-petition breaches.

**RELIEF REQUESTED**

**I. Cause Exists To Modify The Automatic Stay To Allow BMG To Immediately Terminate The Hosting Agreement.**

15. BMG respectfully requests the entry of an order modifying the automatic stay to allow BMG to terminate immediately the Hosting Agreement for cause due to the Debtors' material and incurable breaches and to retrieve immediately its Miners from the Debtors' premises.

16. Article 9(3) of the Hosting Agreement allows BMG to terminate the agreement for cause if Mining defaults in any material respect in the performance of its duties or obligations, and such default is not substantially cured within 30 days after receiving written notice. *See* Mot., Ex. 2, Art. 9(3).

17. Mining's decision to suspend hosting services to BMG, coupled with the extensive damage to BMG's property, both in connection with the Surge Event and Mining's unauthorized use of BMG's Miners, constitute material and incurable breaches of the Hosting Agreement. Mining's failure to perform its obligations under the Hosting Agreement also constitutes a material breach. These points are undisputed. *See* Reply, 2.[2] Mining's material and incurable breaches of the Hosting Agreement give rise to the requisite cause for this Court to modify the automatic stay and allow BMG to terminate immediately the Hosting Agreement and to retrieve immediately its Miners from the Debtor's premises. This cause is made clearer by the Debtors' demonstrated inability to care for and protect BMG's miners. BMG believes its only recourse at this point in time is to remove its Miners from the Debtors' Facility.

18. It is also undisputed that, on July 15, 2019, BMG provided the requisite written notice of material defaults to the Debtors in order to terminate the Hosting Agreement for cause.

---

[2] The term "Reply" refers to *BMG Operations LTD.'s Reply In Support of Its Motion for Relief from the Automatic Stay* [Dkt. No. 208].

To date, more than 60 days has passed since BMG provided written notice and the Debtors have not substantially cured the material defaults.

19. Having complied with the terms of Article 9(3) of the Hosting Agreement, BMG should be allowed to exercise its contractual rights and immediately terminate the Hosting Agreement and retrieve its Miners. The automatic stay is not designed to deprive parties of the benefit of their bargain, and BMG should not be forced suffer any more damage at the hands of the Debtors. *See Valley Forge Plaza Assocs. v. Schwartz*, 114 B.R. 60, 62 (E.D. Va. 1990) ("A debtor in bankruptcy has no greater rights or powers under a contract than the debtor would have outside of bankruptcy.").

20. At bottom, cause exists to allow BMG to exercise its contractual rights, to cut its continuing losses by immediately terminating the Hosting Agreement and removing its Miners from the Debtors' Facility.

### II. Cause Exists To Modify The Automatic Stay In Order To Allow BMG To Exercise Its Setoff Rights.

21. BMG further requests that the Court modify the automatic stay to allow it to setoff certain post-petition debts against its damages caused by the Debtor's conduct pursuant to section 553 of the Bankruptcy Code.

22. As stated in the Relief Motion, BMG has a valid right under section 553 of the Bankruptcy Code to setoff any monthly hosting fees owed to the Debtor against the damages resulting from the Debtor's material breaches of the Hosting Agreement. While BMG has not yet been able to determine the extent of its damages with respect to the additional 1,399 Miners rendered inoperable by the Debtor's activities, it is estimated that these post-petition damages will give rise to an administrative claim in excess of $600,000.00. This amount is in addition to the administrative claim of no less than $205,623.00 for post-petition damages relating to the Surge

Case 19-10562    Doc 292    Filed 09/23/19    Entered 09/23/19 16:55:40    Desc Main
Document      Page 7 of 8


Event. Moreover, BMG has not received any benefit under the Hosting Agreement from the Debtors since early July 2019 when its Miners were first disconnected and misappropriated by the Debtors, and now the Debtors have to address the damages to an additional 1,399 Miners.

23. Consequently, cause exists under section 362(d)(1) of the Bankruptcy Code to permit BMG relief from the automatic stay in order to effectuate its rights of setoff.

**WHEREFORE**, for the reasons stated above, BMG Operations, Ltd. respectfully requests the entry of an order: (a) granting BMG relief from the automatic stay to allow BMG to terminate immediately its Hosting Agreement with BCause Mining LLC and to retrieve immediately its Miners from the Debtors' Facility; (b) granting BMG relief from the automatic stay to setoff its monthly hosting payments against its damages caused by the Debtor's material, post-petition breaches of the Hosting Agreement; (c) providing that the 14-day stay under Fed. R. Bankr. P. 4001(a)(3) is waived; and (d) granting such other and further relief as is just and equitable.

Dated: September 23, 2019

Respectfully submitted,

BMG OPERATIONS, LTD.

By: */s/ Christina M. Sanfelippo*

Brian L. Shaw
Christina M. Sanfelippo
FOX ROTHSCHILD LLP
321 North Clark Street, Suite 1600
Chicago, Illinois 60654
(312) 517-9200  telephone
(312) 517-9201  facsimile
bshaw@foxrothschild.com
csanfelippo@foxrothschild.com

-and-

187326\00001\102428452.v4                    7

<div style="text-align: right">

Jennifer McLain McLemore
(admitted *pro hac vice*)
WILLIAMS MULLEN
200 South 10th Street
Suite 1600
Richmond, VA 23219
(804) 420-6000  telephone
(804) 420-6507  facsimile

</div>