**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | ) Chapter 7 |
| | ) |
| BCause Mining LLC, *et al.* | ) Case No. 19-10562 |
| | ) |
| Debtors. | ) Honorable Janet S. Baer |
| | ) |

**WESCO'S PRELIMINARY OBJECTION TO: (I) FIRST INTERIM FEE
APPLICATION OF CRANE, SIMON, CLAR & DAN [D.I. 309]; AND (II) FIRST
INTERIM FEE APPLICATION OF FREEBORN & PETERS LLP AS COUNSEL TO
THE COMMITTEE [D.I. 304]**

WESCO Distribution, Inc. ("WESCO") hereby objects (the "Objection") and respectfully requests that the Court deny both the first interim application of Crane, Simon, Clar & Dan [D.I. 309] (the "Debtor Application"), counsel for the above-captioned debtors (the "Debtors"), and the first interim fee application of Freeborn & Peters LLP, counsel for the official committee of unsecured creditors (the "Committee") in these cases [D.I. 304] (the "Committee Application" and collectively with the Debtor Application, the "Applications").

As evidenced by the recent conversion of the Debtors' chapter 11 cases to cases under chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), the work of the Debtors' counsel and the Committee counsel did little to advance the Debtors' cases since their filing or to generate positive value for the estates, and may have destroyed value. In filing both of the Applications at this juncture – the first fee applications since filing of these cases in mid-April 2019, and shortly before conversion of the Debtors' cases – the professionals are attempting to jam the Court and the estates with their fee requests and elevate their parochial interests over the interests of the Debtors' estates and its creditors. If the Court does not deny the Applications outright at this time, the Court should allow WESCO an

{8371130:6 }

opportunity to respond fully to both Applications in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**A.      The Committee Counsel Received Unauthorized Payments That Should be Returned**

As an initial matter, in the Committee Application (at ¶ 4), the Committee discloses for the first time in these cases that its professionals received "$50,000 in budgeted monthly payments pursuant to the various Court-approved cash collateral orders" during the Debtors' chapter 11 cases.  Prior to now, neither the Debtors nor the Committee disclosed these payments, and the Court never authorized any of these payments in the cash collateral orders.  Section 330 of the Bankruptcy Code and Bankruptcy Rule 2016 are crystal clear: estate professionals cannot be paid absent complying with the relevant fee application process.  Neither the Committee nor the Debtors ever sought approval or payment of these amounts as a retainer or otherwise.  The Court should order immediate return of these unauthorized payments to the Debtors' estates, summarily deny the Committee Application, and order other appropriate relief.

**B.      The Debtor Application is Inconsistent and the Applications in General are Deficient**

As another gating issue, the Debtor Application does not comply with section 330 of the Bankruptcy Code, Bankruptcy Rule 2016(a), or Local Rule 5082-1(B)&(C), among other issues. Notably, the amounts requested in the Application substantially exceed the hours and fees set forth in the time detail attached to the Application.  Not one fee category in the Debtor Application corresponds with the detail in the attached exhibits.  In some instances, the supporting time records set forth half the time (and fees) requested in the Debtor Application. By way of illustration:

| Category | Time Expended (in Application) | Fees Requested (in Application) | Time Expended (in exhibits) | Fees Requested (in exhibits) |
|---|---|---|---|---|
| **Case Administration** | 56.4 | $29,312.00 | 31.1 | $16,164.00 |
| **Cash Collateral and Issues Pertaining to WESCO** | 216.7 | $111,436.00 | 114.5 | $58,672.00 |
| **Lease and Executive Issues** | 26.7 | $13,844.00 | 10.8 | $5,576.00 |
| **Sale of Equity in Secure** | 14.7 | $7,636.00 | 3.8 | $1,976.00 |
| **Utilities** | 27.6 | $13,680.00 | 22.4 | $11,120.00 |
| **Plan** | 25.3 | $21,424.00 | 18.3 | $9,516.00 |
| **BMG** | 18.7 | $9,724.00 | 17.3 | $8,996.00 |
| **SBI Rent to Own** | 8.3 | $4,316.00 | 8.0 | $4,160.00 |
| **Fee Motion** | 5.0 | $2,620.00 | 2.5 | $1,300.00 |
| **TOTAL** | **399.4** | **$213,992.00** | **228.7** | **$117,480.00** |

