IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 7 |
| | ) |
| **BCause Mining LLC**, *et al.* | ) Case No. 19-10562 |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) Hon. Janet S. Baer |
| | ) |

## NOTICE OF MOTION

TO:   PERSONS LISTED ON THE ATTACHED SERVICE LIST

**PLEASE TAKE NOTICE THAT** on **Monday, October 28, 2019,** at the hour of **10:00 a.m.**, the undersigned shall appear before the Honorable Janet S. Baer, United States Bankruptcy Judge or any judge sitting in her stead, at 219 S. Dearborn Street, Courtroom 615, Chicago, Illinois, and shall then and there present the **TRUSTEE'S MOTION FOR AUTHORITY TO USE CASH COLLATERAL OUTSIDE OF THE ORDINARY COURSE OF BUSINESS AND FOR RELATED RELIEF (the "Motion")**, a copy of which is attached hereto and hereby served upon you.

Dated:  October 23, 2019

Alex Moglia, Chapter 7 Trustee of the
Bankruptcy Estates of BCause Mining LLC
and BCause LLC


By: /s/ Michael M. Schmahl
        Michael M. Schmahl

Michael M. Schmahl
POLLICK & SCHMAHL, LLC
200 E. Randolph, Suite 5100
Chicago, Illinois  60601
(312) 235-3296
mschmahl@pollickschmahl.com
*Counsel to the Trustee*

1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | ) <br> ) **Chapter 7** <br> ) <br> ) **Case No. 19-10562** |
| **BCause Mining LLC,** *et al.* | ) **(Jointly Administered)** <br> ) |
| Debtors. | ) **Hon. Janet S. Baer** <br> ) |

**TRUSTEE'S MOTION FOR AUTHORITY TO USE CASH COLLATERAL
OUTSIDE OF THE ORDINARY COURSE OF BUSINESS
AND FOR RELATED RELIEF**

Alex Moglia (the "Trustee"), not individually, but solely as trustee of the chapter 7 bankruptcy estates of BCause Mining LLC ("Mining") and BCause LLC[1] ("LLC" and collectively with Mining, the "Debtors"), requests that the Court enter an order authorizing him to use cash on which WESCO asserts a pre-petition security interest (the "Cash Collateral") that is subject to the Trustee's objection in a pending adversary proceeding (Adversary No. 19-769) (the "Adversary Proceeding") in order to retain certain former employees of the Debtors to assist the Trustee with the planned liquidation of certain of the Debtors' assets and in otherwise performing his duties, and, in support thereof, respectfully states as follows:

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1334.

2. This Motion is a core proceeding under 28 U.S.C. § 157(b)(2).

3. Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

---

[1] BCasue LLC is the debtor in bankruptcy case number 19-10731.

4. On or about April 11, 2019, Mining filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

5. On or about April 12, 2019, LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

6. On or about May 8, 2019, the Court entered an order [**Docket No. 72**] directing that the Debtors' bankruptcy cases be jointly administered under the above caption.

7. On or about October 8, 2019 (the "Conversion Date"), the Court entered an order [**Docket No. 319**] converting the Debtors' bankruptcy cases to cases under chapter 7 of the Bankruptcy Code, and Richard J. Mason was appointed as the chapter 7 trustee of the Debtors' estates [**Docket No. 320**].

8. On or about October 11, 2019, Mr. Mason resigned as chapter 7 trustee and, later that day, Mr. Moglia was appointed as the Trustee [**Docket No. 334**].

9. The assets currently in the Trustee's control include, without limitation:

   (a) approximately $660,000 in cash (the "Cash Collateral");

   (b) equipment and approximately 73 used computers, generally referred to as "miners", used to "mine" Bitcoin (collectively, the "Equipment"); and

   (c) equity in a non-operating subsidiary called BCause Secure LLC ("Secure").

10. WESCO asserts prepetition liens on the Cash Collateral and the Equipment, which are subject to the Trustee's objection in the Adversary Proceeding. The Trustee also seeks to avoid WESCO's liens in the Adversary Proceeding. Although the amount of WESCO's secured claim is disputed, WESCO asserts a secured claim for approximately $1.9 million.

