**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | **Case No. 19-10731** |
| BCause LLC, | ) | **Chapter 7** |
| A Virginia Limited Liability Company, | ) | |
| | ) | **Hon. Janet S. Baer** |
| Debtor. | ) | |

## <u>NOTICE OF MOTION</u>

To: See attached service list.

   PLEASE TAKE NOTICE that on January 9, 2020, at 9:30 a.m. I shall appear before the Honorable Judge Janet S. Baer in Room 615 of the Dirksen Federal Building, 219 S. Dearborn Street, Chicago, Illinois and then and there present CCA Financial, LLC's *Motion for Relief from Automatic Stay*.


Dated: December 18, 2019                    CCA FINANCIAL, LLC,

                            By:    /s/ Debra Devassy Babu
                                   Debra Devassy Babu (ARDC #6282743)
                                   Askounis & Darcy, PC
                                   444 North Michigan Avenue
                                   Suite 3270
                                   Chicago, IL  60611
                                   (312) 784-2400 Telephone
                                   (312) 784-2410 Facsimile
                                   ddevassy@askounisdarcy.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of December, 2019, I electronically filed CCA Financial, LLC's *Motion for Relief from Automatic Stay* using the CM/ECF system, which will send notification to the following:

- **David A Agay**   dagay@mcdonaldhopkins.com, mbrady@mcdonaldhopkins.com;bkfilings@mcdonaldhopkins.com
- **Jamie L Burns**   jburns@lplegal.com, rwilliamson@lplegal.com;ikropiewnicka@lplegal.com
- **Maria G Carr**   mcarr@mcdonaldhopkins.com, bkfilings@mcdonaldhopkins.com
- **Scott R Clar**   sclar@cranesimon.com, mjoberhausen@cranesimon.com;asimon@cranesimon.com
- **Shara C Cornell**   scornell@mcdonaldhopkins.com, mbrady@mcdonaldhopkins.com;lburrell@mcdonaldhopkins.com
- **Jeffrey C Dan**   jdan@cranesimon.com, sclar@cranesimon.com;mjoberhausen@cranesimon.com
- **Shelly A. DeRousse**   sderousse@freeborn.com, bkdocketing@freeborn.com
- **Devon J Eggert**   deggert@bcblaw.net, pfoster@bcblaw.net
- **Marc Ira Fenton**   mfenton@lplegal.com, skiolbasa@lplegal.com;ikropiewnicka@lplegal.com
- **Elizabeth L Janczak**   ejanczak@freeborn.com, bkdocketing@freeborn.com
- **Patrick S Layng**   USTPRegion11.ES.ECF@usdoj.gov
- **Alex D Moglia**   amoglia@mogliaadvisors.com, IL31@ecfcbis.com
- **Arthur G Simon**   asimon@cranesimon.com, sclar@cranesimon.com;slydon@cranesimon.com

I further certify that I caused a copy of the foregoing *Motion for Relief from Automatic Stay* to be served upon the following party via email and depositing the same in the U.S. Mail at 444 North Michigan Avenue, Chicago, Illinois 60611, with proper postage prepaid.

- **Michael M. Schmahl**
  Pollick & Schmahl, LLC
  200 E. Randolph Street, Suite 5100
  Chicago, IL 60601
  mschmahl@pollickschmahl.com

Date: December 18, 2019                                    /s/Debra Devassy Babu

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | **Case No. 19-10731** |
| **BCause LLC,** | ) | **Chapter 7** |
| **A Virginia Limited Liability Company,** | ) | |
| | ) | **Hon. Janet S. Baer** |
| Debtor. | ) | |

## CCA FINANCIAL, LLC'S MOTION FOR RELIEF FROM AUTOMATIC STAY

Creditor CCA FINANCIAL, LLC ("CCA Financial"), by and through its counsel, respectfully moves this Court for entry of an order modifying the automatic stay pursuant to 11 U.S.C. §362 and 11 U.S.C. §365(d)(1) (the "Motion"), and allowing CCA Financial to liquidate certain equipment from the Debtor BCause LLC, a Virginia Limited Liability Company (the "Debtor").  In support of the Motion, CCA Financial states as follows:

### JURISDICTION AND VENUE

1.      The Court has jurisdiction in regard to this matter pursuant to 28 U.S.C. §§ 157 and 1334.  The statutory predicate for the relief requested in this Motion is 11 U.S.C. § 362 and 11 U.S.C. §365(d)(1).

2.      On April 12, 2019, the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date").  The Court subsequently converted the case to a Chapter 7 on October 8, 2019.

3.      Alex D. Moglia (the "Trustee") has been appointed Chapter 7 Trustee in this case.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409, as the relief requested by this Motion constitutes a proceeding arising under and related to Debtor's Chapter 7 bankruptcy proceeding, which is currently pending before this Court.

3

## BACKGROUND

a.     **The Debtor's Equipment Lease with CCA Financial.**

5.      As an initial matter, it is unclear whether the Debtor is the lessee under CCA Financial's contracts.  As set forth below, CCA Financial entered into contracts with "B. Cause, LLC, a Delaware company."  The Delaware Secretary of State identifies "B. Cause, LLC" as a Delaware limited liability company that was formed on August 23, 2010.  See Exhibit 1 hereto. The Virginia Secretary of State identifies "BCause LLC" as a Virginia limited liability company that was formed on December 4, 2013.  See Exhibit 1 hereto.  However, because the Debtor has listed an unexpired lease with CCA Financial in its Schedules, CCA Financial files this Motion out of an abundance of caution, and assumes that its lessee is the Debtor.  See Docket No. 78, p. 24, Schedule G, Section 2.1.

6.      On July 30, 2018, CCA Financial, as lessor, and the Debtor, as lessee, entered into Master Lease Agreement No. **540 (the "Master Lease"), wherein CCA Financial agreed to lease to the Debtor equipment under the terms and conditions set forth in the Master Lease.  The Master Lease contemplated the parties entering into separate lease schedules.  See Master Lease, attached hereto as Exhibit 3.

7.      On July 30, 2018, CCA Financial, as lessor, and the Debtor, as lessee, entered into Equipment Schedule No. **540-01-001 ("Schedule 001") for the lease of equipment set forth below and in Schedule 001 (the "Equipment"):

2 POWEREDGE R640 – MARKET SURVEILLANCE, SERIAL NO. AC1Q3936
1 POWEREDGE R640 DATABASE SERVER, SERIAL NO. AC1Q3936
10 POWEREDGE R640 ENGINE SERVER, SERIAL NO. AC1Q3936
3 POWEREDGE R640 SEQUENCE SERVER, SERIAL NO. AC1Q3936
1 POWEREDGE R640 SERVER – VMWARE NODES W/ VCENTER, SERIAL NO. AC1Q3936
4 POWEREDGE R640 SERVER – VMWARE NODES, SERIAL NO. AC1Q3936
27 FLAREON ULTRA 10GE ADAPTER CONTROLLER W/ FILMWARE ONLOAD & PTP

<u>See</u> Schedule 001, attached hereto as Exhibit 4.

8.      On August 3, 2018, CCA Financial, as lessor, and the Debtor, as lessee, entered into the First Addendum to Schedule No. **540-01-001 (the "First Addendum").  <u>See</u> First Addendum, attached hereto as Exhibit 5.

9.      Under the terms of Schedule 001 and the First Addendum, the Debtor agreed to make twenty four (24) payments of $17,071.75, plus taxes.  <u>See</u> Schedule 001 and First Addendum.

