# CONSULTING AGREEMENT

This Consulting Agreement (including all amendments or supplements thereto, the "Agreement") is entered, subject to authorization and approval by the Court (as that term is defined below), on and as of the ____ day of January, 2020 (the "Effective Date"), between Alex D. Moglia ("Moglia" or the "Trustee"), not personally or individually, but solely as the chapter 7 trustee of the bankruptcy estates of BCause Mining LLC ("BC Mining") and BCause LLC ("BC Holding", and collectively with BC Mining, the "Debtors"), and Christi Vaassen ("Consultant").

## RECITALS

A. WHEREAS, the Debtors previously employed Consultant as the controller and bookkeeper; and

B. WHEREAS, on April 11 and April 12, 2019, each of BC Mining and BC Holding, respectively, filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and thereby initiated their bankruptcy cases, which are pending before the United States Bankruptcy Court for the Northern District of Illinois (Eastern Division) (the "Court"); and

C. WHEREAS, the Court has entered an order directing that the Debtors' bankruptcy cases shall be jointly administered under Case No. 19-10562; and

D. WHEREAS, on October 8, 2019, Court entered an order converting the Debtors' bankruptcy cases from cases under chapter 11 of the Bankruptcy Code to cases under chapter 7 of the Bankruptcy Code; and

E. WHEREAS, on October 11, 2019, Moglia was appointed as the Trustee of the Debtors' bankruptcy estates; and

F. WHEREAS, the Trustee wishes to retain Consultant as an independent contractor to perform consulting services related to completing the Debtors' books of financial accounts, W2s and such other services as the Company may determine (as more fully defined below, the "Services") pursuant to the terms of this Agreement; and

G. WHEREAS, Consultant wishes to perform the Services pursuant to the terms of this Agreement; and

NOW THEREFORE, for and in consideration of the mutual promises, covenants and obligations contained herein, Company and Consultant agree, subject to Court authorization and approval, as follows:

1. **Recitals**. Each of the Company and Consultant agree and acknowledge the truth and correctness of the above recitals, which are expressly incorporated into this Agreement and are part of the consideration provided to each party under this Agreement.

2. **Provision of Services**. Consultant shall provide the Services to the Company as an independent contractor pursuant to the terms of this Agreement. The Services shall include, but not be limited to, completing the Debtors' books of financial accounts, preparing form W2's and any other similar forms required by applicable law, providing information to and working with the Trustee's accountants to provide information to, answer questions of, and otherwise assist the Trustee's accountants in completing the Debtors' tax returns, and otherwise assisting the Trustee by answering questions and locating documents among the Debtors' records at the request of the Trustee, his staff and his legal counsel, and such other services as the Trustee may determine.

It being understood that Consultant has accepted or intends to accept employment with a third party, Consultant shall provide the Services at such times and from such locations as reasonably determined by Consultant provided that Consultant provides such Services in a timely manner consistent with the timing expectations and overall parameters established by the Trustee.

Consultant shall not be authorized to enter into any contracts or agreements on behalf of the Trustee, the Debtors, or the Debtors' bankruptcy estates, or to otherwise create any obligations of the Trustee, the Debtors, or the Debtors' bankruptcy estates whatsoever. Consultant agrees to exert her best efforts in the diligent performance of the Services she performs on behalf of the Trustee and the Debtors' bankruptcy estates.

Consultant shall provide the Services at all times in compliance with all applicable laws, including, without limitation, the Health Insurance Portability and Accountability Act (also known as HIPAA), and such other laws, statutes, regulations, and court or administrative rules orders as may be applicable. Consultant shall indemnify the Trustee and the Debtors' bankruptcy estates and hold them harmless from any and all violations of any such laws, statutes, regulations, or court or administrative rules or orders that may be caused by Consultant.

3. **Consulting Fee; Consultant Solely Responsible for Taxes**. Consultant's fee for providing the Services shall be a fixed fee of $11,500 (the "Fixed Fee") irrespective of the actual number of hours of Services provided by Consultant. The Fixed Fee shall be payable as follows: (i) $5,750.00 upon entry of an order of the Court approving this Agreement and authorizing payment of the Fixed Fee; and (ii) $5,750.00 upon delivery of completed form W2s for the Debtors' former employees and such other similar forms as may be necessary before any deadlines under applicable law.

Consultant understands that Consultant is responsible to pay any and all of taxes under any applicable law, including but not limited to all payroll, income, employment, and other taxes, including any such taxes related to any individuals that may be hired by Consultant to assist Consultant in the performance of the Services. Consultant further understands that she may be liable for self-employment taxes and/or social security taxes and/or any other taxes according to applicable law. The payment of any and all such taxes are the sole and absolute responsibility of Consultant. Consultant agrees to indemnify and hold harmless the Trustee and the Debtors' bankruptcy estates from any amounts they may be obligated to pay to the Internal Revenue Service or any other federal, state, municipal or other applicable taxing authority

together with any costs incurred by the Trustee or the Debtors' bankruptcy estates in responding to any such claims.

4. **Independent Contractor Relationship**. The Trustee and the Consultant expressly agree and acknowledge that the relationship created this Agreement is that of an independent contractor and not an employment relationship. Consultant shall not be entitled to any unemployment insurance, workers' compensation or any employee benefits as a consequence of Consultant's relationship with the Trustee. No workers' compensation insurance shall be obtained by the Trustee covering Consultant or individuals engaged by Consultant. Consultant shall comply with the applicable workers' compensation law concerning Consultant and any individuals engaged by Consultant.

