**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | **Chapter 7** |
| | ) | |
| **BCause Mining LLC,** *et al.* | ) | **Case No. 19-10562** |
| | ) | **(Jointly Administered)** |
| Debtors. | ) | |
| | ) | **Hon. Janet S. Baer** |
| | ) | |

**NOTICE OF MOTION**

**TO:    PERSONS LISTED ON THE ATTACHED SERVICE LIST**

        **PLEASE TAKE NOTICE THAT** on **Thursday, February 13, 2020,** at the hour of **9:30 a.m.**, the undersigned shall appear before the Honorable Janet S. Baer, United States Bankruptcy Judge or any judge sitting in her stead, at 219 S. Dearborn Street, Courtroom 615, Chicago, Illinois, and shall then and there present the **MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 363 AUTHORIZING THE TRUSTEE TO CONSOLIDATE AND SELL CRYPTO CURRENCY FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS AND ENCUMBRANCES, TO SHORTEN AND LIMIT NOTICE AND FOR RELATED RELIEF (the "Motion")**, a copy of which is attached hereto and hereby served upon you.

| | |
|---|---|
| Dated:  February 4, 2020 | Alex Moglia, Chapter 7 Trustee of the Bankruptcy Estates of BCause Mining LLC and BCause LLC |

                                By: /s/ Michael M. Schmahl
                                        Michael M. Schmahl

Michael M. Schmahl
POLLICK & SCHMAHL, LLC
200 E. Randolph, Suite 5100
Chicago, Illinois  60601
(312) 235-3296
mschmahl@pollickschmahl.com
*Counsel to the Trustee*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned states that on February 4, 2020, he caused the above Notice of Motion and the Motion to be served on the individuals listed on the below service list via the court's ECF system for those who are registered except for the individuals or entities that are identified to have been served by email who the undersigned caused to be served by email as indicated on the attached service list.

By: /s/Michael M. Schmahl
Michael M. Schmahl

**SERVICE LIST**

Patrick S. Layng
Ha M. Nguyen
Office of the U.S. Trustee
219 S. Dearborn Street
Room 873
Chicago, IL 60604
Ha.nguyen@usdoj.gov
*United States Trustee*

David A Agay
Maria G Carr
Shara C Cornell
McDonald Hopkins LLC
300 N. LaSalle
Chicago, IL 60654
312-280-0111
dagay@mcdonaldhopkins.com
mcarr@mcdonaldhopkins.com
scornell@mcdonaldhopkins.com
*Counsel for WESCO Distribution, Inc.*

J Mark Fisher
Sarah K Angelino
Schiff Hardin LLP
233 South Wacker Drive
Suite 7100
Chicago, IL 60606
(312) 258-5861
mfisher@schiffhardin.com
sangelino@schiffhardin.com
Dennis Lewandowski, via email sent to:
dtlewand@kaufcan.com
*Counsel for Hoffland Properties, Inc.*

Marc Ira Fenton
Jamie L Burns
Levenfeld Pearlstein LLC
2 N Lasalle St Ste 1300
Chicago, IL 60602
312-346-8380
mfenton@lplegal.com
jburns@lplegal.com

John M Craig
Law Firm of Russell R Johnson
III, PLC
14890 Washington Street
Haymarket, VA 20169
russell@russelljohnsonlawfirm.com
*Counsel for Dominion Energy Virginia*
*Via e-mail*

Shelly A. DeRousse
Devon J Eggert
Elizabeth L Janczak
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606
312-360-6315
312-360-6520 (fax)
sderousse@freeborn.com
deggert@freeborn.com
ejanczak@freeborn.com
*Counsel for Creditors' Committee*

Russell R. Johnson, III
John M. Craig
Law Firm of Russell R Johnson
III, PLC
2258 Wheatlands Drive
Manakin Sabot, VA 23103
804-749-8861
russell@russelljohnsonlawfirm.com
john@russelljohnsonlawfirm.com
*Counsel for Dominion Energy Virginia*
*Via e-mail*

Brian L Shaw
Christina Sanfelippo
Fox Rothschild LLP
321 N Clark Street
Suite 1600
Chicago, IL 60654
312-517-9200
312-517-9201 (fax)

*Counsel for W-R2 Jefferson Owner VIII, LLC*    bshaw@foxrothschild.com
csanfelippo@foxrothschild.com
*Counsel for BMG Operations Ltd.*

Jennifer M McLemore
Williams Mullen
200 South 10th Street
Richmond, VA 23219
(804)420-6330
jmclemore@williamsmullen.com
*Counsel for BMG Operations Ltd.*
*Via e-mail*

