# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 7 |
| | ) |
| BCause Mining LLC, *et al.* | ) Case No. 19-10562 |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) Hon. Janet S. Baer |
| | ) |

## NOTICE OF MOTION

**TO:** See attached list

PLEASE TAKE NOTICE that on Wednesday, June 10, 2020, at the hour of 1:00 p.m., I will appear before the Honorable Janet S. Baer, United States Bankruptcy Judge or any judge sitting in that judge's place, and present the TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SETTLEMENT WITH WESCO DISTRIBUTION, INC., AND COMMUNICATIONS SUPPLY CORP. PURSUANT TO RULE 9019 (the "Motion"), a copy of which is attached.

**This motion will be presented and heard telephonically**. No personal appearance in court is necessary or permitted. To appear and be heard telephonically on the motion, you must set up and use an account with Court Solutions, LLC. You can set up an account at www.Court-Solutions.com or by calling Court Solutions at (917) 746-7476.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

| | |
|---|---|
| Dated: May 20, 2020 | Alex Moglia, Chapter 7 Trustee of the Bankruptcy Estates of BCause Mining LLC and BCause LLC |
| | By: /s/ Michael M. Schmahl |
| | Michael M. Schmahl |

Michael M. Schmahl
MASON POLLICK & SCHMAHL LLC
70 W. Hubbard, Suite 304
Chicago, Illinois 60654
(312) 312-5531
mschmahl@mps-law.com

1

2

# CERTIFICATE OF SERVICE

      The undersigned states that on May 20, 2020, he caused the above Notice of Motion and the Motion to be served on the individuals listed on the below service list via the court's ECF system for those who are registered except for the individuals or entities that are identified to have been served by email who the undersigned caused to be served by email as indicated on the attached service list.

      By: /s/Michael M. Schmahl
           Michael M. Schmahl

## SERVICE LIST

| | |
|---|---|
| Patrick S. Layng<br>Ha M. Nguyen<br>Office of the U.S. Trustee<br>219 S. Dearborn Street<br>Room 873<br>Chicago, IL 60604<br>Ha.nguyen@usdoj.gov<br>*United States Trustee* | John M Craig<br>Law Firm of Russell R Johnson III, PLC<br>14890 Washington Street<br>Haymarket, VA 20169<br>russell@russelljohnsonlawfirm.com<br>*Counsel for Dominion Energy Virginia*<br>*Via e-mail* |
| David A Agay<br>Maria G Carr<br>Shara C Cornell<br>McDonald Hopkins LLC<br>300 N. LaSalle<br>Chicago, IL 60654<br>312-280-0111<br>dagay@mcdonaldhopkins.com<br>mcarr@mcdonaldhopkins.com<br>scornell@mcdonaldhopkins.com<br>*Counsel for WESCO Distribution, Inc.* | Shelly A. DeRousse<br>Devon J Eggert<br>Elizabeth L Janczak<br>Freeborn & Peters LLP<br>311 South Wacker Drive<br>Suite 3000<br>Chicago, IL 60606<br>312-360-6315<br>312-360-6520 (fax)<br>sderousse@freeborn.com<br>deggert@freeborn.com<br>ejanczak@freeborn.com<br>*Counsel for Creditors' Committee* |
| J Mark Fisher<br>Sarah K Angelino<br>Schiff Hardin LLP<br>233 South Wacker Drive<br>Suite 7100<br>Chicago, IL 60606<br>(312) 258-5861<br>mfisher@schiffhardin.com<br>sangelino@schiffhardin.com<br>Dennis Lewandowski, via email sent to:<br>dtlewand@kaufcan.com<br>*Counsel for Hoffland Properties, Inc.* | Russell R. Johnson, III<br>John M. Craig<br>Law Firm of Russell R Johnson III, PLC<br>2258 Wheatlands Drive<br>Manakin Sabot, VA 23103<br>804-749-8861<br>russell@russelljohnsonlawfirm.com<br>john@russelljohnsonlawfirm.com<br>*Counsel for Dominion Energy Virginia*<br>*Via e-mail* |
| Marc Ira Fenton<br>Jamie L Burns<br>Levenfeld Pearlstein LLC<br>2 N Lasalle St Ste 1300<br>Chicago, IL 60602<br>312-346-8380<br>mfenton@lplegal.com<br>jburns@lplegal.com | Brian L Shaw<br>Christina Sanfelippo<br>Fox Rothschild LLP<br>321 N Clark Street<br>Suite 1600<br>Chicago, IL 60654<br>312-517-9200<br>312-517-9201 (fax) |

