# SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

This Settlement Agreement and Mutual General Release (the "Agreement") is entered by and among WESCO Distribution, Inc. ("WESCO") and Communications Supply Corp. ("CSC" and, collectively with WESCO, the "WESCO Parties"), on the one hand, and Alex D. Moglia ("Moglia" or the "Trustee"), not personally or individually, but solely as the chapter 7 trustee of the bankruptcy estates of BCause Mining LLC ("BC Mining") and BCause LLC ("BC Holding" and, collectively with BC Mining, the "Debtors"), on the other hand.  For ease of reference, the WESCO Parties and the Trustee may be collectively referred to herein as the "Parties" and each as a "Party".

WHEREAS, BC Holding is a Virginia limited liability company that owns 100% of the equity interests in BCause Trust, Inc., BCause Spot LLC, BCause Derivatives Exchange LLC, and BCause Clear LLC (collectively, the "Non-Debtor Subsidiaries") as well as BC Mining; and

WHEREAS, on or about April 11, 2019, BC Mining filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and thereby commenced the bankruptcy case captioned *In re BCause Mining LLC* that is currently pending before the United States Bankruptcy Court for the Northern District of Illinois (Eastern Division) (the "Court") as Case No. 19-10562 (the "BC Mining Case"); and

WHEREAS, on or about April 12, 2019, BC Holding filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code and thereby commenced the bankruptcy case captioned *In re BCause LLC* that is currently pending before the Court as Case No. 19-10731 (the "BC Holding Case", and, collectively with the BC Mining Case, the "Bankruptcy Cases"), which is being jointly administered under the caption of the BC Mining Case; and

WHEREAS, prior to the commencement of the Bankruptcy Cases:

EXHIBIT 1                                                                 – 1 –

(i) each of the WESCO Parties sold equipment and other products or goods to BC Mining for which the WESCO Parties have not received payment in full from BC Mining (the "Equipment Debt");

(ii) on or about December 4, 2017, in connection with the sale of equipment, BC Mining executed a certain credit application that granted a security interest (the "Security Interest") in substantially all of BC Mining's assets, which the Trustee contends is solely in favor of WESCO and the WESCO Parties contend is in favor of both of the WESCO Parties;

(iii) on or about July 17, 2018, WESCO filed a UCC-1 financing statement asserting its Security Interest against BC Mining's assets with the Virginia State Corporation Commission;

(iv) BC Mining executed a promissory note (the "Note") in favor of WESCO, dated December 5, 2018, in the principal amount of $1,358,610.51, which amount is the combined amounts of all of the Equipment Debt owed by BC Mining to both of the WESCO Parties;

(v) BC Holding and each of the Non-Debtor Subsidiaries, as guarantors, executed the Note and thereby guaranteed BC Mining's obligations under the Note;

(vi) WESCO asserted that BC Mining defaulted on its obligations under the Note;

(vii) on March 1, 2019, WESCO obtained a judgment by confession (the "Confessed Judgment") in the amount of $1,896,349.34, plus interest,

EXHIBIT 1                                     – 2 –

against BC Mining, BC Holding and each of the Non-Debtor Subsidiaries, that was entered in the Circuit Court of Arlington County, Virginia;

(viii) in April 2019, WESCO registered the Confessed Judgment in the Circuit Court of Cook County, Illinois, and initiated proceedings in both Illinois and Virginia against Lakeside Bank and Lakeside Bank Community Development, LLC (collectively, the "Bank") seeking to collect the Confessed Judgment from BC Holding's bank account at the Bank; and

(ix) WESCO asserts liens (the "Judgment Liens") against the Debtors under, amongst other bases, both Illinois and Virginia law based on the entry of the Confessed Judgment and the service of garnishment proceedings on the Bank in each of those States; and

WHEREAS, in the Bankruptcy Cases, WESCO has asserted that the Judgment Liens and the Security Interest encumber BC Holding's bank account at the Bank, including all money contained in that bank account; and

WHEREAS, on or about April 26, 2019, WESCO filed a motion (the "Motion to Modify Automatic Stay") in the Bankruptcy Cases seeking to dismiss the Bankruptcy Cases or, in the alternative, to modify the automatic stay under Section 362 of the Bankruptcy Code in order to permit WESCO to enforce the Judgment Liens and the Security Interest in order to proceed with garnishment proceedings against BC Holding's bank account and otherwise collect on the Confessed Judgment; and

