**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | **Chapter 7** |
| | ) | |
| **BCause Mining LLC,** *et al.* | ) | **Case No. 19-10562** |
| | ) | **(Jointly Administered)** |
| Debtors. | ) | |
| | ) | **Hon. Janet S. Baer** |
| | ) | |

**NOTICE OF MOTION**

**TO:   See attached list**

PLEASE TAKE NOTICE that on **March 10, 2021**, at the hour of **1:00 p.m.**, I will appear before the Honorable Janet S. Baer, United States Bankruptcy Judge or any judge sitting in that judge's place, and present the **APPLICATION OF MOGLIA ADVISORS FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES AS FINANCIAL ADVISORS TO CHAPTER 7 TRUSTEE AND TO SHORTEN NOTICE AND APPROVE FORM NOTICE** (the "Motion"), a copy of which is attached.

**This motion will be presented and heard electronically using Zoom for Government**. No personal appearance in court is necessary or permitted.  To appear and be heard on the Motion you must do the following:

**To appear by video**, use this link: https://www.zoomgov.com/.  Then enter the meeting ID and password.

**To appear by telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666.  Then enter the meeting ID and password.

**Meeting ID and password**.  The meeting ID for this hearing is 160 731 2971 and the password is 587656.  The meeting ID and password can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date.  If a Notice of Objection is timely filed, the motion will be called on the presentment date.  If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

Dated:  February 18, 2021

Alex Moglia, Chapter 7 Trustee of the
Bankruptcy Estates of BCause Mining LLC
and BCause LLC

By: /s/ Michael M. Schmahl
     Michael M. Schmahl

Michael M. Schmahl
MASON POLLICK & SCHMAHL LLC
70 W. Hubbard, Suite 304
Chicago, Illinois  60654
(312) 312-5531
mschmahl@mps-law.com
*Counsel to the Trustee*

## CERTIFICATE OF SERVICE

The undersigned states under penalty of perjury that on February 18, 2021, he caused the above Notice of Motion and the Motion to be served on the individuals listed on the below service list via the court's ECF system for those who are registered except for the individuals or entities that are identified to have been served by email whom the undersigned caused to be served by email as indicated on the attached service list.  Additionally, the undersigned states under penalty of perjury that on February 18, 2021, he caused a copy of the Notice (in the form attached as Exhibit B to the Motion) to be served by regular, first class mail, postage pre-paid on all creditors and other parties in interest and that he will file a supplemental certificate of service related thereto.

By: /s/ Michael M. Schmahl
Michael M. Schmahl

**SERVICE LIST**

Patrick S. Layng
Ha M. Nguyen
Office of the U.S. Trustee
219 S. Dearborn Street
Room 873
Chicago, IL 60604
Ha.nguyen@usdoj.gov
*United States Trustee*

David A Agay
Maria G Carr
Shara C Cornell
McDonald Hopkins LLC
300 N. LaSalle
Chicago, IL 60654
312-280-0111
dagay@mcdonaldhopkins.com
mcarr@mcdonaldhopkins.com
scornell@mcdonaldhopkins.com
*Counsel for WESCO Distribution, Inc.*

J Mark Fisher
Sarah K Angelino
Schiff Hardin LLP
233 South Wacker Drive
Suite 7100
Chicago, IL 60606
(312) 258-5861
mfisher@schiffhardin.com
sangelino@schiffhardin.com
Dennis Lewandowski, via email sent to:
dtlewand@kaufcan.com
*Counsel for Hoffland Properties, Inc.*

Marc Ira Fenton
Jamie L Burns
Levenfeld Pearlstein LLC
2 N Lasalle St Ste 1300
Chicago, IL 60602
312-346-8380
mfenton@lplegal.com
jburns@lplegal.com

John M Craig
Law Firm of Russell R Johnson
III, PLC
14890 Washington Street
Haymarket, VA 20169
russell@russelljohnsonlawfirm.com
*Counsel for Dominion Energy Virginia*

Shelly A. DeRousse
Devon J Eggert
Elizabeth L Janczak
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606
312-360-6315
312-360-6520 (fax)
sderousse@freeborn.com
deggert@freeborn.com
ejanczak@freeborn.com
*Counsel for Creditors' Committee*

