**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| BCause Mining LLC, *et al.* | ) | Case No. 19-10562 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Hon. Janet S. Baer |
| | ) | |

**NOTICE OF MOTION**

**TO:** See attached list

PLEASE TAKE NOTICE that on **March 10, 2021**, at the hour of **1:00 p.m.**, I will appear before the Honorable Janet S. Baer, United States Bankruptcy Judge or any judge sitting in that judge's place, and present the **TRUSTEE'S FIRST INTERIM APPLICATION FOR COMPENSATION AND TO SHORTEN NOTICE AND APPROVE FORM OF NOTICE** (the "Motion"), a copy of which is attached.

**This motion will be presented and heard electronically using Zoom for Government**. No personal appearance in court is necessary or permitted. To appear and be heard on the Motion you must do the following:

**To appear by video**, use this link: https://www.zoomgov.com/. Then enter the meeting ID and password.

**To appear by telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and password.

**Meeting ID and password**. The meeting ID for this hearing is 160 731 2971 and the password is 587656. The meeting ID and password can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

Dated: February 18, 2021

Alex Moglia, Chapter 7 Trustee of the
Bankruptcy Estates of BCause Mining LLC
and BCause LLC

By: /s/ Michael M. Schmahl
    Michael M. Schmahl

Michael M. Schmahl
MASON POLLICK & SCHMAHL LLC
70 W. Hubbard, Suite 304
Chicago, Illinois 60654
(312) 312-5531
mschmahl@mps-law.com
*Counsel to the Trustee*

## **CERTIFICATE OF SERVICE**

      The undersigned states under penalty of perjury that on February 18, 2021, he caused the above Notice of Motion and the Motion to be served on the individuals listed on the below service list via the court's ECF system for those who are registered except for the individuals or entities that are identified to have been served by email who the undersigned caused to be served by email as indicated on the attached service list. Additionally, the undersigned states under penalty of perjury that on February 18, 2021, he caused a copy of the Notice (in the form attached as Exhibit B to the Motion) to be served by regular, first class mail, postage pre-paid on all creditors and other parties in interest and that he will file a supplemental certificate of service related thereto.

By: /s/ Michael M. Schmahl
      Michael M. Schmahl

## SERVICE LIST

Patrick S. Layng
Ha M. Nguyen
Office of the U.S. Trustee
219 S. Dearborn Street
Room 873
Chicago, IL 60604
Ha.nguyen@usdoj.gov
*United States Trustee*

David A Agay
Maria G Carr
Shara C Cornell
McDonald Hopkins LLC
300 N. LaSalle
Chicago, IL 60654
312-280-0111
dagay@mcdonaldhopkins.com
mcarr@mcdonaldhopkins.com
scornell@mcdonaldhopkins.com
*Counsel for WESCO Distribution, Inc.*

J Mark Fisher
Sarah K Angelino
Schiff Hardin LLP
233 South Wacker Drive
Suite 7100
Chicago, IL 60606
(312) 258-5861
mfisher@schiffhardin.com
sangelino@schiffhardin.com
Dennis Lewandowski, via email sent to:
dtlewand@kaufcan.com
*Counsel for Hoffland Properties, Inc.*

Marc Ira Fenton
Jamie L Burns
Levenfeld Pearlstein LLC
2 N Lasalle St Ste 1300
Chicago, IL 60602
312-346-8380
mfenton@lplegal.com
jburns@lplegal.com

John M Craig
Law Firm of Russell R Johnson III, PLC
14890 Washington Street
Haymarket, VA 20169
russell@russelljohnsonlawfirm.com
*Counsel for Dominion Energy Virginia*

Shelly A. DeRousse
Devon J Eggert
Elizabeth L Janczak
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606
312-360-6315
312-360-6520 (fax)
sderousse@freeborn.com
deggert@freeborn.com
ejanczak@freeborn.com
*Counsel for Creditors' Committee*

Russell R. Johnson, III
John M. Craig
Law Firm of Russell R Johnson III, PLC
2258 Wheatlands Drive
Manakin Sabot, VA 23103
804-749-8861
russell@russelljohnsonlawfirm.com
john@russelljohnsonlawfirm.com
*Counsel for Dominion Energy Virginia*

