**IN THE UNITED STATES BANKRUPTCY
COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 7 |
| BCAUSE MINING LLC, *et al.*, | Case No. 19-10562 (Jointly Administered) |
| Debtors. | Honorable Janet S. Baer |
| ALEX MOGLIA, not personally, but solely as the Chapter 7 Trustee of BCAUSE MINING LLC and BCAUSE LLC, and, if these estates are substantively consolidated, the Chapter 7 Trustee of the consolidated estate, | |
| Plaintiff, | Adv. No. |
| v. | |
| VIRGINIA ELECTRIC AND POWER COMPANY D/B/A DOMINION ENERGY VIRGINIA and DOMINION-VIRGINIA POWER, and any successor thereto, | |
| Defendant. | |

**COMPLAINT TO AVOID AND RECOVER PREFERENTIAL TRANSFERS,
DISALLOW CLAIMS, AND FOR OTHER RELIEF**

Alex Moglia ("Moglia"), not personally, but solely as the chapter 7 Trustee of the bankruptcy estate of BCause Mining LLC ("BC Mining") and BCause LLC ("BC Holdings") in the above-captioned matter, brings this complaint (the "Complaint") against Defendant Virginia Electric and Power Company doing business as Dominion Energy Virginia and/or Dominion-Virginia Power and any successor thereto (collectively, "Dominion"), and in support thereof, respectfully states and alleges as follows:

1

**INTRODUCTION**

1. Moglia, solely in his capacity as the trustee of BC Mining and BC Holdings (collectively, the "Debtors" and each a "Debtor"), based on the performance of reasonable due diligence in the circumstances of this case and taking into account known or reasonably knowable defenses under 11 U.S.C. § 547(c), brings this complaint ("Complaint") against Dominion to avoid and recover certain transfers to Dominion, to disallow Dominion's claim filed in this case, and for other related relief.

**The Parties**

2. The Plaintiffs are: (i) Alex Moglia, not individually, but solely as the trustee in bankruptcy of BC Mining (the "BC Mining Trustee"), a Virginia limited liability company; (ii) Alex Moglia, not individually but solely as the trustee in bankruptcy of BC Holdings (the "BC Holdings Trustee"), a Virginia limited liability company; and (iii) if the bankruptcy estates are substantively consolidated, Alex Moglia, not individually but solely as trustee in bankruptcy of the consolidated estate (the "Consolidated Trustee").

3. The defendant is Dominion, a Virginia company headquartered in Richmond, Virginia.

**The Bankruptcies**

4. On April 11, 2019 (the "BC Mining Petition Date"), BC Mining filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the above-captioned case in this district as case No. 19–10562.

5. On April 12, 2019 (the "BC Holdings Petition Date"), BC Holdings, owner of

100% of the membership interest in BC Mining, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this district as case No. 19–10731.

6. On May 8, 2019, this Court entered an order directing the Chapter 11 cases of the Debtors to be jointly administered under case No. 19–10562.

7. On October 8, 2019, this Court entered an order converting the Chapter 11 cases of both BC Mining and BC Holdings to cases under Chapter 7 of the Bankruptcy Code.

8. On October 11, 2019, Moglia was appointed to serve as Chapter 7 trustee for each of the bankruptcy estates of BC Mining and BC Holdings.

## Jurisdiction and Venue

9. This Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2) and § 1334.

10. This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

11. Venue is proper in this Court under 28 U.S.C. § 1409.

12. The statutory predicates for the relief requested in this Complaint are 11 U.S.C. §§ 101, 105, 502, 547, and 550 and the other provisions of Title 11 of the United States Code (the "Bankruptcy Code").

## Factual Background

**The Debtors**

13. At all relevant times, the Debtors maintained and operated a large warehouse that they converted into a datacenter in Virginia Beach, Virginia, for the purpose of "hosting" thousands of computers called "miners" that, among other things, facilitated the electronic transfer of cryptocurrency such as Bitcoin ("Virginia Mining Facility"). The Virginia Mining

Facility was leased pursuant to a lease entered into by BC Mining as tenant.

14. The Virginia Mining Facility generated revenue by charging a "hosting" fee to various third parties whose miners operated there.

15. On information and belief, at all relevant times the Virginia Mining Facility was the sole generator of revenue for the Debtors.

16. At all relevant times, BC Holdings maintained the Debtors' only bank accounts (the "Shared Bank Account") used by both Debtors for (a) receipt of all money, including, among other things, proceeds from the operations of the Virginia Mining Facility and equity and debt investments into BC Holdings, and (b) the payment of all debts of each of the Debtors.

