**IN THE UNITED STATES BANKRUPTCY
COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| In re: <br><br> BCAUSE MINING LLC, *et al.*, <br><br> Debtors. | Chapter 7 <br><br> Case No. 19-10562 <br> (Jointly Administered) <br><br> Honorable Janet S. Baer |
| ALEX MOGLIA, not personally, but solely as the Chapter 7 Trustee of BCAUSE MINING LLC and BCAUSE LLC and, if these estates are substantively consolidated, the Chapter 7 Trustee of the consolidated estate, <br><br> Plaintiff, <br><br> v. <br><br> BMG Operations Limited, a foreign entity, <br><br> Defendant. | Adv. No. |

**COMPLAINT TO AVOID AND RECOVER FRAUDULENT TRANSFERS,
PREFERENTIAL TRANSFERS, AND POST-PETITION TRANSFERS,
DISALLOW CLAIMS, AND FOR OTHER RELIEF**

Alex Moglia ("Moglia"), not personally, but solely as the chapter 7 Trustee of the bankruptcy estate of BCause Mining LLC ("BC Mining") and BCause LLC ("BC Holdings") in the above-captioned matter, brings this adversary complaint (the "Complaint") against Defendant BMG Operations Limited ("BMG"), and in support thereof, respectfully states and alleges as follows:

**INTRODUCTION**

1. Moglia, solely in his capacity as the trustee of BC Mining and BC Holdings

1

(collectively, the "Debtors" and each a "Debtor"), based on the performance of reasonable due diligence in the circumstances of this case and taking into account known or reasonably knowable defenses under 11 U.S.C. § 547(c), brings this complaint ("Complaint") against BMG to avoid and recover certain transfers to BMG, to disallow BMG's claims and asserted administrative expenses against these Debtors, and for other related relief.

## The Parties

2. The Plaintiffs are Alex Moglia, not individually, but solely as the trustee in bankruptcy of BC Mining (the "BC Mining Trustee"), a Virginia limited liability company, and Alex Moglia, not individually but solely as the trustee in bankruptcy of BC Holdings (the "BC Holdings Trustee"), a Virginia limited liability company, and, if the bankruptcy estates are substantively consolidated, Alex Moglia, not individually but solely as trustee in bankruptcy of the consolidated estate (the "Consolidated Trustee").

3. The defendant BMG is, on information and belief, an entity created under the laws of Antigua or the Cayman Islands.

## The Bankruptcies

4. On April 11, 2019 (the "BC Mining Petition Date"), BC Mining filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the above-captioned case in this district as case No. 19–10562.

5. On April 12, 2019 (the "BC Holdings Petition Date"), BC Holdings, owner of 100% of the membership interest in BC Mining, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this district as case No. 19–10731.

6. On May 8, 2019, this Court entered an order directing the Chapter 11 cases of

the Debtors to be jointly administered under case No. 19–10562.

7. On October 8, 2019, this Court entered an order converting the Chapter 11 cases of both BC Mining and BC Holdings to cases under Chapter 7 of the Bankruptcy Code.

8. On October 11, 2019, Moglia was appointed to serve as Chapter 7 trustee for each of the bankruptcy estates of BC Mining and BC Holdings.

## Jurisdiction and Venue

9. This Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2) and § 1334.

10. This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

11. Venue is proper in this Court under 28 U.S.C. § 1409.

12. The statutory predicates for the relief requested in this Complaint are 11 U.S.C. §§ 101, 105, 502, 547, 548, and 550 and the other provisions of Title 11 of the United States Code (the "Bankruptcy Code").

## Factual Background

### The Debtors

13. At all relevant times, the Debtors maintained and operated a large warehouse that they converted into a datacenter in Virginia Beach, Virginia, for the purpose of "hosting" thousands of computers called "miners" that, among other things, facilitated the electronic transfer of cryptocurrency such as Bitcoin ("Virginia Mining Facility"). The Virginia Mining Facility was leased pursuant to a lease entered into by BC Mining as tenant.

14. The Virginia Mining Facility generated revenue by charging a "hosting" fee of various third parties whose miners operated there.

15. On information and belief, at all relevant times the Virginia Mining Facility was the sole generator of revenue for the Debtors.

