## SETTLEMENT AGREEMENT

This settlement agreement (the "Settlement Agreement") by and between: BMG Operations Ltd. ("BMG") and Alex D. Moglia ("Moglia"), not individually, but solely in his capacity as chapter 7 trustee ("Trustee") for the estates ("Estates") of BCause Mining LLC ("Mining") and BCause LLC ("Holdings" together with Mining, the "Debtors") is made and entered into as of September 13, 2021 ("Execution Date").

## RECITALS

**WHEREAS**, the Trustee and BMG (collectively, the "Parties" and individually a "Party") agree that on April 11, 2019 ("Mining Petition Date"), Mining filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code, which is now pending before the United States Bankruptcy Court for the Northern District of Illinois ("Bankruptcy Court") as Case No. 19 B 10562 ("Mining Case"); and

**WHEREAS**, the Parties agree that on April 12, 2019 ("Holdings Petition Date" and together with Mining Petition Date, the "Petition Dates"), Holdings filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code, which is now pending before the Bankruptcy Court as Case No. 19 B 10731 ("Holdings Case" and together with Mining Case, "Cases"); and

**WHEREAS**, the Parties agree that on October 8, 2019 the Bankruptcy Court entered an order converting the Cases to Chapter 7 proceedings and on October 11, 2019, Alex D. Moglia was appointed as the Chapter 7 Trustee in these Cases; and

**WHEREAS**, the Parties agree that prior to the Petition Dates, Mining and BMG entered into a Hosting Services Agreement (the "Hosting Agreement"), pursuant to which Mining agreed to provide services and to host BMG's crypto currency mining computer equipment units (collectively, "Miners") at its datacenter in Virginia Beach, Virginia (the "Facility"). As

LEGAL\53887065\1

consideration for Mining's hosting services, BMG agreed to pay in advance a monthly hosting fee (the "Monthly Hosting Fee"); and

**WHEREAS**, BMG contends that in February and March 2018, BMG agreed to advance to the Debtors certain funds in addition to the Monthly Hosting Fee, and, in total, BMG advanced the Debtors in excess of $7,749,000.00 (the "Advance"); and

**WHEREAS**, BMG contends BMG and the Debtors also agreed that the Advance would be repaid by the Debtors in part through monthly set offs against the Monthly Hosting Fees due Mining from BMG, each month in the amount of $70,000 (the "Setoff Credits"); and

**WHEREAS**, BMG contends that as of the Petition Dates, the balance remaining on the Advance net of pre- and post-petition Setoff Credits was $6,808,599.64 (the "Advance Claim"); and

**WHEREAS**, BMG contends, in or around September 2018, BMG advanced another $750,000 to the Debtors (the "Customs Advance") to pay for $746,531.94 in fees imposed by U.S. Customs and Border Protection ("USCBP") on account of the importation of BMG's Miners but that the Debtors never paid these amounts to USCBP; and

**WHEREAS**, BMG contends that on June 9, 2019, there was an electrical issue at the Facility that resulted in the destruction of/or damage to 325 of BMG's Miners (the "Surge Event"); and

**WHEREAS**, BMG contends following the Surge Event, in July of 2019, BMG withheld its then-due September Monthly Hosting Fee as it attempted to ascertain the full extent of the damage to its 325 Miners and its resulting decrease in cashflow from a reduced number of Miners operating at the Facility; and

**WHEREAS**, BMG contends that on July 10, 2019, the Debtors disconnected BMG's remaining, operational Miners at the Facility due to BMG's non-payment of the September hosting fee, and then the Debtors reconnected BMG's remaining, operational Miners to the Debtors' own mining software and began mining Bitcoin for themselves using BMG's Miners without BMG's permission; and

**WHEREAS**, the Debtors have previously acknowledged that they obtained bitcoins and other digital assets from their allegedly unauthorized use of the Miners since July 10, 2019, with a total value of approximately $350,000.00 and which amount has not been audited or otherwise agreed to by the Trustee; and

**WHEREAS**, the Trustee asserts defenses to and does not agree with all of BMG's contentions but has considered them in arriving at this Agreement; and

**WHEREAS**, the Parties agree that on April 10, 2021, the Trustee filed an adversary proceeding with the Bankruptcy Court asserting, among other things, claims against BMG including fraudulent transfer, preferential transfer, avoidance of post-petition setoff credits, and disallowance of BMG's pre-petition claims (the "Complaint") seeking damages in excess of $215,000 from BMG for alleged preferential transfers and in excess of $920,000 from BMG arising out of Setoff Credits under various theories; and

**WHEREAS,** BMG has represented to the Trustee it has not assigned any claims or rights to recover Chapter 11 administrative expenses in either of the Cases and knows of no affiliates of BMG that asserts any rights to recover Chapter 11 administrative expenses in either of the Cases.

