**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| **BCause Mining LLC,** *et al.* | ) | Case No. 19-10562 |
| | ) | **(Jointly Administered)** |
| Debtors. | ) | |
| | ) | Hon. Janet S. Baer |
| | ) | |

### NOTICE OF MOTION

**TO:**   See attached list

PLEASE TAKE NOTICE that on Wednesday, **June 22, 2022**, at the hour of **10:00 a.m.**, I will appear before the Honorable Janet S. Baer, United States Bankruptcy Judge or any judge sitting in that judge's place, and present the **SECOND INTERIM APPLICATION FOR ALLOWANCE OF CONTINGENT FEE COMPENSATION AND REIMBURSEMENT OF EXPENSES OF MASON, POLLICK & SCHMAHL LLC AS COUNSEL TO THE TRUSTEE BUT SOLELY RELATED TO CONTINGENT FEE LITIGATION WITH DOMINION ENERGY AND REQUEST TO SHORTEN NOTICE** (the "Motion"), a copy of which is attached.

**This motion will be presented and heard electronically using Zoom for Government**. No personal appearance in court is necessary or permitted. To appear and be heard on the Motion you must do the following:

**To appear by video**, use this link: https://www.zoomgov.com/. Then enter the meeting ID and password.

**To appear by telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and password.

**Meeting ID and password**. The meeting ID for this hearing is 160 731 2971 and the password is 587656. The meeting ID and password can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

Dated: June 2, 2022

Alex Moglia, Chapter 7 Trustee of the
Bankruptcy Estates of BCause Mining LLC
and BCause LLC

By: /s/ Michael M. Schmahl
Michael M. Schmahl

Michael M. Schmahl
MASON POLLICK & SCHMAHL LLC
70 W. Hubbard, Suite 304
Chicago, Illinois 60654
(312) 312-5531
mschmahl@mps-law.com

**CERTIFICATE OF SERVICE**

The undersigned states that on June 2, 2022, he caused the above Notice of Motion and the Motion to be served on the individuals listed on the below service list via the court's ECF system for those who are registered except for the individuals or entities that are identified to have been served by email who the undersigned caused to be served by email as indicated on the attached service list.

By: /s/ Michael M. Schmahl
Michael M. Schmahl

## *SERVICE LIST*

Patrick S. Layng
Ha M. Nguyen
Office of the U.S. Trustee
219 S. Dearborn Street
Room 873
Chicago, IL 60604
Ha.nguyen@usdoj.gov
*United States Trustee*

David A Agay
Maria G Carr
Shara C Cornell
McDonald Hopkins LLC
300 N. LaSalle
Chicago, IL 60654
312-280-0111
dagay@mcdonaldhopkins.com
mcarr@mcdonaldhopkins.com
scornell@mcdonaldhopkins.com
*Counsel for WESCO Distribution, Inc.*

J Mark Fisher
Sarah K Angelino
Schiff Hardin LLP
233 South Wacker Drive
Suite 7100
Chicago, IL 60606
(312) 258-5861
mfisher@schiffhardin.com
sangelino@schiffhardin.com
Dennis Lewandowski, via email sent to:
dtlewand@kaufcan.com
*Counsel for Hoffland Properties, Inc.*

Marc Ira Fenton
Jamie L Burns
Levenfeld Pearlstein LLC
2 N Lasalle St Ste 1300
Chicago, IL 60602
312-346-8380
mfenton@lplegal.com
jburns@lplegal.com

John M Craig
Law Firm of Russell R Johnson
III, PLC
14890 Washington Street
Haymarket, VA 20169
russell@russelljohnsonlawfirm.com
*Counsel for Dominion Energy Virginia
Via e-mail*

Shelly A. DeRousse
Devon J Eggert
Elizabeth L Janczak
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606
312-360-6315
312-360-6520 (fax)
sderousse@freeborn.com
deggert@freeborn.com
ejanczak@freeborn.com
*Counsel for Creditors' Committee*

