**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| **BCause Mining LLC,** *et al.* | ) | Case No. 19-10562 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Hon. Janet S. Baer |
| | ) | |

**NOTICE OF MOTION**

**TO:**   See attached list

PLEASE TAKE NOTICE that on Wednesday, **June 22, 2022**, at the hour of **10:00 a.m.**, I will appear before the Honorable Janet S. Baer, United States Bankruptcy Judge or any judge sitting in that judge's place, and present the **SECOND INTERIM APPLICATION FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES OF MOGLIA ADVISORS AS FINANCIAL ADVISOR TO THE TRUSTEE AND TO SHORTEN NOTICE** (the "Motion"), a copy of which is attached.

**This motion will be presented and heard electronically using Zoom for Government**. No personal appearance in court is necessary or permitted.  To appear and be heard on the Motion you must do the following:

**To appear by video**, use this link: https://www.zoomgov.com/.  Then enter the meeting ID and password.

**To appear by telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666.  Then enter the meeting ID and password.

**Meeting ID and password**.  The meeting ID for this hearing is 160 731 2971 and the password is 587656.  The meeting ID and password can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date.  If a Notice of Objection is timely filed, the motion will be called on the presentment date.  If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

Dated:  June 2, 2022

Alex Moglia, Chapter 7 Trustee of the
Bankruptcy Estates of BCause Mining LLC
and BCause LLC

By: /s/ Michael M. Schmahl
      Michael M. Schmahl

Michael M. Schmahl
MASON POLLICK & SCHMAHL LLC
70 W. Hubbard, Suite 304
Chicago, Illinois  60654
(312) 312-5531
mschmahl@mps-law.com

## **CERTIFICATE OF SERVICE**

The undersigned states that on June 2, 2022, he caused the above Notice of Motion and the Motion to be served on the individuals listed on the below service list via the court's ECF system for those who are registered except for the individuals or entities that are identified to have been served by email who the undersigned caused to be served by email as indicated on the attached service list.

By: /s/ Michael M. Schmahl
Michael M. Schmahl

## SERVICE LIST

Patrick S. Layng
Ha M. Nguyen
Office of the U.S. Trustee
219 S. Dearborn Street
Room 873
Chicago, IL 60604
Ha.nguyen@usdoj.gov
*United States Trustee*

John M Craig
Law Firm of Russell R Johnson III, PLC
14890 Washington Street
Haymarket, VA 20169
russell@russelljohnsonlawfirm.com
*Counsel for Dominion Energy Virginia*
*Via e-mail*

David A Agay
Maria G Carr
Shara C Cornell
McDonald Hopkins LLC
300 N. LaSalle
Chicago, IL 60654
312-280-0111
dagay@mcdonaldhopkins.com
mcarr@mcdonaldhopkins.com
scornell@mcdonaldhopkins.com
*Counsel for WESCO Distribution, Inc.*

Shelly A. DeRousse
Devon J Eggert
Elizabeth L Janczak
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606
312-360-6315
312-360-6520 (fax)
sderousse@freeborn.com
deggert@freeborn.com
ejanczak@freeborn.com
*Counsel for Creditors' Committee*

J Mark Fisher
Sarah K Angelino
Schiff Hardin LLP
233 South Wacker Drive
Suite 7100
Chicago, IL 60606
(312) 258-5861
mfisher@schiffhardin.com
sangelino@schiffhardin.com
Dennis Lewandowski, via email sent to:
dtlewand@kaufcan.com
*Counsel for Hoffland Properties, Inc.*

Russell R. Johnson, III
John M. Craig
Law Firm of Russell R Johnson III, PLC
2258 Wheatlands Drive
Manakin Sabot, VA 23103
804-749-8861
russell@russelljohnsonlawfirm.com
john@russelljohnsonlawfirm.com
*Counsel for Dominion Energy Virginia*
*Via e-mail*

Marc Ira Fenton
Jamie L Burns
Levenfeld Pearlstein LLC
2 N Lasalle St Ste 1300
Chicago, IL 60602
312-346-8380
mfenton@lplegal.com
jburns@lplegal.com