It is not clear if Debtors' counsel has grossly overstated their fees or if the inconsistency results from an administrative error. In either event, the Court should summarily deny the Debtor Application on account of this issue. *In re Wildman,* 72 B.R. 700, 708 (Bankr. N.D. Ill. 1987) (without these time records, "the court lacks any objective basis for making a fee award").[1]

Moreover, Local Rule 5082-1(B)(2) requires all narrative summaries in fee applications to "conclude with a statement as to whether the requested fees and expenses are sought to be merely allowed or both allowed and paid. If the latter, the narrative summary must state the source of the proposed payment." Neither of Applications complies with this non-trivial requirement. Particularly in this case, where allowance and payment of the Debtors' and the

---

[1] Debtors' counsel has the burden to "provide sufficient information for a court to understand what services were actually provided," and it is impossible for the Court to make this determination without complete and accurate time records. *In re Gvazdinskas*, No. 08-73105, 2010 WL 1433308, at *2 (C.D. Ill. April. 8, 2010) (citing *In re Taylor*, 66 B.R. 390, 393 (Bankr. W.D. Pa. 1986) (a court "will not indulge in extensive labor and guesswork to justify a fee for an attorney who has not done so himself")); *see also In re Fuqua*, No. 17-91140, 2019 WL 3774074 (Bankr. C.D. Ill. Aug. 9, 2019) (reducing fees requested in attorney fee application that failed to include itemized daily entries and "appears to have spent no time reviewing or polishing up his time records").

{8371130:6}   3

Committee's professional fees would substantially reduce creditor recoveries, the Applications should be disallowed absent clarification.

C. **The Debtors' Cases Failed to Progress Since Filing, and the Debtors' Cash is Limited**

WESCO filed its motion seeking an order to dismiss the Debtors' bankruptcy cases or for relief from the automatic stay (the "Motion to Dismiss") approximately two weeks after the filing of the Debtors' chapter 11 cases, and the hearing on the Motion to Dismiss was continued throughout the spring and summer based, in part, on the Debtors' and Committee's arguments that they were making meaningful progress in these cases.[2] However, as is clear from the record in the Debtors' cases and as detailed herein, the Debtors failed to make any progress toward, among other things, meaningfully reducing costs, increasing cash flow, contesting WESCO's secured claims, obtaining approval of the Debtors' purported plan and disclosure statement, or finalizing the sale of certain equity interests outside of the plan process. As a result, the Debtors' cases were converted on October 8, 2019, and the new chapter 7 trustee now is faced with attempting an orderly liquidation.

Through a series of events and the press of the Debtors' chapter 11 cases during the last six months, WESCO's cash collateral was depleted during the Debtors' cases. Based on the most recent screen shot from the Debtors, as of October 2, 2019, the Debtors' cash balance allegedly stood at $817,119.07, almost $100,000.00 less than the amount of cash the Debtors held at the beginning of these cases. If the Court granted and paid the Applications in the aggregate amount of $302,621.97 in fees and expenses, the estates would be left with just over $500,000.00 (not counting the $50,000.00 unauthorized payments already made to the Committee professionals).

---

[2] The Motion to Dismiss is still pending, including WESCO's request for relief from the automatic stay.

Under the foregoing circumstances, "absent extraordinary circumstances, bankruptcy estates should not be consumed by the fees and expenses of court-appointed professionals." *In re Taxman Clothing Co.,* 49 F.3d 310, 314 (7th Cir. 1995); *see also In re Eckert*, 414 B.R. 404, 413 (Bankr. N.D. Ill. 2009) (noting that it could not award debtors' counsel with an interim award of "greater than half of the recovered and realized cash on hand"). Debtors' counsel and Committee counsel should not be rewarded for last six months of futility, particularly in light of WESCO's efforts to immediately raise and continuing to press these concerns since the outset of the cases.