11. Due to WESCO's asserted lien, the Trustee currently has no unencumbered liquid assets.

12. Since his appointment, the Trustee has traveled to the Debtors' former data center (the "Data Center") located in Virginia Beach, Virginia, and worked to identify and determine the value of the Equipment, which, in addition to the "miners" consists of a variety of principally electrical equipment that is located in the Data Center.

13. In addition to WESCO's asserted liens, Hoffland Property, the landlord for the Data Center, asserts an interest in certain of the Equipment due to a provision of the Debtor's lease for the Data Center that provides that ownership of any fixtures installed in the Data Center automatically transfers to the landlord upon installation. The Trustee understands that the Landlord asserts that a substantial portion of the Equipment constitutes fixtures.

14. The Trustee is still in the process of evaluating the value of the equipment and is hopeful to receive one or more estimates from auctioneers in the coming days.

15. Among other things, the Data Center does not have a functioning fire suppression system. Therefore, since 2018, the local fire marshall has required that individuals be present in the Data Center to operate a fire watch 24 hours a day (the "Fire Watch").

16. Although the certain of the Debtors former customers have already removed their computers from the Data Center, there are approximately 11,000 computers remaining. The customers' computers are intermixed with each other and with the Debtors' approximately 73 miners and mounted on layers of racking that is, on information and belief, approximately 12 feet high and spread out across the approximately 91,000 square foot Data Center.

17. Since his appointment, the Trustee has met with and conferred with several of the Debtors' former employees. As a result of these discussions, the Trustee has learned that the process of identifying the customer computers is time consuming and labor intensive as each

computer must be located based on a unique identifier contained in the Debtors' warehousing system that is located on the bottom or back of each computer.

18. The Trustee has further learned that the Debtors' financial book keeping was not complete or otherwise closed and that the Debtors maintained various employee benefits plans that are somewhat unique and may have to be liquidated or otherwise wound down.

19. On information and belief, at least one of the plans related to covering medical expenses permitted an employee to utilize a maximum annual benefit at any time during the year while he or she was employed even though the plan itself was funded through withholdings from participating employees throughout the year. On information and belief certain employees used some or all of the permitted benefit during the year before leaving or being terminated without having paid an equivalent amount into the plan. Additionally, there may be other complications due to the fact that the Conversion Date occurred prior to the end of the year. As a result, a full reconciliation may need to be done and other steps may need to be taken to close this program.

20. The Trustee has determined that he needs the help of certain former employees to assist him in evaluating the Equipment and preparing it for sale, conducting the Fire Watch, assisting in ensuring the customers obtain the correct machines without taking any of the Equipment, to finish a more complete budgeting and to assist him in closing the books, preparing tax returns and related papers and in addressing the former employee benefits programs.

21. In order to accomplish these tasks, the Trustee proposes to retain the following former employees as independent contractors at the following hourly rates:

| Name | Hourly Rate | Function |
| --- | --- | --- |
| Shawn Dailey | $66.25 | Assisting with potential sale of Equipment, separating |

|  |  | Equipment from customer equipment |
|---|---|---|
| Marysa Hilton | $22.00 | Fire Watch |
| Brent Myers | $20.00 | Fire Watch |
| Terrance Holley | $21.00 | Fire Watch |
| Nieves, Tiffany | $15.00 | Fire Watch |
| Christi Vaassen | $54.35 | Assisting with completing budget, closing financial books, and with prepareing tax returns |
| Dawn Chapman | $71.39 | Assisting with addressing and closing any employee benefits and addressing any related issues |