10.     On September 6, 2018, the Debtor signed a Certificate of Acceptance for the Equipment, indicating that the Equipment was inspected, installed, placed in good working order, and accepted by the Debtor.  <u>See</u> Certificate of Acceptance, attached hereto as Exhibit 6.

11.     CCA Financial is the owner of the Equipment, as set forth in the Master Lease.  <u>See</u> Master Lease, Paragraph 8.  The Master Lease requires the Debtor to return the Equipment to CCA Financial at the end of the lease term.  <u>See</u> Master Lease, Paragraph 7.  If the Debtor wants to purchase the Equipment from CCA Financial at the end of the lease term, the Debtor is required to pay the fair market value of the Equipment.  <u>See</u> Master Lease, Paragraph 17.  The Master Lease also provides that if the Debtor is not in default, the Debtor could elect to renew the initial term of the Master Lease for a period of twelve (12) months, by paying "Fair Rental Value," as that term is defined in the Master Lease.  <u>See</u> Master Lease, Paragraph 16.

b.      **<u>The Debtor's Default under Master Lease, Schedule 001 and the First Addendum.</u>**

12.     The Debtor defaulted under the Master Lease by filing its Chapter 11 bankruptcy Petition.  <u>See</u> Master Lease, Paragraph 14(iv) ("The Lessee shall be in default hereunder ('Default') . . . (iv) . . . if, whether voluntarily or involuntarily, Lessee takes advantage of or seeks

to take advantage of any debtor relief or bankruptcy proceedings under any present or future law

. . . or if the Lessee shall be declared bankrupt, whether voluntarily or involuntarily[.]").

13.     The Debtor also defaulted under the Master Lease, Schedule 001 and the First Addendum by failing to make the payment due on November 1, 2019, and all payments due thereafter.

14.     As a result of the Debtor's default, CCA Financial is entitled to declare all rent and other payments immediately due and payable.  <u>See</u> Master Lease, Paragraph 14(c).

15.     CCA Financial is further entitled to immediate possession of the Equipment upon default.  <u>See</u> Master Lease, Paragraph 14(a).

16.     As a result of the Debtor's default, the amount due CCA Financial under the Master Lease, Schedule 001 and the First Addendum is $180,091.17.

17.     The fair market value of the Equipment is approximately $83,000.00, depending on condition.

18.     The Debtor has acquired no equity interest in the Equipment, as the underlying Master Lease and Schedule 001 are true leases.

<u>**RELIEF REQUESTED**</u>

19.      CCA Financial seeks return of the Equipment, as permitted under the Master Lease.

20.     Section 362(d) of the Bankruptcy Code provides that:

(d)     On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay-

(1)     for cause, including the lack of adequate protection of an interest in property of such party in interest;

6

(2)    with respect to a stay of an act against property under subsection (a) of this section, if-

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary for an effective reorganization.

<u>See</u> 11 U.S.C. §362(d).

21.    General market conditions threaten CCA Financial's interest in the Equipment, which continues to depreciate. As such, CCA Financial is not being adequately protected in this bankruptcy proceeding.

22.    The Debtor has no equity in the Equipment, because the Equipment is owned by CCA Financial.  Under the Master Lease, the Debtor must surrender the Equipment to CCA Financial at the end of term.

23.    Given the Court's conversion of the case to a Chapter 7, it is clear that the Debtor is not reorganizing and will instead liquidate its assets under Chapter 7 of the Bankruptcy Code.

24.    CCA Financial will suffer irreparable damage if the relief requested is not granted immediately, as the interest of CCA Financial is not adequately protected.

25.    Cause exists to grant CCA Financial the relief requested, because there is no evidence that the Debtor can provide adequate assurance of future performance, given the Court's conversion of the case to a Chapter 7.

26.    Section 365(d)(1) of the Bankruptcy Code provides that in a case under Chapter 7, if the Trustee does not assume or reject an executory contract or unexpired lease of personal property within 60 days after the order of relief, then such contract or lease is deemed rejected.  <u>See</u> 11 U.S.C. § 365(d)(1).

27.     As the case converted from a Chapter 11 to a Chapter 7 on October 8, 2019, the Trustee had to assume or reject CCA's contracts by December 9, 2019.  As the Trustee failed to do so, the Master Lease, Schedule 001 and the First Addendum are deemed rejected.

28.     In the event the Trustee decides to assume the Master Lease, Schedule 001 and the First Addendum, pursuant to §365(b)(1) of the Bankruptcy Code, the Debtor must compensate CCA Financial for all rent due and payable until such time as the executory contract or unexpired lease is assumed, and further, the Debtor must provide adequate assurance of future performance for any future payments that comes due under the terms of the executory contract or unexpired lease.  See 11 U.S.C. § 365(b)(1).

29.     The automatic stay must be terminated or modified to allow CCA Financial to liquidate the Equipment to afford CCA Financial the opportunity to minimize its losses and claims against the Debtor.

WHEREFORE, CCA FINANCIAL, LLC respectfully requests that this Court enter an Order:

      a.     that the automatic stay, to the extent it arose pursuant to §362 of the Bankruptcy Code, be modified or terminated to permit CCA Financial to repossess and dispose of the Equipment;

      b.     that the Master Lease, Schedule 001 and the First Addendum are deemed rejected pursuant to §365(d)(1) of the Bankruptcy Code;

      c.     that the provisions of Bankruptcy Rule 4001(a)(3) not apply to the Order modifying this stay;

      d.     that CCA Financial have such other and further relief as this Court deems just and proper.

CCA FINANCIAL, LLC,


By:     /s/ Debra Devassy Babu
        Debra Devassy Babu (ARDC #06282743)
        Askounis & Darcy, PC
        444 North Michigan Avenue, Suite 3270
        Chicago, IL  60611
        (312) 784-2400 Telephone
        (312) 784-2410 Facsimile
        ddevassy@askounisdarcy.com

Delaware.gov

Governor | General Assembly | Courts | Elected Officials | State Agencies

---

**Department of State: Division of Corporations**

Allowable Characters

| | |
|---|---|
| HOME | |
| About Agency | |
| Secretary's Letter | |
| Newsroom | |
| Frequent Questions | |
| Related Links | |
| Contact Us | |
| Office Location | |
| **SERVICES** | |
| Pay Taxes | |
| File UCC's | |
| Delaware Laws Online | |
| Name Reservation | |
| Entity Search | |
| Status | |
| Validate Certificate | |
| Customer Service Survey | |
| Loading... | |

## Entity Details

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| | | | |
|---|---|---|---|
| File Number: | **4863520** | Incorporation Date / Formation Date: | **8/23/2010** (mm/dd/yyyy) |
| Entity Name: | **B. CAUSE, LLC** | | |
| Entity Kind: | **Limited Liability Company** | Entity Type: | **General** |
| Residency: | **Domestic** | State: | **DELAWARE** |

**REGISTERED AGENT INFORMATION**

| | | | |
|---|---|---|---|
| Name: | **UNITED STATES CORPORATION AGENTS, INC.** | | |
| Address: | **300 DELAWARE AVE STE 210-A** | | |
| City: | **WILMINGTON** | County: | **New Castle** |
| State: | **DE** | Postal Code: | **19801** |
| Phone: | **302-777-0538** | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status ○ Status,Tax & History Information

[Submit]

[View Search Results]    [New Entity Search]

---

For help on a particular field click on the Field Tag to take you to the help area.

site map | privacy | about this site | contact us | translate | delaware.gov

EXHIBIT
1

Note: The SCC website will be unavailable Thursday, Oct. 17, from 6-10 p.m. for system maintenance. We apologize for the inconvenience and appreciate your patien

Please note: SCCeFile will be unavailable Saturday, Oct. 19, from 8 a.m. until 2 p.m. for system maintenance. We apologize for the inconvenience and appreciate yo patience.