5. **Termination**. This Agreement may be terminated by the Trustee at any time with or without advanced notice to Consultant for any reason or no reason whatsoever irrespective of whether or not any Services have or have not been completed. Any notices required hereunder may be provided to Consultant via email at _____. If Consultant dies, all of the Trustee's obligations under this Agreement shall terminate automatically and be of no further force or effect as of that date.

6. **Confidentiality**. Absent the express consent of the Trustee, Consultant shall retain in confidence and shall not use or disclose to any person, firm, entity, or corporation any of the Debtors' Confidential Information. As used in this Agreement, the term "Confidential Information" means any information not generally known or readily ascertainable by proper means by the general public, and includes trade secrets. Confidential Information includes, among other things, information about the Debtors, their employees and affiliates, the Debtors' business opportunities, processes, products and services of the Debtors or their affiliates,

including information relating to research, development, software, engineering, and marketing, selling to and servicing of the Debtors' or their affiliates' customers and vendors. Confidential Information also includes, but is not limited to, information about the Debtors' or their affiliates' business opportunities, technical data, trade secrets or know-how, research results and reports, products and product plans, services and service plans, customer and vendor lists and customers and vendors (including but not limited to customers and vendors of or to the Debtors or their affiliates on whom Consultant called or with whom Consultant became acquainted during the term of this Agreement or during Consultant's former employment with the Debtors), market and marketing information, software, domain names, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, business strategies, forecasts, financial information, personnel information, pricing, costing, purchasing, profits, markets, product capabilities, marketing, business ventures, merchandising plans or ideas, sales, data processing, compensation, finances, methods, know-how, formulas, blueprints, discoveries, equipment, machines, algorithms, computer programs, software and software documentation. Confidential Information may be contained in such items as, but not limited to, marketing plans or proposals, contracts or agreements, the particular needs and requirements of the Debtors' or their affiliates' customers or vendors, the identity of the Debtors' or their affiliates' customers and vendors and potential customers and vendors, research plans and reports, product plans, and sales and purchasing data.

     Consultant acknowledges that money damages would not be sufficient to remedy for any breach of Consultant's obligations under this Section 5. Therefore, the Trustee shall be entitled to enforce the provisions of this Section 5 by specific performance and injunctive relief, without the necessity of posting any bond or a showing of any quantifiable damages, as remedies for any

such breach or any threatened breach.  Such remedies shall not be deemed the exclusive remedies for a breach of this Section 5, but shall be in addition to all remedies available at law or in equity to the Trustee, including the recovery of damages from Consultant and her agents involved in any such breach and remedies available to the Trustee pursuant to the terms of this Agreement or any other agreements between the Trustee and Consultant or that may otherwise be available to the Trustee under applicable law or in equity.

The provisions of this Section 5 shall survive any expiration or termination of this Agreement for a period of two years.

7. **Duty to Return Materials**.  Both during the term of this Agreement and thereafter, Consultant shall, upon the Trustee's request but in no case later than the date that this Agreement expires by its own terms or is earlier terminated (irrespective of whether or not the Trustee has made such a demand), immediately deliver to the Trustee all Confidential Information and any other documents or property of the Debtors or their bankruptcy estates which may be in her possession or under her control, including but not limited to all materials that relate to the Debtors which came into Consultant's possession.

8. **Court Approval**.  Both this Agreement and the payment of the Fixed Fee are expressly subject to the entry of an order by the Court authorizing the Trustee to enter into this Agreement and approving and authorizing the payment of the Fixed Fee.

9. **Waiver and Release of Claims From October 8, 2019**.  As part of the consideration to the Trustee and as a further inducement from Consultant to the Trustee to enter into this Agreement, Consultant covenants not to sue, file or assert and expressly waives and releases any and all claims, causes of action, rights to sue, damages, and losses that Consultant has or may have whatsoever against the Trustee, the Debtors' or the Debtors' bankruptcy estates,

whether known or unknown, fixed or contingent, in law or in equity as of the Effective Date, related to any compensation, salary, or other money Consultant asserts is or may be owed to Consultant related to any services or time related to any services purportedly provided by Consultant to the Debtors, the Trustee or the Debtors' bankruptcy estates from and including October 8, 2019, through the Effective Date. Notwithstanding the foregoing, the terms of this Section 9 shall not apply to the Fixed Fee.

10. **Governing Law; Venue; WAIVER OF JURY RIGHTS**. This Agreement shall be governed by the laws of the State of Illinois without regard to its conflict of laws doctrine or any similar theories or doctrines. In the event of any disputes between the parties, Company and Consultant expressly agree that any and all such disputes shall be heard in and decided by the Court. Consultant expressly agrees that the Court shall be the exclusive venue for any and all such disputes, that the Court has personal jurisdiction over the Consultant related to such disputes, and Consultant waives any objections or defenses to the Court hearing and resolving any such disputes, including, but not limited to, any objections or defenses based on a theory that such jurisdiction is inconvenient to the parties or under the doctrine of *forum nonconvenes*. Consultant expressly consents to the Court hearing and finally resolving any such disputes. Furthermore, the Consultant expressly agrees that any such disputes shall be heard and decided by a judge and expressly and knowingly waives, to the fullest extent permitted by the law, any and all rights the Consultant has or may have to a jury trial in any and all disputes related to this Agreement.

11. **Assignment**. This Agreement shall not be transferred or assigned, in whole or in part, by Consultant without the written consent of the Trustee, which consent may be withheld in the sole and exclusive determination of the Trustee.

AGREED TO AND ACCEPTED BY:

| ALEX D. MOGLIA, not personally, but solely as the Chapter 7 Trustee of the Bankruptcy Estates of BCause Mining LLC and BCause LLC | CHRISTI VAASSEN |
|---|---|
| _____ | _____ |
| Date:_____ | Date:_____ |

8