Jason M Torf
Ice Miller LLP
200 W. Madison St.
Suite 3500
Chicago, IL 60606
312-726-6244
312-726-6214 (fax)
jason.torf@icemiller.com
*Counsel for Dominion Energy Virginia*

Jason M Torf
Ice Miller LLP
200 W. Madison St.
Suite 3500
Chicago, IL 60606
312-726-6244
312-726-6214 (fax)
jason.torf@icemiller.com
*Counsel for Dominion Energy Virginia*

Scott R Clar
Arthur G Simon
Jeffrey C Dan
Crane, Simon, Clar & Dan
135 S Lasalle Suite 3705
Chicago, IL 60603
312 641-6777
312 641-7114 (fax)
sclar@cranesimon.com
asimon@cranesimon.com
jdan@cranesimon.com
*Counsel for the Debtors*

Debra Devassy Babu
Askounis & Darcy, PC
444 N. Michigan Avenue
Suite 3270
Chicago, IL 60611
312-784-2400
312-784-2410 (fax)
ddevassy@askounisdarcy.com
*Counsel for CCA Financial, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | **Chapter 7** |
| **In re:** | ) | |
| | ) | **Case No. 19-10562** |
| **BCause Mining LLC, _et al._** | ) | **(Jointly Administered)** |
| | ) | |
| **Debtors.** | ) | **Hon. Janet S. Baer** |
| | ) | |

**MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105 AND
363 AUTHORIZING THE TRUSTEE TO CONSOLIDATE AND SELL CRYPTO
CURRENCY FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS AND
ENCUMBRANCES, TO SHORTEN AND LIMIT NOTICE AND FOR RELATED
RELIEF**

Alex Moglia (the "Trustee"), not individually, but solely as trustee of the chapter 7

bankruptcy estates of BCause Mining LLC ("BC Mining") and BCause LLC[1] ("BC Holding"

and collectively with Mining, the "Debtors"), requests entry of an Order authorizing the Trustee

to consolidate and sell Bitcoin and Bitcoin Cash free and clear of any asserted liens, claims and

encumbrances, limiting and approving notice, and granting related relief, and in support thereof,

respectfully states as follows:

**Summary**

1.      Through this Motion, the Trustee seeks authority under Section 363 to sell certain

cryptocurrency, comprised of Bitcoin and Bitcoin Cash, held in the BC Holding's estate with the

assistance of Prime Trust to unknown buyers on through the use of one or more networks of

purchasers of cryptocurrency, with the Net Sale Proceeds (as that term is defined in Paragraph 22

below) paid to the BC Holding estate.

2.      The Trustee seeks to sell the cryptocurrency free and clear of any and all liens,

---

[1] BCause LLC is the debtor in bankruptcy case number 19-10731.

claims and encumbrances, including any lien asserted by WESCO Distribution, Inc.

("WESCO"), pursuant to Section 363(f) with any such asserted lien attaching to the Net Sale

Proceeds to the extent that WESCO's lien may be determined to be valid and subject to the

Trustee's rights and claims to object to, challenge, seek to avoid, and otherwise dispute such

asserted lien. As further described below, WESCO has informed the Trustee that it consents to

the proposed sale under these circumstances.

3.       The Trustee also requests that the Court make a "good faith" finding under

Section 363(m) and waive the 14-day stay on any order approving the proposed sale under

Federal Rule of Bankruptcy Procedure 6004(h).

4.       The Trustee also requests that the Court: (i) authorize and approve shortened and

limited notice to creditors and parties in interest, as described below, and approve the form

notice attached hereto as Exhibit 1; and (ii) modify and limit the Trustee's reporting obligations

under Federal Rule of Bankruptcy Procedure 6004(f)(1) based on the nature of the proposed sale.

## Jurisdiction and Venue

5.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1334.

6.  This Motion is a core proceeding under 28 U.S.C. § 157(b)(2).

7.  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

## Background

8.       On or about April 11, 2019, BC Mining filed a voluntary petition for relief under

chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

9.       On or about April 12, 2019, BC Holding filed a voluntary petition for relief under

chapter 11 of the Bankruptcy Code.

10.      On or about May 8, 2019, the Court entered an order [**Docket No. 72**] directing that

the Debtors' bankruptcy cases be jointly administered under the above caption.

11.    On or about October 8, 2019 (the "Conversion Date"), the Court entered an order [**Docket No. 319**] converting the Debtors' bankruptcy cases to cases under chapter 7 of the Bankruptcy Code, and Richard J. Mason was appointed as the chapter 7 trustee of the Debtors' estates [**Docket No. 320**].