3

*Counsel for W-R2 Jefferson Owner VIII, LLC*

Jennifer M McLemore
Williams Mullen
200 South 10th Street
Richmond, VA 23219
(804)420-6330
jmclemore@williamsmullen.com
*Counsel for BMG Operations Ltd.*
*Via e-mail*

Jason M Torf
Ice Miller LLP
200 W. Madison St.
Suite 3500
Chicago, IL 60606
312-726-6244
312-726-6214 (fax)
jason.torf@icemiller.com
*Counsel for Dominion Energy Virginia*

Debra Devassy Babu
Askounis & Darcy, PC
444 N. Michigan Avenue
Suite 3270
Chicago, IL 60611
312-784-2400
312-784-2410 (fax)
ddevassy@askounisdarcy.com
*Counsel for CCA Financial, LLC*

Lindsey Conley
Hinshaw & Culbertson LLP
151 N. Franklin Street, Suite 2500
Chicago, IL 60606

bshaw@foxrothschild.com
csanfelippo@foxrothschild.com
*Counsel for BMG Operations Ltd.*

Jason M Torf
Ice Miller LLP
200 W. Madison St.
Suite 3500
Chicago, IL 60606
312-726-6244
312-726-6214 (fax)
jason.torf@icemiller.com
*Counsel for Dominion Energy Virginia*

Scott R Clar
Arthur G Simon
Jeffrey C Dan
Crane, Simon, Clar & Dan
135 S Lasalle Suite 3705
Chicago, IL 60603
312 641-6777
312 641-7114 (fax)
sclar@cranesimon.com
asimon@cranesimon.com
jdan@cranesimon.com
*Counsel for the Debtors*

4

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 7 ) ) Case No. 19-10562 |
| BCause Mining LLC, *et al.* | ) (Jointly Administered) ) |
| Debtors. | ) Hon. Janet S. Baer ) |

**TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SETTLEMENT
WITH WESCO DISTRIBUTION, INC., AND COMMUNICATIONS SUPPLY CORP.
PURSUANT TO RULE 9019**

Alex Moglia (the "Trustee"), not individually, but solely as trustee of the chapter 7 bankruptcy estates of BCause Mining LLC ("BC Mining") and BCause LLC[1] ("BC Holding" and collectively with Mining, the "Debtors"), hereby requests pursuant to Rules 9019 and 2002(a) of the Federal Rules of Bankruptcy Procedure that the Court enter an order approving a Settlement Agreement and Mutual General Release (the "Agreement"), an unsigned copy of which is attached hereto as Exhibit 1[2], between the Trustee and WESCO Distribution, Inc. ("WESCO"), and Communications Supply Corp. ("CSC" and collectively with WESCO, the "WESCO Parties") that would settle and finally resolve all disputes between them, including the pending adversary proceeding captioned *Moglia v. Wesco Distribution, Inc.*, pending before the Court as Adversary No. 19-00769 (the "Adversary Proceeding"), authorizing the Trustee to enter into and to perform his obligations under the Agreement, and granting related relief.  In support

---

[1] BCause LLC is the debtor in bankruptcy case number 19-10731.
[2] The parties to the Agreement recently finalized the form of the Agreement and are in the process of obtaining signatures.