WHEREAS, on or about April 26, 2019, WESCO filed identical proofs of claim (the "WESCO Proofs of Claim") in the Bankruptcy Cases that appear as Claim No. 2-1 on the claims register in the BC Mining Case and as Claim No. 1-1 on the claims register in the BC Holding

EXHIBIT 1      – 3 –

Case, asserting secured claims against each of the Debtors in the amount of $1,915,137.77 based on, amongst other things, the Note, the Security Interest and the Judgment Liens; and

WHEREAS, on or about June 20, 2019, the Debtors filed an adversary complaint (the "Complaint") against WESCO and thereby initiated an adversary proceeding against WESCO that is currently pending before the Court as Adversary No. 19-769 (the "Adversary Proceeding"), that asserts, among other things, avoidance actions under Sections 547 and 544 of the Bankruptcy Code seeking to avoid the Judgment Liens and the Debtors' obligations under the Note as well as objections to the WESCO Proofs of Claim; and

WHEREAS, on or about August 30, 2019, WESCO filed a motion (the "Motion to Dismiss") in the Adversary Proceeding seeking to dismiss the Complaint and the Adversary Proceeding; and

WHEREAS, on or about October 8, 2019, the Court entered an order in the Bankruptcy Cases converting the Bankruptcy Cases from cases under chapter 11 of the Bankruptcy Code to cases under chapter 7 of the Bankruptcy Code; and

WHEREAS, on or about October 11, 2019, Moglia was appointed as the Trustee of the bankruptcy estates of each of the Debtors and became the plaintiff in the Adversary Proceeding; and

WHEREAS, at various times, the Court entered multiple orders (the "Cash Collateral Orders") enabling the Debtors and, subsequently, the Trustee, to use money that WESCO asserts is its collateral under the Judgment Liens and/or the Security Interest, and that further granted WESCO certain post-petition additional and/or substitute liens on the Debtors' assets and/or cash payments as adequate protection; and

EXHIBIT 1                                – 4 –

WHEREAS, WESCO has received adequate protection payments totaling approximately $184,865.00 (the "Adequate Protection Payments"); and

WHEREAS, the Trustee has responded to the Motion to Dismiss in the Adversary Proceeding and filed a motion (the "Trustee's Motion") seeking to amend the Debtors' complaint in the Adversary Proceeding to assert additional claims against WESCO, including, without limitation, claims seeking to avoid, modify and otherwise challenging the extent, amount and/or validity of the Judgment Liens, the Security Interest, the Note, and the Confessed Judgment, seeking the return of the Adequate Protection Payments and asserting objections to the WESCO Proofs of Claim; and

WHEREAS, the Trustee has informally asserted additional claims against WESCO that are not described in the Trustee's Motion or contained in the draft amended complaint filed with the Trustee's Motion; and

WHEREAS, the Cash Collateral Orders did not determine the Parties' respective rights related to the Debtors' assets, including, without limitation, the money in BC Holding's bank account, the Judgment Liens, or the Security Interest; and

WHEREAS, the Motion to Modify the Automatic Stay remains pending before the Court in the Bankruptcy Cases and the Motion to Dismiss and the Trustee's Motion remain pending before the Court in the Adversary Proceeding; and

WHEREAS, the Parties have denied liability and otherwise asserted defenses, whether formally or informally, to the claims asserted by one Party against another Party, whether formally or informally, and otherwise denied liability to each other; and

WHEREAS, the WESCO Proofs of Claim (as amended from time to time) are the only proofs of claim that have been filed by either of the WESCO Parties in the Bankruptcy Cases; and

EXHIBIT 1                                          – 5 –

WHEREAS, the Parties wish to avoid the time, expense and uncertainties of litigation and desire to settle and finally resolve all disputes, claims or causes of actions that have been or could have been asserted in the Bankruptcy Cases or the Adversary Proceeding, including, without limitation, the WESCO Proofs of Claim, the Motion to Modify the Automatic Stay, the Motion to Dismiss, and the Trustee's Motion, or that the Parties could otherwise assert against each other, in accordance with the terms of this Agreement;

NOW, THEREFORE, in consideration of the mutual promises and covenants set forth herein, and other good and valuable consideration, the receipt and adequacy of which is expressly acknowledged by the Parties, the Parties hereby agree as follows:

1. **Recitals Incorporated**. The recitals, prefatory phrases and paragraphs set forth above are hereby incorporated in full, and made a part of this Agreement, provided, however, that by such incorporation neither the Trustee nor the WESCO Parties intends to adopt nor shall be deemed to have adopted the claims, allegations or legal positions asserted, expressed or filed against such Party by the other Party in any matters described above.