Russell R. Johnson, III
John M. Craig
Law Firm of Russell R Johnson
III, PLC
2258 Wheatlands Drive
Manakin Sabot, VA 23103
804-749-8861
russell@russelljohnsonlawfirm.com
john@russelljohnsonlawfirm.com
*Counsel for Dominion Energy Virginia*

Brian L Shaw
Christina Sanfelippo
Cozen O'Connor LLP
123 N. Wacker Drive
Suite 1800
Chicago, IL 60606
312-382-3100
312-382-8910 (fax)

3

*Counsel for W-R2 Jefferson Owner VIII, LLC*    bshaw@cozen.com
csanfelippo@cozen.com
*Counsel for BMG Operations Ltd.*

Jennifer M McLemore
Williams Mullen
200 South 10th Street
Richmond, VA 23219
(804)420-6330
jmclemore@williamsmullen.com
*Counsel for BMG Operations Ltd.*

Debra Devassy Babu
Askounis & Darcy, PC
444 N. Michigan Avenue
Suite 3270
Chicago, IL 60611
312-784-2400
312-784-2410 (fax)
ddevassy@askounisdarcy.com
*Counsel for CCA Financial, LLC*

Jason M Torf
Ice Miller LLP
200 W. Madison St.
Suite 3500
Chicago, IL 60606
312-726-6244
312-726-6214 (fax)
jason.torf@icemiller.com
*Counsel for Dominion Energy Virginia*

Scott R Clar
Arthur G Simon
Jeffrey C Dan
Crane, Simon, Clar & Dan
135 S Lasalle Suite 3705
Chicago, IL 60603
312 641-6777
312 641-7114 (fax)
sclar@cranesimon.com
asimon@cranesimon.com
jdan@cranesimon.com
*Counsel for the Debtors*

Lindsey Conley
Hinshaw & Culbertson LLP
151 N. Franklin Street, Suite 2500
Chicago, IL 60606

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
(EASTERN DIVISION)**

| | | |
|---|---|---|
| In re: | ) ) ) | **Chapter 7** |
| | ) | **Case No. 19-10562** |
| **BCause Mining LLC**, *et al.* | ) | **(Jointly Administered)** |
| | ) | |
| Debtors. | ) | **Hon. Janet S. Baer** |
| | ) | |

**COVER SHEET FOR FIRST INTERIM APPLICATION FOR ALLOWANCE OF
COMPENSATION AND REIMBURSEMENT OF EXPENSES TO
MOGLIA ADVISORS AS FINANCIAL ADVISOR TO CHAPTER 7 TRUSTEE
<u>AND TO SHORTEN NOTICE AND APPROVE FORM OF NOTICE</u>**

| | |
|---|---|
| Name of Applicant: | Moglia Advisors |
| Authorized to Provide Professional Services to: | Alex Moglia, not personally, but solely as the chapter 7 trustee of the bankruptcy estates of BCause LLC and BCause Mining LLC |
| Date of Order Authorizing Employment: | October 15, 2020 (effective as of October 11, 2019) **[Docket No. 456]** |
| Period for which Compensation is Sought: | |
| From: | October 11, 2019 |
| Through: | December 31, 2020 |
| Amount of Fees Sought: | $16,280.00 |
| Amount of Expense Reimbursement: | $1,929.17 ($3,017.01 less $1,087.84[1] paid pursuant to prior Order of the Court **[Docket No. 409]**) |
| This is an: | |
| Interim Application:  YES | Final Application:  NO |
| | |

If this is not the first application filed herein by this professional, disclose as to all prior fee applications:

| <u>Date Filed</u> | <u>Period Covered</u> | Total Requested <u>(Fees & Expenses)</u> | Total Allowed <u>(Fees & Expenses)</u> | Fees & Expenses <u>Previously Paid</u> |
|---|---|---|---|---|
| N/A | N/A | [2] N/A | N/A | N/A |
| | | | | |

---

[1] Although this is the first application for compensation filed by Moglia Advisors, the Court previously authorized the Trustee to reimburse Moglia Advisors for the actual amount of certain previously estimated expenses totaling $1,087.84.

[2] Although this is the first application for compensation filed by Moglia Advisors, the Court previously authorized the Trustee to reimburse Moglia Advisors for the actual amount of certain previously estimated expenses totaling $1,087.84.

State the aggregate amount of fees and reimbursement of expenses paid to Applicant as of the date of this Application: $1,087.84 for reimbursement of certain expenses pursuant to prior Order of the Court [**Docket No. 409**].