Brian L Shaw
Christina Sanfelippo
Cozen O'Connor LLP
123 N. Wacker Drive
Suite 1800
Chicago, IL 60606
312-382-3100
312-382-8910 (fax)

*Counsel for W-R2 Jefferson Owner VIII, LLC*

bshaw@cozen.com
csanfelippo@cozen.com
*Counsel for BMG Operations Ltd.*

Jennifer M McLemore
Williams Mullen
200 South 10th Street
Richmond, VA 23219
(804)420-6330
jmclemore@williamsmullen.com
*Counsel for BMG Operations Ltd.*

Jason M Torf
Ice Miller LLP
200 W. Madison St.
Suite 3500
Chicago, IL 60606
312-726-6244
312-726-6214 (fax)
jason.torf@icemiller.com
*Counsel for Dominion Energy Virginia*

Debra Devassy Babu
Askounis & Darcy, PC
444 N. Michigan Avenue
Suite 3270
Chicago, IL 60611
312-784-2400
312-784-2410 (fax)
ddevassy@askounisdarcy.com
*Counsel for CCA Financial, LLC*

Scott R Clar
Arthur G Simon
Jeffrey C Dan
Crane, Simon, Clar & Dan
135 S Lasalle Suite 3705
Chicago, IL 60603
312 641-6777
312 641-7114 (fax)
sclar@cranesimon.com
asimon@cranesimon.com
jdan@cranesimon.com
*Counsel for the Debtors*

Lindsey Conley
Hinshaw & Culbertson LLP
151 N. Franklin Street, Suite 2500
Chicago, IL 60606

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
(EASTERN DIVISION)**

| | |
|---|---|
| In re: | Chapter 7 |
| BCause Mining LLC, *et al.* | Case No. 19-10562 (Jointly Administered) |
| Debtors. | Hon. Janet S. Baer |

**COVER SHEET FOR TRUSTEE'S FIRST INTERIM APPLICATION FOR
COMPENSATION
AND TO SHORTEN NOTICE AND APPROVE FORM OF NOTICE**

| Name of Applicant: | Alex D. Moglia |
|---|---|
| Authorized to Provide Professional Services to: | Chapter 7 Trustee |
| Date of Appointment: | October 11, 2019 |
| Period for which Compensation is Sought: | |
| From: | October 11, 2019 |
| Through: | December 31, 2020 |
| Amount of Fees Sought: | $45,957.79 |
| Amount of Expense Reimbursement: | $1,291.99 |
| This is an: | |
| Interim Application: YES | Final Application: NO |
| | |

If this is not the first application filed herein by this professional, disclose as to all prior fee applications:

| Date Filed | Period Covered | Total Requested (Fees & Expenses) | Total Allowed (Fees & Expenses) | Fees & Expenses Previously Paid |
|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A |
| | | | | |

State the aggregate amount of fees and reimbursement of expenses paid to Applicant as of the date of this Application: $0.00.

                            MASON POLLICK & SCHMAHL LLC

Dated: February 18. 2021                 /s/ Michael M. Schmahl
                                          Michael M. Schmahl
                                          Mason Pollick & Schmahl LLC
                                          70 W. Hubbard, Suite 304
                                          Chicago, IL 60654
                                          (312) 312-5531
                                          mschmahl@mps-law.com
                                          ARDC #6275860
                                          *Counsel for the Trustee*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| BCause Mining LLC, *et al.* | ) | Case No. 19-10562 |
| | ) | (Jointly Administered) |
| | ) | |
| | ) | Honorable Janet S. Baer |
| | ) | |
| | ) | |
| | ) | Hearing Date: |
| Debtors. | ) | Hearing Time: |

**TRUSTEE'S FIRST INTERIM APPLICATION FOR COMPENSATION AND TO SHORTEN NOTICE AND APPROVE FORM OF NOTICE**

Alex D. Moglia, as Chapter 7 trustee (the "Trustee") of the bankruptcy estates of BCause Mining LLC and BCause LLC,[1] moves for entry of an order granting him $45,957.79 in interim statutory compensation and $1,291.99 in expense reimbursement pursuant to Sections 326, 330, 331, 503(a) and (b), and 507(a)(2) of the Bankruptcy Code and Fed. R. Bankr. P. 2016. In support of his application, the Trustee respectfully states as follows:

**Jurisdiction and Venue**

1.   The Court has jurisdiction over this core matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

**Background**

2.   On April 11, 2019, BCause Mining LLC ("BC Mining") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Subsequently, on April 12, 2019, BCause LLC ("BC Holding" and, collectively with BC Mining,

---

[1] The Debtors in these jointly administered bankruptcy cases are BCause Mining LLC Case No. 19-10562 and BCause LLC Case No. 19-10731.

the "Debtors") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. BC Parent owns all of the equity interests in BC Mining.