17. At all relevant times, there were no intercompany service agreements between the Debtors.

18. At all relevant times, the Debtors maintained consolidated financial records that did not differentiate between the Debtors and did not record any intercompany transfers.

19. At all relevant times, the Debtors filed consolidated tax returns.

20. At all relevant times, the Debtors were managed by a single board that did not hold separate meetings for each of the Debtors.

21. At all relevant times, the Debtors' officers consisted of the same persons.

22. At all relevant times, all employees who worked in the Virginia Mining Facility and in any of the Debtors' other operations were nominally employed by BC Holdings and paid compensation out of the Shared Bank Account.

23. At all relevant times, various invoices and bills related to the Virginia Mining

4

Facility were issued to BC Holdings while others were issued to BC Mining with no consistent pattern or logic. All such bills and invoices, including rent for the Virginia Mining Facility, were paid from the Shared Bank Account.

24. At all relevant times, the Debtors operated on a consolidated basis and were alter egos of each other.

25. At all relevant times, creditors had difficulty differentiating between the Debtors and many creditors, including officers and other employees, were confused as to which of the Debtors they had claims against.

26. At all relevant times, the management of BC Mining had access to and control of the funds in the Shared Bank Account.

27. At all relevant times, the Debtors operated as a single enterprise.

28. At all relevant times, each of BC Mining and BC Holdings had an interest in the Shared Bank Account and the funds therein.

29. During at least the 90 days prior to the BC Mining Petition Date (the "BC Mining's Preference Period") and the 90 days prior to the BC Holdings Petition Date (the "BC Holdings Preference Period"), the Debtors operated as a single entity such that each Debtor was subject to the obligations of the other Debtor under applicable non-bankruptcy law.

30. Thus, during the BC Mining Preference Period and the BC Holdings' Preference Period, payments from the Shared Bank Account diminished the assets available to satisfy the claims against either of the Debtors.

**Dominion's Relationship with the Debtors**

31. The operation of the Virginia Mining Facility required substantial amounts of

electricity to power the thousands of miners operating there.

32. In or about January 23, 2018, BC Mining and Dominion executed an agreement titled "Agreement for Electric Service", pursuant to which Dominion began supplying electricity to the Virginia Mining Facility starting on or about February 9, 2018.

33. Subsequently, in or about January 17, 2019, BC Mining and Dominion executed a new agreement titled "Agreement for Electric Service" that changed various terms related to the Dominion's supply of electricity to the Virginia Mining Facility.

34. From approximately February 9, 2018, through the BC Mining Petition Date, Dominion supplied electricity to the Virginia Mining Facility pursuant to these agreements.

35. In or about February 2018, BC Mining and Dominion entered into an agreement requiring BC Mining to pay to Dominion a deposit of $1,336,000 as security for Dominion's electric bills (the "Security Deposit").

36. The Security Deposit was originally made in installments paid out of the Shared Bank Account as follows:

| Check Clear Date | Check Amount | Security Deposit Amount |
|---|---|---|
| 2/13/2018 | $668,000.00 | $668,000.00 |
| 2/23/2018 | $334,000.00 | $1,002,000.00 |
| 3/9/2018 | $334,000.00 | $1,336,000.00 |

37. From approximately February 9, 2018, to the BC Mining Petition Date,

Dominion supplied electricity to the Virginia Mining Facility and received payments for electricity from the Shared Bank Account.

38. Dominion issued monthly invoices for the amount of electricity actually used in the Virginia Mining Facility during a prior period of approximately 30 days, although the precise number of days in the time period covered by each invoice varied.

39. Dominion's invoices were significant, ranging from between approximately $539,928.65 to approximately $871,752.63.

40. During the period from January 2018 (i.e. after the execution of the first "Agreement for Electric Service") through January 11, 2019, Dominion received the following payments totaling over $6,195,000.00 from the funds in the Shared Bank Account to pay for the electricity furnished to the Virginia Mining Facility (the "Electricity Obligations"):

| **Check Clear Date** | **Check Amount** |
|---|---|
| 6/14/2018 | $539,928.65 |
| 8/24/2018 | $600,000.00 |
| 9/10/2018 | $600,000.00 |
| 9/18/2018[1] | $200,000.00 |
| 9/18/2018 | $200,000.00 |
| 9/25/2018 | $1,100,000.00 |
| 10/2/2018 | $500,000.00 |

---

[1] Two checks cleared on September 18, 2018, each in the amount of $200,000.00.