16. At all relevant times, BC Holdings maintained the Debtors' only bank accounts (the "Shared Bank Account") used by both Debtors for receipt of all money, including, among other things, proceeds from the operations of the Virginia Mining Facility and equity and debt investments into BC Holdings, and the payment of all debts of both Debtors.

17. At all relevant times, there were no intercompany service agreements between the Debtors.

18. At all relevant times, the Debtors maintained consolidated financial records that did not differentiate between the Debtors and did not record any intercompany transfers.

19. At all relevant times, the Debtors filed consolidated tax returns.

20. At all relevant times, the Debtors were managed by a single board that did not hold separate meetings for each of the Debtors.

21. At all relevant times, the Debtors' officers consisted of the same persons.

22. At all relevant times, all employees who worked in the Virginia Mining Facility and in any of the Debtors' other operations were nominally employed by BC Holdings and paid compensation out of the Shared Bank Account.

23. At all relevant times, various invoices and bills related to the Virginia Mining Facility were issued to BC Holdings while others were issued to BC Mining with no consistent pattern or logic. All such bills and invoices, including rent for the Virginia Mining Facility, were paid from the Shared Bank Account.

24. At all relevant times, the Debtors operated on a consolidated basis and were

alter egos of each other.

25. At all relevant times, creditors had difficulty differentiating between the Debtors and many creditors, including officers and other employees, were confused as to which of the Debtors they had claims against.

26. At all relevant times, the management of BC Mining had access to and control of the funds in the Shared Bank Account.

27. At all relevant times, the Debtors operated as a single enterprise.

28. At all relevant times, each of BC Mining and BC Holdings had an interest in the Shared Bank Account and the funds therein.

29. During at least the 90 days prior to the BC Mining Petition Date (the "BC Mining's Preference Period") and the 90 days prior to the BC Holdings Petition Date (the "BC Holdings Preference Period"), the Debtors operated as a single entity such that each Debtor was subject to the obligations of the other Debtor under applicable non-bankruptcy law.

30. Thus, during the BC Mining Preference Period and the BC Holdings' Preference Period, payments from the Shared Bank Account diminished the assets available to satisfy the claims against either of the Debtors.

**BMG's Relationship with the Debtors**

31. On or about November 30, 2017, before the Virginia Mining Facility began operations, BMG and BC Mining entered into a certain Hosting Service Agreement (the "Hosting Agreement") pursuant to which BMG generally obtained the right to have several thousand of its "miners" placed in and operated out of the Virginia Mining Facility (including any other obligations owed to BMG under the Hosting Agreement, the "Hosting Services") in

5

exchange for the payment of certain hosting fees to BC Mining.

32. Pursuant to the terms of the Hosting Agreement, invoices for hosting fees were generally issued to BMG approximately 2 months prior to the start of the month in which the Hosting Services were to be provided and BMG was required to pay each such invoice within 30 days. As a result, BMG was required to pay hosting fees for Hosting Services one month in advance of the provision of Hosting Services.

33. Subsequently, in or about February and March of 2018, BMG paid approximately $7.749 million to BC Holdings (the "Advance") pursuant to an agreement with BC Holdings. Although the terms of Advance were never finalized, BMG and BC Holdings originally discussed the Advance as being an undetermined combination of debt and equity financing.

34. In or about May 2018, BMG began utilizing Hosting Services in the Virginia Mining Facility.

35. In spite of the Hosting Agreement's requirement of advance payment of hosting fees, the hosting fees for Hosting Services provided the months of May through August 2018 were issued to BMG either during or after the month in which such Hosting Services were provided.

36. On information and belief in or about August 2018, BMG and BC Holdings ultimately agreed that the Advance would be repaid over time through credits against BMG's monthly payment of hosting fees in the approximate amount of $70,000.00 per month, although there were small variances in the actual amount credited to BMG each month.

37. Pursuant to this understanding between BC Holding and BMG, BMG received a credit of at least $70,000.00 against hosting fees owed to BC Mining under the Hosting

Agreement for each month billed in or after August 2018.

38. In August 2018, BMG was billed for hosting fees for the months of July and August 2018.

39. In September 2018, BMG was billed for hosting fees for the months of September, October and November 2018.

40. BMG was consistently billed for later hosting fees two months in advance thereafter.

41. BMG continued to receive credits against the hosting fees owed under the Hosting Agreement to repay the Advance made to BC Holdings after both the BC Mining Petition Date and the BC Holdings Petition Date.