**WHEREAS**, to avoid the costs and risks of further litigation of the claims and issues between the Parties, the Parties have determined to resolve their disputes on the terms of, and subject to the conditions set forth in, this Settlement Agreement;

**WHEREAS**, each of the Parties to this Settlement Agreement agrees to bear its own costs and expenses, including attorneys' fees, arising out of the matters related to this Settlement Agreement.

**NOW, THEREFORE**, in consideration of the promises aforesaid and the mutual covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1. **Recitals Incorporated.** The recitals and prefatory phrases and paragraphs set forth above are hereby incorporated and made a part of this Settlement Agreement.

2. **Court Approval Required.** This Agreement shall not take force and effect unless and until the Bankruptcy Court enters an order in the Cases after notice and a hearing, approving this Agreement and authorizing the Trustee to execute, deliver and perform this Agreement (the "Settlement Approval Order") and the Settlement Approval Order has become a "Final Order." For purposes of this Agreement, a "Final Order" is an order that is final for purposes of 28 U.S.C. §§158 and 1291, and is no longer subject to appeal or *certiorari* proceedings and no appellate or *certiorari* proceedings are pending. For the avoidance of doubt, the Settlement Approval Order shall become a Final Order in the event that no party files a notice of appeal related to the Settlement Approval Order within the time permitted under Federal Rule of Bankruptcy Procedure 8002. This Agreement shall take effect on the first day after the date the Settlement Approval Order has become a Final Order (the "Effective Date"). In the event that this Agreement is not approved by the Bankruptcy Court in the Cases, nothing herein shall be deemed a representation or admission by any Party as to any allegation, claim, or issue, and the Parties shall be returned to the status quo in effect prior to their entry into this Agreement. The Trustee shall prepare and file a motion seeking the entry of the Settlement Approval Order.

3. **BMG's Administrative Priority Claim.** The Parties hereby agree that BMG shall be entitled to an allowed $275,000.00 administrative claim in the preceding Chapter 11 case of the Debtors (but not the current Chapter 7 cases of the Debtors), which claim shall be a joint and several liability of both the Mining and the Holdings Estates (the "BMG's Allowed Claim"). For the avoidance of doubt: (i) BMG's Allowed Claim shall be a Chapter 11 administrative claim that is subordinate to administrative expenses and claims in the Chapter 7 Cases and payable on par with other Chapter 11 administrative expenses or claims; (ii) once BMG receives one or more payments totaling $275,000 from either or both of the Debtors' Estates, BMG's Allowed Claim shall be satisfied in full; and (iii) in the event that there are not sufficient resources in the Estates (including any substantively consolidated estate) to pay all allowed Chapter 11 administrative claims or expenses after paying all allowed Chapter 7 administrative claims or expenses, then BMG's Allowed Claim shall be paid *pro rata* with other allowed Chapter 11 claims or expenses of the Cases. If the Debtors' Estates are substantively consolidated, then BMG's Allowed Claim shall be a single Chapter 11 administrative claim against the substantively consolidated estate of the Debtors in the amount of $275,000, which shall also be subordinate to the administrative expenses of and claims against such substantively consolidated Chapter 7 estate. An order in the form of Exhibit A hereto setting forth the allowance of BMG's Allowed Claim as set forth herein shall be filed with the Court within 3 business days of the Effective Date. BMG's Allowed Claim will be freely transferrable by BMG if BMG transfers the claim in accordance with the requirements of the Federal Rules of Bankruptcy Procedure.

4. **Mutual Releases.**

(a) Upon the Effective Date, BMG, shall hereby release and forever discharge, as of the Execution Date, the Trustee, the Estates, and any of the Estates' agents, affiliates, subsidiaries and successors, of and from any and all claims, damages, actions, suits, causes of action, rights, liens, demands, obligations and/or liabilities arising out of or related to BMG's and the Debtors' business relationship, the Cases (including any substantively consolidated case), or the administration of the Estates (including any substantively consolidated estate); *provided, however*, that nothing contained herein shall be deemed to release any obligations that the Trustee or Estates have undertaken by entering into this Settlement Agreement with regard to BMG's Allowed Claim.