Russell R. Johnson, III
John M. Craig
Law Firm of Russell R Johnson
III, PLC
2258 Wheatlands Drive
Manakin Sabot, VA 23103
804-749-8861
russell@russelljohnsonlawfirm.com
john@russelljohnsonlawfirm.com
*Counsel for Dominion Energy Virginia
Via e-mail*

Brian L Shaw
Christina Sanfelippo
Fox Rothschild LLP
321 N Clark Street
Suite 1600
Chicago, IL 60654
312-517-9200
312-517-9201 (fax)

3

*Counsel for W-R2 Jefferson Owner VIII, LLC*

Jennifer M McLemore
Williams Mullen
200 South 10th Street
Richmond, VA 23219
(804)420-6330
jmclemore@williamsmullen.com
*Counsel for BMG Operations Ltd.*
*Via e-mail*

Jason M Torf
Ice Miller LLP
200 W. Madison St.
Suite 3500
Chicago, IL 60606
312-726-6244
312-726-6214 (fax)
jason.torf@icemiller.com
*Counsel for Dominion Energy Virginia*

Debra Devassy Babu
Askounis & Darcy, PC
444 N. Michigan Avenue
Suite 3270
Chicago, IL 60611
312-784-2400
312-784-2410 (fax)
ddevassy@askounisdarcy.com
*Counsel for CCA Financial, LLC*

Lindsey Conley
Hinshaw & Culbertson LLP
151 N. Franklin Street, Suite 2500
Chicago, IL 60606

bshaw@foxrothschild.com
csanfelippo@foxrothschild.com
*Counsel for BMG Operations Ltd.*

Jason M Torf
Ice Miller LLP
200 W. Madison St.
Suite 3500
Chicago, IL 60606
312-726-6244
312-726-6214 (fax)
jason.torf@icemiller.com
*Counsel for Dominion Energy Virginia*

Scott R Clar
Arthur G Simon
Jeffrey C Dan
Crane, Simon, Clar & Dan
135 S Lasalle Suite 3705
Chicago, IL 60603
312 641-6777
312 641-7114 (fax)
sclar@cranesimon.com
asimon@cranesimon.com
jdan@cranesimon.com
*Counsel for the Debtors*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: | ) ) ) Chapter 7 ) |
| BCause Mining LLC, *et al.* | ) Case No. 19-10562 ) (Jointly Administered) ) |
| Debtors. | ) Hon. Janet S. Baer ) |

**COVER SHEET FOR SECOND INTERIM APPLICATION FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES TO MASON POLLICK & SCHMAHL LLC AS COUNSEL TO THE TRUSTEE BUT SOLELY RELATED TO CONTINGENT FEE LITIGATION WITH <u>DOMINION ENERGY AND REQUEST TO SHORTEN NOTICE</u>**

| Name of Applicant: | Mason Pollick & Schmahl LLC f/k/a Pollick & Schmahl, LLC ("MPS") |
|---|---|
| Authorized to Provide Professional Services to: | Alex Moglia, not personally, but solely as the chapter 7 trustee of the bankruptcy estates of BCause LLC and BCause Mining LLC |
| Date of Order Authorizing Employment: | i. October 16, 2019 (nunc pro tunc to October 8, 2019) **[Docket No. 350]** authorized to generally represent the Trustee; <br> ii. May 26, 2021 **[Docket No. 479]**, terms of MPS' retention modified to contingent fee relationship solely with respect to representation of Trustee in connection with *Moglia v. Virginia Electric and Power Company d/b/a Dominion Energy Virginia* (Adv. No. 21-0055) (the "Dominion Adversary") |
| Period for which Compensation is Sought: | This Second Interim Application <u>Is Limited to MPS' Contingent Fee Representation of Trustee in the Dominion Adversary</u> |
| From: | June 5, 2020 |
| Through: | June 1, 2022 |
| Amount of Fees Sought: | $232,188.90 (Contingent Fee of 33.33%) |
| Amount of Expense Reimbursement: | $363.65 |
| This is an: | |
| Interim Application: YES | Final Application: NO |
| | |