Brian L Shaw
Christina Sanfelippo
Fox Rothschild LLP
321 N Clark Street
Suite 1600
Chicago, IL 60654
312-517-9200
312-517-9201 (fax)

*Counsel for W-R2 Jefferson Owner VIII, LLC*

bshaw@foxrothschild.com
csanfelippo@foxrothschild.com
*Counsel for BMG Operations Ltd.*

Jennifer M McLemore
Williams Mullen
200 South 10th Street
Richmond, VA 23219
(804)420-6330
jmclemore@williamsmullen.com
*Counsel for BMG Operations Ltd.*
*Via e-mail*

Jason M Torf
Ice Miller LLP
200 W. Madison St.
Suite 3500
Chicago, IL 60606
312-726-6244
312-726-6214 (fax)
jason.torf@icemiller.com
*Counsel for Dominion Energy Virginia*

Jason M Torf
Ice Miller LLP
200 W. Madison St.
Suite 3500
Chicago, IL 60606
312-726-6244
312-726-6214 (fax)
jason.torf@icemiller.com
*Counsel for Dominion Energy Virginia*

Scott R Clar
Arthur G Simon
Jeffrey C Dan
Crane, Simon, Clar & Dan
135 S Lasalle Suite 3705
Chicago, IL 60603
312 641-6777
312 641-7114 (fax)
sclar@cranesimon.com
asimon@cranesimon.com
jdan@cranesimon.com
*Counsel for the Debtors*

Debra Devassy Babu
Askounis & Darcy, PC
444 N. Michigan Avenue
Suite 3270
Chicago, IL 60611
312-784-2400
312-784-2410 (fax)
ddevassy@askounisdarcy.com
*Counsel for CCA Financial, LLC*

Lindsey Conley
Hinshaw & Culbertson LLP
151 N. Franklin Street, Suite 2500
Chicago, IL 60606

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
(EASTERN DIVISION)

| | |
|---|---|
| In re: | ) Chapter 7 ) ) Case No. 19-10562 |
| BCause Mining LLC, *et al.* | ) (Jointly Administered) ) |
| Debtors. | ) Hon. Janet S. Baer ) |

**COVER SHEET FOR SECOND INTERIM APPLICATION FOR ALLOWANCE OF
COMPENSATION AND REIMBURSEMENT OF EXPENSES TO
MOGLIA ADVISORS AS FINANCIAL ADVISOR TO CHAPTER 7 TRUSTEE
AND TO SHORTEN NOTICE**

| Name of Applicant: | Moglia Advisors |
|---|---|
| Authorized to Provide Professional Services to: | Alex Moglia, not personally, but solely as the chapter 7 trustee of the bankruptcy estates of BCause LLC and BCause Mining LLC |
| Date of Order Authorizing Employment: | October 15, 2020 (effective as of October 11, 2019) **[Docket No. 456]** |
| Period for which Compensation is Sought: | |
| From: | January 1, 2021 |
| Through: | April 12, 2022 |
| Amount of Fees Sought: | $9,645.00 |
| Amount of Expense Reimbursement: | $1,789.95 |
| This is an: | |
| Interim Application: YES | Final Application: NO |
| | |

If this is not the first application filed herein by this professional, disclose as to all prior fee applications:

| Date Filed | Period Covered | Total Requested (Fees & Expenses) | Total Allowed (Fees & Expenses) | Fees & Expenses Previously Paid |
|---|---|---|---|---|
| February 18, 2021 **[Docket No. 467]** | 10/11/2019 – 12/31/2020 **[Docket No. 467]** | Fees: $16,280; Exp.: $1,929.17; Total: $18,209.17 **[Docket No. 467]** | $18,209.17 **[Docket No. 474]** | $19,292.01 (includes additional $1,087.84 expenses approved by prior order of the Court **[Docket No. 409]**) |
| | | | | |

5

State the aggregate amount of fees and reimbursement of expenses paid to Applicant as of the date of this Application: $19,292.01.