D. **The Fees Requested in the Applications Were Never Budgeted, and WESCO Has a Lien on All of the Debtors' Assets**

Irrespective, the fees requested in both of the Applications also exceed by a wide margin any amount budgeted for such professionals – despite WESCO's multiple attempts to raise this very issue over course of many months. The Debtors' first two cash collateral budgets did not include any budgeted amount for professional fees for either Debtors' counsel or Committee counsel at all [D.I. 20 and D.I. 39], and the remainder of the Debtors' interim cash collateral budgets included approximately $30,000 for Debtors' counsel per month and $10,000 for Committee counsel per month. *See, e.g.*, Seventh Interim Order Authorizing Use of Cash Collateral and Granting Related Relief [D.I. 277]. Even when considered in the aggregate during the Debtors' chapter 11 cases, this budgeted amount is substantially less than the over $300,000 in professional fees requested in the Applications. Courts in this district have previously held that, "when professionals…project estimated fees or budgets to a client, they should expect to be held to same or some reasonable variation thereof;" this can be especially applicable in cases where "the Debtor's chances of a successful reorganization were slim to none." *In re Chas A.*

*Stevens Co.*, 105 B.R. 866, 873 (Bankr. N.D. Ill. 1989) (reducing fees of financial consultant where reorganization failed and fees incurred were substantially over budget).

Here, because the estate professionals did not introduce interim compensation procedures or provide clarity on the payment of fees, notwithstanding WESCO's repeated entreaties on this issue, WESCO and other stakeholders were unaware of the amount of the fees actually accrued for either Debtors' counsel or Committee counsel until the filing of the Applications. Moreover, WESCO never negotiated or agreed to a carve-out or reserve of any type to provide for the payment of fees in the event of conversion. In any event, WESCO has a blanket lien on all assets of the Debtors, and any approved fees of former Debtors' counsel or the Committee counsel are junior to WESCO's interests.

E.  **Neither of the Applications Meet the Standard for Approval of Compensation Pursuant to Section 330 of the Bankruptcy Code**

Even if the fees requested in the Applications actually were budgeted, the services reflected in the Applications do not reflect "reasonable compensation only for actual, necessary services rendered," as required by section 330(a) of the Bankruptcy Code. 11 U.S.C. § 330(a)(1). *Baker Botts L.L.P. v. ASARCO LLC*, 135 S.Ct. 2158, 2165 (2015). Upon motion of a party in interest, the United States Trustee, or *sua sponte*, a Bankruptcy Court may "award compensation that is less than the amount of compensation that is requested." 11 U.S.C. § 330(a)(2). A court's evaluation of the "reasonableness" of the compensation requested in an application should be "based on the benefit and necessity of such service to the debtor" as well as: (a) the time spent on the services, (b) the rates charged for such services, (c) whether the services were necessary to the administration of, or beneficial at the time at which the services was rendered, (d) whether the services were performed within a reasonable amount of time, (e) whether the person performing the services has demonstrated skill and expertise in the

bankruptcy field, and (f) whether the compensation is reasonable based on customary compensation for comparably skilled practitioners. *See In re Colberg*, No. 18-81032, 2019 WL 1451280, at *3 (Bankr. N.D. Ill. Feb. 27, 2019), quoting 11 U.S.C. § 330(a)(3); *In re Argento*, 282 B.R. 108, 116 (Bankr. D. Mass. 2002); *see also Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[3] Courts are also prohibited from allowing compensation for unnecessary duplication of services or services that were not reasonably likely or necessary to benefit the debtor's estate. 11 U.S.C. § 330(a)(4); *In re Eckert*, 414 B.R. 404 (Bankr. C. D. Ill. 2009); *In re Rhoads*, No. 14BK17886, 2018 WL 6841357, at *1 (Bankr. N.D. Ill. Dec. 6, 2018) (denying fees for work that was not "benefi[cial] to the estate or. . . necessary to the administration of the case.").