22. Additionally, in order to retain these individuals, they are demanding payment for the time they spent meeting with the Trustee, answering questions, locating information, addressing Equipment and customer computers and manning the Fire Watch. Additionally, Mr. Dailey has informed the Trustee that he will not assist the Trustee unless the members of the Fire Watch are paid what they would have earned in their final paycheck based on work provided prior to the Conversion Date. These amounts are as follows:

| Name | Lump Sum for Time to Date | Fire Watch Bonus |
|---|---|---|
| Shawn Dailey | $4,400.00 | |
| Marysa Hilton | $528.00 | $1,180.00 |
| Brent Myers | $1,089.00 | $1,359.00 |
| Terrance Holley | $1,107.70 | $1,216.00 |
| Nieves, Tiffany | $673.20 | $405.00 |
| Christi Vaassen | $3,478.56 | |
| Dawn Chapman | $4,568.96 | |

23.    Given that the auctioneers have informed the Trustee that they need to work with Mr. Dailey and that he has a unique knowledge of the inventory systems and the relatively small amounts proposed for the Fire Watch (totaling, $4,160.00) the Trustee believes that making these payments is appropriate.

24.    Finally, the Debtors had in place a night and weekend security service, Silbar, to conduct the Fire Watch after 10 PM and during portions of the weekend. The Trustee proposes to continue to do so and estimates this service will cost approximately $2,000 per week. As such, the October budget proposed to pay Silbar up to $8,000. The Trustee has estimated this amount but believes that the actual expense will be somewhat less.

25. Although the Trustee has not yet completed a full budget, Ms. Vaassen has been assisting the Trustee in doing so. The Trustee has attached hereto as Exhibit A an initial budget to retain these individuals through the end of October. The Trustee expects to file a proposed final budget in the near future.

26. The Trustee has been working with WESCO in order to try to reach an agreement regarding both an overall budget as well as a budget for October and hopes to reach such an agreement by the initial hearing on this Motion.

27. WESCO has demanded that the Trustee make adequate protection payments. The Trustee asserts that the portions of the budget, excluding the proposed Fire Watch Bonuses listed above, related to Shawn Dailey, the Fire Watch, and Silbar are all tied to a potential sale of the Equipment and, therefore, will benefit WESCO. As such, the Trustee proposes to pay WESCO, as adequate assurance payment, a total of $12,207.52, which is equal to the amounts proposed to be paid for October to Ms. Vaassen, Ms. Chapman, and the Fire Watch Bonuses, provided however, that such adequate assurance payment would be subject to avoidance and return to these estates in the event that the Trustee successfully challenges WESCO's liens.

28. The Trustee requests, pursuant to Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure, that the Court conduct a preliminary hearing to authorize the Trustee's request for interim cash collateral pending a final hearing on this Motion. As such, the Trustee requests that the Court shorten notice to accommodate such interim use.

29. Without the relief requested herein, the Trustee will not have the resources to pay for the Fire Watch and his ability to evaluate the Equipment and conduct a potential sale will be significantly negatively impacted. Additionally, the Trustee will not have the resources to meet his other obligations such as preparing tax returns and potentially closing the referenced employee

benefit programs. The Trustee further believes that alternative resources would be more costly and would likely result in significant delay as he will not have the benefit of the institutional knowledge of the identified individuals. As such, the Trustee asserts that the expenses listed in the attached budget should be allowed as chapter 7 administrative expenses pursuant to Section 503 of the Bankruptcy Code.

30. For the above reasons, the Trustee believes that the requested relief is in the best interest of the estates and the creditors, including WESCO, and that these estates will suffer significant and potentially irreparable harm if the Trustee is not authorized to use the Cash Collateral as requested herein.

WHEREFORE, the Trustee respectfully request that this Court enter an order: (i) authorizing the Trustee to use Cash Collateral upon the terms and conditions set forth in the Motion; (ii) preliminarily authorizing the Trustee to use cash collateral pending a final hearing on the Motion; (iii) setting a final hearing on the Motion; and (iv) granting such other and further relief as this Court deems just or appropriate.

Dated: October 23, 2019

/s/ Michael M. Schmahl
Michael M. Schmahl
Pollick & Schmahl, LLC
200 E. Randolph, Suite 5100
Chicago, IL 60601
(312) 235-3296
mschmahl@pollickschmahl.com
ARDC #6275860
*Counsel for the Trustee*