Alert to business entities regarding solicitations from VA CERTIFICATE SERVICES is available from the Bulletin Archive link of the Clerk's Office website.

Home | Site Map | About SCC | Contact SCC | Privacy Policy



SCC eFile > Entity Search > Entity Details

Login | Create an Account



SCC eFile
**Business Entity Details**

 Help

### BCause LLC

**SCC eFile**
- SCC eFile Home Page
- Check Name
- Distinguishability
- Business Entity Search
- Certificate Verification
- FAQs
- Contact Us
- Give Us Feedback

**Business Entities**

**UCC or Tax Liens**

**Court Services**

**Additional Services**

#### General

SCC ID: S4816890
Entity Type: Limited Liability Company
Jurisdiction of Formation: VA
Date of Formation/Registration: 12/4/2013
Status: Active

#### Principal Office

277 BENDIX RD.
STE. 420
VIRGINIA BEACH VA 23452

#### Registered Agent/Registered Office

JOEL ANKNEY
VIRGINIA ENTREPRENEUR LAW OFFICE PC
4669 SOUTH BLVD., STE. 107
VIRGINIA BEACH VA 23452
VIRGINIA BEACH CITY          228
Status: Active
Effective Date: 11/12/2014

#### Select an action

File a registered agent change
File a registered office address change
Resign as registered agent
File a principal office address change
Pay annual registration fee
Order a certificate of fact of existence
Submit a PDF for processing (What can I submit?)
View eFile transaction history
Manage email notifications

New Search    Home

Screen ID: e1000

Supported Browsers

Need additional information? Contact sccinfo@scc.virginia.gov    Website questions? Contact: webmaster@scc.virginia.gov

Adobe Acrobat PDF Reader    Microsoft Office Online Applications: (Excel, PowerPoint, Word)

Build #: 1.0.0.31267

EXHIBIT
2

**CCA FINANCIAL**

## MASTER LEASE AGREEMENT NO.█540

**THIS MASTER LEASE AGREEMENT NO.█540** (the "Master Lease") is made as of July 30, 2018 (the "Effective Date") by and between **CCA Financial, LLC,** a Virginia company with its principal office at 10993 Richardson Road, Suite 14, Ashland, VA 23005 ("Lessor"), and **B. CAUSE, LLC,** a DE company with its principal office at **5465 Greenwich Road, Virginia Beach, VA 23462** ("Lessee").

1.    DEFINITIONS: (a) The "Equipment" means the equipment, machines, devices, features, manufacturer's application software, and other items listed in each Schedule hereto attached and hereby made a part hereof.

(b)    The "Manufacturer" means the manufacturer or vendor of the Equipment as shown in a Schedule.

(c)    The "Commencement Date" means with respect to each Schedule, the earlier of (i) where the Acceptance Date is the first day of a month, that date, or in any other case, the first day of the month following the Acceptance Date; or (ii) the date specified in the specific Schedule.

(d)    The "Acceptance Date" means the date that the Equipment is (i) (A) inspected (if applicable) by authorized representatives of Lessee, (B) installed (if applicable) as specified by Manufacturer and placed in good working order, and (C) accepted by Lessee for leasing under all provisions of the Lease , or (ii) is delivered to Lessee and, if installation of the Equipment is required, Lessee fails to provide a suitable installation environment or elects to delay installation. At Lessor's request, Lessee shall execute a Certificate of Acceptance verifying Lessee's acceptance of the Equipment as of the Acceptance Date. Lessee hereby authorizes Lessor to complete the Equipment serial numbers and the Acceptance Date on Lessee's behalf on any Schedule or Acceptance Certificate which is returned without such information.

2.    LEASE: (a) Lessor agrees to lease to Lessee and Lessee agrees to lease from Lessor in accordance with the terms and conditions of this Master Lease, the Equipment identified in the Schedules which are or may from time to time be executed pursuant to this Master Lease. Each Schedule shall incorporate by reference all terms and conditions of this Master Lease together with such other terms or amendments which may be specified in the Schedule. Together with this Master Lease, each Schedule shall individually constitute a lease agreement between Lessor and Lessee ("Lease") with respect to the Equipment specified in the Schedule. A Lease shall not become effective until the Schedule is executed by Lessee and Lessor.

(b)    If Lessee has entered into any purchase agreement or purchase order contract ("Purchase Contract") for the Equipment with any Manufacturer, then Lessee hereby assigns to Lessor all of Lessee's rights under such Purchase Contract, including any rights granted by Manufacturer but none of Lessee's obligations (except for the obligation to pay for the Equipment if accepted by Lessee). If Lessee has not entered into a Purchase Contract, Lessee hereby authorizes Lessor to enter into a Purchase Contract on Lessee's behalf. Lessee shall be obligated for any and all costs arising from or related to the delivery of the Equipment from the Manufacturer to Lessee.

3.    TERM OF LEASE: (a) The term of this Master Lease shall commence on the Effective Date set forth above and shall continue in effect thereafter so long as any Lease entered into pursuant to this Master Lease remains in effect. The initial term for each Lease shall commence on the Commencement Date and shall continue for the number of full months set forth in the Schedule ("Initial Term"). Notice of Lessee's termination of each Lease shall be provided to Lessor in writing at least four (4) months prior to the expiration of the Initial Term of the Lease. Lessee or Lessor may terminate a Lease only at the expiration of the Initial Term by giving the other party not more than six (6) months and not less than four (4) months written notice prior to such expiration. In the event that Lessee's or Lessor's written notice is not received or given (as applicable) as prescribed herein, the term of the Lease shall be extended for continuous and consecutive twelve (12) month periods at the then existing Basic Rental, with receipt of notice of termination required at least four (4) months prior to expiration.

(b)    Any notice of termination given by Lessee may not be revoked without the written consent of Lessor.

4.    RENTAL: (a) The minimum monthly rental (herein called the "Basic Rental") payable by Lessee to Lessor or its assigns for each Lease is set forth in each Schedule. The obligations to pay Basic Rental shall begin on the Acceptance Date and shall be due and payable by Lessee to Lessor in advance on or before the first day of each month; provided, however, if any Acceptance Date does not fall on the Commencement Date, Lessee shall pay to Lessor prorated rent on the basis of a 30-day month on the first day of the month for each month between that Acceptance Date and the Commencement Date. In the event Lessee does not timely make any payment of Basic Rental or other monies due hereunder, Lessee shall be liable to Lessor for a stipulated damage amount equal to 18% per annum (based on a year of 360 days) of the amount of said payment and shall pay said amount immediately to Lessor.