12.    On or about October 11, 2019, Mr. Mason resigned as chapter 7 trustee due to a potential conflict that was not readily apparent.  Later that day, Mr. Moglia was appointed as the Trustee [**Docket No. 334**].

13.    Through this Motion and as described below, the Trustee seeks authority to transfer and liquidate to U.S. dollars all of BC Holding's cryptocurrency.

### Relevant Background Regarding Cryptocurrency

14.    Although the Trustee is not an expert in cryptocurrency, the Trustee generally understands that cryptocurrency is an internet-based medium of exchange that utilizes cryptographical functions and blockchain technology to conduct financial transactions in order to maintain a decentralized system that is not regulated by any government.  These currencies are entirely digital or electronic and most typically are held in "wallets" that are maintained on the internet, a private computer, or on a computer system owned or managed by a third party, though there may be other means of maintaining these currencies.

15.    The Trustee further understands that cryptocurrencies may be transferred between individuals or on a peer-to-peer basis using something called blockchain technology, whereby each transaction is effectively broadcast across the entire peer-to-peer network and verified by "miners" that confirm the transaction by creating a new block on the blockchain.  Once confirmed, transfers are irreversible.

16.     Because cryptocurrencies may be transferred, they are similar to commodities or securities in that they have fluctuating dollar values.  However, due to the absence of a centralized network or marketplace, it is the Trustee's understanding that, in order to convert cryptocurrencies to cash, the transferor must effectively sell the cryptocurrency either to a specified individual for cash or through a specialized network where potential buyers congregate (a "Specialized Network").

17.     While there may be other methods to access these Specialized Networks[2], it is the Trustee's understanding that an individual holder of cryptocurrency essentially needs to have a relationship with broker or institution that is already connected to one or more Specialized Networks, who generally charge a fee that ranges between about 1% and 2% of the transaction, to process the transaction.

18.     Finally, among the problems encountered with holding cryptocurrency is the fact that banks, brokers, and other traditional financial institutions generally do not hold or maintain cryptocurrencies or process cryptocurrency transactions.

**BC Holding's Cryptocurrency and Proposed Sale**

19.     Among the property of BC Holding's estate are two different types of cryptocurrency, including: i) approximately 24.89799844 Bitcoin; and ii) approximately 5.40895852 Bitcoin Cash.[3]  These cryptocurrencies are contained, in unequal amounts[4], in different "wallets", including a "wallet" maintained on the Trustee's computer (the "Trustee

---

[2] Among other things, through BCause Secure LLC, the Debtors intended to create a website that would operate as an exchange whereby cryptocurrencies may be converted into US dollars or other national currencies.
[3] Bitcoin and Bitcoin Cash are two separate cryptocurrencies.  It is the Trustee's understanding that Bitcoin Cash was created in an attempt to address certain limitations or weaknesses in processing transactions of Bitcoin, though it has other limitations.  These cryptocurrencies have different market values.
[4] The overwhelming majority of both the Bitcoin and the Bitcoin Cash is currently maintained in the Trustee Wallet and the Prime Trust Wallet.

Wallet"), "wallets" maintained at Prime Trust (the "Prime Trust Wallet"), and a "wallet" located on a third-party website that contains less than one Bitcoin (the "Slush Wallet").

20.    The Trustee understands that, due to technological restrictions previously placed on the Slush Wallet, the Slush Wallet may only move cryptocurrency to the Prime Trust Wallet.

21.    The Trustee has been unable to move or transfer the Bitcoin and Bitcoin Cash in the Prime Trust Wallet.  As explained to the Trustee, the Prime Trust Wallet is accessible through on an older technology base that must be upgraded and that this upgrade had been planned but was never implemented because the authorized contact at BC Holding was no longer with the company.

22.    Following discussions between the Trustee's counsel and Prime Trust's General Counsel, Prime Trust has agreed, subject to the Court's authorization, to liquidate all of the BC Holding's cryptocurrency, including all Bitcoin and Bitcoin Cash in the Prime Trust Wallet, the Trustee Wallet and the Slush Wallet, into U.S. dollars through the Specialized Networks and to wire the proceeds, less Prime Trust's fee and the reimbursement of any expenses, to the estate's bank account (the "Net Sale Proceeds").  Additionally, Prime Trust has agreed to reduce its standard transaction fee from 2% to 1%.