5

of this motion (the "Motion"), the Trustee respectfully states as follows:

**Jurisdiction and Venue**

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1334.

2. This Motion is a core proceeding under 28 U.S.C. § 157(b)(2).

3. Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

**Background**

4. On or about April 11, 2019 (the "BC Mining Petition Date"), BC Mining filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

5. On or about April 12, 2019 (the "BC Holding Petition Date" and, collectively with the BC Mining Petition Date, the "Petition Dates"), BC Holding filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

6. On or about May 8, 2019, the Court entered an order [**Docket No. 72**] directing that the Debtors' bankruptcy cases be jointly administered under the above caption.

7. On or about October 8, 2019 (the "Conversion Date"), the Court entered an order [**Docket No. 319**] converting the Debtors' bankruptcy cases to cases under chapter 7 of the Bankruptcy Code, and Richard J. Mason was appointed as the chapter 7 trustee of the Debtors' estates [**Docket No. 320**].

8. On or about October 11, 2019, Mr. Mason resigned as chapter 7 trustee due to a potential conflict that was not readily apparent. Later that day, Mr. Moglia was appointed as the Trustee [**Docket No. 334**].

6

9. Currently the Trustee is holding approximately $984,000 in the bankruptcy estate of BC Holding including the proceeds of the Trustee's sale of certain Bitcoin and Bitcoin Cash as approved by the Court.

**WESCO'S Asserted Claims**

10. BC Mining built and operated a data center located in Virginia Beach, Virginia. BC Holding owns all of the equity interests in BC Mining.

11. Prior to the Petition Dates, BC Mining purchased equipment on credit from each of WESCO and CSC to build a data center but failed or otherwise refused to pay the full amounts owed to either WESCO or CSC.

12. On or about December 4, 2017, in connection with the sale of this equipment, BC Mining executed a certain credit application (the "Credit Application") that granted a security interest (the "Security Interest") in substantially all of BC Mining's assets. The WESCO Parties assert that all of the debts owed to each of WESCO and CSC are secured by BC Mining's assets pursuant to the Security Interest.

13. On or about July 17, 2018, WESCO filed a UCC-1 financing statement related to the Security Interest with Virginia State Corporation Commission.

14. In December 2018, BC Mining, as debtor, and BC Holding, as guarantor, executed a promissory note (the "Note") in favor of WESCO in the principal amount of $1,358,610.51, which amount was based on the combined debt[3] BC Mining owed to both of the WESCO Parties plus interest (the "Equipment Debt").

---

[3] The Trustee disputes that the principal amount of the Note is an accurate calculation of the combined Equipment Debt.

7

15. Among other things, the Note contained a Cognovit clause providing WESCO with the ability to obtain a judgment by confession under Virginia law in the event of a default by the Debtors.

16. On or about March 1, 2019, WESCO asserted that the Debtors were in default of their obligations under the Note and obtained a judgment by confession (the "Confessed Judgment") against both of the Debtors in the amount of approximately $1,896,349.34, plus interest, in the Circuit Court for Arlington County, Virginia (the "Virginia Court").

17. WESCO asserts that it properly registered the Confessed Judgment in the Circuit Court for Cook County, Illinois, and properly initiated garnishment proceedings in both Illinois and Virginia against the bank (the "Bank") holding BC Holding's bank account. WESCO contends that it has liens (the "Judgment Liens") against some or all of the Debtors' assets under Virginia and Illinois law based on the entry of the Confessed Judgment and service of the garnishment proceedings on the Bank in each state.

18. Shortly after WESCO served the Bank in the garnishment proceedings, the Debtors filed petitions for relief under chapter 11 of the Bankruptcy Code and initiated these cases.

19. On the Petition Dates, there was approximately $911,000 in BC Holding's bank account. The Trustee understands that WESCO contends that the money in BC Holding's account included payments by BC Mining's clients under hosting agreements for space in the data center.