2. **Court Approval Required**. This Agreement shall not take force and effect unless and until the Court enters an order in the Bankruptcy Cases after notice and a hearing, approving this Agreement and authorizing the Trustee to execute, deliver and perform this Agreement (the "Settlement Approval Order") and the Settlement Approval Order has become a "Final Order." For purposes of this Agreement, a "Final Order" is an order that is final for purposes of 28 U.S.C. §§158 and 1291, and is no longer subject to appeal or *certiorari* proceedings and no appellate or *certiorari* proceedings are pending. For the avoidance of doubt, the Settlement Approval Order shall become a Final Order in the event that no party files a notice of appeal related to the Settlement Approval Order within the time permitted under Federal Rule of Bankruptcy Procedure

EXHIBIT 1                                – 6 –

8002. Except to the extent another date is specified with respect to the effectiveness of a particular provision of this Agreement, this Agreement shall take effect on the first day after the date the Settlement Approval Order has become a Final Order (the "Effective Date"). In the event that this Agreement is not approved by the Court in the Bankruptcy Cases, nothing herein shall be deemed a representation or admission by any Party as to any allegation or issue, and the Parties shall be returned to the status quo in effect prior to their entry into this Agreement. The Trustee shall prepare and file in the Bankruptcy Cases an appropriate motion requesting the Court's approval of this Agreement.

3. **No Admissions of Liability**. The Parties acknowledge that this Agreement constitutes a resolution of disputed claims and the Parties do not intend, concede or admit any liability to the other, nor concede nor admit the viability of any claim or proof of claim or the avoidability of any transfer.

4. **Settlement Payment**. Within two business days after the Settlement Approval Order has become a Final Order, the Trustee shall pay by wire transfer to WESCO the sum of Six Hundred Twenty-Five Thousand Dollars ($625,000.00) (the "Settlement Payment"), from the funds currently in the bank account of the bankruptcy estate of BC Holding, using the following wire instructions:

| | |
|---|---|
| Beneficiary Name: | WESCO Distribution, Inc. |
| Beneficiary Address: | 225 W Station Square Drive Suite 700 |
| | Pittsburgh, PA 15219 |
| Beneficiary Bank: |  |
| Beneficiary Bank Address: | |



EXHIBIT 1 – 7 –

Each of WESCO and CSC represent to the Trustee that: (i) the WESCO Parties are affiliated companies; (ii) they are directing the Trustee to pay the entire Settlement Payment to WESCO; and (iii) both of the WESCO Parties will benefit from the Settlement Payment although it is being paid entirely to WESCO.

5. **Withdrawal of WESCO Proofs of Claim**. Subject to the Respective Rights to Re-File and Defend (as defined below), within two business days of receipt of the Settlement payment, the WESCO Parties shall file with the Court all documents necessary or appropriate withdrawing the WESCO Proofs of Claim and any other claims and proofs of claim that have been filed or that may be filed by either WESCO or CSC (collectively, the "WESCO/CSC Proofs of Claim") from both of the Bankruptcy Cases (the "Notices of Withdrawal") and neither of the WESCO Parties shall be entitled to any further distributions or payments from the Debtors' bankruptcy estates. In the event that the WESCO Parties fail or refuse to file Notices of Withdrawal within two business days of receipt of the Settlement Payment, then all WESCO/CSC Proofs of Claim shall be deemed withdrawn from the Bankruptcy Cases and the Trustee shall be entitled to object to such WESCO/CSC Proofs of Claim or to otherwise file a motion requesting the entry by the Court of an order holding that such WESCO/CSC Proofs of Claim have been withdrawn solely on notice to David Agay at McDonald Hopkins LLC, WESCO's counsel in the Bankruptcy Cases. Notwithstanding the foregoing, solely in the event that the WESCO Parties are compelled to return the Settlement Payment to one of or both of the Debtors' bankruptcy estates prior to the filing of the Trustee's final report, then notwithstanding any other provision in this Agreement (including, without limitation, Section 8 below), the WESCO Parties and the Trustee shall have the following rights (the "Respective Rights to Re-File and Defend"): (i) the WESCO Parties shall be entitled to re-file the WESCO/CSC Proofs of Claim; and (ii) the Trustee shall be