MASON POLLICK & SCHMAHL LLC

Dated: February 18. 2021

/s/ Michael M. Schmahl
Michael M. Schmahl
Mason Pollick & Schmahl LLC
70 W. Hubbard, Suite 304
Chicago, IL 60654
(312) 312-5531
mschmahl@mps-law.com
ARDC #6275860
*Counsel for the Trustee*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| BCause Mining LLC, *et al.* | ) | Case No. 19-10562 |
| | ) | (Jointly Administered) |
| | ) | |
| | ) | Honorable Janet S. Baer |
| | ) | |
| | ) | |
| | ) | Hearing Date: March 10, 2021 |
| Debtors. | ) | Hearing Time: 1:00 P.M. |

**FIRST INTERIM APPLICATION FOR ALLOWANCE OF COMPENSATION AND
REIMBURSEMENT OF EXPENSES TO MOGLIA ADVISORS AS FINANCIAL
ADVISOR TO CHAPTER 7 TRUSTEE
AND TO SHORTEN NOTICE AND APPROVE FORM OF NOTICE**

Pursuant to 11 U.S.C. §§ 330 and 331, Moglia Advisors ("**MA**"), respectfully requests

that this Court enter an order allowing $16,280.00 in compensation for financial advisory

services rendered by MA to the Trustee, and $1,929.17 in reimbursement of expenses related to

the same (the "**Application**"), for the period October 11, 2019, through December 31, 2020 (the

"**Compensation Period**"). In support of this Application, MA respectfully states as follows:

### JURISDICTION

1.       The Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157

and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this

Court pursuant to 28 U.S.C. §§1408 and 1409.

### BACKGROUND

1.       On April 11 and 12, 2019, respectively, BCause Mining LLC and BCause LLC

("the Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code

(Doc No. 1).

7

2.      On October 8, 2019 (the "Conversion Date"), the Court converted these cases to cases under Chapter 7 of the Bankruptcy Code (Docket No. 319).

3.      On October 11, 2019, the U.S. Trustee appointed Alex D. Moglia as trustee ("Trustee") (Doc No. 334).

4.      On October 15, 2020, the Court entered an order approving MA's retention by the Trustee effective as of October 11, 2019.

5.      These cases have presented and continue to present the Trustee with unique challenges.  The Debtors did not appear to have anticipated the occurrence of the conversion of the cases to Chapter 7 cases under the U.S. Bankruptcy Code, the Debtors' financial books of account were not up-to-date, the employees had not been properly informed about the situation of the companies, the bankruptcy process, and the role of the Trustee, various employment tax records had not been prepared or filed with several states, and the Debtors' customers had significant numbers of computers and other equipment that, in many cases, needed to be separated from the Debtors' equipment and removed from the data center in Virginia Beach, VA.

6.      These circumstances were exacerbated by the facts that: (i) certain of the Debtors' former employees were reluctant to assist the Trustee as they asserted that they were owed money by the Debtors; and (ii) WESCO's disputed lien on the money in these estates, although now settled, required the Trustee to negotiate extensively with WESCO and obtain Court approval for the use of cash collateral in order to address the Debtors' failures to prepare for the conversion of these cases to chapter 7 cases and to complexities of maintaining the data center for a limited period of time.

7.      Nonetheless, starting immediately after his appointment, the Trustee with the active assistance of MA, expeditiously assessed the feasibility of liquidating the Debtors'

equipment located in the data center, as well as certain other assets, including, without limitation, Bitcoin funds and certain customized but incomplete software and related intellectual property related to a cryptocurrency exchange that was planned but never launched.

8.     Time was of the essence in order to minimize potential administrative expenses, principally, but not limited to, monthly rent for the data center of approximately $60,000 starting in November, 2019 (about three weeks following the Trustee's appointment) and the costs associated with the 24-hour, personnel-staffed fire watch required by the local fire marshal.

9.     In order to meet the Trustee's immediate obligations, MA created various projections and cost estimates used to make decisions, and to guide the Trustee's negotiations with potential professionals or paraprofessionals, including tax accountants and the Debtors' former controller, to determine reasonable fees in connection with completing the Debtors' books and tax returns, including related documents.