3. On or about May 8, 2019, the Court entered an order [**Docket No. 72**] directing that the Debtors' bankruptcy cases be jointly administered under the above caption.

4. On or about October 8, 2019 (the "Conversion Date"), the Court entered an order [**Docket No. 319**] converting the Debtors' bankruptcy cases to cases under chapter 7 of the Bankruptcy Code, and Richard J. Mason was appointed as the chapter 7 trustee of the Debtors' estates [**Docket No. 320**].

5. On or about October 11, 2019, Mr. Mason was required to resign as chapter 7 trustee due to a potential conflict arising from connections with his prior firm that was not immediately apparent from reviewing the Debtors' creditor list. Later that day, Mr. Moglia was appointed as the Trustee [**Docket No. 334**].

6. The Trustee has not previously requested nor been paid any compensation for his services.

## Relief Requested

7. By this Application, and pursuant to Sections 326 and 331, the Trustee requests $45,957.79 in interim statutory compensation and $1,291.99 in expense reimbursement for the Trustee's services rendered from October 11, 2019, through and including December 31, 2020 (the "Compensation Period").

8. During the Compensation Period, the Trustee's primary strategy has been to enhance the cash on hand in the BC Holding estate, while trying to preserve that money by limiting and reducing the disputed secured claims of WESCO Distribution, Inc. ("WESCO"). All of the assets that the Trustee administered during the Compensation Period, except for the

8

equipment (the "Equipment") in the Debtors' data center located in Virginia Beach, Virginia (the "Data Center"), which was clearly subject to WESCO's security interest, were property of the BC Holding's estate.

### Summary of Trustee's Primary Activities During the Compensation Period

9. These cases have presented a number of complex challenges for the Trustee and required significant work, often during compressed time frames, particularly during the initial period following the Conversion Date.

10. BC Holding, as parent, owns all of the membership interests in BC Mining as well as several other non-debtor subsidiaries, including the non-debtor subsidiary known as BCause Secure LLC ("BC Secure" or "Secure"). On the Conversion Date, the primary asset of BC Mining was the Equipment located in the leased Data Center, which was scheduled by the Debtors as having a book value exceeding $7.5 million but whose actual value was unknown. The primary assets in the BC Holding estate consisted of approximately $660,000 in cash, Bitcoin and Bitcoin Cash (collectively, the "Bitcoin"), and certain software under development and other assets intended, once complete, to operate a unique exchange (the "Spot Exchange") where individuals could convert virtual currencies into U.S. dollars or other foreign currency similar to a currency exchange.

11. The Spot Exchange assets had an unknown value but there were significant indications that they may have significant value as the two most recent CEOs of the Debtors, Tom Flake ("Flake") and Fred Grede ("Grede") were interested in acquiring them. Additionally, prior to the Conversion Date, the Debtors, with the apparent support of the former Creditors Committee, intended to fund a chapter 11 plan largely with future profits from the Spot Exchange following its sale to a group led by Flake.

9

12. Further complicating virtually all of the Trustee's activities were the facts that the Trustee had only approximately three to four weeks to investigate and make final determinations related to both the Equipment and the Spot Exchange assets at the risk of incurring what would have been substantial administrative expenses, including significant monthly rent expenses and those required by the fire patrol mandated at the Data Center by local authorities in Virginia Beach.

13. Additionally, while disputed, WESCO asserted a security interest against nearly all assets of the Debtors' estates, including the cash held by the Trustee. As a result, the Trustee had no access to unencumbered cash with which to operate.

14. Therefore, the Trustee's overarching strategy was to seek to limit, reduce and ultimately resolve WESCO's asserted secured claims in order to preserve the cash on hand while diligently working to determine the value of the Equipment, the Spot Exchange assets and other assets.