| | |
|---|---|
| 10/29/2018 | $350,000.00 |
| 11/1/2018 | $100,000.00 |
| 11/9/2018 | $442,324.05 |
| 11/16/2018 | $437,500.00 |
| 12/19/2018 | $1,125,732.09 |
| Total | $6,195,484.79 |

41. In or about May 2018, Dominion demanded that the Security Deposit be increased to a total of $2,467,712.00.

42. Thereafter, the following payments were made from the Shared Bank Account to increase the Security Deposit to a total of $1,934,233.21:

| Check Clear Date | Check Amount | Security Deposit Amount |
|---|---|---|
| 5/18/2018 | $299,116.61 | $1,635,116.61 |
| 7/17/2018 | $299,116.60 | $1,934,233.21 |

43. No further payments were ever made to increase the Security Deposit.

44. On or about January 11, 2019, the ninetieth day prior to the BC Mining Petition Date, the amount of outstanding Electricity Obligations exceeded the amount of the Security Deposit by over $400,000.

45. On or about January 12, 2019, the ninetieth day prior to BC Holdings Petition

8

Date, the amount of outstanding Electricity Obligations exceeded the amount of the Security Deposit by over $400,000.

46. On or about January 29, 2019, the Security Deposit was reduced to a new total of $1,587,200.21 when Dominion applied the $347,033.00 reduction from the Security Deposit plus interest to the invoice it issued on that date. The Security Deposit remained in this reduced amount through each of the BC Mining Petition Date and the BC Holdings Petition Date.

47. During the BC Mining Preference Period and the BC Holdings Preference Period, a total of at least $2,008,709.03 was paid to Dominion from funds in the Shared Bank Account to be applied to the outstanding Electricity Obligations through the following payments (and including any other payments to Dominion during these periods, the "90-Day Transfers"):

| Check Clear Date | Check Amount |
|---|---|
| 1/24/2019 | $500,000.00 |
| 2/12/2019 | $500,000.00 |
| 2/21/2019 | $368,709.03 |
| 3/14/2019 | $500,000.00 |
| 3/27/2019 | $140,000.00 |
| TOTAL | **$2,008,709.03** |

48. Each of the 90-Day Transfers was made during the BC Mining Preference

9

Period and the BC Holdings Preference Period.

49. Immediately prior to each of the 90-day Transfers, the Electricity Obligations exceeded the then existing balance of the Security Deposit.

50. On January 29, 2019, Dominion applied $347,033.00 from the Security Deposit to the Electricity Obligations.

51. During each of the BC Mining Preference Period and the BC Holdings Preference Period, Dominion sent at least two notices threatening to stop providing electricity to the Virginia Mining Facility if the outstanding Electricity Obligations were not brought current.

52. After the BC Mining Petition Date and the BC Holdings Petition Date, Dominion applied the balance of Security Deposit of $1,587,200.21 against the outstanding Electricity Obligations.

53. On the BC Mining Petition Date, after accounting for the payment of the 90-Day Transfers and the application of the Security Deposit to the Electricity Obligations, Dominion asserts a remaining unpaid balance of $388,365.68 ("Final Unpaid Electricity Debt").

54. Attached hereto and made a part hereof as Exhibit 1 is a spreadsheet showing:

   (a) the dates and amounts of each of the payments comprising the 90-Day Transfers;

   (b) a daily tally of the outstanding Electricity Obligations during the period from January 11, 2019, through the BC Mining Petition Date;

   (c) a daily tally of the Security Deposit held by Dominion during the period from

January 11, 2019, through the BC Mining Petition Date; and

(d) a daily tally of the amount by which the Electricity Obligations were more than or less than the Security Deposit;

(e) the average daily charge for the Electricity Obligations for each day during the period from January 11, 2019, through the BC Mining Petition Date; and

(f) the daily tally of the outstanding Electricity Obligations after accounting for each of the 90-Day Transfers and the daily electricity charges.

55. On or about May 29, 2019, Dominion filed a proof of claim under 11 U.S.C. §502 against the bankruptcy estate of BC Mining in the amount equal to the Final Unpaid Electricity Debt ("Dominion's Proof of Claim").

## COUNT I
**Avoidance and Recovery of 90-Day Transfers by the BC Mining Trustee**

56. The BC Mining Trustee repeats, realleges, and incorporates each and every allegation contained in Paragraphs 1 through 55 of this Amended Complaint as if fully set forth herein.

57. Each of the 90-Day Transfers was a transfer of an interest of BC Mining in property under Section 101(54) of the Bankruptcy Code.