42. BMG received individual credits in the following amounts against the hosting fees owed under the Hosting Agreement in partial payment of the Advance:

| Month Billed | Month Hosting Services Provided | Bill Due Date/Credit Received | Amount of Credit |
|---|---|---|---|
| August 2018 | July 2018 | August 2018 | $70,000.00 |
| August 2018 | August 2018 | August 2018 | $70,000.00 |
| September 2018 | September 2018 | September 2018 | $70,000.00 |
| September 2018 | October 2018 | October 2018 | $70,000.00 |
| September | November | October 2018 | $70,000.00 |

| 2018 | 2018 | | |
|---|---|---|---|
| October 2018 | December 2018 | November 1, 2018 | $70,000.00 |
| November 2018 | January 2019 | December 1, 2018 | $70,000.00 |
| December 2018 | February 2019 | January 1, 2018 | $70,000.00 |
| January 2019 | March 2019 | February 1, 2019 | $70,000.00 |
| February 2019 | April 2019 | March 1, 2019 | $72,910.98 |
| March 2019 | May 2019 | April 1, 2019 | $72,905.98 |
| April 2019 | June 2019 | May 1, 2019 | $72,905.98 |
| May 2019 | July 2019 | June 1, 2019 | $72,479.19 |
| Total | | | $921,202.13 |

43. In total, during the period from August 1, 2018, through June 1, 2019, BMG received credits totaling at least $921,202.13 (the "Total Credits") against the hosting fees BMG owed to BC Mining under the Hosting Agreement in partial repayment of the Advance.

44. During the period from August 1, 2018, through each of the BC Mining Petition Date and the BC Holding Petition Date, BMG received credits totaling at least

8

$775,816.96 (the "Pre-Bankruptcy Credits").

45. During each of the BC Mining Preference Period and the BC Holdings Preference Period, BMG received the following Pre-Bankruptcy Credits totaling $215,816.96 on the following dates and in the following amounts (collectively, the "90-Day Transfers"):

| Month Billed | Month Hosting Services Provided | Bill Due Date/Credit Received | Amount of Credit |
|---|---|---|---|
| January 2019 | March 2019 | February 1, 2019 | $70,000.00 |
| February 2019 | April 2019 | March 1, 2019 | $72,910.98 |
| March 2019 | May 2019 | April 1, 2019 | $72,905.98 |
| Total | | | $215,816.96 |

46. Each of the 90-Day Transfers were made during the BC Mining Preference Period and the BC Holdings Preference Period.

47. After each of the BC Mining Petition Date and the BC Holdings Petition Date, BMG continued to receive credits in payment of the pre-bankruptcy Advance totaling at least $145,385.17 (the "Post-Bankruptcy Credits").

48. On each of the BC Mining Petition Date and the BC Holdings Petition Date, after accounting for the Pre-Bankruptcy Credits, the remaining balance of the Advance was no more than $6,460,959.40 ("Petition Date Advance Balance") based on the Debtors' books and records.

49. On or about July 31, 2019, BMG filed a proof of claim under 11 U.S.C. §502 asserting an unsecured claim against the bankruptcy estate of BC Mining in the amount of at least $6,812,051.64 (the "BMG Proof of Claim").

## COUNT I
### Avoidance and Recovery of Pre-Bankruptcy Credits by the BC Mining Trustee

50. The BC Mining Trustee repeats, realleges, and incorporates each and every allegation contained in Paragraphs 1 through 14 and Paragraphs 31 through 49 of this Complaint as if fully set forth herein.

51. At all relevant times, the Hosting Agreement and all of the hosting fees owed by BMG under the Hosting Agreement were assets of BC Mining and constituted property in which BC Mining had an interest.

52. At all relevant times, the Advance was a debt of BC Holdings, not BC Mining.

53. Each of the Pre-Bankruptcy Credits reduced the amount of hosting fees BMG was obligated to pay BC Mining under the Hosting Agreement.

54. BC Mining did not receive any value in exchange for any of the Pre-Bankruptcy Credits.

55. Each of the Pre-Bankruptcy Credits was a transfer made during the 2-year period prior to the BC Mining Petition Date.