(b) Upon the Effective Date, the Trustee, on behalf of himself, as Trustee and the Estates shall hereby release and forever discharge, as of the Execution Date, BMG, and any of its agents, affiliates, subsidiaries and successors, of and from any and all claims, damages, actions, suits, causes of action, rights, liens, demands, obligations and/or liabilities arising out of or related to BMG's and the Debtors' business relationship, the Cases (including any substantively consolidated case), or the administration of the Estates (including any substantively consolidated estate); *provided, however*, that nothing contained herein shall be deemed to release any obligations that the Trustee or Estates have undertaken by entering into this Settlement Agreement with regard to BMG's Allowed Claim.

5. **Jurisdiction; Venue.** This Settlement Agreement shall be construed and governed by the laws of the State of Illinois and the Bankruptcy Court shall retain jurisdiction to interpret and enforce the provisions of this Settlement Agreement. The Parties agree that the Bankruptcy

Court shall be the exclusive venue for hearing and resolving any disputes, motions, or actions related to this Agreement, BMG's Allowed Claim or the Bankruptcy Court order approving the same.

6. **Amendment of Agreement.** This Settlement Agreement shall not be amended except by a writing signed by all of the Parties hereto.

7. **Binding Effect.** This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors, including a subsequently appointed bankruptcy trustee, personal representatives, heirs, legatees, executors, administrators and assigns, as applicable.

8. **Entire Agreement.** This Settlement Agreement constitutes the entire agreement of the Parties hereto as to the subject matter hereof. The undersigned acknowledge that there are no communications or oral understandings contrary, different, or that in any way restrict this Settlement Agreement, and that all prior agreements or understandings within the scope of the subject matter of this Settlement Agreement are, upon the execution and delivery of this Settlement Agreement, superseded, null and void.

9. **Execution by Electronic Signatures and in Counterparts.** The Parties agree that electronic signatures shall have the same force and effect as original signatures. This Settlement Agreement may be executed in one or more counterparts, each counterpart to be considered an original portion of this Settlement Agreement.

10. **Construction.** The Parties agree that each has reviewed this Settlement Agreement with its counsel and that each Party fully understands and voluntarily accepts all the provisions contained in this Settlement Agreement. The Parties further agree that this Settlement Agreement was the product of negotiations between the Parties and that any rule of construction that

ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Settlement Agreement.

11. **Severability.** In the event that any one or more provisions contained in this Settlement Agreement shall for any reason be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof, and this Settlement Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

12. **No Personal Liability for Trustee.** The Parties agree and acknowledge that the Trustee has negotiated and is entering into this Agreement in his official capacity as the Trustee of the Debtors' bankruptcy Estates and not in his personal capacity as an individual. As such, the Parties expressly agree and acknowledge that Moglia, personally, shall have no obligations under or related to this Agreement and that this Agreement does not create any liabilities whatsoever against Moglia, personally or individually.

**IN WITNESS WHEREOF**, the Parties hereto, each by persons duly authorized, have caused this Settlement Agreement to be executed as of the day and year first written above.

| **BMG OPERATIONS LTD.** | **TRUSTEE FOR BCAUSE MINING LLC** |
|---|---|
| By: *[signature]* | By: _____ |
| Printed Name: B. Althea Gage | Printed Name: _____ |
| Its: Director | Its: _____ |

ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Settlement Agreement.

11. **Severability.** In the event that any one or more provisions contained in this Settlement Agreement shall for any reason be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof, and this Settlement Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

12. **No Personal Liability for Trustee.** The Parties agree and acknowledge that the Trustee has negotiated and is entering into this Agreement in his official capacity as the Trustee of the Debtors' bankruptcy Estates and not in his personal capacity as an individual. As such, the Parties expressly agree and acknowledge that Moglia, personally, shall have no obligations under or related to this Agreement and that this Agreement does not create any liabilities whatsoever against Moglia, personally or individually.

IN WITNESS WHEREOF, the Parties hereto, each by persons duly authorized, have caused this Settlement Agreement to be executed as of the day and year first written above.

| BMG OPERATIONS LTD. | TRUSTEE FOR BCAUSE MINING LLC |
|---|---|
| By: _____ | By: _____ |
| Printed Name: _____ | Printed Name: Alex D. Moglia |
| Its: _____ | Its: Trustee |

8
LEGAL\53887065\1

**TRUSTEE FOR BCAUSE LLC**

By: _____

Printed Name: ALEX D. MOGLIA

Its: TRUSTEE

45860524