If this is not the first application filed herein by this professional, disclose as to all prior fee applications:

5

| Date Filed | Period Covered | Total Requested (Fees & Expenses) | Total Allowed (Fees & Expenses) | Fees & Expenses Previously Paid |
|---|---|---|---|---|
| 6/4/2020 [**Docket No. 435**] | 10/8/2019 – 5/20/2020 | Fees: $148,610.00; Exp.: $1,191.38; Total: $149,801.38 | Total: $149,801.38 [**Docket No. 441**] | Total: $149,801.38[1] |
| | | | | |

State the aggregate amount of fees and reimbursement of expenses paid to Applicant as of the date of this Application: $149,801.38.

             MASON POLLICK & SCHMAHL LLC

Dated: June 2, 2022       /s/ Michael M. Schmahl
                Michael M. Schmahl
                Mason Pollick & Schmahl LLC
                70 W. Hubbard, Suite 304
                Chicago, IL 60654
                (312) 312-5531
                mschmahl@mps-law.com
                ARDC #6275860
                *Counsel for the Trustee*

---

[1] MPS' First Interim Application for Allowance of Compensation and Reimbursement of Expenses As Counsel to the Trustee [**Docket No. 435**] included a request for compensation on an hourly rate basis for 3.1 hours totaling $1,085.00 in fees specifically related to obtaining a refund of the remainder of a post-bankruptcy deposit Dominion received from the Debtors as collateral for or pre-payment of post-bankruptcy electricity services provided during the Chapter 11 portion of these cases. Those services were provided by MPS entirely in November and December 2019, did not involve litigation, and were not in any way related to the Dominion Adversary, its factual basis or any of claims asserted therein. MPS began focusing on the factual and legal basis for claims against Dominion Energy, that ultimately resulted in the Dominion Adversary, in June 2020.

6

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | ) <br> ) **Chapter 7** <br> ) <br> ) **Case No. 19-10562** |
| **BCause Mining LLC,** *et al.* | ) **(Jointly Administered)** <br> ) |
| Debtors. | ) **Hon. Janet S. Baer** <br> ) |

**SECOND INTERIM APPLICATION FOR ALLOWANCE OF COMPENSATION AND
REIMBURSEMENT OF EXPENSES TO MASON POLLICK & SCHMAHL LLC AS
COUNSEL TO THE TRUSTEE BUT SOLELY RELATED TO
CONTINGENT FEE LITIGATION WITH DOMINION ENERGY
<u>AND REQUEST TO SHORTEN NOTICE</u>**

Pursuant to 11 U.S.C. §§ 327, 328, 330 and 331 and Rule 2016 of the Federal Rules of Bankruptcy Procedure, Mason Pollick & Schmahl LLC f/k/a Pollick & Schmahl, LLC ("MPS")[2], counsel for Alex Moglia (the "Trustee"), not individually, but solely as trustee of the chapter 7 bankruptcy estates of BCause Mining LLC ("BC Mining") and BCause LLC[3] ("BC Holding" and collectively with Mining, the "Debtors"), submits this Second Interim Application for Allowance of Fees and Reimbursement of Expenses (the "Application") as counsel to the Trustee but Solely Related to Contingent Fee Litigation with Virginia Electric and Power Company d/b/a Dominion Energy Virginia ("Dominion") and requests the entry of an order allowing and authorizing the payment of interim compensation in the amount of $232,188.90 (the "Compensation") and reimbursement of expenses in the amount of $363.65 (the "Expense Reimbursement") for services provided and expenses incurred by MPS as contingent fee counsel for the Trustee in connection with the adversary proceeding captioned *Moglia v. Virginia Electric and Power Company d/b/a Dominion Energy Virginia* (Adv. No. 2021-00055) (the

---

[2] MPS was formerly named Pollick & Schmahl, LLC.
[3] BCause LLC is the debtor in bankruptcy case number 19-10731.