                                          MASON POLLICK & SCHMAHL LLC

Dated: June 2, 2022                       /s/ Michael M. Schmahl
                                                      Michael M. Schmahl
                                                      Mason Pollick & Schmahl LLC
                                                      70 W. Hubbard, Suite 304
                                                      Chicago, IL 60654
                                                      (312) 312-5531
                                                      mschmahl@mps-law.com
                                                     ARDC #6275860
                                                     *Counsel for the Trustee*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | ) Chapter 7 |
| | ) |
| BCause Mining LLC, *et al.* | ) Case No. 19-10562 |
| | ) (Jointly Administered) |
| | ) |
| | ) Honorable Janet S. Baer |
| | ) |
| | ) |
| | ) Hearing Date: June 22, 2022 |
| Debtors. | ) Hearing Time: 10:00 A.M. |

**SECOND INTERIM APPLICATION FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES TO MOGLIA ADVISORS AS FINANCIAL ADVISOR TO CHAPTER 7 TRUSTEE AND REQUEST TO SHORTEN NOTICE**

Pursuant to 11 U.S.C. §§ 330 and 331, Moglia Advisors ("**MA**"), respectfully requests that this Court enter an order allowing $9,645.00 in compensation for financial advisory services rendered by MA to the Trustee, and $1,789.95 in reimbursement of expenses related to the same (the "**Application**"), for the period January 1, 2021, through April 12, 2022 (the "**Compensation Period**"). In support of this Application, MA respectfully states as follows:

**JURISDICTION**

1. The Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

**BACKGROUND**

1. On April 11 and 12, 2019, respectively, BCause Mining LLC and BCause LLC ("the Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (Doc No. 1).

7

2. On October 8, 2019 (the "Conversion Date"), the Court converted these cases to cases under Chapter 7 of the Bankruptcy Code (Docket No. 319).

3. On October 11, 2019, the U.S. Trustee appointed Alex D. Moglia as trustee ("Trustee") (Doc No. 334).

4. On October 15, 2020, the Court entered an order approving MA's retention by the Trustee effective as of October 11, 2019.

5. On or about March 10, 2021, the Court entered an order [**Docket No. 474**] granting MA's First Interim Application for Compensation and Reimbursement of Expenses and allowed interim compensation in the amount of $16,280.00 and reimbursement of expenses in the amount of $1,929.17 to MA.[1]

6. These cases have presented and continue to present the Trustee with unique challenges. The Debtors did not appear to have anticipated the occurrence of the conversion of the cases to Chapter 7 cases under the U.S. Bankruptcy Code, the Debtors' financial books of account were not up-to-date, the employees had not been properly informed about the situation of the companies, the bankruptcy process, and the role of the Trustee, various employment tax records had not been prepared or filed with several states, and the Debtors' customers had significant numbers of computers and other equipment that, in many cases, needed to be separated from the Debtors' equipment and removed from the data center in Virginia Beach, VA.

7. These circumstances were exacerbated by the facts that: (i) certain of the Debtors' former employees were reluctant to assist the Trustee as they asserted that they were owed money by the Debtors; and (ii) WESCO's disputed lien on the money in these estates, although now settled, required the Trustee to negotiate extensively with WESCO and obtain Court

---

[1] In a prior order [**Docket No. 409**], the Court authorized the reimbursement of certain estimated expenses of up to $2,200 to MA. Pursuant to that order, MA was reimbursed certain expenses in the actual amount of $1,087.84.

approval for the use of cash collateral in order to address the Debtors' failures to prepare for the conversion of these cases to Chapter 7 cases and to complexities of maintaining the data center for a limited period of time.

8. Nonetheless, starting immediately after his appointment, the Trustee with the active assistance of MA, expeditiously assessed the feasibility of liquidating the Debtors' equipment located in the data center, as well as certain other assets, including, without limitation, Bitcoin funds and certain customized but incomplete software and related intellectual property related to a cryptocurrency exchange that was planned but never launched.

9. In order to meet the Trustee's obligations, MA created various projections and cost estimates used to make decisions.

10. Due to time constraints imposed on the Trustee and his counsel, the Trustee asked certain accounting professionals and paraprofessionals at MA to prepare certain analyses to assist the Trustee in fulfilling his duties including, but not limited, gathering information to respond to certain creditor inquiries and prepare taxes, evaluating potential ranges of costs related to litigation, including potential amounts of expert witness fees, and to maintain the accounting records for the estates.