Further, any applicant for approval of fees carries "the burden to prove that it was entitled to the fees and expenses identified in its application." *Matter of Kenneth Leventhal & Co.*, 19 F.3d 1174, 1177 (7th Cir. 1994); *In re Pettibone Corp.*, 74 B.R. 293, 299 (Bankr. N.D. Ill. 1987); *In re Wildman*, 72 B.R. 700 (Bankr. N.D Ill. 1987). This burden should not "be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors." *Pettibone*, 74 B.R. at 299 (Bankr. N.D. Ill. 1987). Here, this statement rings especially true. Now that the cases have converted to chapter 7 after months of depleting WESCO's cash collateral, every dollar spent on professional fees quite literally is a

---

[3] Courts in this district have also analyzed fee applications using the factors outlined in *Johnson v. Georgia Highway Express*, including the non-exclusive consideration of: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill required to perform the legal services properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the result obtained; 9) the experience, reputation, and ability of the attorney; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *See In re Wildman,* 72 B.R. 700, 708 (Bankr. N.D. Ill. 1987).

{8371130:6} 7

dollar less that can be distributed to the Debtors' creditors or used in the liquidation of the Debtors' estates.

F.  **The Failure of the Debtors' Attempted Reorganization and the Work Related Thereto Warrants the Denial or Significant Reduction of the Fees Requested in the Fee Applications**

When taken in context, the above-referenced analysis under section 330 of the Bankruptcy Code essentially means that "[p]rofessionals may be compensated out of the bankruptcy estate only if the work benefitted the estate." *In re Chas A. Stevens Co.*, 105 B.R. 866, 870 (Bankr. N.D. Ill. 1989), citing *In re Ryan*, 82 B.R. 929, 932 (N.D. Ill. 1987). The Applications demonstrate that the work of the professionals did little to benefit the Debtors' estates. In a nutshell, the professionals spent six months fighting WESCO's Motion to Dismiss, attempting to invalidate WESCO's liens and claims, seeking piecemeal approval of cash collateral (which the Court never approved on a final basis), and developing an unrealistic plan and sale process for equity (which failed to progress before conversion). Debtors' counsel and Committee counsel should not be rewarded for work that failed to advance the Debtors' estates or the Debtors' attempted reorganization; rather, they may have played a role in depleting the Debtors' estates.

Other courts in this circuit and throughout the country have denied or substantially reduced professional fees for chapter 11 cases where a reorganization fails, the case is converted, or the case otherwise fails to progress, because "[t]he result obtained is a major factor in awarding professional fees." *See In re Chas A. Stevens Co.*, 105 B.R. 866, 869 (Bankr. N.D. Ill. 1989) (significantly reducing fees requested where "[t]he attempted reorganization of the Debtor as an ongoing business failed," and noting that the bankruptcy estate, "is not a cash cow to be milked to death by professionals seeking compensation"); *In re McNichols*, 258 B.R. 892, 906

(Bankr. N.D. Ill. 2001) (reducing fees because of debtor's counsel's failure to propose a facially confirmable plan after four attempts); *In re Fuqua*, No. 17-91140, 2019 WL 3774074 (Bankr. C.D. Ill. Aug. 9, 2019) (significantly reducing fees requested in part because of debtor counsel's failure to prepare and submit a confirmable chapter 11 plan); *In re King*, 96 B.R. 206, 208 (W.D. Mo. 1989) (affirming bankruptcy court's order to return all fees rather than reduce amount awarded; counsel knew or should have known that reorganization was never a viable possibility); *In re Coastal Equities, Inc.*, 39 B.R. 304, 311 (Bankr. S.D. Cal. 1984) (reduction of 17.5% fees for work that did not benefit the debtors' estates); *In re Office Prods. Of Am., Inc.*, 136 B.R. 983, 990-991 (Bankr. W.D. Tex. 1992) (if it is clear that debtor's counsel knew or should have known that the plan could not satisfy 11 U.S.C.§ 1129(a), counsel cannot expect to be compensated for "actual, necessary" services). By way of illustration, upon an initial review, three main categories demonstrate that neither reasonable nor necessary services were provided here. WESCO reserves the right to further respond to the Application and make additional objections to specific time records upon further review.