**EXHIBIT**

3



(b)      In addition to the Basic Rental, Lessee shall pay to Lessor an amount equal to all taxes, if any, paid, payable or required to be collected by Lessor, however designated, which are levied or based on this transaction, the Basic Rental, a Lease, and/or the Equipment or its use, lease, sale, operation, control or value, including, without limitation, state and local sales, privilege, business license or excise taxes based on gross revenue, or amounts in lieu thereof paid or payable by Lessor in respect of the foregoing, but excluding only federal and state income taxes. Personal property taxes, if any, on the Equipment shall be filed with the appropriate authorities by Lessee and paid by Lessee. Lessee shall give Lessor written evidence of payment of personal property taxes within ten days of the due date. Except for personal property taxes, all taxes shall be invoiced by Lessor to Lessee unless such taxes are invoiced directly to Lessee by the appropriate taxing authorities. If Lessee makes timely payment to Lessor or directly to any taxing authority within the time provided by the authority for the payment of such taxes, then Lessee shall not be liable for any penalties or interest in respect of the taxes. If Lessee does not make timely payments to Lessor or directly to the taxing authority within the time provided by the authority for the payment of such taxes, then Lessee shall be liable for any penalties, interest or other charges in respect of the taxes. Notwithstanding anything hereinabove to the contrary, so long as Lessee is not in default hereunder, Lessee shall not be obligated by a Lease to pay any tax, levy or assessment in respect of a Lease or the Equipment so long as Lessee, in good faith, shall contest actively the validity thereof by appropriate legal proceedings. Lessee agrees that if such a proceeding is instituted, upon the final decision therein, or upon the discontinuance thereof, Lessee will forthwith pay such taxes, levies or assessments as are determined to be owing, together with all costs, interest and penalties and all damages and costs, including all attorneys' fees reasonably incurred, which Lessor may sustain in consequence of the non-payment of the taxes, levies or assessments when due. Subject to the foregoing, Lessee may contest any such taxes in Lessor's name, and Lessor agrees, upon written request and at the sole expense of Lessee, to cooperate with Lessee in the prosecution of any such contest.

5.      USE OF EQUIPMENT: (a) Lessee warrants and represents that all use of the Equipment and all components and any other equipment used in any manner in connection with the operation and use of the Equipment shall meet the specifications of Manufacturer. Specifications shall include but not be limited to Manufacturer's warranty and required or recommended maintenance program.

(b)      Lessee shall be entitled to full time use of the Equipment without extra charge by Lessor.

(c)      Lessee shall keep the Equipment at all times in its sole possession and control. The Equipment shall not be moved from the location stated in each Schedule attached hereto without the prior written consent of Lessor.

(d)      Without the prior written consent of Lessor, Lessee shall not make or permit to be made any alteration, attachment or addition to the Equipment, except for the installation of such standard engineering changes as are customarily made without charge by Manufacturer under its basic maintenance program, and Lessee shall cooperate so that such standard engineering changes, as part of Manufacturer's maintenance program, may be promptly installed.

(e)      Lessee agrees that, other than replacements and repairs, any alteration, attachment or addition to the Equipment shall be capable of being removed without material damage to or reduction in the value or impairment of the capability or efficiency of, the Equipment, and that no alteration, attachment or addition shall reduce the value or impair the capabilities or efficiency of the Equipment. Other than replacements or repairs, any alteration, attachment or addition shall be made at Lessee's expense and absent a default by Lessee hereunder, shall be the property of Lessee. Any item of the Equipment replaced or substituted in connection with the alteration, attachment or addition shall remain the property of Lessor and shall be restored to the Equipment in proper working order upon the termination of a Lease at Lessee's expense.

6.      MAINTENANCE AND REPAIRS: (a) At all times during the continuance of a Lease, Lessee, at its expense, shall maintain and keep the Equipment in good working order, repair and condition and make all necessary adjustments, repairs, and replacements and shall use and require the Equipment to be used in a manner consistent with the Manufacturer's warranty and maintenance program.

(b)      Without limiting the generality of the foregoing, effective upon expiration of the Manufacturer's warranty on the Equipment, Lessee, at its own expense, shall enter into and maintain in force a maintenance agreement with Manufacturer or, with prior written consent of Lessor and Secured Party (as defined in Section 12 hereof), such other vendor, covering the maintenance of the Equipment (hereinafter referred to as the "Maintenance Program"). Lessee shall pay the specified monthly maintenance charge and other costs required in the Maintenance Program. Lessee shall furnish Lessor an executed copy of the Maintenance Program. Lessor shall have no responsibilities or obligations whatsoever with respect to the condition, operation, maintenance or repair of the Equipment.

7.      REDELIVERY OF EQUIPMENT TO LESSOR: At the termination of a Lease, Lessee shall deliver possession of the Equipment to Lessor in accordance with the following procedures:

(a)      At the termination of a Lease, Lessee, at its sole expense, shall return the Equipment to Lessor in the same operating order, repair, condition and appearance as on the date of the Acceptance Date of such Lease, reasonable wear and tear excepted, and Lessee shall arrange and pay for such repairs and replacements required by Manufacturer to accept the Equipment under its maintenance program at its then standard rates. In addition, Lessee, at its sole expense, shall return all Equipment with the latest version of the operating system then available, either installed or on separate media, if the operating system is considered transferable as a part of the hardware by the Manufacturer. Upon Lessor's request, Lessee shall provide to Lessor no later than ten (10) days after de-installation of



the Equipment a written letter from the Manufacturer certifying that the Equipment is eligible for Manufacturer's maintenance program. In the event the letter is not provided, Lessor, at the sole expense of Lessee, may have the Equipment tested and certified by the Manufacturer and if such Equipment does not meet the Manufacturer's certification standards, then Lessee shall promptly pay to Lessor the cost of the repairs and replacements that are necessary or required for the Equipment to meet such certification standards.

(b)    At the end of the last business day of a Lease, and at its sole expense, Lessee shall tender the Equipment packed and crated by Manufacturer or by a carrier acceptable to Manufacturer in a manner suitable for truck transportation and at a loading dock for trucks of the manner normally used for transportation of the Equipment at the then present location of the Equipment. If the Equipment is not ready for such removal by the end of the first business day following the termination of a Lease, then Lessee shall be liable to Lessor for two (2) days' rent for each day during which the Equipment is not so tendered for removal.

(c)    Lessee shall be solely responsible and shall pay directly all transportation, insurance, rigging, drayage, packing, de-installation, disconnection charges and other items of a like nature incurred in connection with a Lease, including without limitation any costs and expenses incurred in respect of delivering the Equipment to Lessor's designated destination, and insurance on the Equipment in route, upon termination of any Lease or this Master Lease.

(d)    Some or all of the Equipment returned to Lessor at any time may contain sensitive information or data belonging to Lessee (or to third parties such as Lessee's customers/clients/patients) that is stored, recorded or in any way contained in or on the Equipment (the "Data"). Lessee hereby agrees that before the Equipment is shipped to or retrieved by Lessor or Lessor's agents, Lessee will, at Lessee's sole cost and expense, permanently destroy, delete, and remove all such Data; provided, that Lessee shall be required to perform this responsibility in a manner that ensures that all hard drives and other data retention components of the Equipment must function as originally installed. Lessee hereby acknowledges that it has sole responsibility to so destroy, delete, and remove all such Data and that Lessor has absolutely no liability for any Data that Lessee fails to so destroy, delete, and remove.

8.    OWNERSHIP AND INSPECTION: (a) The Equipment shall at all times remain the property of Lessor and be and remain personal property notwithstanding the manner in which it may be attached or affixed to realty. Lessee acknowledges and agrees that it has not, and by the execution of this Master Lease and any Lease, it does not have or obtain, and by payments and performance hereunder, it does not and will not have or obtain any title to the Equipment. Lessee will affix tags, decals or plates to the Equipment showing Lessor's ownership, which type of tag, decal or plate and location may be specified by Lessor, and Lessee shall not permit their removal or concealment.

(b)    Lessor or its agent shall have free access to the Equipment at all reasonable times for the purpose of inspection and for any other purpose contemplated in this Lease.

(c)    Lessee shall immediately notify Lessor of all details concerning any claim of damage or loss arising out of the use, manufacturer, functioning or operation of the Equipment.