23.    Although there is no central market for cryptocurrency, the Specialized Networks operate as private markets.  Prime Trust has informed the Trustee that it will offer the Bitcoin and Bitcoin Cash for sale on multiple Specialized Networks in order to maximize the ultimate sale price or sale prices.  However, as demand for Bitcoin and/or Bitcoin Cash may fluctuate on any or all of the Specialized Networks, it is possible that the Bitcoin and Bitcoin Cash may be liquidated in more than one transaction with different buyers and at different sale prices.

24.    The Trustee proposes to sell the Bitcoin and Bitcoin Cash through Prime Trust as described above.

25.    Prime Trust is trust company, that the Trustee understands, is generally considered a higher end service provider that processes cryptocurrency transactions through relationships with Specialized Networks.

26.    Therefore, the Trustee proposes to move the Bitcoin and Bitcoin Cash from the Trustee Wallet and the Slush Wallet into the Prime Trust Wallet to be liquidated by Prime Trust, with the proceeds, less Prime Trust's 1% fee and any reimbursement of expenses that Prime Trust may incur, being paid to the Trustee via wire transfer into the BC Holding estate's bank account.

27.    In the exercise of his business judgment, the Trustee believes that this proposed transaction is the best means of liquidating the Bitcoin and Bitcoin Cash, because, among other things: i) the cryptocurrency would be liquidated on the Specialized Networks at the then prevailing market values on the Specialized Networks; ii) the Trustee has not yet successfully located a broker with access to the Specialized Networks who is willing to liquidate the estate's cryptocurrency[5]; iii) Prime Trust provides certain enhanced benefits and protections, including insurance for customer accounts and the ability to transfer the liquidation proceeds to the Trustee's bank account without a potentially substantial waiting period or holding period following the sale[6]; and iv) Prime Trust has agreed to reduce its fee to 1%, which the Trustee believes is the lower end of market rate for such fees.

28.    Finally, the proposed transaction is designed to minimize the movement of the cryptocurrency and to work within the technological limitations that have been encountered to date

---

[5] Generally, the Trustee has been told that brokers are not interested in processing individual transactions, preferring to handle cryptocurrency transactions for clients with whom such brokers maintain broader relationships.  More than one broker simply refused to return repeated calls.

[6] Various brokers or others with access to the Specialized Networks impose a waiting period or holding period before liquidation proceeds may be withdrawn or distributed in order to allow a sale of cryptocurrency to settle.

in order to liquidate the cryptocurrency in what the Trustee believes to be the most efficient manner.

29.    Section 363 of the Bankruptcy Code authorizes the Trustee "after notice and a hearing . . . to use, sell, or lease other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

30.    For the reasons described above, the Trustee believes that the proposed sale is in the best interest of creditors and this bankruptcy estate. *See Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991), *citing In re Continental Air Lines*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("Under Section 363, the debtor in possession can sell property of the estate outside the ordinary course  of business if: he has an "articulated business justification."); *see also Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (endorsing the "sound business justification" standard); *Institutional Creditors of Continental Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) (same); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 389-390 (6th Cir. 1986) (same); *In re Telesphere Communications, Inc.*, 179 B.R. 544, 552 (Bankr. N.D. Ill. 1994) (Judge Wedoff) *citing Schipper*, 933 F.2d at 515 ("Where an objection is made, the standard to be applied by the court in approving a disposition of assets is variously stated, but the general thrust is that the proposed sale should be in the best interest of the estate."); see also *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984) (holding that the Trustee is "simply required to justify the proposed disposition with sound business reasons.".

**Sale Free and Clear of Liens, Claims and Encumbrances: Section 363(f)**

31.    Section 363(f) of the Bankruptcy Code authorizes the Trustee to sell assets free and clear of liens, claims and encumbrances

32.     While the Trustee contests any lien asserted against BC Holding's Bitcoin and

Bitcoin Cash, the Trustee understands that WESCO Distribution, Inc. ("WESCO") asserts a

secured claim and a lien on these assets.

33.     The Trustee is currently challenging WESCO's and seeking to avoid WESCO's

asserted lien in Adversary Proceeding Number 19-769, currently pending before the Court.  As

such, WESCO's lien is in bona fide dispute under Section 363(f)(4).

34.     Further, in the event that WESCO's asserted lien may be determined to be valid,

any right WESCO may have as a secured creditor would be to liquidate the cryptocurrency to

cash, which is the intended outcome of this Motion.  As such, a sale free and clear of WESCO's

purported lien is authorized by Section 363(f)(1).

35.     In light of WESCO's asserted lien, the Trustee proposes that the sale of the

cryptocurrency be authorized free and clear of all liens, claims and encumbrances whatsoever,

provided however, that any lien WESCO asserts may attach, to the extent that WESCO's

asserted lien may be determined to be valid, to the Net Sale Proceeds deposited into the BC

Holding estate's bank account, subject to the Trustee's right and ability to object to, seek to

avoid, and otherwise challenge or dispute WESCO's asserted such lien.