20. Based on its asserted Security Interest and Judgment Liens, WESCO filed a motion (the "Lift Stay Motion") **[Docket No. 35]** seeking, alternatively, to lift the automatic stay to permit WESCO to enforce its asserted Judgment Liens against the BC Holding's bank account or otherwise collect on the Confessed Judgment, or to dismiss these bankruptcy cases. The Lift Stay Motion remains pending before the Court.

21. WESCO has received approximately $184,865 in adequate protection payments (plus additional non-cash adequate protection) during these cases, however, the Court has not ruled on the validity or extent of WESCO's asserted Judgment Liens or Security Interest. Rather, the Court preserved these issues so that the adequate protection payments remain subject to challenge.

22. On or about April 26, 2019, WESCO also filed identical proofs of claim (the "WESCO Proofs of Claim") in the Debtors' respective bankruptcy cases asserting secured claims against each of the Debtors in the amount of $1,915,137.77 based on, amongst other things, the Confessed Judgment, the Note, the Security Interest and the Judgment Liens. The WESCO Proofs of Claim appear as Claim No. 2-1 on the claims register in BC Mining's case and as Claim No. 1-1 on the claims register in BC Holding's case.

### The Adversary Proceeding

23. On or about June 20, 2019, the Debtors initiated the Adversary Proceeding by filing an adversary complaint (the "Complaint") against WESCO. Upon the conversion of these cases to cases under chapter 7 of the Bankruptcy Code, the Trustee became the plaintiff in the Adversary Proceeding.

24. Through the Adversary Proceeding, the Trustee principally seeks[4], among other things, to: (i) avoid the Judgment Liens as preferential transfers under Sections 547 of the Bankruptcy Code; (ii) avoid the Debtors' obligations under the Note as fraudulent incurrences of debt under 544 of the Bankruptcy Code; (iii) disallow any secured claim based on the portion of the debt attributable to sales by CSC; and (iv) disallow or reduce the Proofs of Claim based on a variety of theories.

---

[4] The description provided in this Motion of the Adversary Proceeding is not intended to be exhaustive. Further, while the Debtors' complaint is currently the operative complaint in the Adversary Proceeding, the Trustee's motion seeking to amend that complaint in order to bring different and additional claims remains pending.

9

25. The Trustee further contends, among other things, that: (i) the Confessed Judgment is void; (ii) WESCO's asserted Judgment Liens, based on the Confessed Judgment, are void and otherwise avoidable under the Bankruptcy Code; (iii) the Debtors' obligations under the Note are avoidable and that certain provisions in the Note, including provisions purporting to effect a waiver of the Debtors' rights and provisions that inflated the amount of the Confessed Judgment are unenforceable under due process principles and otherwise contrary to public policy; (iv) any debt attributable to amounts owed to CSC is not secured under the Security Interest; and (v) the Security Interest does not encumber BC Holding's assets, including, its bank account.

26. WESCO filed a motion to dismiss the complaint principally arguing that the Trustee's claims are precluded, in whole or in part, under the doctrine of *res judicata* and/or the *Rooker-Feldman* doctrine as a result of the Confessed Judgment.

27. The Trustee responded arguing, among other things, that the Confessed Judgment is void under Virginia law and is, in any event, not a final order entitled to such deference.

28. In March 2020, the Court advised the Trustee and WESCO that the Court will likely abstain from ruling on the Motion to Dismiss but will likely retain certain portions of the Adversary Proceeding based on actions under the Bankruptcy Code and, thereby, allow the parties to litigate the validity and finality of the Confessed Judgment, which involves questions of applicable Virginia law, in state court in Virginia.[5]

29. Subsequently, the parties entered into arms' length, good faith settlement discussions resulting in the Agreement.

---

[5] The Court has not ruled. Therefore, the description of the Court's statements is based on the undersigned counsel's best recollection and understanding. The Trustee looks to the Court's statements for a true and accurate description. To the extent this description may be inaccurate in any way, such inaccuracy is not intended.