EXHIBIT 1                                                                      – 8 –

entitled to object to the WESCO/CSC Proofs of Claim, assert all of his defenses to such WESCO/CSC Proofs of Claim, and pursue any other claims against the WESCO Parties, including those asserted or that could be asserted in the Adversary Proceeding and to recover the Adequate Protection Payments all of which shall be deemed to relate back to the filing of the original complaint in the Adversary Proceeding and shall not be precluded by any statute of limitations, doctrine of laches, or similar defenses or concepts.  For the avoidance of doubt, the Respective Rights to Re-File and Defend are contingent on and may only be exercised in the event that the WESCO Parties have been first compelled to return the Settlement Payment to either or both of the Debtors' bankruptcy estates.  The Respective Rights to Re-File and Defend shall automatically expire upon the Trustee's filing of a final report of assets in the Bankruptcy Cases.

6. **Adequate Protection Payments**.  The WESCO Parties shall be entitled to retain the Adequate Protection Payments previously received in the Bankruptcy Cases.

7. **Dismissal of Adversary Proceeding**.  Within two business days of the date on which the Settlement Approval Order has become a Final Order, the Parties shall file a stipulation, agreed motion, or such other documents dismissing the Adversary Proceeding with prejudice.

8. **Mutual Releases**.  Effective as of the later of the Effective Date and the date on which the Trustee makes the Settlement Payment to WESCO as required by this Agreement: (a) except for the obligations of the Trustee provided for in this Agreement and subject to the Respective Rights to Re-File and Defend, each of WESCO and CSC fully release, discharge and covenant not to sue the Trustee, his attorneys in the Bankruptcy Cases, and the Debtors' bankruptcy estates (the "Estate Releasees") from and with respect to any and all claims, causes of action, debts, loses, liabilities, demands, damages, judgments and any other bases or grounds for relief of any kind or nature whatsoever, whether known or unknown, liquidated or unliquidated,

EXHIBIT 1                                                        – 9 –

sounding in tort or contract, based on common law or any statute, court order, judgment, regulation or any other applicable law, that either WESCSO or CSC have or may have against any of the Estate Releasees, including, but not limited to, the WESCO/CSC Proofs of Claim, the Note, the Confessed Judgment, the Security Interest, the Judgment Liens, the Credit Application, the Equipment Debt, the Bankruptcy Cases, and the Adversary Proceeding; and (b) except for the obligations of WESCO and/or CSC provided for in this Agreement and subject to the Respective Rights to Re-File and Defend, the Trustee for and on behalf of the Debtors' bankruptcy estates fully releases, discharges and covenants not to sue each of WESCO and CSC and their respective officers, directors, employees, and attorneys in the Bankruptcy Cases (the "WESCO Releasees") from and with respect to any and all claims, causes of action, debts, loses, liabilities, demands, damages, judgments and any other bases or grounds for relief of any kind or nature whatsoever, whether known or unknown, liquidated or unliquidated, sounding in tort or contract, based on common law or any statute, court order, judgment, regulation or any other applicable law, that either of the Debtors' bankruptcy estates has or may have against the WESCO Releasees, including, but not limited to, the claims alleged in the Adversary Proceeding or avoidance and/or disgorgement of the Adequate Protection Payments.

9.  **Pending Motions; WESCO/CSC Proofs of Claim**.  Within two business days of the payment set forth in paragraph 4 above, the Parties shall jointly request that the Court enter one or more orders in the Bankruptcy Cases and/or the Adversary Proceeding, as appropriate, withdrawing or denying as moot the Motion to Modify the Automatic Stay, the Motion to Dismiss, the Trustee's Motion and any other pending motions filed by either of the WESCO Parties.