10.     Due to time constraints imposed on the Trustee and his counsel, the Trustee asked certain accounting professionals and paraprofessionals at MA to prepare certain analyses to assist the Trustee in fulfilling his duties including, but not limited, to his settlement negotiations with WESCO, disposing of the Bitcoin holdings, gaining control of the data center, working to terminate the Debtors' 401k plan as required by Section 704(a)(11) of the Bankruptcy Code, including, without limitation, working formally and informally with the Debtors' former head of human resources and plan administrator as well as with various professionals, and in many other tasks and activities of the Trustee.

11.     The Trustee's investigation, with the assistance of MA, of the Debtors' financial affairs, including the evaluation of potential causes of action, is ongoing.

## SUMMARY OF THE SERVICES RENDERED BY
## MA TO THE TRUSTEE DURING THE COMPENSATION PERIOD

12.    The total fees requested by MA for financial advisory services rendered to the Trustee during the Compensation Period aggregate to $16,280.00.  A breakdown of this amount by each MA professional, including such professional's title, hourly rate, and total hours expended in providing financial advisory services is as follows:

| PROFESSIONAL | TITLE | 2019/2020 HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Jill K. Niese | Managing Director | $400 | 38.30 | 15,320.00 |
| Karen Nandapreecha | Support Staff | $150 | 6.40 | 960.00 |
| TOTAL | | | 44.70 | $16,280.00 |

13.    The hourly rates sought in this Application are the standard hourly rates charged by MA for similar or identical services provided by these in other bankruptcy or non-bankruptcy matters and cases during the Compensation Period.

14.    MA made every reasonable effort to have the services it rendered to the Trustee performed by those qualified personnel and paraprofessionals charging the lowest hourly rates, consistent with the level of service, experience, and efficiency required of a given task.

15.    All of the fees and expenses for which MA requests interim allowance and payment of compensation and reimbursement of expenses related to the Compensation Period were rendered or incurred in connection with the above-captioned cases, at the Trustee's request, and in the discharge of MA's professional responsibilities as financial advisor to the Trustee. MA respectfully submits that the financial advisory services that it provided to the Trustee during the Compensation Period were, in all respects, reasonable, necessary, and beneficial to these bankruptcy estates.

## **SUMMARY BY CATEGORY OF SERVICES RENDERED**

16.     MA maintains written records of the time expended by its professionals.  These time records are prepared and maintained contemporaneously with the rendering of financial advisory services by each MA professional.  MA does not seek any compensation for services provided by the Trustee.

17.     A detailed Time Statement, attached hereto as **Exhibit A**, sets forth the financial advisory services rendered to the Trustee during the Compensation Period for which MA seeks compensation.  Additionally, each category of financial advisory services provided by MA is summarized below.

Accounting and Auditing (1.70 hours valued at $680.00)

18.     During the First Application Period, MA expended 1.90 hours with a value of $760.00 on matters related to Accounting & Auditing.  **Exhibit A, pages 1 through 2,** contains detailed descriptions of the time entries attributable to this category of services.

19.     A summary of professionals providing services in this category during the First Application Period, each such professional's title, hourly rate, and total hours expended on financial advisory services in this category during the First Application Period, and the value attributable to these services, is as follows:

| PROFESSIONAL | TITLE | 2019/2020 HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Jill Niese | Managing Director | $400 | 1.70 | $680.00 |
| **TOTAL** | | | **1.70** | **$680.00** |

Asset Disposition (5.90 hours valued at $2,360.00)

20.     During the Compensation Period, MA assisted the Trustee in investigating the facts and circumstances surrounding the Debtors' Bitcoin and Bitcoin Cash cryptocurrency that had been held in three different "accounts", including two such accounts that had features

severely limiting the Trustee's ability (or anyone's ability) to move or transfer the cryptocurrency contained therein, and obtaining practical solutions to these issues resulting in the liquidation of the Bitcoin for more than $240,000. These services are specifically described in pages 2 through 4 of **Exhibit A** and summarized in the table below.

| PROFESSIONAL | TITLE | 2019/2020 HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Jill Niese | Managing Director | $400 | 5.90 | $2,360.00 |
| **TOTAL** | | | **5.90** | **$2,360.00** |

<u>Case Administration (20.70 hours valued at $6,730.00)</u>

21.     MA assisted the Trustee in maintaining bank account records, coordinating certain activities with the Trustee's professionals, reviewing and providing certain information needed to prepare certain draft motions, responding to various correspondence and inquiries from potential creditors and parties in interest, sending bankruptcy notices to certain of these parties, evaluating certain administrative expenses, and processing payments authorized by the Court. Additionally, MA reviewed and revised the Trustee's motion to retain MA in these cases.