15. Additional services were provided in connection with, among other things, meeting the Trustee's statutory obligations, including, retaining accountants to prepare tax returns (and the related retention of the Debtors' former controller to complete the financial books), responding to inquiries from creditors, equity holders and parties in interest, and seeking to close the 401(k) plan previously maintained by BC Holding.

WESCO Disputes

16. Although now settled, WESCO asserted secured claims against each of the Debtors in an amount in excess of $1.9 million that were purportedly secured by a security interest in and liens on, among other things, all of BC Mining's assets, including the Equipment, and the cash and Bitcoin in the BC Holding estate.

17. WESCO's secured claim was ultimately based on unpaid debt originally owed by BC Mining to WESCO and its affiliate, CSC, that resulted in a judgment by confession against both Debtors in state court in Virginia. WESCO asserted liens under Illinois and Virginia law and a security interest under the Uniform Commercial Code.

18. The Trustee challenged WESCO's claims, liens and security interest in the adversary proceeding captioned *Moglia v. WESCO Distribution, Inc.*, Adversary No. 19-769 (the "WESCO Adversary Proceeding") that the Trustee settled. Pursuant to that settlement, as approved by the Court, the Trustee paid WESCO $625,000 from the money in the BC Holding estate and WESCO withdrew its claims.

The Equipment

19. The Equipment was generally comprised, among other things, of transformers, massive fans (installed directly into the roof of the Data Center), and other large pieces of electrical equipment as well as a ventilation system (some of which comprised virtually an entire external wall of the Data Center), extensive wiring and related electrical switches and related equipment, and racking for computers with related support structures. Although listed in the Debtors' schedules with a book value exceeding $7.5 million, its actual value was not known.

20. Complicating the Trustee's evaluation of the Equipment and any potential sale was the fact the Trustee needed to evaluate the Equipment and its potential liquidation within the first few weeks following his appointment because monthly rent for the Data Center of about $60,000 (and other potential monthly expenses) would begin to accrue on November 1, 2019, and removing the Equipment from the Data Center was impractical and cost-prohibitive.

Further, the local fire marshall required that a fire patrol (the "Fire Brigade") be present in the Data Center 24 hours a day.

21. The Trustee analyzed several potential options for liquidating the Equipment but ultimately determined that the risks associated with any potential sale did not justify the potential benefit given the timeline to conduct a sale, the anticipated costs, and the disagreements between WESCO and Hoffland related to their competing claims to the Equipment.

Spot Exchange and BC Secure

22. Although it was never completed, BC Holding owned partially developed software, including an incomplete engine to process such transactions developed by NASDAQ (the "NASDAQ Engine"), a consumer facing website, and various other component parts intended to be used for the Spot Exchange.

23. The value of the Spot Exchange assets was not known and, the Trustee understands, the Spot Exchange's business model was the first of its kind. However, a group led by Flake proposed to acquire these assets and the equity in BC Secure in exchange for the assumption of certain pre-petition unsecured claims and a commitment to share a portion of the anticipated profits from the Spot Exchange (the "Hope Note"). Additionally, a group led by Grede expressed interest in acquiring the Spot Exchange assets for cash.

24. The NASDAQ Engine, which the Trustee understands was generally considered as the primary asset, required further work by and agreements with NASDAQ, which was already owed nearly $1 million.

25. The Trustee conducted several discussions with both Flake and Grede to clarify and improve their respective proposals. Additionally, the Trustee held discussions with with

other parties and potential buyers, including significant discussions conducted over a relatively short period of time with a company that expressed interest in acquiring substantially all of the Debtors' assets. These discussions occurred in parallel.

26. In spite of his efforts, the Trustee terminated his sale efforts when it became clear that no significant offers (or any offers containing a cash payment) would be forthcoming.

Sale of Bitcoin

27. BC Holding's Bitcoin was spread unevenly across three virtual "wallets" or accounts.

28. The Trustee initially experienced problems with two of the accounts due to restrictions and limitations on the software supporting those accounts. Additionally, the Trustee experienced difficulties locating a broker willing to process a one-time liquidation of the Bitcoin for the Trustee.

29. Ultimately, the Trustee was able to liquidate all of the Bitcoin resulting in proceeds of approximately $240,479.44 for BC Holding's estate.