58. Each of the 90-Day Transfers was made to or for the benefit of Dominion, within the meaning of section 547(b)(1) of the Bankruptcy Code.

59. Each of the 90-Day Transfers was made within 90 days of the BC Mining Petition Date.

60. Each of the 90-Day Transfers was made for or on account of antecedent debts owed by BC Mining to Dominion before such transfers were made.

11

61. BC Mining was insolvent on the date of each of the 90-Day Transfers.

62. At the time of each of the 90-Day Transfers, the Electricity Obligations exceeded the balance of the Security Deposit on the date of each such 90-Day Transfer.

63. Each of the 90-Day Transfers enabled Dominion to receive more than it would receive if:

   (a) BC Mining's bankruptcy was a case under chapter 7 of the Bankruptcy Code;

   (b) such 90-Day Transfer had not been made; and

   (c) Dominion received payment of its debt to the extent provided by the provisions of the Bankruptcy Code.

64. By reason of the foregoing, the BC Mining Trustee is entitled to avoid each of the 90-Day Transfers pursuant to section 547(b) of the Bankruptcy Code, except to the extent, if any, that Dominion can meet its burden of pleading and proving affirmative defenses under 11 U.S.C. §547(c) ("Affirmative Defense Reductions").

65. Dominion was either:

   (a) the initial transferee of the 90-Day Transfers; or

   (b) the entity for whose benefit such transfers were made;

   (c) an immediate or mediate transferee of such initial transferee.

66. Thus, the BC Mining Trustee is entitled to avoid the 90-Day Transfers and to a judgment under 11 U.S.C. § 550 against Dominion equal to the sum of the 90-Day Transfers less any Affirmative Defense Reductions, together with interest and costs of this suit (the "Net Preference Amount").

**COUNT II**
**Avoidance and Recovery of 90-Day Transfers**
**by the BC Holdings Trustee**

67. The BC Holding Trustee repeats, realleges, and incorporates each and every allegation contained in Paragraphs 1 through 55 of this Complaint as if fully set forth herein.

68. At all relevant times, Dominion could have collected the Electricity Obligations from BC Holdings under applicable non-bankruptcy law as BC Mining's alter ego or by piercing BC Mining's corporate veil, and similar legal theories and doctrines.

69. Each of the 90-Day Transfers was a transfer of an interest of BC Holdings in property under Section 101(54) of the Bankruptcy Code.

70. Each of the 90-Day Transfers was made to or for the benefit of Dominion, within the meaning of section 547(b)(1) of the Bankruptcy Code.

71. Each of the 90-Day Transfers was made within 90 days of the BC Holdings Petition Date.

72. Each of the 90-Day Transfers was made for or on account of antecedent debts owed by BC Holdings to Dominion before such transfers were made.

73. BC Holdings was insolvent on the date of each of the 90-Day Transfers.

74. At the time of each of the 90-Day Transfers, the Electricity Obligations exceeded the balance of the Security Deposit on the date of each such 90-Day Transfer.

75. Each of the 90-Day Transfers enabled Dominion to receive more than it would receive if:

   (a) BC Holdings' bankruptcy was a case under chapter 7 of the Bankruptcy Code;

   (b) such 90-Day Transfer had not been made; and

   (c) Dominion received payment of its debt to the extent provided by the provisions of the Bankruptcy Code.

76. By reason of the foregoing, the BC Holdings Trustee is entitled to avoid each

of the 90-Day Transfers pursuant to section 547(b) of the Bankruptcy Code, except to the extent, if any, that Dominion can meet its burden of pleading and proving affirmative defenses under 11 U.S.C. §547(c) ("Affirmative Defense Reductions").

77. Dominion was either:

  (a) the initial transferee of the 90-Day Transfers; or

  (b) the entity for whose benefit such transfers were made; or

  (c) an immediate or mediate transferee of such initial transferee.

78. Thus, the BC Mining Trustee is entitled to avoid the 90-Day Transfers and to a judgment under 11 U.S.C. § 550 against Dominion equal to the sum of the 90-Day Transfers less any Affirmative Defense Reductions, together with interest and costs of this suit (the "Net Preference Amount").

## COUNT III
### Avoidance and Recovery of 90-Day Transfers by the Trustee on behalf of the Substantively Consolidated estates of BC Mining and BC Holdings

79. The BC Mining Trustee and the BC Holding Trustee are moving to substantively consolidate the Debtors. If the Debtors' bankruptcy estates are substantively consolidated by this Court, Moglia brings this claim, not individually but solely as trustee in bankruptcy of the Debtors' substantively consolidated estate ("the Consolidated Trustee").