56. BC Mining received less than a reasonably equivalent value for or on account of each of the Pre-Bankruptcy Credits.

57. At the time of each of the Pre-Bankruptcy Credits, BC Mining:

    (a)    was insolvent or became insolvent as a result of each of such Pre-Bankruptcy Credits;

    (b)    was engaged in business or transactions or was about to engage in business or a transaction, for which any property remaining with BC Mining was an unreasonably small capital; or

    (c)    intended to incur or believed that it would incur, debts that would be beyond its ability to pay such debts as they became due or otherwise matured.

58. Thus, the BC Mining Trustee is entitled to avoid the Pre-Bankruptcy Credits as fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(B) and to a judgment under 11 U.S.C. § 550 against BMG equal to the amount of the Pre-Bankruptcy Credits, together with interest and costs of this suit.

## COUNT II
### Avoidance and Recovery of 90-Day Transfers by the BC Mining Trustee

59. The BC Mining Trustee repeats, realleges, and incorporates each and every allegation contained in Paragraphs 1 through 58 of this Complaint as if fully set forth herein.

60. At all relevant times, BMG could have collected the Advance from BC Mining under applicable non-bankruptcy law as BC Holdings' alter ego and through the application of similar legal theories and doctrines.

61. Each of the 90-Day Transfers was a transfer of an interest of BC Mining in property under Section 101(54) of the Bankruptcy Code.

62. Each of the 90-Day Transfers was made to or for the benefit of BMG, within the meaning of section 547(b)(1) of the Bankruptcy Code.

63. Each of the 90-Day Transfers was made within 90 days of the BC Mining

11

Petition Date.

64. Each of the 90-Day Transfers was made for or on account of antecedent debts owed by BC Mining to BMG before such transfers were made.

65. BC Mining was insolvent on the date of each of the 90-Day Transfers.

66. Each of the 90-Day Transfers enabled BMG to receive more than it would receive if:

    (a) BC Mining's bankruptcy was a case under chapter 7 of the Bankruptcy Code;

    (b) such 90-Day Transfer had not been made; and

    (c) BMG received payment of its debt to the extent provided by the provisions of the Bankruptcy Code.

67. By reason of the foregoing, the BC Mining Trustee is entitled to avoid each of the 90-Day Transfers pursuant to section 547(b) of the Bankruptcy Code, except to the extent, if any, that BMG can meet its burden of pleading and proving affirmative defenses under 11 U.S.C. §547(c) ("Affirmative Defense Reductions").

68. BMG was either:

    (a) the initial transferee of the 90-Day Transfers;

    (b) the entity for whose benefit such transfers were made; or

    (c) an immediate or mediate transferee of such initial transferee.

69. Thus, the BC Mining Trustee is entitled to avoid the 90-Day Transfers and to a judgment under 11 U.S.C. § 550 against BMG equal to the sum of the 90-Day Transfers less any Affirmative Defense Reductions, together with interest and costs of this suit (the "Net Preference Amount").

**COUNT III**
**Avoidance and Recovery of 90-Day Transfers**

## by the BC Holdings Trustee

70. The BC Holding Trustee repeats, realleges, and incorporates each and every allegation contained in Paragraphs 1 through 49 of this Complaint as if fully set forth herein.

71. At all relevant times, BC Holdings had an interest in the Hosting Agreement and the hosting fees BMG was obligated to pay under the Hosting Agreement.

72. Each of the 90-Day Transfers was a transfer of an interest of BC Holdings in property under Section 101(54) of the Bankruptcy Code.

73. Each of the 90-Day Transfers was made to or for the benefit of BMG, within the meaning of section 547(b)(1) of the Bankruptcy Code.

74. Each of the 90-Day Transfers was made within 90 days of the BC Holdings Petition Date.

75. Each of the 90-Day Transfers was made for or on account of antecedent debts owed by BC Holdings to BMG before such transfers were made.

76. BC Holdings was insolvent on the date of each of the 90-Day Transfers.

77. Each of the 90-Day Transfers enabled BMG to receive more than it would receive if:

   (a) BC Holdings' bankruptcy was a case under chapter 7 of the Bankruptcy Code;

   (b) such 90-Day Transfer had not been made; and

   (c) BMG received payment of its debt to the extent provided by the provisions of the Bankruptcy Code.

78. By reason of the foregoing, the BC Holdings Trustee is entitled to avoid each of the 90-Day Transfers pursuant to section 547(b) of the Bankruptcy Code, except to the extent, if any, that BMG can meet its burden of pleading and proving affirmative defenses

under 11 U.S.C. §547(c) ("Affirmative Defense Reductions").