7

"Dominion Adversary"), currently pending before the Court, and to shorten and approve the form of notice. In support thereof, MPS respectfully states as follows:

### Jurisdiction and Venue

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1334.

2. This Motion is a core proceeding under 28 U.S.C. § 157(b)(2).

3. Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

### General Background

4. On or about April 11, 2019, BC Mining filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

5. On or about April 12, 2019 (collectively with April 11, 2019, the "Petition Dates"), BC Holding filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

6. On or about May 8, 2019, the Court entered an order [**Docket No. 72**] directing that the Debtors' bankruptcy cases be jointly administered under the above caption.

7. On or about October 8, 2019 (the "Conversion Date"), the Court entered an order [**Docket No. 319**] converting the Debtors' bankruptcy cases to cases under chapter 7 of the Bankruptcy Code, and Richard J. Mason was appointed as the chapter 7 trustee of the Debtors' estates [**Docket No. 320**].

8. On or about October 11, 2019, Mr. Mason resigned as chapter 7 trustee due to a potential conflict that was not readily apparent but that would have been imputed to Mr. Mason as a result of his employment by his former law firm (i.e. not MPS). Later that day, Mr. Moglia was appointed as the Trustee [**Docket No. 334**].

9. On or about October 16, 2019, the Court entered an order [**Docket No. 350**], authorizing the Trustee to retain MPS as his counsel with an effective date as of October 8, 2019, on an hourly rate basis.

8

10. On or about June 4, 2020, MPS filed it First Interim Application for Allowance of Compensation and Reimbursement of Expenses As Counsel to the Trustee (the "First Interim Fee Application") [**Docket No. 435**]. None of the services for which MPS sought compensation or the reimbursement of expenses in the First Interim Fee Application related to the Dominion Adversary or the investigation of those claims.[4]

11. On or about June 24, 2020, the Court entered an order [**Docket No. 441**] granting the compensation and expense reimbursement requested in the First Interim Fee Application totaling $149,801.38.

12. Shortly before the commencement of the Dominion Adversary, the holders of the two largest Chapter 11 administrative claims[5] informed the Trustee that they supported pursuing the Dominion Adversary expressly provided that the Trustee was represented on a contingent fee basis.

13. On or about May 19, 2021, the Trustee filed a motion [**Docket No. 478**] (the "Contingent Fee Motion") seeking to alter the terms of MPS' retention as counsel to the Trustee solely with respect to the Dominion Adversary pursuant to a Contingent Fee Agreement, a copy of which is attached to the Contingent Fee Motion as Exhibit 1, so that all of MPS' compensation for any services related to the Dominion Adversary would be contingent on the outcome of the Dominion Adversary and calculated based on the contingent fee schedule provided in the Contingent Fee Agreement.

---

[4] MPS' First Interim Fee Application included a request for compensation on an hourly rate basis for 3.1 hours totaling fees of $1,085.00 specifically related to obtaining a refund of the remainder of a post-bankruptcy deposit Dominion received from the Debtors as collateral for or pre-payment of electricity services during the Chapter 11 portion of these cases. The refund represented the unapplied remainder of the post-bankruptcy deposit. Those services were provided by MPS entirely in November and December 2019 and were not in any way related to the Dominion Adversary or any of the theories considered or ultimately asserted therein.

[5] At the time, there was only approximately $127,000 in BC Holding's estate and $0.00 in BC Mining's estate, which was insufficient to pay all of the then allowed Chapter 11 administrative expense claims. As such, these two creditors were effectively the two largest creditors of these estates.

9

14. The contingent fee schedule in the Contingent Fee Agreement provides that MPS is entitled to the reimbursement of expenses paid by MPS in connection with the Dominion Adversary and compensation equal to: (i) 33.33% of any proceeds of the Dominion Adversary, whether by settlement or judgment, in the event that there are no appeals; (ii) 37.33% of the proceeds of the Dominion Adversary, whether by settlement or judgment, in the event of any appeal to the District Court; (iii) 41.33% of the proceeds of the Dominion Adversary, whether by settlement or judgment, in the event of any appeal to the Seventh Circuit Court of Appeals; and (iv) 45.33% of the proceeds of the Dominion Adversary, whether by settlement or judgment, in the event any petition for writ of *certiorari* is filed or granted.