**SUMMARY OF THE SERVICES RENDERED BY
MA TO THE TRUSTEE DURING THE COMPENSATION PERIOD**

11. The total fees requested by MA for financial advisory services rendered to the Trustee during the Compensation Period aggregate to $9,645.00. A breakdown of this amount by each MA professional, including such professional's title, hourly rate, and total hours expended in providing financial advisory services is as follows:

| PROFESSIONAL | TITLE | HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Jill K. Niese | Managing Director | $400 | 21.10 | $8,440.00 |

9

| Michele Springer | Administrative Advisor | $400 | 1.70 | $680.00 |
| Karen Nandapreecha | Support Staff | $150/$175 (hourly rate changed on January 11, 2021) | 3.10 | $525.00 |
| **TOTAL** | | | **25.90** | **$9,645.00** |

12. The hourly rates sought in this Application are the standard hourly rates charged by MA for similar or identical services provided by these in other bankruptcy or non-bankruptcy matters and cases during the Compensation Period.

13. MA made reasonable efforts to have the services it rendered to the Trustee performed by those qualified personnel and paraprofessionals charging the lowest hourly rates, consistent with the level of service, experience, and efficiency required of a given task.

14. All of the fees and expenses for which MA requests interim allowance and payment of compensation and reimbursement of expenses related to the Compensation Period were rendered or incurred in connection with the above-captioned cases, at the Trustee's request, and in the discharge of MA's professional responsibilities as financial advisor to the Trustee. MA respectfully submits that the financial advisory services that it provided to the Trustee during the Compensation Period were, in all respects, reasonable, necessary, and beneficial to these bankruptcy estates.

## SUMMARY BY CATEGORY OF SERVICES RENDERED

15. MA maintains written records of the time expended by its professionals. These time records are prepared and maintained contemporaneously with the rendering of financial advisory services by each MA professional. MA does not seek any compensation for services provided by the Trustee.

16. A detailed Time Statement, attached hereto as **Exhibit A**, sets forth the financial advisory services rendered to the Trustee during the Compensation Period for which MA seeks compensation. Additionally, each category of financial advisory services provided by MA is summarized below.

Accounting and Auditing (3.30 hours valued at $1,320.00)

17. During the First Application Period, MA expended 3.30 hours with a value of $1,320.00 on matters related to Accounting & Auditing. **Exhibit A, pages 1 through 2,** contains detailed descriptions of the time entries attributable to this category of services.

18. A summary of professionals providing services in this category during the First Application Period, each such professional's title, hourly rate, and total hours expended on financial advisory services in this category during the First Application Period, and the value attributable to these services, is as follows:

| PROFESSIONAL | TITLE | HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Jill Niese | Managing Director | $400 | 3.30 | $1,320.00 |
| **TOTAL** | | | **3.30** | **$1,320.00** |

Case Administration (10.20 hours valued at $3,990.00)

19. During the Compensation Period, MA assisted the Trustee with reporting obligations related to the sale of assets, including the Debtors' Bitcoin, addressing various accounting concerns between the Debtors different estates, obtaining information from and maintaining access to the Debtors' financial records from QuickBooks, and responding to certain creditors. Additionally, Case Administration was used to record time for services that did not lend themselves to a specific category.

20. These services are specifically described in pages 2 through 5 of **Exhibit A** and summarized in the table below.

11

| PROFESSIONAL | TITLE | HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Jill Niese | Managing Director | $400 | 8.10 | $3,2400.00 |
| Michele Springer |  | $400 | 1.70 | $680.00 |
| Karen Nandapreecha | Support Staff | $150/$175 (hourly rate changed on January 11, 2021) | .40 | $70.00 |
| TOTAL |  |  | 10.20 | $3,990.00 |

Fee Applications/Employment (7.80 hours valued at $2,495.00)

21.     MA gathered information for MA's first interim fee application and the Trustee's first interim fee application, reviewed and commented on drafts related to same, and communicated with Trustee's counsel related to same.