   i. *Any Efforts to Propose and Obtain Approval of a Plan Were Wholly Inadequate*

  Initially, the Debtor Application states that the "Debtors' chapter 11 cases have progressed to the point of consideration of the Plan." (Debtor Application at ¶ 11). This is not true. While the Debtors' plan and disclosure statement have been on file since August, Debtors' counsel apparently knew that the Debtors could not confirm the plan for numerous reasons (that WESCO will not belabor here). Debtors' counsel never attempted to obtain approval of the disclosure statement or begin a solicitation process prior to conversion. However, despite the inability of the Debtors to submit a confirmable plan, both Debtors' counsel and Committee counsel apparently worked throughout late July and August to prepare and revise the Debtors'

plan. (Debtor Application at Exhibit F and Committee Application at Exhibit G, including 22.9 hours[4] spent (and $11,908.00 in fees) by Debtors' counsel and 36.7 hours spent (and $15,027.00 in fees) by Committee counsel).

Despite continuing to advertise the plan as the Debtors' path out of chapter 11, the Debtors' and Committee's efforts relative to the plan appear to have been abandoned after late August. As detailed in the time records in the Applications, there is only one time entry after August 30 relating to the Debtors' supposed plan. In a similar case where debtor's counsel filed a plan that was "wholly inadequate" due to its lack of financial projections, vague deadlines, and lack of performance benchmarks, another bankruptcy court in this circuit significantly reduced the debtor's counsel fees. *In re Fuqua*, No. 17-91140 (Bankr. C.D. Ill. Aug. 9, 2019). Therefore, the fees of Debtors' counsel and Committee counsel relating to the plan should be disallowed specifically because their efforts never progressed further than the filing of a placeholder plan for the sole purpose of trying to fend off conversion.

   ii.  *The Attempted Sale of Equity to Insiders Accomplished Nothing*

Instead of moving forward with the approval of the proposed plan, Debtors' counsel and Committee counsel appear to have devoted additional time to attempting to obtain approval of the sale of a significant estate asset (75% of BCause LLC's equity in BCause Secure) outside of a plan process. Although the Debtors appeared to advance the position that the sale of equity in BCause Secure was critical to the Debtors' reorganization prospects, the reality is that the

---

[4] While WESCO addresses other deficiencies in Debtor Application elsewhere in this Objection, WESCO notes that the Debtor Application is riddled with time records that appear to be included in incorrect or irrelevant categories. For example, three successive entries in Exhibit E to the Debtor Application – which is labeled as the category "Utilities" – include time records that appear to relate to the "Plan" category and the "Sale of Equity in Secure" category, instead of "Utilities." These time entries include nothing relating to the Debtors' utilities, but involve tasks relating to "[r]eview and revise plan and disclosure statement;" "[p]repared motion for authority to sell assets pursuant to section 363(b)" and "[t]elephone conference with Liz Janczak re: plan issues." WESCO reserves the right to further object to specific time entries.

proposed sale involved a quick transfer of interests to insiders, with little notice and no market exposure, and for no real value to the estates. The time records in the Debtor Application and the Committee Application evidence the haphazard nature of this sale – both Debtors' counsel and Committee counsel devoted a total of only 5.6 hours (and $2,678.00 in fees) to this supposedly critical sale. This sale remained pending as of the conversion of the Debtors' cases, and the fees relating to this attempted sale should also be specifically disallowed.

      iii.    *The Professionals' Attempts to Invalidate and Contest WESCO's Positions Were Duplicative and Unproductive*

While the Debtors and the Committee professionals spent very little time trying to develop and confirm a chapter 11 plan or otherwise realize value for the estates, apparently they had plenty of time to investigate and challenge WESCO's liens and claims. As shown in the time records attached to the Applications, fees relating to these issues collectively aggregated almost $140,000 prior to conversion of the Debtors' cases (including approximately $111,000[5] accrued by Debtors' counsel and approximately $28,000 accrued by Committee counsel, as detailed in the narrative portion of the Applications). This amount constitutes nearly half of the total fees requested in the Applications, and much of the work of the Debtors' and the Committee's counsel was redundant.[6] While the professionals for the Debtors and the

---

[5] As further detailed in the Objection, the time and fees reflected in the time records attached to the Debtor Application differ significantly from the total amounts reflected in the fee narrative portion of the Debtor Application. Exhibit B to the Debtor Application only reflects 114.50 hours and $58,672.00 in fees incurred by Debtor's counsel pertaining to "Cash Collateral and Issues Pertaining to WESCO," whereas the fee application itself reflects 216.7 hours for $111,436.00.