(d)    Lessee shall keep the Equipment free and clear of all liens, encumbrances and claims of any kind and nature.

9.    INSURANCE: The risk of loss for or any damage to or destruction of the Equipment shall be on Lessee. Lessee shall obtain and maintain for the entire term of any Lease, at its own expense, property damage and liability insurance and insurance against loss or damage to the Equipment without deductible or co-insurance borne by Lessee including, without limitation, loss by fire and hazard (including so-called all risks and extended coverage), theft, and such other risks of loss as are customarily insured against on the type of Equipment leased hereunder and/or by businesses in which Lessee is engaged, in such amounts, in such form and with such insurers as shall be satisfactory to Lessor; provided, however, that the amount of insurance against loss or damage to the Equipment shall not be less than the greater of the full replacement value of the Equipment or the total of the installments of rent then remaining unpaid hereunder. In the event that the Equipment shall be or become lost, stolen, destroyed, worn out, irreparably damaged, or shall be requisitioned or taken over by any governmental authority under the power of eminent domain or otherwise during the term of a Lease (any such occurrence being herein called a "Casualty Occurrence"), Lessee shall terminate such Lease by paying Lessor, on the payment date for Basic Rental next succeeding the Casualty Occurrence, an amount equal to the full replacement value of the Equipment plus the total of the installments of rent then remaining unpaid hereunder (the "Casualty Value"). In any settlement under this Section 9 Lessee shall be entitled to credit for the amount of any proceeds of any insurance or award actually received by Lessor or the Secured Party on account of the Casualty Value with all excess amounts being the sole property of Lessor; and if at the time of any settlement under this Section 9 any rents or other sums are due or accrued and unpaid hereunder, all such rents and other sums shall also be paid at the time of such settlement. Each insurance policy will name Lessee as an insured and Lessor and any Secured Party as additional insureds and loss payees thereof as Lessor's and any Secured Party's interest may appear, and shall contain a clause requiring the insurer to give Lessor and any Secured Party at least ten (10) days prior written notice of any alteration in the terms of such policy or of the cancellation thereof. Lessee shall furnish to Lessor and any Secured Party a certificate of insurance or other evidence satisfactory to Lessor and Secured Party that such insurance coverage is in effect. Lessor and any Secured Party shall be under no duty either to ascertain the existence of or to examine any such insurance policy or to advise Lessee in the event such insurance coverage shall not comply with the requirements hereof.



10.    WARRANTIES: (a) Lessor hereby assigns to Lessee, at Lessee's expense, any warranty rights which Lessor shall be entitled to enforce against Manufacturer in respect of the Equipment. Lessee shall take all reasonable action to enforce such warranties. Lessor, at the sole expense of Lessee, shall provide reasonable assistance to Lessee in enforcing such warranty rights.

(b)    Lessee acknowledges and agrees that Lessor does not manufacture the Equipment and does not represent the Manufacturer. Lessee further acknowledges and agrees that it has selected the Equipment and the Manufacturer based on Lessee's own judgment and experience. **LESSOR MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO THOSE WITH RESPECT TO THE CONDITION OR PERFORMANCE OF THE EQUIPMENT, ITS MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, OR WITH RESPECT TO PATENT INFRINGEMENT OR THE LIKE. LESSOR IS NOT RESPONSIBLE FOR ANY REPAIRS, SERVICE OR DEFECTS IN THE EQUIPMENT OR THE OPERATION THEREOF.** Lessor shall have no liability to Lessee for any claim, loss or damage of any kind or nature whatsoever and there shall not be any abatement of rent for any reason, including without limitation any claim, loss or damage arising out of or in connection with (i) the deficiency or inadequacy of the Equipment for any purpose, (ii) any deficiency or defect in the Equipment, (iii) the use or performance of the Equipment, (iv) any interruption or loss of service or use of the Equipment or (v) any loss of business or other loss or damage, direct, consequential or otherwise, whether or not resulting from any of the foregoing. Lessee will defend, protect, indemnify and hold Lessor and any Secured Party harmless against any and all losses, damages, injuries, claims, demands, liabilities, costs, and expenses including reasonable attorney's fees, arising out of or in connection with the design, manufacture, installation, use, condition, possession or operation of the Equipment. The foregoing indemnification shall not apply in the event such claims, demands, liabilities or costs are the direct cause of the willful fault or gross negligence of Lessor. The indemnities and assumptions of liabilities contained in this Section 10(b) shall continue in full force and effect after the termination of any Lease, whether by time or otherwise. At its own expense, Lessee will maintain adequate and complete public liability insurance to cover its liability with respect to the design, manufacture, possession or operation of the Equipment and the premises at which the Equipment is located, and shall name Lessor and any Secured Party as additional insureds under such public liability policy or policies.

11.    UPGRADES: Provided Lessee is not in default under this Master Lease or any Lease, Lessee shall notify Lessor in writing that Lessee desires to add upgrades to the Equipment not less than forty-five (45) days before the desired date of installation stating when and what upgrades Lessee intends to obtain. Within ten (10) business days after Lessor receives Lessee's notice Lessor may offer to lease and supply such upgrades (the "Offer") to Lessee. Lessee may accept this offer or seek other bona fide offers from third parties, the credit of which shall have been approved by Lessor in its sole discretion ("Third Party Offer"). Lessee shall notify Lessor of any more favorable Third Party Offer. Lessee shall obtain the upgrade from Lessor if Lessor at least matches the Third Party Offer within five (5) business days after Lessor's receipt of Lessee's notice. If Lessee leases upgrades from Lessor, the lease shall be subject to a Schedule the terms of which, other than the Initial Term, Acceptance Date and Basic Rent, shall be the same as those applicable to the Equipment to which the upgrades relate.

12.    SECURITY INTEREST AND/OR ASSIGNABILITY: At any time and from time to time, Lessor may assign the rents and other sums at any time due or to become due or at any time owing or payable by Lessee to Lessor under any Lease or this Master Lease. Any assignment shall be in respect of any Lease or this Master Lease and/or the rents and other sums due and to become due in respect of the Equipment, and may be either absolute or as collateral security for any obligation of Lessor. Any assignment shall not be binding on Lessee until written notice has been given to Lessee by Lessor and the assignee ("Secured Party"). From and after the receipt by Lessee of written notice Secured Party shall not be obligated to perform any duty, covenant or condition required to be performed by Lessor under any Lease or this Master Lease, but on the contrary, Lessee, by its execution hereof, acknowledges and agrees that notwithstanding any such assignment, all such duties, covenants or conditions required to be performed by Lessor shall survive any such assignment and shall be and remain the sole liability of Lessor and of every person, firm or corporation succeeding (by merger, consolidation, purchase of assets or otherwise) to all or substantially all of the business assets or goodwill of Lessor. Without limiting the foregoing, Lessee further acknowledges and agrees that the rights of Secured Party in and to the sums payable by Lessee under any Lease or this Master Lease (including, without limitation, Basic Rental and Casualty Value) shall not be subject to any abatement whatsoever, and shall not be subject to any defense, set-offs, counterclaim or recoupment whatsoever whether by reason of failure of or defect in Lessor's title or any failure of Lessor to perform any of its obligations hereunder or any interruption from whatsoever cause in the use, operation or possession of the Equipment or any part thereof or any damage to or loss or destruction of the Equipment or any part thereof or by reason of any other indebtedness or liability, howsoever and whenever arising, of Lessor to Lessee or to any other person, firm or corporation or to any governmental authority or for any cause whatsoever. It is the intent hereof that Lessee shall be unconditionally and absolutely obligated to pay Secured Party all of the rents, Casualty Value and other sums which are the subject matter of the assignment and that Secured Party shall have the sole right to exercise all rights, privileges and remedies (either in its own name or in the name of Lessor for the use and benefit of Secured Party) which by the terms of any Lease or this Master Lease or by applicable law are permitted or provided to be exercised by Lessor.