36.     WESCO has informed the Trustee that WESCO consents to the proposed sale

subject to the above-proposed condition.  As such, the proposed sale meets the requirements of

Section 363(f)(2).

## Request to Waive Rule 6004(h) Stay and Limit Post-Sale Reporting Obligations Under Rule 6004(f)(1)

37.     Federal Rule of Bankruptcy 6004(h) generally imposes a 14-day stay on the

sale of assets under Section 363 following the entry of an order authorizing such a sale unless

the Court orders otherwise.  Given the nature of the proposed transaction and the circumstances

as described above, the Trustee requests that the Court waive the Rule 6004(h) 14-day stay and make any order approving the proposed sale of the Bitcoin and Bitcoin Cash immediately enforceable.

38. Finally, Rule 6004(f)(1) generally requires that, after the sale of the Bitcoin and Bitcoin Cash, the Trustee prepare and file an itemized statement identifying the cryptocurrency sold, the name of each purchaser and the price of each item or lot sold, "unless it is impracticable" to do prepare and file such an itemized statement. Due to the manner in which the Specialized Networks operate, as described above, the Trustee does not expect to have this information, particularly the identity of any buyer or buyers of the Bitcoin and Bitcoin Cash. As such, the Trustee requests that the Court find that such an itemized statement would be impracticable and that the Trustee only be required to file a statement listing the Net Sale Proceeds from the liquidation of the Bitcoin and the Bitcoin Cash.

### Request to Shorten and Limit Notice

39. Federal Rule of Bankruptcy Procedure 2002(a)(2) allows the Court to shorten and limit notice of this Motion and the proposed sale of the Bitcoin and Bitcoin Cash. Given the value of Bitcoin and Bitcoin Cash fluctuate and can be volatile, the proposed sale will reduce the cryptocurrency to cash, and that WESCO consents to the proposed sale, the Trustee requests that the Court shorten notice so that this Motion may be heard on February 13, 2020, at 9:30 A.M.

40. The Trustee has provided a copy of this Motion to the U.S. Trustee and all of the parties who have entered an appearance in these jointly administered bankruptcy cases. Additionally, the Trustee has sent a copy of the notice (the "Creditor Notice") attached hereto as Exhibit 1 to each of the Debtors' creditors by first class mail, postage pre-paid and will make

a copy of the Motion available to any creditor who contacts the Trustee's counsel and requests a copy of the Motion.  The Trustee further requests that the Court approve the form of the creditor Notice.

WHEREFORE, the Trustee respectfully requests that this Court enter an order:

(i)     authorizing the Trustee to sell the Bitcoin and Bitcoin Cash in the BC Holding estate pursuant to Section 363 with the assistance of Prime Trust as described in the Motion (the "Proposed Sale");

(ii)    ordering the Proposed Sale to be made free and clear of any and all liens, claims and encumbrances pursuant to Section 363(f), provided however, that WESCO's asserted lien shall attach, to the extent that its lien is determined to be valid, and subject to the Trustee's rights and claims to challenge, object to, dispute, and seek to avoid WESCO's asserted lien, to the Net Sale Proceeds received by the Trustee;

(iii)   authorizing and directing Prime Trust to conduct the Proposed Sale and to wire the Net Sale Proceeds to the Trustee's bank account for the BC Holding Estate as directed by the Trustee;

(iv)    authorizing and approving Prime Trust's fee of 1% of the gross proceeds of the Proposed Sale plus reimbursement of any expenses related to the Proposed Sale;

(v)     waiving the Rule 6004(h) 14-day stay so that the order approving the Proposed Sale is final and will be immediately enforceable;

(vi)    limiting the Trustee's reporting obligations under Rule 6004(f) so that the Trustee shall only be obligated to file a statement listing the Net Sale Proceeds of the cryptocurrency;

(vii)   shortening and limiting notice as described in the Motion pursuant to Rule 2002;

(viii)  approving the form of the Creditor Notice; and

(ix)    granting such other and further relief as this Court deems just or appropriate.


Dated: February 4, 2020                    /s/Michael M. Schmahl
                                           Michael M. Schmahl
                                           Pollick & Schmahl, LLC
                                           200 E. Randolph, Suite 5100
                                           Chicago, IL 60601
                                           (312) 235-3296
                                           mschmahl@pollickschmahl.com
                                           ARDC #6275860
                                           *Counsel for the Trustee*