10

**Relief Requested**

30. Pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, the Trustee now seeks the entry of an order of the Court approving the Agreement, authorizing the Trustee to enter into the Agreement, and authorizing the Trustee to perform the Trustee's obligations under the Agreement.

**The Agreement**

31. The principle terms of the Agreement[6] are as follows:

   (a) The Agreement requires Court approval and will not take effect until the Court enters an order approving the Agreement (the "Settlement Approval Order") and the Settlement Approval Order has become final and no longer subject to appeal or *certiorari* proceedings. The first day after the Settlement Approval Order has become such a final order is deemed the Agreement's effective date (the "Effective Date"). If the Agreement is not approved by the Court or the Settlement Approval Order is vacated, reversed or found invalid or ineffective, the Trustee and the WESCO Parties are to be returned to the status quo in effect prior to entry into the Agreement. The Trustee and the WESCO Parties do not intend, concede or admit any liability to the other, nor concede nor admit the viability of any claim, theory, complaint, proof of claim, lien, security interest, objection, or defense.

---

[6] The description of the Agreement provided in this Motion is a summary only and is not intended to be exhaustive. The actual terms of the Agreement shall control in the event of any discrepancy between those terms and the description of terms provided in this Motion.

(b) Within two business days following the Effective Date, the Trustee is pay by wire transfer to WESCO the sum of $625,000.00 (the "Settlement Payment") from the funds currently held in BC Holding's bankruptcy estate.

(c) WESCO will be entitled to retain the Adequate Protection Payments previously received.

(d) Within two business days following receipt of the Settlement Payment, the WESCO Parties will withdraw[7] the Proofs of Claim and any other proofs of claim that either of the WESCO Parties may have filed or may file (the "WESCO/CSC Proofs of Claim") and they shall not receive any further distributions from the Debtors' bankruptcy estates. Notwithstanding the foregoing, solely in the event that the WESCO Parties are compelled to return the Settlement Payment to one or both of the Debtors' bankruptcy estates prior to the Trustee's filing of a final report in these cases, then the WESCO Parties and the Trustee have the following rights (the "Respective Rights to Re-File and Defend"): (i) the WESCO Parties shall be entitled to re-file any WESCO/CSC Proofs of Claim; and (ii) the Trustee shall be entitled to object to the WESCO/CSC Proofs of Claim, assert all of his defenses to such WESCO/CSC Proofs of Claim, and pursue any other claims against the WESCO Parties, including those asserted or that could be asserted in the Adversary Proceeding and to recover the Adequate Protection Payments all of which shall be deemed to relate back to the filing of the original complaint in the Adversary Proceeding and shall not be precluded by any statute of

---

[7] In the event that the WESCO Parties fail to withdraw any WESCO/CSC Proofs of Claim, then such claims are deem withdrawn.

limitations, doctrine of laches, or similar defenses or concepts. The Respective Rights to Re-File and Defend automatically expire upon the filing of a final report of assets in these cases.

(e) Except for obligations of the Trustee under the Agreement and subject to the Respective Rights to Re-File and Defend, the WESCO Parties fully release, discharge and covenant not to sue the Trustee, his attorneys in the Bankruptcy Cases, and the Debtors' bankruptcy estates (the "Estate Releasees") from and with respect to any and all claims, causes of action, debts, loses, liabilities, demands, damages, judgments and any other bases or grounds for relief of any kind or nature whatsoever, whether known or unknown, liquidated or unliquidated, sounding in tort or contract, based on common law or any statute, court order, judgment, regulation or any other applicable law, that either WESCSO or CSC have or may have against any of the Estate Releasees, including, but not limited to, the WESCO/CSC Proofs of Claim, the Note, the Confessed Judgment, the Security Interest, the Judgment Liens, the Credit Application, the Equipment Debt, the Bankruptcy Cases, and the Adversary Proceeding.