10. **Duty to Cooperate; Continuing Obligations**.  Notwithstanding any other terms, conditions, or provisions hereof, the Parties agree that they shall afford to one another reasonable

EXHIBIT 1                                                  – 10 –

cooperation in connection with the implementation of this Agreement, including, without limitation, reflecting that any and all released claims are reflected as withdrawn, dismissed, and/or disallowed and as may otherwise be necessary or appropriate to dismiss, deny or withdraw the Motion to Modify the Automatic Stay, the WECSO/CSC Proofs of Claim, and the Adversary Proceeding.

11. **Governing Law**.  The Parties agree that this Agreement shall be construed and governed by the provisions of the Bankruptcy Code and other applicable federal law and, to the extent state law may be applicable, the internal laws of the State of Illinois, without giving effect to choice of law principles.

12. **Jurisdiction and Venue**.  The Parties consent to the entry of final orders by the Court in the Bankruptcy Cases and further agree to bring any and all disputes between them concerning or relating to this Agreement or any of the subject matter of this Agreement exclusively before and to the Court.  To the extent that the Court may conclude that it lacks subject matter jurisdiction or statutory or constitutional authority over any such dispute or otherwise declines to exercise jurisdiction or authority the Parties agree that the exclusive forum and venue for all disputes between them concerning or relating to this Agreement or any of the subject matter of this Agreement shall be any federal or state court of competent jurisdiction located in the City of Chicago, Illinois.

13. **Binding Effect**.  This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and assigns.

14. **Facsimile/Electronic Signature; Counterparts**.  This Agreement may be executed and delivered electronically or by facsimile in one or more counterparts.  A copy of this Agreement bearing a signature that has been transmitted electronically, including, without

EXHIBIT 1                                     – 11 –

limitation, in the form of a .pdf document transmitted by email, shall have the same force and effect as an original.  Each counterpart of this Agreement, upon execution and delivery shall be deemed an original.

15.    **Severability**.  In the event that any one or more provisions contained in this Agreement shall for any reason be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

16.    **Mutually Drafted Agreement**.  Each of the Parties agree and acknowledge that they are represented by legal counsel of their respective choice related to the negotiation and drafting of this Agreement and the disputes resolved by and through this Agreement and that this Agreement is the product of good faith, arms' length negotiations between the Parties.  Accordingly, the Parties agree that this Agreement shall be considered a mutually drafted agreement and none of the Parties shall be considered the drafting party and that no rule of construction resolving contractual ambiguities against the drafting party shall be applicable.

17.    **Final Agreement**.  This Agreement contains the full and complete agreement of the Parties regarding the subject matter hereof and entirely supersedes and replaces any and all statements or commitments that may have been made during prior discussions and negotiations, whether written or oral.  As such, the Parties shall solely look to the terms, provisions and obligations contained in this Agreement as a full and final expression of the terms of their Agreement.

18.    **Amendment**.  This Agreement may only be amended in writing executed by all of the Parties hereto.

EXHIBIT 1 – 12 –

19. **Waiver of Jury Trial**. EACH PARTY HERETO WAIVES THE RIGHT TO A TRIAL BY JURY IN ANY LITIGATION, PROCEEDING, OR OTHER LEGAL ACTION IN CONNECTION WITH OR RELATING TO THIS AGREEMENT, ITS SUBJECT MATTER, OR THE CONSTRUCTION OR PERFORMANCE THEREOF.

20. **Acknowledgements**. Each Party hereto expressly acknowledges and warrants that he or it has voluntarily entered into this Agreement, was represented by counsel of his or its own choosing with respect hereto, and understands the nature and binding effect of this Agreement.

21. **Authority to Bind**. Except for the pre-conditions and requirements of obtaining the approval and authorization of the Court of this Agreement and that the Settlement Approval Order becoming a Final Order, each Party represents to the other Parties that it has the full and sole authority to enter into this Agreement and that it has not previously assigned to any third party any claims, demands, rights, or causes of action released under the terms of this Agreement.

(signature page follows)

EXHIBIT 1                – 13 –

IN WITNESS WHEREOF, the Parties hereto execute this Agreement on and as of this _____ day of May, 2020.

**WESCO Distribution, Inc.**                           **Communications Supply Corp.**

_____                  _____

By: _____             By: _____

Title: _____             Title: _____


_____
**Alex D. Moglia, not personally or individually, but solely as the chapter 7 trustee of the bankruptcy estates of BCause LLC and BCause Mining LLC**

EXHIBIT 1                           – 14 –