22.     In addition, the case administration category includes activities that were not easily split into separate categories.

23.     During the Compensation Period, MA expended a total of 20.70 hours with a value of $6,730 in services related to case administration which are specifically described in pages 4 through 14 of **Exhibit A** and summarized in the table below.

| PROFESSIONAL | TITLE | 2019/2020 HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Jill Niese | Managing Director | $400 | 14.50 | $5,800.00 |
| Karen Nandapreecha | Support Staff | $150 | 6.20 | $930.00 |
| **TOTAL** | | | **20.70** | **$6,730.00** |

Employee Benefits/Pensions (4.10 hours valued at $1,640.00)

24.     BCause LLC sponsored a 401(k) plan for employees that was maintained at PayChex.  Pursuant to Section 704(a)(11) of the Bankruptcy Code, the Trustee was required to oversee the termination of this plan.

25.     MA worked with the Trustee, his counsel and others, including the plan administrator, BCause LLC's former head of human resources, to oversee the termination process, which was complicated by the facts that the plan administrator appeared to have attempted to start the termination process on her own although the process had stalled. Additionally, obtaining information and the status of the plan and the termination process from PayChex was laborious and difficult.

26.     MA personnel and the plan administrator coordinated to establish the status of the 401(k) plan, agree to an appropriate path forward in terminating the plan, and ensured that the administrator followed up on the plan to terminate the 401(k) plan.

27.     During the Compensation Period, MA expended a total of 4.10 hours with a value of $1,640.00 in services related to terminating the Debtors' 401(k) plan, which are specifically described in pages 14 through 16 of **Exhibit A** and summarized in the table below.

| PROFESSIONAL | TITLE | 2019/2020 HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Jill Niese | Managing Director | $400 | 4.10 | $1,640.00 |
| **TOTAL** | | | **4.10** | **$1,640.00** |

Fee Application (1.10 hours valued at $440.00)

28.     During the First Application Period, MA expended 1.10 hours with a value of $440.00 on matters related to Fee Application that are specifically described on page 16 of **Exhibit A** and summarized in the table below.

| PROFESSIONAL | TITLE | 2019/2020 HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Jill Niese | Managing Director | $400 | 1.10 | $440.00 |
| **TOTAL** | | | **1.10** | **$440.00** |

Financing (1.80 hours valued at $720.00)

29.     During the First Application Period, MA expended 1.80 hours with a value of $720.00 related to financing activities principally comprised of working with the bank to make payments approved by the Court.  These services are described on pages 16 and 17 of **Exhibit A** and summarized in the table below.

| PROFESSIONAL | TITLE | 2019/2020 HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Jill Niese | Managing Director | $400 | 1.80 | $720.00 |
| **TOTAL** | | | **1.80** | **$720.00** |

Tax Issues (9.40 hours valued at $3,710.00)

30.     The Trustee has an obligation under Section 346 of the Bankruptcy Code to prepare and file tax returns for the Debtors' estates.

31.     While the Debtors are pass through entities that filed consolidated tax returns (BCause Mining LLC is a wholly owned subsidiary of BCause LLC), their equity structure is complicated by the fact that BCause LLC is owned by a diverse group of individuals and entities, each owning unequal percentages of the equity in BCause LLC.  Further, the rights of the various equity holders varied based on the terms of their individual investments in BCause LLC.  As a result, in addition to tax returns and forms W2 and 1099, the Trustee was required to prepare form K1s for these equity holders.

32.     This process was also complicated by the facts that the Debtors' financial books and records had not been completed through the Conversion Date and several entries had been re-characterized.

33.     Given these complexities, the Trustee had difficulty locating competent tax accountants at reasonable rates[3], a process that was more complicated than normal as all of the cash in these estates was then subject to the disputed WESCO liens.

34.     Ultimately, these issues were mostly resolved by the Trustee retaining the Debtors' former controller to complete the books, and accountants, Tibble & Wesler, to prepare the 2019 tax returns for a capped fee that was acceptable to WESCO.

35.     Since filing the 2019 tax returns, the Trustee has learned that there were various transactions in BCause LLC's ownership interests that materially altered its ownership structure in 2018 and/or 2019 that were not reflected in the Debtors' books. As a result, amended returns and K1s are currently being prepared.