Additional Activities and Services

30. The Trustee has complied with his obligations to respond to inquiries from creditors, equity holders and other parties in interest, reviewing various fee applications related to services provided in these cases, investigating and seeking to close a purportedly terminated 401(k) plan previously maintained by BC Holding at Paychex, and retaining professionals and paraprofessionals to prepare and file tax returns for 2019.

31. During the Compensation Period, the Trustee has disbursed a total of $854,155.87 as specifically listed on Exhibit A attached hereto and comprised of the following:

(a) $1,087.84 to reimburse Moglia Advisors, the Trustee's financial advisor, for reimbursement of certain actual expenses [**Docket No. 409**];

(b) $11,590.15 for Bond Payments, Bank and Technology Service Fees;

(c) $149,801.38 to Mason Pollick & Schmahl LLC, the Trustee's counsel, for interim compensation and reimbursement of expenses [**Docket No. 441**];

(d) $11,500.00 to Christi Vaassen, the Debtors' former controller, to complete the Debtors' financial books [**Docket No. 398 and 405**];

(e) $6,500.00 to Tibble & Wesler CPA PC, the Trustee's tax accountants [**Docket No. 462**];

(f) $25,000 to WESCO as adequate assurance payments [**Docket No. 367**];

(g) $23,676.50 to the Fire Brigade (comprised of Silbar and various of the Debtors' former employees) [**Docket No. 367**];

(h) $625,000.00 for a settlement payment to WESCO [**Docket No. 440**]

## APPLICABLE STANDARDS FOR TRUSTEE COMPENSATION

32. The Trustee's request for compensation is governed by Section 326(a) of the Bankruptcy Code, which provides:

> In a case under chapter 7 . . . the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.
> 11 U.S.C. § 326(a).

33. The standard for approving requests for compensation is stated in Section 330(a)(1) of the Bankruptcy Code, which provides:

14

> After notice to the parties in interest and the United States Trustee and a hearing and subject to sections 326, 328, and 329, the court may award to a trustee, [or to] a professional person employed under section 327 or 1103—
> (a) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person.
>
> 11 U.S.C. § 330(a)(1).

34. "In determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on section 326." 11 U.S.C. § 330(a)(7); *see also Handbook for Chapter 7 Trustees*, U.S. Dep't of Justice Executive Office for United States Trustees, at 4-24 (eff. Oct. 1, 2012) ("Trustee compensation is governed by section 330 and treated as a commission, subject to the limitations set forth in section 326.").

35. In *In re Stoecker*, 125 B.R. 767, 773 FN1 (Bankr. N.D. Ill. 1991), the court considered the following factors in determining reasonable compensation for a trustee:

> (i) the time and labor required;
> (ii) the novelty and difficulty of the questions;
> (iii) the skill required to perform the legal services properly;
> (iv) the preclusion of employment by the attorney due to acceptance of the case;
> (v) the customary fee;
> (vi) whether the fee is fixed or contingent;
> (vii) time limitations imposed by the client or the circumstances;
> (viii) the amount involved and the result obtained;
> (ix) the experience, reputation and ability of the attorneys;
> (x) the undesirability of the case;
> (xi) the nature and length of the professional relationship with the client; and
> (xii) awards in similar cases
>
> Stoecker, 125 B.R. at 773, FN1.

36. Finally, interim compensation is frequently awarded to chapter 7 trustees. *See In re Stoecker*, 125 B.R. 767, 776 (Bankr. N.D. Ill. 1991); *In re Monus*, 210 B.R. 541, 544 (Bankr. N.D. Ohio 1997); *In re Heatherly*, 179 B.R. 872, (Bankr. W.D. Tenn. 1995). The awarding of interim fees is designed "to relieve [trustees] from 'financing' protracted bankruptcy

15

proceedings and should be used to prevent resulting hardship on the [trustees], pending final award, when all factors may be considered in their proper prospective." *In re Stoecker*, 125 B.R. at 773 (citing *In re Pennsylvania Tire & Rubber Co.*, 19 B.R. 124 (Bankr. N.D. Ohio 1980); *In re General Coffee Corp.*, 39 B.R. 7 (Bankr. S.D. Fla. 1984)).

37. Applying these factors, the Trustee believes an award of the full statutory fee as interim compensation under Sections 326 and 331 is reasonable and appropriate.