80. The Consolidated Trustee repeats, realleges, and incorporates each and every allegation contained in Paragraphs 1 through 78 of this Amended Complaint as if fully set forth herein.

81. Each of the 90-Day Transfers was a transfer of an interest of the Debtors in property under Section 101(54) of the Bankruptcy Code.

82. Each of the 90-Day Transfers was made to or for the benefit of Dominion, within

the meaning of section 547(b)(1) of the Bankruptcy Code.

83. Each of the 90-Day Transfers was made within 90 days of the BC Mining Petition Date and the BC Holdings Petition Date.

84. Each of the 90-Day Transfers was made for or on account of antecedent debts owed by the Debtors to Dominion before such transfers were made.

85. The Debtors were insolvent on the date of each of the 90-Day Transfers.

86. At the time of each of the 90-Day Transfers, the Electricity Obligations exceeded the balance of the Security Deposit on the date of each such 90-Day Transfer.

87. Each of the 90-Day Transfers enabled Dominion to receive more than it would receive if:

 (a) The Debtors' bankruptcy consolidated cases were a case under chapter 7 of the Bankruptcy Code;

 (b) such 90-Day Transfer had not been made; and

 (c) Dominion received payment of its debt to the extent provided by the provisions of the Bankruptcy Code.

88. By reason of the foregoing, the Consolidated Trustee is entitled to avoid each of the 90-Day Transfers pursuant to section 547(b) of the Bankruptcy Code, except to the extent, if any, that Dominion can meet its burden of pleading and proving affirmative defenses under 11 U.S.C. §547(c) ("Affirmative Defense Reductions").

89. Dominion was either:

 (a) the initial transferee of the 90-Day Transfers;

 (b) the entity for whose benefit such transfers were made; or

 (c) an immediate or mediate transferee of such initial transferee.

90. Thus, the Consolidated Trustee is entitled to avoid the 90-Day Transfers and to a judgment under 11 U.S.C. § 550 against Dominion equal to the sum of the 90-Day Transfers less any Affirmative Defense Reductions, together with interest and costs of this suit (the "Net Preference Amount").

### Count IV  Disallowance of Dominion's Proof of Claim

91. The BC Mining Trustee repeats, realleges, and incorporates each and every allegation contained in Paragraphs 1 through 66 of this Complaint as if fully set forth herein.

92. To the extent that the Court enters judgment in favor of the BC Mining Trustee on Count I, Dominion's Proof of Claim and any and all other claims or administrative expenses that Dominion may attempt to assert should be disallowed unless and until Dominion satisfies such judgment in full.

### Count V  Disallowance of Dominion's Proof of Claim

93. If the Debtors' bankruptcy estates are substantively consolidated by this Court, Moglia brings this claim, not individually but solely as the Consolidated Trustee.

94. The Consolidated Trustee repeats, realleges, and incorporates each and every allegation contained in Paragraphs 1 through 92 of this Complaint as if fully set forth herein.

95. To the extent that the Court enters judgment in favor of the Consolidated Trustee on Count I, II, or III, Dominion's Proof of Claim and any and all other claims or administrative expenses that Dominion may attempt to assert should be disallowed unless and until Dominion satisfies such judgment in full.

WHEREFORE, each of the Plaintiffs request the entry of a judgment against Dominion granting the following relief:

(a) As to Counts I, II, and III, the entry of judgment in favor of each respective

Plaintiff and against Dominion avoiding the 90-Day Transfers and granting a money judgment in an amount equal to the Net Preference Amount plus interest and costs of this suit;

(b) As to Counts IV and V, the entry of judgment in favor of each of the respective Plaintiffs and against Dominion disallowing the Dominion Proof of Claim and any and all other claims or administrative expenses Dominion may attempt to assert against the Debtors unless and until Dominion satisfies the judgment granted under Counts I, II, or III in full: and

(c) Such other and further relief as this Court deems just.

Dated: April 10, 2021

**Alex Moglia, not personally, but solely as the Chapter 7 Trustee of the Bankruptcy Estates of BCause Mining LLC and BCause LLC**

By: /s/Michael M. Schmahl
      Michael M. Schmahl
Michael M. Schmahl
Mason Pollick & Schmahl LLC
70 W. Hubbard
Suite 304
Chicago, IL 60654-4603
(312) 235-3296
mschmahl@mps-law.com
*Counsel to the Trustee*