79. BMG was either:

(a) the initial transferee of the 90-Day Transfers; or

(b) the entity for whose benefit such transfers were made; or

(c) an immediate or mediate transferee of such initial transferee.

80. Thus, the BC Holding Trustee is entitled to avoid the 90-Day Transfers and to a judgment under 11 U.S.C. § 550 against BMG equal to the sum of the 90-Day Transfers less any Affirmative Defense Reductions, together with interest and costs of this suit (the "Net Preference Amount").

## COUNT IV
### Avoidance and Recovery of 90-Day Transfers by the Trustee on behalf of the Substantively Consolidated estates of BC Mining and BC Holdings

81. The BC Mining Trustee and the BC Holding Trustee are moving to substantively consolidate the Debtors. If the Debtors' bankruptcy estates are substantively consolidated by this Court, Moglia brings this claim, not individually but solely as trustee in bankruptcy of the Debtors' substantively consolidated estate ("the Consolidated Trustee").

82. The Consolidated Trustee repeats, realleges, and incorporates each and every allegation contained in Paragraphs 1 through 49 and Paragraphs 59 through 80 of this Complaint as if fully set forth herein.

83. Each of the 90-Day Transfers was a transfer of an interest of the Debtors in property under Section 101(54) of the Bankruptcy Code.

84. Each of the 90-Day Transfers was made to or for the benefit of BMG, within the meaning of section 547(b)(1) of the Bankruptcy Code.

85. Each of the 90-Day Transfers was made within 90 days of the BC Mining Petition

14

Date and the BC Holdings Petition Date.

86. Each of the 90-Day Transfers was made for or on account of antecedent debts owed by the Debtors to BMG before such transfers were made.

87. The Debtors were insolvent on the date of each of the 90-Day Transfers.

88. Each of the 90-Day Transfers enabled BMG to receive more than it would receive if:

    (a) The Debtors' consolidated bankruptcy cases were a case under chapter 7 of the Bankruptcy Code;

    (b) such 90-Day Transfer had not been made; and

    (c) BMG received payment of its debt to the extent provided by the provisions of the Bankruptcy Code.

89. By reason of the foregoing, the Consolidated Trustee is entitled to avoid each of the 90-Day Transfers pursuant to section 547(b) of the Bankruptcy Code, except to the extent, if any, that BMG can meet its burden of pleading and proving affirmative defenses under 11 U.S.C. §547(c) ("Affirmative Defense Reductions").

90. BMG was either:

    (a) the initial transferee of the 90-Day Transfers;

    (b) the entity for whose benefit such transfers were made; or

    (c) an immediate or mediate transferee of such initial transferee.

91. Thus, the Consolidated Trustee is entitled to avoid the 90-Day Transfers and to a judgment under 11 U.S.C. § 550 against BMG equal to the sum of the 90-Day Transfers less any Affirmative Defense Reductions, together with interest and costs of this suit (the "Net Preference Amount").

### Count V
### Avoidance and Recovery of the Post-Petition
### Credits by BC Mining Trustee

92. The BC Mining Trustee repeats, realleges, and incorporates each and every allegation contained in Paragraphs 1 through 49 of this Complaint as if fully set forth herein.

93. None of the Post-Petition Credits was authorized by this Court or the Bankruptcy Code.

94. Thus, the BC Holdings Trustee is entitled to avoid the Post-Petition Credits and to a judgment under 11 U.S.C. § 550 against BMG equal to the sum of the Post-Petition Credits, together with interest and costs of this suit.

### Count VI
### Avoidance and Recovery of the Post-Petition
### Credits by the BC Holdings Trustee

95. The BC Holdings Trustee repeats, realleges, and incorporates each and every allegation contained in Paragraphs 1 through 49 of this Complaint as if fully set forth herein.

96. None of the Post-Petition Credits was authorized by this Court or the Bankruptcy Code.

97. Thus, the BC Holdings Trustee is entitled to avoid the Post-Petition Credits and to a judgment under 11 U.S.C. § 550 against BMG equal to the sum of the Post-Petition Credits, together with interest and costs of this suit.

### Count VII
### Avoidance and Recovery of the Post-Petition
### Credits by Consolidated Trustee

98. The Consolidated Trustee repeats, realleges, and incorporates each and every allegation contained in Paragraphs 1 through 49 and Paragraph 81 of this Complaint as if fully set forth herein.