15. Additionally, under the Contingent Fee Agreement, MPS agreed to include all prior services investigating the facts and potential legal theories that resulted in the Dominion Adversary within the contingent fee relationship and, thereby, forego any right to have those prior services compensated on an hourly basis. MPS began its investigation nearly a year earlier on or about June 5, 2020.

16. On or about May 26, 2021, the Court entered an order (the "Contingent Fee Order") [**Docket No. 479**] granting the Contingent Fee Motion and authorized and approved the Trustee's retention of MPS related to the Dominion Adversary pursuant to the terms of the Contingent Fee Agreement, including the contingent fee schedule provided for therein. No creditors or parties in interest objected to the Contingent Fee Motion, the Contingent Fee Agreement or the entry of the Contingent Fee Order.

**Dominion, the Dominion Adversary and Settlement**

17. Prior to the Petition Dates, the Debtors operated a data center previously located in Virginia Beach, Virginia (the "Mining Facility"). The Mining Facility was leased pursuant to a lease executed by BC Mining.

18. Third parties entered into contracts with BC Mining called hosting agreements pursuant to which they placed specialized computers, called "miners," in the Mining Facility where they operated and "mined" cryptocurrency. These customers paid monthly fees under the hosting agreements directly to BC Holding, which received and held the funds in a bank account (the "Bank Account") in the name of BC Holding. BC Mining did not have a bank account or any similar accounts.

19. All of the revenues from the Debtors' operations as well as the proceeds of debt and equity investment in the Debtors were paid into the Bank Account. All of the Debtors' obligations were paid from the Bank Account.

20. Dominion, an electric utility in Virginia, provided electricity services to the Mining Facility pursuant to two contracts executed by BC Mining. Dominion issued invoices for these services to BC Mining. All payments received by Dominion in payment of these invoices were made from funds in the Bank Account via checks in BC Holding's name.

21. Additionally, Dominion received a pre-bankruptcy security deposit (the "Security Deposit") in the total amount of $1,934,233.21 that was paid in installments through checks under BC Holding's name that were also drawn from the Bank Account.

22. During the 90-day period preceding the Petition Dates (the "Preference Period"), Dominion received five transfers totaling $2,008,709.03 (the "Transfers") from the Bank Account as payment for prior electricity services provided to the Mining Facility. Additionally,

11

Dominion applied a portion of the Security Deposit against the outstanding balance owed for electricity services to the Mining Facility during the Preference Period and ultimately applied the remainder of the Security Deposit to pay a portion of the outstanding, pre-bankruptcy balance for electricity services.

23.     On or about April 10, 2021, the Trustee commenced the Dominion Adversary by filing a complaint [**Docket No. 1 in Adv. No. 21-00055**] principally seeking to avoid the Transfers under Section 547 of the Bankruptcy Code. In the Dominion Adversary, the Trustee asserts three alternative claims brought on behalf of, respectively, BC Holding, BC Mining, and any potential or eventual substantively consolidated estate of the Debtors.

24.     Dominion filed an answer, denies certain allegations and asserts various affirmative defenses.

25.     With the Court's approval, the Trustee and Dominion submitted their disputes to voluntary mediation and recently entered, subject to the Court's authorization and approval, into a settlement agreement under which Dominion will make a settlement payment of $700,000.00 to the Trustee. The Trustee has filed a motion requesting that the Court approve the settlement that will be presented on June 22, 2022.

## Relief Requested

26.     Subject to the Court's approval, the Trustee will receive settlement proceeds of $700,000.00 from Dominion.[6]

---

[6] The Trustee intends to file a motion seeking to substantively consolidate the Debtors' estates in the near future. In the Dominion Adversary, the Trustee asserted alternative theories on behalf of each of the estates of BC Holding and BC Mining as well as any substantively consolidated estate that may be created in the future. In the event that these estates are not and do not become substantively consolidated, then the Trustee will seek authority to allocate the settlement proceeds between the two estates in a reasonable manner.