22.     During the Compensation Period, MA expended a total of 7.80 hours with a value of $2,495 in services related to case administration which are specifically described in pages 5 through 6 of **Exhibit A** and summarized in the table below.

| PROFESSIONAL | TITLE | HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Jill Niese | Managing Director | $400 | 5.10 | $2,040.00 |
| Karen Nandapreecha | Support Staff | $150/$175 (hourly rate changed on January 11, 2021) | 2.70 | $455.00 |
| TOTAL |  |  | 7.80 | $2,495.00 |

Litigation (2.70 hours valued at $1,080.00)

23.     MA worked with the Trustee and his counsel in connection with the Trustee's two adversary proceedings against BMG and Dominion Energy. Specifically, reviewed and commented on certain portions of various drafts of the Trustee's stipulation with Dominion, participated in evaluating potential mediators and the creation of certain aspects of strategy for the mediation with Dominion and reviewed the draft settlement motion related to the resolution

12

of disputes with BMG. During the Compensation Period, MA expended a total of 2.70 hours with a value of $1,080.00 in services related to litigation, which are specifically described in page 6 of **Exhibit A** and summarized in the table below.

| PROFESSIONAL | TITLE | HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Jill Niese | Managing Director | $400 | 2.70 | $1,080.00 |
| **TOTAL** | | | **2.70** | **$1,080.00** |

Tax Issues (1.90 hours valued at $760.00)

24. During the First Application Period, MA expended 1.90 hours with a value of $760.00 on matters related to Fee Application that are specifically described on pages 6 and 7 of **Exhibit A** and summarized in the table below.

| PROFESSIONAL | TITLE | HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Jill Niese | Managing Director | $400 | 1.90 | $760.00 |
| **TOTAL** | | | **1.90** | **$760.00** |

**Expenses**

25. During the Compensation Period, MA incurred a total of $1,789.95 in expenses in connection with the financial advisory services that it rendered during the Compensation Period. These expenses are entirely comprised of fees charged to maintain access to the Debtors' financial records, which the Debtors maintained on Quickbooks, as well as various fees charged by Quickbooks related to issuing and filing form W2s and similar items. Page 7 of **Exhibit A** details the each of the specific expenses paid by MA in conjunction with the services provided to the Trustee for which MA seeks reimbursement.

**THE REQUESTED COMPENSATION SHOULD BE ALLOWED**

26. The professional services provided by MA during the Compensation Period were necessary and appropriate to assist the Trustee with the administration of these estates and in the

13

best interests of the creditors and parties in interest. The compensation requested for the services performed is commensurate with the complexity, importance and the nature of the problems, issues or tasks involved. MA has undertaken significant efforts to ensure that the professional services were performed in an efficient manner without duplication of effort.

27.　Section 330 of the Bankruptcy Code provides that the Court may award a professional employed under Section 327 of the Bankruptcy Code for "reasonable compensation for actual and necessary services rendered …." 11 U.S.C. § 330(a)(1). Further, Section 330 of the Bankruptcy Code sets forth guidelines for the Court to consider for the award of compensation and reimbursement of expenses:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, the extent, and the value of such services, taking into account all relevant factors including:
>
> (A)　the time spent on such services;
>
> (B)　the rates charged for such services;
>
> (C)　whether the services were necessary to the administration of, or beneficial at the time at which service was rendered toward completion of, a case under this title;
>
> (D)　whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed;
>
> (E)　with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F)　whether compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

14

11 U.S.C. § 330(a)(3).

28.     In determining the reasonableness of hourly billing rates and the number of hours expended in providing professional services, the Seventh Circuit has used "[the] 'lodestar' approach – multiplying the number of actual and necessary hours *reasonably* expended by a reasonable hourly rate …." In re Wildman, 72 B.R. 700, 712 (Bankr. N.D. Ill. 1987). While the lodestar approach is a good starting point, other factors should be considered in deciding whether the compensation sought is reasonable. Id.

29.     When analyzing whether a professional's hourly billing rate is reasonable, the Seventh Circuit has held that:

> [T]he best measure of [a professional's] time is what that [professional] could earn from paying clients. For a busy [professional], this is the standard rate. If he [or she] were not representing this plaintiff in this case, the [professional] could sell the same time to someone else. That person's willingness to pay establishes the market's valuation of the [professional's] services.