[6] While Committee counsel devoted only .2 hours to "examining and investigating the Debtors' operations," they spent 45.6 hours (and $16,972 in fees) responding to the Motion to Dismiss, investigating WESCO's liens and claims, and essentially serving as unofficial "special counsel" to the Debtors in their attempt to invalidate WESCO's secured claims. (Committee Application at p. 11; Exhibit B). The Committee Application includes 5.5 hours spent drafting the complaint against WESCO (the "Complaint") and numerous communications with Debtors' counsel relating to the same. (Committee Application, Exhibit B). In contrast, the time records attached to the Debtor Application only reflect 2.7 hours relating to the preparation of the Complaint prior to its filing on June 20, 2019. (Debtor Application, Exhibit B). WESCO reserves the right to further object to duplicative time entries as appropriate.

Committee worked together to initiate the adversary proceeding against WESCO in late June, counsel apparently recognized the futility of continuing to prosecute the Complaint soon after its filing. The time records of the Debtors' and the Committee's counsel reflect only 0.9 hours spent by the Debtors' counsel on "review and analysis of WESCO motion to dismiss adversary complaint" in early September, and Committee counsel spent no time on the adversary proceeding after late June. When taken together, the Debtors' and Committee counsel's efforts attempt to contest WESCO's positions in the Debtors' chapter 11 cases simply increased the cost of the administration of the estates and should not be approved. *See In re Spanjer Bros., Inc.*, 191 B.R. 738, 758 (Bankr. N.D. Ill.1996) (finding that certain fees accrued by debtor's counsel in a contested matter did not benefit the estate and increased the cost of administration).

Also, while the Debtors' use of WESCO's cash collateral allowed the Debtors' cases to continue for months, the dozens of hours Debtors' counsel and Committee counsel devoted to the Debtors' failure to comply with the cash collateral budgets, the continuous need to return to court to approve use of cash collateral on a rolling basis, and the Debtors' failure to obtain the final approval of the use of cash collateral at any point during the Debtors' chapter 11 cases did nothing to benefit the Debtors' estates. At a certain point, where an attorney's efforts simply serve to "drain the debtor's estate of . . . its value," and an attorney ignores "the potential for recovery and balance [of] the efforts required against the results that might be achieved," fees relating to such unproductive activities should be disallowed. *In re Taxman Clothing Co.*, 49 F.3d 310, 313, 316 (7th Cir. 1995). In this case, the Debtors and the Committee continued to seek use of cash collateral long after they should have recognized that the chapter 11 cases served no useful purpose.

**G.     Conclusion**

The Court cannot condone Debtors' counsel and Committee counsel's efforts to seek and obtain approval for their fees ahead of other creditors, especially in light of the conversion of the Debtors' chapter 11 cases – a situation that counsel for the Debtors and the Committee did little to prevent and may have helped create.   Therefore, WESCO requests that this Court deny both the Debtor Application and the Committee Application.  If the Applications are not denied at this point, at a minimum, the Court should allow WESCO the opportunity to submit further briefing on the issues at stake.