13.    RIGHT TO QUIET ENJOYMENT: So long as the Lessee shall not be in default hereunder, Lessee shall have the right to quiet enjoyment and use of the Equipment.

14.    DEFAULT; REMEDIES: The Lessee shall be in default hereunder ("Default") if: (i) it fails to make a timely payment of any rent or other amounts due under any Lease; (ii) it fails to timely perform any of the terms or provisions of any Lease, this Master Lease, or any other agreement by and between Lessor and Lessee, including any other master lease, and fails to cure such default within five (5) days after receipt from Lessor and/or Secured Party of written notice to Lessee of the default; (iii) any representation or warranty made by Lessee herein or in any document or certificate furnished Lessor or Secured Party in connection herewith or pursuant hereto shall prove to be incorrect in any material respect, so long as Lessee has been given five (5) days notice of said incorrect representation or warranty; (iv) a temporary receiver is appointed for Lessee or Lessee's property and the receiver is not removed within thirty (30) days after appointment, or if a permanent receiver is appointed for Lessee or Lessee's property; if, whether voluntarily or involuntarily, Lessee takes advantage of or seeks to take advantage of any debtor relief or bankruptcy proceedings under any present or future law; if Lessee makes an assignment for benefit of creditors; or if Lessee shall be declared bankrupt, whether voluntarily or involuntarily; (v) an order, judgment or decree of a court or agency or supervisory authority having jurisdiction in the premises for the appointment of a conservator or receiver or liquidator in any insolvency, readjustment of debt, marshaling of assets or liabilities or similar proceedings of or relating to Lessee or of or relating to all or any substantial part of its property, or the winding up or liquidation of its affairs, shall have been entered against Lessee, and such decree or order shall have remained in force undischarged or unstayed for a period of thirty (30) days from the date of entry thereof; and/or (vi) the rights, privileges or franchises of Lessee to do business shall be declared forfeited by any governmental authority or any court of competent jurisdiction and not restored or the order, decree or judgment related thereto effectively stayed by appropriate proceedings within 30 days thereafter. Upon occurrence of any such Default, Lessor may at its option declare any Lease and/or this Master Lease to be in default and may do one or more of the following with respect to any or all Equipment as Lessor in its sole discretion shall elect: (a) cause Lessee to (and Lessee agrees that it will), upon written demand of Lessor and at Lessee's expense, promptly return the Equipment to Lessor in accordance with all of the terms of Section 7 hereof, or Lessor, at its option, may enter upon the premises where Equipment is located and take immediate possession of and remove the same, all without liability to Lessor for damage to property or otherwise. If for any reason the Equipment is not returned or the Lessor is not able to recover possession of the Equipment, Lessee agrees to immediately pay to Lessor the then "Fair Market Retail Value" (as defined below in this Section 14) of the Equipment; (b) sell or lease any or all of the Equipment at public or private sale, with or without notice to Lessee or advertisement, or otherwise dispose of, hold, use, operate or keep idle the Equipment, all as Lessor in its sole discretion may determine and all free and clear of any rights of Lessee and without any duty to account to Lessee for such action or inaction or for any proceeds with respect thereto; (c) by written notice to Lessee, cause Lessee to (and Lessee agrees that it will) pay to Lessor (as liquidated damages for loss of a bargain and not as a penalty) on the date specified in such notice an amount equal to the present worth of all unpaid Basic Rentals, such present worth to be computed on the basis of a four percent (4%) per annum (based on a year of 360 days) discount from the respective dates of such rental payment, which absent a default, would have been payable hereunder for the full term hereof (plus interest accrued thereon at the rate of 18% per annum (based on a year of 360 days) from said date to the date of actual payment), plus any other monies due or accrued hereunder up to date of actual payment; and/or (d) Lessor may exercise any other rights or remedies which may be available to it under the Uniform Commercial Code or any other applicable law or proceed by appropriate court action to enforce the terms hereof or to recover damages for the breach hereof or to rescind any Lease and/or this Master Lease as to any or all Equipment. In addition, Lessee shall continue to be liable for all indemnities under this Master Lease, and for all legal fees and other costs and expenses resulting from the foregoing defaults or the exercise of Lessor's remedies, including without limitation placing any Equipment in the condition required by Section 7 hereof. "Fair Market Retail Value" is defined as that purchase price that would be obtained in an arm's length retail transaction between informed and willing parties under no compulsion to buy or sell. No right or remedy referred to in this section is intended to be exclusive, but each shall be cumulative and in addition to any other right or remedy referred to above or otherwise available to Lessor at law or in equity. No express or implied waiver by Lessor of any default shall constitute a waiver of any other default by Lessee or a waiver of any Lessor's rights or remedies. To the extent permitted by applicable law, Lessee hereby waives any rights now or hereafter conferred by statute or otherwise which may require Lessor to sell, lease or otherwise use or deal with any Equipment in mitigation of Lessor's damages as set forth in this section or which may otherwise limit or modify any of the Lessor's rights or remedies under this section.

15.    SUBLEASE AND ASSIGNMENT; CHANGE OF CONTROL: Lessee may sublease the Equipment or assign its rights under any Lease or this Master Lease, in whole or in part, only with the prior written consent of Lessor and any Secured Party. In any such case, Lessee shall nevertheless remain fully liable hereunder and, in requesting the prior written consent, shall provide copies of any sublease or assignment, together with all related documents, to Lessor and Secured Party. Any "Change of Control" shall require the prior written consent of Lessor. "Change of Control" means the sale of substantially all the assets of Lessee, any merger, consolidation or acquisition of Lessee with, by or into another corporation, entity or person, or any change in the ownership of fifty percent (50%) or more of the voting equity interests of Lessee in one or more transactions. Without the prior consent of Lessor and any Secured Party, any subletting by Lessee of the Equipment or assignment by Lessee of its rights under any Lease or this Master Lease (including but not

**◀ICA▶FINANCIAL**

limited to any assignment resulting from a Change of Control) shall be null and void.

16.    RENEWAL OPTION: Provided Lessee is not in default under this Master Lease or any Lease, Lessee may elect to renew the Initial Term of a Lease for a period not less than twelve (12) months (a "Renewal Term"). Lessee's renewal option is subject to the following terms and conditions:

(a)    Lessee must notify Lessor of its exercise of the option at least four (4) months before the expiration of the Initial Term of a Lease.

(b)    All of the terms of the Lease other than the length of the Renewal Term and the Basic Rental shall remain the same. The Basic Rental shall be the Fair Rental Value, as hereinafter defined, of the Equipment as of commencement of the Renewal Term.

"Fair Rental Value" is defined as the value upon which a willing Lessor and a willing Lessee would agree, for the term involved, each respectively under no compulsion to lease. Fair Rental Value as of the end of the Initial Term shall be determined by agreement of Lessor and Lessee or, if they cannot agree, then by an independent appraiser selected by Lessor and satisfactory to Lessee. The cost of such appraisal shall be paid equally by Lessor and Lessee. If, for any reason, the Lessee and Lessor can not agree on the Fair Rental Value within the notice period specified in Section 16.a, the term of the Lease shall be extended for continuous and consecutive four (4) month periods at the then existing Basic Rental with receipt of notice of termination required at least four (4) months prior to expiration.