(f) Except for obligations of WESCO and/or CSC under the Agreement and subject to the Respective Rights to Re-File and Defend, the Trustee for and on behalf of the Debtors' bankruptcy estates fully releases, discharges and covenants not to sue each of WESCO and CSC and their respective officers, directors, employees, and attorneys in the Bankruptcy Cases (the "WESCO Releasees") from and with respect to any and all claims, causes of action, debts, loses,

13

    liabilities, demands, damages, judgments and any other bases or grounds for relief of any kind or nature whatsoever, whether known or unknown, liquidated or unliquidated, sounding in tort or contract, based on common law or any statute, court order, judgment, regulation or any other applicable law, that either of the Debtors' bankruptcy estates has or may have against the WESCO Releasees, including, but not limited to, the claims alleged in the Adversary Proceeding or avoidance and/or disgorgement of the Adequate Protection Payments.

  (g) The Lift Stay Motion will be withdrawn or denied as moot and the Adversary Proceeding will be dismissed with prejudice.

### Standard Applicable to Approval of Agreement

32.    In considering the Motion under Federal Rule of Bankruptcy Procedure 9019, the Court should "determine whether the proposed compromise is fair and equitable . . . and in the best interests of the bankruptcy estate." *Depoister v. Mary M. Holloway Foundation*, 36 F.3d 582, 586 (7th Cir. 1994), *citing*, *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc., v. Anderson*, 390 U.S. 414, 424 (1968), and *In re American Reserve Corp.*, 841 F.2d 159, 161 (7th Cir. 1987). Factors relevant to the Court's determination include the nature and amount of the claims, the probability of success in litigation, the complexity and anticipated duration of the litigation, and the interests of creditors. *See Depoister*, 36 F.3d at 587; *In re Carla Leather, Inc.*, 44 B.R. 457, 465 (S.D.N.Y. 1984) (listing, among other factors, "the paramount interest of creditors").

33.    The Court is not called upon to substitute its judgment for the judgment of the Trustee, and the scope of the Court's inquiry does not require it to decide the issues of law or fact

raised. *See, e.g., In re Carla Leather, Inc.*, 44 B.R. at 465. Instead, the Court is required only "to canvass the issues and see whether the settlement 'falls below the lowest point in the range of reasonableness.'" *Id.*, quoting, *In re W.T. Grant & Co.*, 699 F.2d 599, 608 (2d Cir. 1983). The Court's decision to approve a settlement will not be overturned on appeal unless it constitutes an abuse of discretion. *See Depoister*, 36 F.3d at 586.

### The Agreement Is in the Best Interests of the Estate and Should Be Approved

34. Based on the Trustee's review of the facts and issues involved in the Adversary Proceeding, the Trustee believes that the terms of the Agreement are fair and equitable and in the best interests of creditors.

35. The Trustee has no (and these estates have never had any) unencumbered assets from which to pay any unsecured claims. The Agreement requires the WESCO Parties to withdraw the WESCO/CSC Proofs of Claim which will free the estates of burden of the asserted Security Interest and Judgment Liens resulting in nearly $360,000 for the benefit of unsecured creditors.

36. WESCO's claims are complicated by the fact that they are layered both with respect to their asserted secured status and with respect to the amount of asserted debt. The Proofs of Claim are principally based on the Confessed Judgment secured by the Judgment Liens. However, beneath the Confessed Judgment is the Note and then the underlying debt from the unpaid amounts owed on the equipment sales. Similarly, the Judgment Liens is buttressed by the Security Interest. Each layer raises new and different legal issues involving, in many cases, different operative allegations of fact.