36.     MA personnel prepared estimated budgets for book keeping and tax preparation fees that were used to negotiate agreements with the Debtors' former comptroller and the various potential accountants, reviewed several book entries and researched financial records needed to draft tax filings (including W2s, 1099s, tax returns and K1s) and in evaluating various tax issues. MA also participated in several conferences with the former controller and the Trustee's accountant in connection with the preparation of these filings.

37.     During the Compensation Period, MA expended 9.40 hours with a value of $3,710.00 related to tax issues, which are specifically described in pages 18 through 21 of **Exhibit A** and summarized in the table below.

| PROFESSIONAL | TITLE | 2019/2020 HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Jill Niese | Managing Director | $400 | 9.20 | $3,680.00 |
| Karen Nandapreecha | Support Staff | $150 | .20 | $30.00 |
| **TOTAL** | | | **9.40** | **$3,710.00** |

---

[3] The Trustee was initially quoted prohibitively high fees to prepare the 2019 returns.

**Expenses**

38.     During the Compensation Period, MA advanced a total of $3,017.01 in expenses on behalf of the Trustee in connection with the financial advisory services that it rendered during the First Application Period principally comprised of fees related to maintaining the Debtors' financial records, which the Debtors maintained on Quickbooks, as well as various fees related to issuing and filing form W2s for 2019 and similar charges.   **Exhibit B** details the each of the specific expenses paid by MA in conjunction with the services provided to the Trustee for which MA seeks reimbursement.

39.     On or about January 30, 2020, the Court entered an order [**Docket No. 409**] authorizing the Trustee to reimburse MA for certain expenses then estimated to total up to $2,200.  Pursuant to that order, the Trustee has already reimbursed MA for the actual amount of those previously estimated expenses totaling $1,087.84.

40.     MA now seeks reimbursement of the balance of expenses that MA has paid in connection with the services provided to the Trustee as listed in **Exhibit B** and summarized in the table below:

| Category | Amount |
|---|---|
| Mileage | $0 |
| Parking / Tolls | $0 |
| Conference call telephone fees | $135.85 |
| Fax | $22.00 |
| Postage | $52.95 |
| Federal Express service | $100.54 |
| Accounting | |

| (Quickbooks/Intuit/IL SUI) | $2,705.67 |
|---|---|
| **Total** | **$3,017.01** |
| **Less Prior Payment Per Doc #409** | **($1,087.84)** |
| **Expense reimbursement requested** | **$1,929.17** |

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

41.     The professional services provided by MA during the Compensation Period were necessary and appropriate to assist the Trustee with the administration of these estates and in the best interests of the creditors and parties in interest.  The compensation requested for the services performed is commensurate with the complexity, importance and the nature of the problems, issues or tasks involved. MA has undertaken significant efforts to ensure that the professional services were performed in an efficient manner without duplication of effort.

42.     Section 330 of the Bankruptcy Code provides that the Court may award a professional employed under Section 327 of the Bankruptcy Code for "reasonable compensation for actual and necessary services rendered ...."  11 U.S.C. § 330(a)(1).  Further, Section 330 of the Bankruptcy Code sets forth guidelines for the Court to consider for the award of compensation and reimbursement of expenses:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, the extent, and the value of such services, taking into account all relevant factors including:
>
> (A)     the time spent on such services;
>
> (B)     the rates charged for such services;
>
> (C)     whether the services were necessary to the administration of, or beneficial at the time at which

service was rendered toward completion of, a case
under this title;

(D)     whether the services were performed within
a reasonable amount of time commensurate with the
complexity, importance, and nature of the problem,
issue or task addressed;

(E)     with respect to a professional person,
whether the person is board certified or otherwise
has demonstrated skill and experience in the
bankruptcy field; and

(F)     whether compensation is reasonable based
on the customary compensation charged by
comparably skilled practitioners in cases other than
cases under this title.

11 U.S.C. § 330(a)(3).

43.     In determining the reasonableness of hourly billing rates and the number of hours

expended in providing professional services, the Seventh Circuit has used "[the] 'lodestar'

approach – multiplying the number of actual and necessary hours *reasonably* expended by a

reasonable hourly rate …." In re Wildman, 72 B.R. 700, 712 (Bankr. N.D. Ill. 1987). While the

lodestar approach is a good starting point, other factors should be considered in deciding whether

the compensation sought is reasonable. Id.