38. The Trustee only seeks compensation based on disbursements of cash or cash equivalents by the Trustee.

## SERVICES RENDERED BY THE TRUSTEE AND INTERIM COMPENSATION REQUESTED

39. During the Compensation Period, the Trustee performed approximately 139 hours of actual and necessary services on behalf of the estate of Debtor and traveled to the Debtors' facilities in Virginia Beach, Virginia, in order to meet with several of the Debtors' former employees, and various significant creditors as part of his investigation and evaluation of various options for administering these estates.

40. Among other things, the Trustee's services have included the following:

    a. Review and approval of regular reconciliations of estate bank accounts;

    b. evaluating the Equipment, the Spot Exchange, and the Bitcoin and potential options for monetizing these assets;

    c. investigating furniture and other potential estate assets in Virginia and Illinois,

    d. reviewing and investigating potential causes of action and claims for possible recoveries for the benefit of creditors and overseeing the analyses of litigation options and strategies regarding various parties, including, among others, WESCO;

    e. negotiating and prosecuting a settlement with WESCO;

    f. working closely with tax professionals on matters affecting the estate and its federal and state income tax returns;

      g.    overseeing the termination of the Debtors' 401(k) plan;

      h.    reviewing applications for compensation from professionals in both the chapter 11 and chapter 7 portions of these cases; and

      i.    performing other activities, including, without limitation, responding the parties in interest and otherwise administering these estates.

41.    As of December 31, 2020, the Trustee has disbursed a total of $854,155.87 to parties in interest as listed on Exhibit A attached hereto.

42.    Applying the formula in Section 326(a) of the Bankruptcy Code, the Trustee is entitled to the following statutory compensation:

| | |
|---|---|
| 25% of the first $5,000.00 or less: | $1,250.00 |
| Plus: 10% of any amount in excess of $5,000 but not in excess of $50,000 | $4,500.00 |
| Plus: 5% of any amount in excess of 50,000 but not in excess of $1,000,000: | $40,207.79 |
| Plus: 3% of such monies in excess of $1,000,000: | $0.00 |
| MAXIMUM COMPENSATION ALLOWED: | $45,957.79 |
| Requested compensation: | **$45,957.79** |

43.    Under the circumstances, the Trustee believes that an award of $45,957.79 is reasonable and appropriate.

44.    The Trustee has also incurred the following expenses related to his travel to Virginia shortly after his appointment as detailed in Exhibit B:

| | |
|---|---|
| Meals | $40.55 |
| Airfare | $684.40 |
| Hotel | $146.78 |
| Parking | $218.33 |
| Rental car | $69.56 |
| Tolls | $30.00 |
| Total | **$1,291.99** |

45. The Trustee represents that he has not entered into any agreement or understanding exists with any other person for sharing of compensation prohibited by the Bankruptcy Code.

### Request to Shorten Notice and Approve for of Notice

46. Sections 330 and 331 of the Bankruptcy Code require notice and a hearing before any determination is made on this Application. In compliance with these sections and Federal Rule of Bankruptcy Procedure 2002, the Trustee has mailed a copy of the notice (the "Notice") of this Application to all creditors and provided a full copy of this Application with all exhibits to all parties who have entered an appearance in these cases through the Court's ECF system. A copy of the Notice is attached hereto as Exhibit C.

47. Additionally, the Trustee will make a copy of this Application with all supporting exhibits available to any party in interest that submits a written request to Michael M. Schmahl via mail to the Trustee's counsel at 70 W. Hubbard, Suite 304, Chicago, IL 60654, or via email sent to mschmahl@mps-law.com.

48. The Trustee further requests that the Court shorten notice by one day so that this Application may be heard on March 10, 2021.

WHEREFORE, the Trustee respectfully requests: (i) allowance of compensation under Section 326 in the amount of $45,957.79; (ii) reimbursement of actual and necessary expenses in the amount of $1,291.99; (iii) authorization for the Trustee to immediately pay these amounts to the Trustee; (iv) authorizing and approving shortened notice and the form of Notice; and (v) granting such further relief as the Court deems is just and appropriate.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: February 18, 2021 | By: /s/ Michael M. Schmahl |
|  | Michael M. Schmahl<br>MASON POLLICK & SCHMAHL, LLC<br>70 W. Hubbard, Suite 304<br>Chicago, Illinois 60654<br>(312) 312-5530 telephone<br>*Counsel for the Chapter 7 Trustee* |