99. None of the Post-Petition Credits was authorized by this Court or the Bankruptcy Code.

100. Thus, the Consolidated Trustee is entitled to avoid the Post-Petition Credits and to a judgment under 11 U.S.C. § 550 against BMG equal to the sum of the Post-Petition Credits, together with interest and costs of this suit.

### Count VIII
### Disallowance of BMG's Claims Asserted
### Against the BC Mining Estate

101. The BC Mining Trustee repeats, realleges, and incorporates each and every allegation contained in Paragraphs 1 through 69 and Paragraphs 92 through 94 of this Complaint as if fully set forth herein.

102. To the extent that the Court enters judgment in favor of the BC Mining Trustee on Count I, Count II, or Count V, BMG's Proof of Claim and any and all other claims and administrative expenses that BMG may assert against BC Mining should be disallowed unless and until BMG satisfies such judgment in full.

103. The BC Mining Trustee further objects to the BMG Proof of Claim as it asserts an unsecured claim based on the Advance, which is solely owed by BC Holdings, not BC Mining.

### Count IX
### Disallowance of BMG's Claims Asserted
### Against the BC Holdings Estate

104. The BC Holdings Trustee repeats, realleges, and incorporates each and every allegation contained in Paragraphs 1 through 49, Paragraphs 70 through 80, and Paragraphs 95 through 97 of this Complaint as if fully set forth herein.

105. To the extent that the Court enters judgment in favor of the BC Holdings

17

Trustee on Count III or Count VI, BMG's Proof of Claim and any and all other claims and administrative expenses that BMG may assert against BC Holdings should be disallowed unless and until BMG satisfies such judgment in full.

106. The BC Holding Trustee further objects to the BMG Proof of Claim as it asserts an unsecured claim based on the Advance in an amount exceeding the Petition Date Advance Balance.

### Count X Disallowance of BMG's Claims Against the Consolidated Estate of BC Mining and BC Holdings

107. If the Debtors' bankruptcy estates are substantively consolidated by this Court, Moglia brings this claim, not individually but solely as the Consolidated Trustee.

108. The Consolidated Trustee repeats, realleges, and incorporates each and every allegation contained in Paragraphs 1 through 106 of this Complaint as if fully set forth herein.

109. To the extent that the Court enters judgment in favor of the Consolidated Trustee on Count I, II, III, IV, V, VI, VII, VIII, or IX BMG Proof of Claim and any and all other claims and administrative expenses that BMG may assert should be disallowed unless and until BMG satisfies such judgments in full.

110. The Consolidated Trustee further objects to the BMG Proof of Claim as it asserts an unsecured claim based on the Advance in an amount exceeding the Petition Date Advance Balance.

WHEREFORE, each of the Plaintiffs request the entry of a judgment against BMG granting the following relief:

(a) As to Count I, the entry of judgment in favor of the BC Mining Trustee and against BMG avoiding the Pre-Bankruptcy Credits and granting a money

judgment in an amount equal to the Pre-Bankruptcy Credits plus interest and costs of this suit;

(b) As to Counts II, III, and IV, the entry of judgment in favor of the respective Plaintiff and against BMG avoiding the 90-Day Transfers and granting a money judgment in an amount equal to the Net Preference Amount plus interest and costs of this suit;

(c) As to Counts V, VI, and VII, the entry of judgment in favor of the respective Plaintiff and against BMG avoiding the Post-Petition Credits and granting a money judgment in an amount equal to the Post-Petition Credits plus interest and costs of this suit;

(d) As to Counts VIII, IX, and X, the entry of a judgment disallowing the BMG Proof of Claim and any and all other claims and administrative expenses BMG may assert against the Debtors; and

(e) Such other and further relief as this Court deems just.

Dated: April 10, 2021

**Alex Moglia, not personally, but solely as the Chapter 7 Trustee of the Bankruptcy Estates of BCause Mining LLC and BCause LLC**

By: /s/Michael M. Schmahl
    Michael M. Schmahl
Michael M. Schmahl
Mason Pollick & Schmahl LLC
70 W. Hubbard
Suite 304
Chicago, IL 60654-4603
(312) 235-3296
mschmahl@mps-law.com
*Counsel to the Trustee*