27. The total expenses related to the Dominion Adversary were $3,363.65 comprised of: (i) $3,000 for the mediator's fee, paid by the Trustee; (ii) $350.00 for the filing fee related to the Dominion Adversary, paid by MPS; and (iii) $13.65 in charges related to serving the summons and complaint on Dominion, paid by MPS.

28. After deducting for these expenses, the net proceeds of the settlement with Dominion are $696,636.35.

29. MPS now seeks the Court's approval of $232,188.90 (i.e. 33.33% of the net settlement proceeds) in compensation under the contingent fee schedule and reimbursement of expenses totaling $363.65 related to the Dominion Adversary.

**Summary of MPS' Services Related to Dominion Adversary**

30. Starting in or around June 5, 2020, MPS began investigating the facts and circumstances related to potential claims against Dominion.

31. In connection with this investigation, MPS:

   a. reviewed the Debtors' operating agreements and corporate records, minutes of meetings of BC Holding's board of managers and materials used to obtain capital from investors, bank records, contracts with customers and vendors (including, but not limited to, Dominion, and many specifically related to the Mining Facility), financial records and tax returns, press releases and public statements by the Debtors, and other documents obtained from the Debtors and third parties;

   b. spoke with or interviewed Mike Adolphi (former chairman of BC Holding's Board of Managers), Tom Flake (former CEO and COO of BC Holding), Fred

    Grede (former CEO of BC Holding), Ann Cresce (former General Counsel of BC Holding) and BC Holding's former controller;

 c. reviewed numerous documents and pleadings filed by the Debtors, related orders of the Court as well as transcripts of depositions taken and hearings held during the Chapter 11 portion of these bankruptcy cases; and

 d. prosecuted a motion to conduct an examination of Dominion under Rule 2004 and reviewed certain records informally obtained from Dominion.

 32. Additionally, MPS researched numerous theories and potential claims against Dominion, potential defenses, and the potential impact of substantive consolidation on each of these claims and defenses. Given the unique facts involved, many theories, including those ultimately asserted in the Dominion Adversary, involve the Bankruptcy Code and the overlay of Illinois law (where the Bank Account was located from December 2019 through the Preference Period) and Virginia law (where the Bank Account was previously located and where Dominion and the Mining Facility were located), including, without limitation, the equitable doctrines of constructive trust, resulting trust, and similar equitable theories, piercing the corporate veil, alter ego, dominion and control, instrumentality and similar concepts, conflicts of laws issues, and various state statutes governing accounts and limited liability companies.

 33. MPS prepared a detailed, day-by-day analysis (the "Daily Analysis") of the entire history of the Debtors' relationship with Dominion, including, without limitation, the estimated daily usage of electricity services at the Mining Facility and the dollar value of such services on a daily basis, Dominion's secured position (i.e. over secured or under secured and an estimate of the amount of over security or under security) for each day during the relationship, all of the payments to Dominion, including, but not limited to, the Transfers, Dominion's application of

the pre-bankruptcy Security Deposit, and the impact of various anticipated defenses under Section 547 of the Bankruptcy Code.

34. Many of these anticipated issues are disputed in the Dominion Adversary, including, but not limited to, whether:

  a. payments from the Bank Account were made of property of BC Mining under Sections 541 and 547(b) of the Bankruptcy Code;

  b. payments from the Bank Account paid antecedent debts of BC Holding under Section 547(b);

  c. the debts for electricity services to the Mining Facility were antecedent debts of BC Holding under Section 547(b) and Section 101 of the Bankruptcy Code;

  d. substantive consolidation would have any impact on the claims asserted in the Adversary Proceeding;

  e. substantive consolidation would have any impact on Dominion's affirmative defenses;

  f. BC Mining had an interest in BC Holding's Bank Account under applicable state law;

  g. Dominion is a creditor of BC Holding;

  h. the doctrines of alter ego, domination and control, veil piercing and other similar doctrines would have any impact on the above issues;

  i. Illinois or Virginia law applies;

  j. Dominion was over or under secured at different points in time during the Preference Period;

15

  k. Dominion's application of a portion of the security deposit impacted its affirmative defenses; and

  l. Dominion's asserted subsequent new value is required to "remain unpaid."