In re Farley, Inc., 156 B.R. 203, 211 (Bankr. N.D. Ill. 1993) quoting Gusman v. Unisys Corp., 986 F.2d 1146, 1150 (7th Cir. 1993). Therefore, when applying the "lodestar" approach, the reasonable hourly rate is presumed to be the professional's normal billing rate. See Pressley v. Haeger, 977 F.2d 295, 299 (7th Cir. 1992) ("It is not the function of judges in fee litigation to determine the equivalent of the medieval price. It is to determine what the [professional] would receive if he [or she] were selling his [or her] services in the market rather than being paid by a court order.") (internal quotation marks and citation omitted).

30.     The rates charged by MA in this case are its standard rates for any bankruptcy matter. The rates charged by MA are consistent with the reasonable and customary hourly rates charged by other financial advisors throughout the country in matters of similar complexity, scope and significance. As detailed above and in the exhibits hereto, MA professionals

15

performed services and billed 25.90 hours of time during the Compensation Period totaling $9,645.00 in fees. MA's average hourly billing rate for its professionals during this Compensation Period (its "lodestar" rate) was $372.39.

31. MA respectfully submits that the services for which it is seeking compensation in this First Application were necessary to the Trustee's efforts in administering the Debtors' estates and beneficial to, and in the best interests of, the Debtors' creditors, parties in interest, and these estates. The compensation sought is reasonable in light of the nature, extent and value of such services provided to the Trustee.

32. The Court may award a professional employed under Section 327 of the Bankruptcy Code its "reimbursement for actual necessary expenses." 11 U.S.C. § 330(a)(1)(B). "An expense is necessary if it was incurred because it was required to accomplish the proper representation of the client." In re Spanjer Bros., Inc., 191 B.R. 738, 749 (Bankr. N.D. Ill. 1996); See In re Wildman, 72 B.R. 700, 731 (Bankr. N.D. Ill. 1987).

33. MA has requested reimbursement only for actual and necessary expenses incurred on behalf of the Trustee. These expenses were incurred because they were required to accomplish the proper representation of the Trustee in the matter.

34. MA requests the allowance and immediate payment of all fees and expenses sought in the Compensation Period from the $193,493.88 currently in the bank account for the BCause LLC estate

### Request to Approve Form of Notice

35. Sections 330 and 331 of the Bankruptcy Code require notice and a hearing before any determination is made on this Application. In compliance with these sections and Federal Rule of Bankruptcy Procedure 2002, MA has mailed a copy of the notice (the "Notice") of this

Application to all creditors and parties in interest listed in the Debtors' schedules or who filed claims against the Debtors at least 21-days prior to the hearing on this Application. A copy of the Notice is attached hereto as Exhibit B.

36. Additionally, the Trustee provided a full copy of this Application with all exhibits to all parties who have entered an appearance in these cases through the Court's ECF system 20-days in advance of the hearing on this Application. This resulted from a miscommunication by the notice service used to mail the Notice to creditors and parties in interest that resulted in uncertainty as to whether an amended notice changes to this Application would become required. Fortunately, the Notice was mailed properly but the filing of this Application was delayed by one day. As such, MA respectfully requests that notice be shortened by one day as parties receiving notice through the ECF system received 20-day notice.

37. MA will also make a copy of this Application with all supporting exhibits available to any party in interest that submits a written request to Michael M. Schmahl via mail to MPS at 70 W. Hubbard, Suite 304, Chicago, IL 60654, or via email sent to mschmahl@mps-law.com.

WHEREFORE, MA respectfully requests: (i) allowance of compensation for professional services rendered during the Compensation Period in the amount of $9,645.00; (ii) allowance for actual and necessary expenses MA incurred during the Compensation Period in the amount of $1,789.95; (iii) authorization for the Trustee to immediately pay these amounts to MA; (iv) authorizing and approving the form of the Notice; and (v) granting such further relief as the Court deems is just and appropriate.

Respectfully submitted,

Dated: June 2, 2022               By: /s/ Michael M. Schmahl

Michael M. Schmahl
MASON POLLICK & SCHMAHL, LLC
70 W. Hubbard, Suite 304
Chicago, Illinois 60654
(312) 312-5530 telephone
*Counsel for the Chapter 7 Trustee*