*[Remainder of page intentionally blank; signature page follows]*

| | |
|---|---|
| Dated: October 15, 2019 | /s/  David A. Agay |

                                             David A. Agay (ARDC No. 6244314)
Shara Cornell (ARDC No. 6319099)
MCDONALD HOPKINS LLC
300 North LaSalle Street, Suite 1400
Chicago, Illinois 60654
Telephone:  (312) 280-0111
Facsimile:  (312) 280-8232
dagay@mcdonaldhopkins.com
scornell@mcdonaldhopkins.com

-and-

Maria G. Carr (OH 0092412) (admitted *pro hac vice*)
MCDONALD HOPKINS LLC
600 Superior Avenue, E., Suite 2100
Cleveland, OH 44114
Telephone:  (216) 348-5400
Facsimile:   (216) 348-5474
mcarr@mcdonaldhopkins.com

**CERTIFICATE OF SERVICE**

      I, David A. Agay, hereby certify that, on October 15, 2019, I caused a copy of the foregoing WESCO's Preliminary Objection to: (I) First Interim Fee Application of Crane, Simon, Clar & Dan [D.I. 309]; and (II) First Interim Fee Application of Freeborn & Peters LLP as Counsel to the Committee [D.I. 304] to be electronically filed with the Clerk of Court using the Electronic Case Filing System, and be served via the CM/ECF system or U.S. mail on the following interested parties:

**Via ECF:**

David A Agay on behalf of Creditor Wesco Distribution, Inc.
dagay@mcdonaldhopkins.com,
mbrady@mcdonaldhopkins.com;bkfilings@mcdonaldhopkins.com

Sarah K Angelino on behalf of Creditor Hoffland Properties, Inc.
sangelino@schiffhardin.com, edocket@schiffhardin.com

Jamie L Burns on behalf of Creditor W-R2 Jefferson Owner VIII, LLC
jburns@lplegal.com, rwilliamson@lplegal.com;ikropiewnicka@lplegal.com

Maria G Carr on behalf of Creditor Wesco Distribution, Inc.
mcarr@mcdonaldhopkins.com, bkfilings@mcdonaldhopkins.com

Scott R Clar on behalf of Debtor 1 BCause LLC, a Virginia limited liability company
sclar@cranesimon.com, mjoberhausen@cranesimon.com;asimon@cranesimon.com

Shara C Cornell on behalf of Creditor Wesco Distribution, Inc.
scornell@mcdonaldhopkins.com,
mbrady@mcdonaldhopkins.com;lburrell@mcdonaldhopkins.com

Jeffrey C Dan on behalf of Debtor 1 BCause LLC, a Virginia limited liability company
jdan@cranesimon.com, sclar@cranesimon.com;mjoberhausen@cranesimon.com

Shelly A. DeRousse on behalf of Creditor Committee Official Committee Of Unsecured Creditors
sderousse@freeborn.com, bkdocketing@freeborn.com;jhazdra@ecf.inforuptcy.com

Devon J. Eggert on behalf of Creditor Committee Official Committee Of Unsecured Creditors
deggert@freeborn.com, bkdocketing@freeborn.com;jhazdra@ecf.inforuptcy.com

Elizabeth L. Janczak on behalf of Creditor Committee Official Committee Of Unsecured Creditors
ejanczak@freeborn.com, bkdocketing@freeborn.com;jhazdra@ecf.inforuptcy.com

Marc Ira Fenton on behalf of Creditor W-R2 Jefferson Owner VIII, LLC
mfenton@lplegal.com, skiolbasa@lplegal.com;ikropiewnicka@lplegal.com

Christina Sanfelippo on behalf of Creditor BMG Operations Ltd.
csanfelippo@foxrothschild.com, orafalovsky@foxrothschild.com

Brian L Shaw on behalf of Creditor BMG Operations Ltd.
bshaw@foxrothschild.com, cknez@foxrothschild.com

Jason M Torf on behalf of Creditor Virginia Electric and Power Company d/b/a Dominion Energy Virginia
jason.torf@icemiller.com

Patrick S Layng
USTPRegion11.ES.ECF@usdoj.gov

**Via Regular Mail**

Paul Bozych
Nielsen, Zehe & Antas, P.C.
Wesco Distribution, Inc.
55 W. Monroe St., Ste. 1800
Chicago, IL 60603

Seth A. Robbins
Robbins Law Group
1100 N. Glebe Rd., Ste. 1010
Arlington, VA 22201

AlphaCraft Technologies, LLC
601 Railroad Ave.
South Boston, VA 24592

Matthew B. Kirsner
Eckert Seamans
919 East Main St., Ste. 1300
Richmond, VA 23219