(c)    Upon notice, Lessor may substitute equipment of the same model and type for the Equipment, at Lessor's expense and in its sole discretion.

17.    PURCHASE OPTION: Provided Lessee is not in default under this Master Lease and any Lease, Lessee may notify Lessor that it desires to purchase all or part of the Equipment on a Lease. The notice shall be given at least four (4) months before the expiration of a Lease Term. Lessor agrees to sell to Lessee, at the end of the Lease Term and upon terms and conditions as are acceptable to Lessor and Lessee, the Equipment or, at Lessor's sole option, equipment of the same model, type and condition which shall be delivered and, if applicable, installed at Lessor's expense at the same location as the Equipment. The purchase price for such Equipment shall be its "Fair Market Retail Value" as defined in Section 14 hereof). If Lessor and Lessee cannot agree upon the Fair Market Retail Value, such value shall be determined by an independent appraiser selected by Lessor and satisfactory to Lessee. The cost of such appraisal shall be paid equally by Lessor and Lessee. If, for any reason, the Lessee and Lessor can not agree on the Fair Market Retail Value within the notice period specified in Section 16(a), the term of the Lease shall be extended for continuous and consecutive twelve (12) month periods at the then existing Basic Rental with receipt of notice of termination required at least four (4) months prior to expiration.

18.    GENERAL: (a) In any case where the consent or approval of Lessor, Lessee, and/or Secured Party is required to be obtained under this Master Lease, such consent or approval will not be unreasonably withheld. No such consent or approval shall be valid unless it shall be in writing.

(b)    (i)    This Master Lease shall be governed by, enforced under and construed in accordance with the laws of Commonwealth of Virginia, regardless of the laws that might otherwise govern under applicable principles of conflicts of law of the Commonwealth of Virginia.

(ii)    Lessee hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of Circuit Court for the County of Henrico, Virginia, and the United States District Court of Eastern District of Virginia, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Master Lease and the transactions contemplated hereby, and further hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in such Virginia state court or, to the extent permitted by applicable law, such Federal court. The parties hereto agree that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Nothing in this Master Lease shall affect any right that Lessor may otherwise have to bring any action or proceeding relating to this Master Lease or the transactions contemplated hereby against Lessee or its properties in the courts of any jurisdiction, including without limitation any action or proceeding to recover possession of the Equipment. Lessee irrevocably and unconditionally waives any objection which it may now or hereafter have to the laying of venue of any such suit, action or proceeding described in this clause (b)(ii) of this Section 18 and brought in any court referred to in this clause (b)(ii) of this Section 18. The parties hereto irrevocably waive, to the fullest extent permitted by applicable law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

(iii)    **EACH OF LESSEE AND LESSOR IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON ANY CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS MASTER LEASE, THE TRANSACTIONS CONTEMPLATED HEREBY OR IN THE NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT THEREOF.**

(c)    All notices, instructions or consents which should or may be given hereunder shall be in writing and shall be deemed given and received upon the sooner of (i) the day on which delivered to such party, (ii) within two days after deposit in the United States Mail, postage prepaid, if sent by registered or certified mail, return receipt requested, or (iii) if sent by Federal Express or comparable overnight delivery service on the day after the day on which deposited with such carrier, addressed to the respective party at its respective

address as set forth herein or to such other addresses as such party shall have designated by notice given pursuant to this clause (c) of this Section 18. To be effective, all such notices to Lessor shall be given at the same time and in the same manner to CCA Financial Services, LLC, 7275 Glen Forest Drive, Suite 100, Richmond, Virginia 23226, and to any Secured Party.

(d)        This Master Lease sets forth in full the agreement between Lessor and Lessee and supersedes any and all prior understandings and agreements relating to the subject matter herein. Any titles or captions contained herein are for convenience only, and shall not be deemed to be part of the context. This Master Lease may not be changed, or in any manner modified, except by further written agreement executed by Lessor and Lessee, and Secured Party where necessary; provided, however, that the Lessor and the Lessee agree that the Lessor may insert missing or correct information in this Master Lease and/or any Schedules including, without limitation, the correct legal name of the Lessee and information describing the Equipment. This Master Lease is being entered into between competent persons, who are experienced in business and represented by counsel, and has been reviewed by the parties and their counsel; therefore, any ambiguous language in this Master Lease will not necessarily be construed against any particular party as the drafter of such language. This Master Lease may be executed in a number of counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

(e)        Any provision of this Master Lease which is prohibited or unenforceable in any jurisdiction shall be as to such jurisdiction ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or enforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in any other jurisdiction.

(f)        No omission or delay by Lessor or Secured Party at any time to enforce any right or remedy reserved on it or to require performance of any of the terms, covenants or provisions hereof by Lessee at any time designated, shall be a waiver of any such right or remedy to which Lessor or Secured Party is entitled, nor shall it in any way affect the right of Lessor or Secured Party to enforce such provisions thereafter.

(g)        (i)        Lessee, upon execution of this Master Lease and thereafter upon execution of each Schedule, shall provide Lessor with a certificate of good standing or similar certificate issued by the state in which Lessee is incorporated or organized, and shall also provide such other documents as Lessor may reasonably request. Lessee further authorizes Lessor to file such financing statements describing the Equipment as the Lessor deems appropriate and, in alternative, Lessee agrees to provide such executed financing statements as Lessor may require. From time to time after the Effective Date, without further consideration, the parties will cooperate with each other and will execute and deliver such documents to the other party as such other party may reasonably request to carry out any of the transactions contemplated by this Master Lease. Lessee further agrees to provide Lessor with 30 days advance written notice of any change of the state of its incorporation or organization or any change of its legal name.

(ii)        Lessee represents and warrants to Lessor as follows (and hereby reaffirms such representations and warranties as of the time of each Lease):

(A)        Lessee is duly incorporated or organized, and in good standing or existing (as the case may be under applicable law), under the laws of the state of DE and that its exact legal name is "B. CAUSE, LLC" as stated in the preamble of this Master Lease;

(B)        Lessee has all requisite power and authority to carry on its business as now conducted;

(C)        Lessee is duly authorized to do business, and is in good standing or existence (as the case may be under applicable law) in each jurisdiction where such qualification is required;

(D)        The execution, delivery, and performance by Lessee of this Master Lease and each Lease are within Lessee's powers and have been duly authorized by all necessary action.

(E)        This Master Lease has been duly executed and delivered by the Lessee and constitutes, and each Lease when executed and delivered by Lessee will constitute, the valid and binding obligations of Lessee, enforceable against Lessee in accordance with their respective terms, except as may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and by general principles of equity;

(F)        The execution, delivery and performance by Lessee of this Master Lease and each Lease (1) do not require any consent or approval of, registration or filing with, or any action by, any governmental authority, (2) will not violate any material applicable law or regulation or the charter, by-laws or other organizational documents of Lessee or any order of any governmental authority, and (3) will not violate or result in a default under any indenture, material agreement or other material instrument binding on Lessee or any of its assets or give rise to a right thereunder to require any payment to be made by Lessee; and

(G)        Lessee is in compliance with all laws, regulations and orders of any governmental authority applicable to it or its property and all indentures, agreements and other instruments binding upon it or its property.

(h)        During the term of this Master Lease, Lessee agrees to deliver to Lessor a copy of Lessee's annual audited financial statements and quarterly interim financial statements within a reasonable time after said statements are available.