37. In considering the Agreement, the Trustee has analyzed each layer of the WESCO Proofs of Claim and considered, among other things:

15

    (a) Virginia law governing judgments by confession, enforceability of contractual penalty provisions, enforceability of contractual waivers and provisions that are contrary to public policy, and the limits on contractual grants of powers of attorney;

    (b) Principles of due process;

    (c) various avoidance theories under the Bankruptcy Code and state law;

    (d) numerous issues under Article 9 of the Uniform Commercial Code, including the limitations on continuing security interests in proceeds under several provisions of Article 9 under the facts involved in the Adversary Proceeding, the impact of the strong-arm powers in Section 544 of the Bankruptcy Code on asserting security interests in proceeds, and the novel issues related to attempting to perfect a security interest in Bitcoin or other digital currencies;

    (e) equitable doctrines of tracing; and

    (f) the availability of a meaningful remedy in the event that one layer of the WESCO Proofs of Claim is determined to protected by the *res judicata* or *Rooker-Feldman* doctrines when the attack on the lower layer does not implicate such protections.

38. The Agreement would not require the Trustee to litigate the Adversary Proceeding to conclusion and, thereby, avoid the likely substantial additional litigation expenses, potentially including expert witness fees, with no assurance of that the Adversary Proceeding will result in any unencumbered funds for unsecured creditors.

39. The fact that further pursuit of the Adversary Proceeding will likely require litigating in two forums simultaneously only enhances the potential for significant litigation

16

expenses, even though a victory in one forum may not result in a positive outcome without a victory in the other forum.

40. In the absence of any unencumbered resources, the Trustee also considered the impact of potentially being faced with an inability to retain expert witnesses other than on a contingent fee basis and the impact of such an arrangement may have on the success of the Trustee's claims.

41. Finally, the Trustee considered the potential delay that may result from continued litigation. The Adversary Proceeding is still in the pleading stage. Under normal circumstances, a final resolution of litigation is likely more than a year away. Under the present circumstances while the country is dealing with the corona virus pandemic, significantly longer delays are possible.

42. Based on his analysis of all of these factors, the Trustee has concluded that the result of the Agreement is within the range of potential outcomes and allows these estates to avoid related expenses.

43. The Agreement is in the best interests of these bankruptcy estates and satisfies the applicable standards under Rule 9019. Therefore, the Trustee requests that the Court grant the Motion, approve the Agreement, grant the Trustee authority to enter into the Agreement and to perform all obligations of the Trustee under the Agreement.

## Request to Approve Notice

44. The Trustee has provided a copy of this Motion and the related Notice of Motion to the U.S. Trustee and all of the parties who have entered an appearance in these jointly administered bankruptcy cases at least 21 days in advance of presentment as required by Rule 2002(a)(3).

45. Additionally, the Trustee has sent a copy of the notice (the "Creditor Notice") attached hereto as Exhibit 2 to each of the Debtors' creditors by first class mail, postage pre-paid at least 21 days in advance of presentment as required by Rule 2002(a)(3) and will make a copy of the full Motion, along with the Agreement, available to any creditor who contacts the Trustee's counsel and requests a copy of the Motion. The Trustee further requests that the Court approve the form of the creditor Notice.

46. The Trustee submits that the Creditor Notice satisfies the required notice to creditors under Rule 9019(a) and further requests that the Court approve the form of the Creditor Notice.

WHEREFORE, the Trustee respectfully requests that this Court enter an order:

(i) Approving the Agreement;

(ii) Finding that the compromise reflected in the Agreement was negotiated and entered into in good faith and is in the best interests of the Debtors' estates;

(iii) Authorizing the Trustee to execute and deliver the Agreement and to take any such further actions to implement the Agreement in accordance with its terms;

(iv) Authorizing and approving notice as described in the Motion and approving the form of the Creditor Notice; and

(v) granting such other and further relief as this Court deems just or appropriate.

| | |
|---|---|
| Dated: May 20, 2020 | /s/Michael M. Schmahl |
| | Michael M. Schmahl |
| | Mason Pollick & Schmahl LLC |
| | 70 W. Hubbard, Suite 304 |
| | Chicago, IL 60654 |
| | (312) 312-5531 |
| | mschmahl@mps-law.com |
| | ARDC #6275860 |
| | *Counsel for the Trustee* |