44.     When analyzing whether a professional's hourly billing rate is reasonable, the

Seventh Circuit has held that:

[T]he best measure of [a professional's] time is what that [professional] could
earn from paying clients. For a busy [professional], this is the standard rate. If he
[or she] were not representing this plaintiff in this case, the [professional] could
sell the same time to someone else. That person's willingness to pay establishes
the market's valuation of the [professional's] services.

In re Farley, Inc., 156 B.R. 203, 211 (Bankr. N.D. Ill. 1993) quoting Gusman v. Unisys Corp.,

986 F.2d 1146, 1150 (7th Cir. 1993). Therefore, when applying the "lodestar" approach, the

18

reasonable hourly rate is presumed to be the professional's normal billing rate.  See Pressley v. Haeger, 977 F.2d 295, 299 (7th Cir. 1992) ("It is not the function of judges in fee litigation to determine the equivalent of the medieval price.  It is to determine what the [professional] would receive if he [or she] were selling his [or her] services in the market rather than being paid by a court order.") (internal quotation marks and citation omitted).

45.     The rates charged by MA in this case are its standard rates for any bankruptcy matter.  The rates charged by MA are consistent with the reasonable and customary hourly rates charged by other financial advisors throughout the country in matters of similar complexity, scope and significance.   As detailed above and in the exhibits hereto, MA professionals performed services and billed 44.70 hours of time during the Compensation Period totaling $16,280.00 in fees.  MA's average hourly billing rate for its professionals during this First Application Period (its "lodestar" rate) was $364.21.

46.     MA respectfully submits that the services for which it is seeking compensation in this First Application were necessary to the Trustee's efforts in administering the Debtors' estates and beneficial to, and in the best interests of, the Debtors' creditors, parties in interest, and these estates.  The compensation sought is reasonable in light of the nature, extent and value of such services provided to the Trustee.

47.     The Court may award a professional employed under Section 327 of the Bankruptcy Code its "reimbursement for actual necessary expenses."  11 U.S.C. § 330(a)(1)(B). "An expense is necessary if it was incurred because it was required to accomplish the proper representation of the client." In re Spanjer Bros., Inc., 191 B.R. 738, 749 (Bankr. N.D. Ill. 1996); See In re Wildman, 72 B.R. 700, 731 (Bankr. N.D. Ill. 1987).

48.     MA has requested reimbursement only for actual and necessary expenses incurred on behalf of the Trustee.   These expenses were incurred because they were required to accomplish the proper representation of the Trustee in the matter.

49.     MA requests the allowance and immediate payment of all fees and expenses sought in the Compensation Period from the $193,493.88 currently in the bank account for the BCause LLC estate

**Request to Shorten Notice and Approve Form of Notice**

50.     Sections 330 and 331 of the Bankruptcy Code require notice and a hearing before any determination is made on this Application.   In compliance with these sections and Federal Rule of Bankruptcy Procedure 2002, MA has mailed a copy of the notice (the "Notice") of this Application to all creditors and provided a full copy of this Application with all exhibits to all parties who have entered an appearance in these cases through the Court's ECF system.   A copy of the Notice is attached hereto as Exhibit C.

51.     Additionally, MA will make a copy of this Application with all supporting exhibits available to any party in interest that submits a written request to Michael M. Schmahl via mail to MPS at 70 W. Hubbard, Suite 304, Chicago, IL 60654, or via email sent to mschmahl@mps-law.com.

52.     Finally, MA requests that the Court shorten notice by one day in order to allow this Application to be heard on 20-day notice, rather than 21-day notice, on March 10, 2021.

WHEREFORE, MA respectfully requests: (i) allowance of compensation for professional services rendered during the First Application Period in the amount of $16,280.00; (ii) allowance for actual and necessary expenses MA incurred during the Compensation Period in the amount of $1,929.17; (iii) authorization for the Trustee to immediately pay these amounts to MA; (iv)

authorizing and approving shortened notice and the form of the Notice; and (v) granting such

further relief as the Court deems is just and appropriate.

Respectfully submitted,

Dated:  February18, 2021                    By: /s/ Michael M. Schmahl

Michael M. Schmahl
MASON POLLICK & SCHMAHL, LLC
70 W. Hubbard, Suite 304
Chicago, Illinois 60654
(312) 312-5530 telephone
*Counsel for the Chapter 7 Trustee*