35. There are no controlling precedents addressing many of these issues and Illinois and Virginia law differ with respect to certain theories. Further, the courts of appeal do not agree on important aspects related to Dominion's subsequent new value affirmative defense.

36. MPS prepared and filed the Trustee's complaint and all other documents filed by the Trustee in the Dominion Adversary or submitted to the mediator. MPS also reviewed all documents filed by Dominion.

37. MPS and Dominion's counsel engaged in informal discovery and discussions that ultimately led to the preparation of a lengthy and complicated stipulation of numerous, but not all, facts related to the Transfers. There were numerous discrepancies between and among the Debtors' and Dominion's records as well several corrective entries in the records, requiring extensive work to resolve those discrepancies in the parties' stipulation and to account for those issues in the Daily Analysis.

38. In connection with the mediation, MPS identified and contacted several potential mediators, prepared draft mediation agreements[7] and prepared the related motions authorizing the mediation and approving the final mediation agreement and payment of the mediator's fee. MPS also prepared a detailed confidential mediation statement with detailed exhibits for the mediator and prepared a strategy for the mediation along with internal materials for use during the mediation (this was complicated by the fact that Dominion refused to make a settlement proposal prior to the mediation). Finally, MPS represented the Trustee at the mediation.

---

[7] One potential mediator withdrew from consideration during the process of negotiating an agreement with the Trustee and Dominion.

16

39. Following the mediation, MPS prepared and negotiated the Settlement Agreement with Dominion and prepared and filed the Settlement Motion.

40. All of these services were rendered to and for the benefit of these bankruptcy estates, which will directly benefit from the $700,000 in settlement proceeds from the Dominion Adversary.

**The Requested Compensation Should Be Awarded Under the Contingent Fee Agreement**

41. Pursuant to the Contingent Fee Order, the Trustee retained MPS to represent the Trustee in the Dominion Adversary under the terms of the Contingent Fee Agreement.

42. Section 328(a) specifically authorizes retention of professionals, with the Court's approval, under Section 327[8] "on any reasonable terms and conditions of employment, including . . . a fixed or percentage fee basis, or on a contingent fee basis" and expressly provides that " the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions."

43. Therefore, further analysis of the reasonableness of MPS' requested Compensation is not necessary. *See Unsecured Creditors' Comm. v. Puget Sound Plywood*, 924 F.2d 955, 960 (9th Cir. 1991) (holding that Section 328 applies when the bankruptcy court approved a particular rate of compensation or means of payment, and Section 330 applies when the bankruptcy court did not); *Peele v. Cunningham (In re Texas Sec., Inc.)*, 218 F.3d 443, 445-446 (5th Cir. 2000) ("If prior approval is given to a certain compensation, § 328 controls and the court starts with that approved compensation, modifying it only for developments unforeseen when originally

---

[8] Section 327 generally authorizes the Trustee to retain professionals to represent the Trustee provided that such professionals do not hold an interest adverse to the Debtors' estates and are "disinterested."

17

approved.") (quoting *Matter of National Gypsum Co. v. Donaldson Lufkin & Jenrette Securities Corp.*, 123 F.3d 861, 862-863 (5th Cir. 1997).

44. Courts have held that a contingent fee arrangement may be disregarded only "if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." *Riker, Danzig, Hyland & Perretti v. Official Comm. Of Unsecured Creditors (In re Smart World Techs., LLC)*, 552 F.3d 228, 232 (2nd Cir. 2009) ("*Smart World*"); *see also In re Birch Grove Landscaping & Nursery, Inc.*, 603 B.R. 874, 877 (Bankr. W.D.N.Y. 2019) (same).