Abacus Solutions, LLC
1190 Kennestone Circle NW, #120
Newborn, GA 30056

Amazon Web Services, Inc.
410 Terry Avenue North
Seattle, WA 98109-5210

Capital Counsel, L.L.C.
700 13th Street, NW, 2nd Floor
Washington, DC 20005

Century Link
1025 Eldorado Blvd.
Broomfield, CO 80021

Ciniva, LLC
251 Granby Street
Norfolk, VA 23510

Crystal Clear Communications
3180 N. Lake Shore Drive, #20C Chicago, IL 60657

FIS Systems International LLC 601 Riverside Ave.
Jacksonville, FL 32204

Jones, Madden & Council, PLC
5029 Corporate Woods Drive, #190 Virginia Beach, VA 23462

Katten Munchin Rosenman LLP
525 W. Monroe St.
Chicago, IL 60661

LeClairRyan
4405 Cox Road, #200
Glen Allen, VA 23060

Nasdaq
One Liberty Plaza, 50th Floor

{8371130:6}    16

Brian Sayler
48 Bensam Place
Haledon, NJ 07508

Alison Zizzo
Midgett-Pret-Olansen
2901 S. Lynnhaven Rd., Ste. 120
Virginia Beach, VA 23452

Gaylene Watson
Dominion Energy Virginia
2700 Cromwell Drive
Norfolk, VA. 23509
Kristopher C. Russell
Key Account Manager
Customer Service and Strategic Partnerships
Dominion Energy Virginia
2700 Cromwell Drive
Norfolk, VA 23509

BMG Operations Ltd.
44 Church Street
St. John's, Antigua

Amazon Web Services, Inc.
410 Terry Avenue North
Seattle, WA 98109-5210

EF Fallon, Kevin
2800 252nd Ave.
Salem, WI 53168

Silbar Security Corporation
1508 Technology Drive, #101
Chesapeake, VA 23320

Solutrix
5469 Greenwich Road
Virginia Beach, VA 23462

Inate One LLC
1083 Independence Blvd., #206
Virginia Beach, VA 23455

Zhouyang (Mason) Song
2930 Barnard Street, #7204
San Diego, CA 92110

New York, NY 10006

Paychex of New York LLC 8215 Forest
Point Blvd., #150 Charlotte, NC 28273
Adam.bleifeld@softvision.com

Endurance IT Services, LLC
295 Bendix Road, #300
Virginia Beach, VA 23452

BitGo, Inc.
2443 Ash Street
Palo Alto, CA 94306

HK Cryptocurrency Mining LLC
470 Park Avenue South
New York, NY 10016

US Customs & Border Protection
6650 Telecom Drive, #100
6650 Telecom Drive, #100
Indianapolis, IN 46278

CSC
3462 Solution Center
Chicago, IL 60677-3004

AlphaCraft Technologies, LLC
601 Railroad Ave.
South Boston, VA 24592

Pro Window, Inc.
Attn: Justice White, Mgr.
1604 Virginia Beach Blvd.
Virginia Beach, VA 23452

Matthew B. Kirsner
Eckert Seamans
919 East Main St., Ste. 1300
Richmond, VA 23219

BFPE International
PO Box 791045
Baltimore, MD 21279-1045

Bay Technologies
4501 Bainbridge Blvd., #200
Chesapeake, VA 23320

CB Critical Systems
Attn: Gregory Crone

Tradehelm, Inc.
27 N. Wacker Dr., 103
Chicago, IL 60606

Endurance IT Services, LLC
295 Bendix Road, #300
Virginia Beach, VA 23452

Russell R Johnson, III on behalf of Creditor
Virginia Electric and Power Company d/b/a
Dominion Energy Virginia
Law Firm of Russell R Johnson III, PLC
2258 Wheatlands Drive
Manakin Sabot, VA 23103

11816 Mason Park Way
Glen Allen, VA 23059

Professional Heating & Cooling, Inc.
3306 Arizona Avenue
Norfolk, VA 23513

United HealthCare
PO Box 94107
Palatine, IL 60094

/s/ David A. Agay