(i)        Lessee acknowledges that Lessor has appointed CCA Financial Services, LLC, with its principal office at 7275 Glen Forest Drive, Suite 100, Richmond, Virginia 23226, as its exclusive collection and servicing agent with respect to the collection of amounts due under this Agreement and to the performance of the obligations of Lessor hereunder. Amounts payable by Lessee to Lessor shall be made payable to "CCA Financial, LLC" and delivered to CCA Financial Services, LLC at P.O. Box 17190, Richmond, VA



23226 unless otherwise directed by Secured Party.

(j)       A manual signature on this Master Lease and other documents, including but not limited to any Schedule, to be delivered pursuant to a Lease, an image of which shall have been transmitted electronically (a PDF copy sent via email or a copy sent via fax), will constitute an original signature for all purposes. The delivery of copies of this Master Lease and any other documents, including but not limited to any Schedule, to be delivered pursuant to a Lease, including executed signature pages where required, by such electronic transmission will constitute effective delivery of this Master Lease and any such other documents for all purposes.

**IN WITNESS WHEREOF**, Lessor and Lessee have caused this Master Lease to be executed in their respective names and behalves and attested by their respective proper officers thereunto duly authorized.

Lessor:       **CCA FINANCIAL, LLC**

By:

Name:

Title:        Michael S. Stewart
E.V.P. of Marketing

Lessee:       **B. CAUSE, LLC**

By:

Name:        Thomas Flake

Title:        Cmo



Equipment Schedule No. ■540-01-001
Between
**B. CAUSE, LLC**
(Lessee)
and
**CCA Financial, LLC**
(Lessor)

This Equipment Schedule, dated as of July 30, 2018, is issued pursuant to Master Lease Agreement No. ■540, between **CCA Financial, LLC** and **B. CAUSE, LLC** (the "Master Lease"), dated as of July 30, 2018. Any term not otherwise defined herein shall have the meaning ascribed to it in the Master Lease.

1. **EQUIPMENT SUBJECT TO THIS EQUIPMENT SCHEDULE**

   <u>Manufacturer</u>                    <u>Location</u>

   Various

   <u>Description of Equipment</u>

   See Annex I to this Equipment Schedule

2. **MONTHLY RENTAL PAYMENTS**

   <u>Initial Term</u>                    <u>Basic Rental</u>

   24 Months                    Lease Rate Factor .0449103 of Equipment and Shipping
                                Cost per month
                                First and Last Basic Rental in Advance

   The monthly Basic Rental amount will be prorated and charged as interim rent between the date an item of equipment is accepted and the Commencement Date. The lease rate and associated Basic Rental are based on the applicable treasury rate published as of July 30, 2018. Should the treasury rate increase prior to or during the installation period, the lease rate will be adjusted.

3. **COMMENCEMENT DATE**

   The Commencement Date shall be the earlier of (i) where the Acceptance Date is the first day of the month, that date, or in any other case, the first day of the month following the Acceptance Date; or (ii) if specified, the date below:

   October 01, 2018



EXHIBIT

4



4.    **CREDIT CRITERIA**

(a) B. Cause, LLC will pledge as collateral additional assets with an original cost not less than $190,000. A separate security agreement will be executed detailing the assets to be pledged.

Agreed to by:

Sign: _____          Sign: _____

**CCA Financial, LLC**                  **B. CAUSE, LLC**

Name: ___Michael S. Stewart___          Name: __Thomas Flake__
         E.V.P. of Marketing                      (Printed Name Here)

Title: _____          Title: ____CMO____


FINANCIAL

Annex I
Description of Equipment

Equipment Schedule No. ■540-01-001, dated as of July 30, 2018, to Master Lease Agreement No. ■540.

**I.   Equipment:**

| QTY | DESCRIPTION | SERIAL # |
|---|---|---|
| 2 | POWEREDGE R640 – MARKET SURVEILLANCE | AC1Q3936 |
| 1 | POWEREDGE R640 DATABASE SERVER | AC1Q3936 |
| 10 | POWEREDGE R640 ENGINE SERVER | AC1Q3936 |
| 3 | POWEREDGE R640 SEQUENCE SERVER | AC1Q3936 |
| 1 | POWEREDGE R640 SERVER – VMWARE NODES W/ | |
| | VCENTER | AC1Q3936 |
| 4 | POWEREDGE R640 SERVER – VMWARE NODES | AC1Q3936 |
| 27 | FLAREON ULTRA 10GE ADAPTER CONTROLLER W/ | |
| | FILMWARE ONLOAD & PTP | |

*EQUIPMENT LOCATION:  5469 GREENWICH ROAD, VIRGINIA BEACH VA  23462*

Lessor's Initials: _MSS_

Lessee's Initials:



## FIRST ADDENDUM TO SCHEDULE NO. █540-01-001 TO MASTER LEASE AGREEMENT █540

This First Addendum, dated as of August 03, 2018, is to Schedule No. █540-01-001 (the "Lease") to Master Lease Agreement No. █540, between CCA Financial, LLC ("Lessor") and B. CAUSE, LLC ("Lessee").

Notwithstanding anything in the Lease to the contrary, Lessee and Lessor hereby mutually agree to the following with respect to the Lease:

The Basic Rental shall be $17,071.75 per month with First and Last Basic Rental in Advance.

It is agreed that no amendment or other modification of this Addendum will be binding upon the parties or either of them unless such amendment or other modification shall be in writing and executed by both parties.

IN WITNESS WHEREOF, Lessor and Lessee have caused this First Addendum to be executed in their respective names and behalves by their respective officers thereunto duly authorized.

CCA Financial, LLC                          B. CAUSE, LLC

By: _____         By: _____
      Michael S. Stewart                         Thomas Flabe
Title: E.V.P. of Marketing               Title: CMO

| EXHIBIT |
| 5 |



**Equipment Schedule No. 11540-01-001**

**CERTIFICATE OF ACCEPTANCE**

Reference is made to Equipment Schedule No. ■540-01-001, dated as of July 30, 2018, between **CCA Financial, LLC** as Lessor and **B. CAUSE, LLC** as Lessee. The terms used herein shall have the same meaning as such terms have in such Equipment Schedule.

The undersigned certifies that (a) the following Equipment has been (i) inspected (if applicable) by authorized representatives of Lessee, (ii) installed (if applicable) and placed in good working order, and (iii) accepted by Lessee for leasing under all provisions of the Lease; and (b) that Lessee is obligated to pay the rentals and all other sums provided for in the Lease with respect to the Equipment listed below:

| QTY | DESCRIPTION | SERIAL # |
|-----|-------------|----------|
| 2 | POWEREDGE R640 – MARKET SURVEILLANCE | AC1Q3936 |
| 1 | POWEREDGE R640 DATABASE SERVER | AC1Q3936 |
| 10 | POWEREDGE R640 ENGINE SERVER | AC1Q3936 |
| 3 | POWEREDGE R640 SEQUENCE SERVER | AC1Q3936 |
| 1 | POWEREDGE R640 SERVER – VMWARE NODES W/ VCENTER | AC1Q3936 |
| 4 | POWEREDGE R640 SERVER – VMWARE NODES | AC1Q3936 |
| 27 | FLAREON ULTRA 10GE ADAPTER CONTROLLER W/ FILMWARE ONLOAD & PTP | |

*EQUIPMENT LOCATION:  5469 GREENWICH ROAD, VIRGINIA BEACH VA  23462*

The Acceptance Date for the above Equipment is _9/6/18_ .

Lessee:   B. CAUSE, LLC

Sign:    ●

Title:   ● *CMO*

**EXHIBIT**

6