45. Absent rare circumstances when intervening events were truly not capable of being anticipated, a second reasonableness review under Section 330 is not proper. *See Paloian v. Grupo Serla S.A. de C.V.*, 433 B.R. 19, 45 (N.D. Ill. 2010); *In re River Rd. Hotel Partners, LLC*, 536 B.R. 228, 235-236 (Bankr. N.D. Ill. 2015); *In re Prod. Assocs., Ltd.*, 264 B.R. 180, 186 (Bankr. N.D. Ill. 2001); *In re Begun*, 162 B.R. 168, 178 (Bankr. N.D. Ill. 1993); *see also Houlihan, Lokey, Howard & Zukin Capital, Inc. v. NorthWestern Corp. (In re NorthWestern Corp.)*, 332 B.R. 534, 537 (D. Del. 2005); *ASARCO, L.L.C. v. Barclays Capital, Inc. (In re ASARCO, L.L.C.)*, 702 F.3d 250, 258 (5th Cir. 2012).

46. The requested Compensation is calculated based purely on the terms of the Contingent Fee Agreement and no unusual or unanticipated circumstances have arisen. Therefore, MPS asserts that the requested Compensation should be approved at this time for payment out of the $700,000 of settlement proceeds.

47. Although some courts have questioned whether the reimbursement of expenses is governed by Section 328 or Section 330, *see In re John Q. Hammons Fall 2006, LLC*, 600 B.R. 436, 448-450 (Bankr. D. Kan. 2019), the $363.65 in expenses for which MPS seeks reimbursement

18

were directly related to the filing of the Dominion Adversary and accomplishing service on Dominion. These expenses are reasonable and clearly necessary to realize benefit from the Dominion Adversary for the Debtors' estates.

48.　As such, to the extent that reimbursement of these expenses may not have been previously approved, MPS requests that the Court approve the requested Expense Reimbursement at this time under Section 330.

### Request to Shorten and Approve Form of Notice

49.　Sections 330 and 331 of the Bankruptcy Code require notice and a hearing before any compensation may be approved. In compliance with these sections and Federal Rule of Bankruptcy Procedure 2002, MPS has mailed a copy of a notice (the "Initial Notice") of this Application to all creditors and parties in interest listed in the Debtors' schedules or that filed claims with the Court 21-days prior to the initial hearing. However, MPS realized that the Initial Notice contained a mathematical error. Therefore, MPS has mailed a copy of a notice (the "Amended Notice") correcting this error to all creditors and parties in interest 20 days prior to the scheduled presentment hearing on this Application. A true and correct copy of the Amended Notice is attached hereto as Exhibit 1.

50.　Additionally, MPS has provided a full copy of this Application with all exhibits to all parties who have entered an appearance in these cases through the Court's ECF system and will make a copy of this Application with all supporting exhibits available to any party in interest that submits a written request to Michael M. Schmahl via mail to MPS at 70 W. Hubbard, Suite 304, Chicago, IL 60654, or via email sent to mschmahl@mps-law.com.

WHEREFORE, MPS respectfully requests that this Court enter an order: (i) allowing MPS Compensation in the amount of $232,188.90; (ii) allowing the Expense Reimbursement in the

19

amount of $363.65; (iii) authorizing the Trustee to immediately pay the Compensation and Expense Reimbursement to MPS from the $700,000 of settlement proceeds obtained from Dominion; (iv) authorizing and approving the form of Notice and shortening notice by one day; and (v) granting such other and further relief as this Court deems just or appropriate.

Dated: June 2, 2022

/s/ Michael M. Schmahl
Michael M. Schmahl
Mason Pollick & Schmahl LLC
70 W. Hubbard, Suite 304
Chicago, IL 60654
(312) 312-5531
mschmahl@mps-law.com
ARDC #6275860
*Counsel for the Trustee*