## **EXHIBIT 1**

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered by and among Dawn Chapman ("Chapman") and Alex D. Moglia ("Moglia" or the "Trustee"), not personally or individually, but solely as the chapter 7 trustee of the substantively consolidated bankruptcy estate of BCause Mining LLC ("BC Mining") and BCause LLC ("BC" and, collectively with BC Mining, the "Debtors").  For ease of reference, Chapman and the Trustee may be collectively referred to herein as the "Parties" and each as a "Party".

WHEREAS, on or about April 11, 2019 (the "BC Mining Petition Date"), BC Mining filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and thereby commenced the bankruptcy case captioned *In re BCause Mining LLC,* that is currently pending before the United States Bankruptcy Court for the Northern District of Illinois (Eastern Division) (the "Court") as Case No. 19-10562 (the "BCM Case"); and

WHEREAS, on or about April 12, 2019 (the "BC Petition Date" and, collectively with the BC Mining Petition Date, the "Petition Dates"), BC filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code and thereby commended the bankruptcy case captioned *In re BCause LLC*, that is currently pending before the Court as Case No. 19-10731 (the "BC Case", and, collectively with the BCM Case, the "Cases"); and

WHEREAS, the Court entered orders (i) jointly administering the Cases, (ii) converting the Cases to bankruptcy cases under chapter 7 of the Bankruptcy Code on October 8, 2019 (the "Conversion Date"), and (iii) substantively consolidating the Debtors' bankruptcy estates into a single bankruptcy estate; and

WHEREAS, Moglia was duly appointed and serves as the chapter 7 Trustee of the Debtors' consolidated bankruptcy estate; and

WHEREAS, prior to the Petition Dates and during the period from the Petition Dates until the Conversion Date, Chapman was employed by BC; and

WHERAS, Chapman timely filed the following proofs of claim (collectively, the "Chapman Claims"):

(a) The proof of claim that appears as claim number 24-1 ("Claim 24") on the Claims Register maintained by the Court in the BCM Case;

(b) The proof of claim that appears as claim number 25-1 ("Claim 25") on the Claims Register maintained by the Court in the BCM Case; and

(c) The proof of claim that appears as claim number 28-1 ("Claim 28") on the Claims Register maintained by the Court in the BC Case; and

WHEREAS, Claim 24 was filed as a general unsecured claim in the amount of $3,415.68 for unpaid wages for services provided to the Debtors during the period from September 28, 2019, through October 7, 2019 (the "Chapter 11 Period"); and

WHEREAS, through Claim 24 Chapman has informed the Trustee that Chapman intended to request the payment of and assert a claim for administrative expenses under Section 503 of the Bankruptcy Code that were purportedly incurred by the Debtors during the Chapter 11 Period in the amount of $3,415.68 (the "Ch. 11 Administrative Claim"); and

WHEREAS, Claim 25 was filed as a general unsecured claim in the amount of $4,554.24 for unpaid wages purportedly owed for services provided to the Debtors after the Conversion Date during the period of October 8, 2019, and October 10, 2019, through October 18, 2019 (the "Chapter 7 Period"); and

WHEREAS, through Claim 25 Chapman has informed the Trustee that Chapman intended to request the payment of and assert a claim for administrative expenses under Section 503 of the

Bankruptcy Code that were purportedly incurred by the Debtors during the Chapter 7 Period in the amount of $4,554.24 (the "Ch. 7 Administrative Claim"); and

WHEREAS, Claim 28 was filed in the amount of $10,153.94 for deferred compensation purportedly owed for services to the Debtors prior to the Petition Dates and is comprised of (i) a claim in the amount of $8,250.32 that Chapman asserts is entitled to priority under Section 507(a)(4) of the Bankruptcy Code, and (ii) a general unsecured claim not entitled to any priority in the amount of $1,903.62; and

WHEREAS, the Trustee disputes and has informally objected to the Chapman Claims; and

WHEREAS, the Parties wish to avoid the time, expense and uncertainties of litigation and desire to settle and finally resolve all disputes related to the Chapman Claims in accordance with the terms of this Agreement;

NOW, THEREFORE, in consideration of the mutual promises and covenants set forth herein, and other good and valuable consideration, the receipt and adequacy of which is expressly acknowledged by the Parties, the Parties hereby agree as follows:

1. **Recitals Incorporated**.  The recitals, prefatory phrases and paragraphs set forth above are hereby incorporated in full, and made a part of this Agreement, provided, however, that by such incorporation neither the Trustee nor Chapman intends to adopt nor shall be deemed to have adopted the claims, allegations or legal positions asserted, expressed or filed against such Party by the other Party in any matters described above.

2. **Court Approval Required**.  This Agreement shall not take force and effect unless and until the Court enters an order in the Bankruptcy Case after notice and a hearing, approving this Agreement and authorizing the Trustee to execute and perform his obligations under this Agreement (the "Settlement Approval Order") and the Settlement Approval Order has become a

"Final Order." For purposes of this Agreement, a "Final Order" is an order that is final for purposes of 28 U.S.C. §§158 and 1291, and is no longer subject to appeal or *certiorari* proceedings and no appellate or *certiorari* proceedings are pending. For the avoidance of doubt, the Settlement Approval Order shall become a Final Order in the event that no party files a notice of appeal related to the Settlement Approval Order within the time permitted under Federal Rule of Bankruptcy Procedure 8002. Except to the extent another date is specified with respect to the effectiveness of a particular provision of this Agreement, this Agreement shall take effect on the first day after the date the Settlement Approval Order has become a Final Order (the "Effective Date"). In the event that this Agreement is not approved by the Court in the Cases or the Settlement Approval Order does not become a Final Order, nothing herein shall be deemed a representation or admission by any Party as to any allegation or issue, and the Parties shall be returned to the status quo in effect prior to their entry into this Agreement.

3. **No Admissions of Liability**. The Parties acknowledge that this Agreement constitutes a resolution of disputed claims and the Parties do not intend, concede or admit any liability to the other, nor concede nor admit the viability of any claim or proof of claim or any objection thereto.

4. **Claim 24 (Ch. 11 Administrative Claim)**. Claim 24 shall be allowed and Chapman shall have an allowed and the Trustee will request that the Court enter an order, which order may be the Settlement Approval Order, allowing and authorizing payment of Claim 24 as a Ch. 11 Administrative Claim incurred by the Debtors after the Petition Dates and before the Conversion Date in the amount of $3,415.68 under Section 503 of the Bankruptcy Code (the "Allowed Ch. 11 Admin. Expense"), provided that any payment or distribution on account thereof shall be: (i) made at the time final distributions are made from the Debtors' consolidate bankruptcy

estate after approval of the Trustee's Final Report; (ii) subject to the provisions of the Bankruptcy Code, including, without limitation, the distribution priorities established under Sections 507 and 726 of the Bankruptcy Code; and (iii) subject to any employments taxes and any withholding or other similar obligations that may apply or be imposed under applicable law, including, without limitation, any applicable tax or employment law. Chapman understands and agrees that: (x) any payment or distribution to Chapman will be made at the time final distributions on account of proofs of claim are made in the Cases; (y) Claim 24, including Chapman's Allowed Ch. 11 Admin. Expense, has a lower priority than claims and expenses authorized, allowed or approved under Section 503 of Bankruptcy Code that are or were incurred or otherwise relate to the period starting on and after the Conversion Date; and (z) provided that there are sufficient funds in the Debtors' consolidated bankruptcy estate, any payment or distribution on account of Claim 24, including Chapman's Allowed Ch. 11 Admin. Expense, may be made, in part, to Chapman and, in part, to one or more state, federal and/or other governmental tax agencies, entities or bodies as may be required by applicable law.

5. **Claim 25 (Asserted Ch. 7 Administrative Claim)**. Claim 25 shall be disallowed and no distribution or other payment shall be made on account of Claim 25. The Trustee shall request, and Chapman shall consent and otherwise not object to or otherwise resist the Trustee's request, that the Court enter an order disallowing Claim 25 in its entirety and Chapman shall not be receive any distribution or payment on account of Claim 25. Chapman shall not have any claim under Section 503 of the Bankruptcy Code for any amounts incurred after the Conversation Date.

6. **Claim 28 (Pre-Petition Priority Claim)**. Claim 28 shall be allowed subject to the provisions of the Bankruptcy Code, including, without limitation, the distribution priorities established under Sections 507 and 726 and subject to any employments taxes and any withholding

or other similar obligations that may apply or be imposed under applicable law, including, without limitation, any applicable tax or employment law.  Chapman understands and agrees that: (i) the claims asserted in Claim 28 have a lower priority than claims or payments allowed or authorized under Section 503 of the Bankruptcy Code; and (ii) provided that there are sufficient funds in the Debtors' consolidated bankruptcy estate, any payment or distribution on account of Claim 28 may be made, in part, to Chapman and, in part, to one or more state, federal and/or other governmental tax agencies or bodies as may be required by applicable law.

7.    **Chapman Shall Not File Or Assert Any Other Claims**.  Chapman agrees that Claim 24, including the Allowed Ch. 11 Admin. Expense, and Claim 28 are the only claims that Chapman has against the Debtors' consolidated bankruptcy estate.  Chapman shall not file or otherwise assert any other claims, proofs of claim, or rights to payment against the Trustee or the Debtors' consolidated bankruptcy estate and shall not have any claim under Section 503 for any amounts incurred by the Debtors, the Trustee or the Debtors' consolidated bankruptcy estate on or after the Conversion Date.

8.    **Duty to Cooperate; Continuing Obligations**.  Notwithstanding any other terms, conditions, or provisions hereof, the Parties shall cooperate in connection with the implementation of this Agreement, including the preparation and execution and, if appropriate, filing with the Court, of such documents and taking such other actions as may be necessary or appropriate to consummate this Agreement.

9.    **Governing Law**.  The Parties agree that this Agreement shall be construed and governed by the provisions of the Bankruptcy Code and other applicable federal law and, to the extent state law may be applicable, the internal laws of the State of Illinois, without giving effect to choice of law principles.

10.     **Jurisdiction and Venue**.  The Parties consent to the entry of final orders by the Court in the Bankruptcy Cases and further agree to bring any and all disputes between them concerning or relating to this Agreement or any of the subject matter of this Agreement exclusively before and to the Court.  To the extent that the Court may conclude that it lacks subject matter jurisdiction or statutory or constitutional authority over any such dispute or otherwise declines to exercise jurisdiction or authority the Parties agree that the Court shall be the exclusive forum and venue for all disputes between them concerning or relating to this Agreement or any of the subject matter of this Agreement.

11.     **Binding Effect**.  This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and assigns.

12.     **Facsimile/Electronic Signature; Counterparts**.   This Agreement may be executed and delivered electronically or by facsimile in one or more counterparts.  A copy of this Agreement bearing a signature that has been transmitted electronically, including, without limitation, in the form of a .pdf document transmitted by email, shall have the same force and effect as an original.  Each counterpart of this Agreement, upon execution and delivery shall be deemed an original.

13.     **Severability**.  In the event that any one or more provisions contained in this Agreement shall for any reason be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

14.     **Mutually Drafted Agreement**.  Each of the Parties agree and acknowledge that they are either represented by legal counsel or have had the opportunity to engage legal counsel of

their respective choice related to the negotiation and drafting of this Agreement and the disputes resolved by and through this Agreement and that this Agreement is the product of good faith, arms' length negotiations between the Parties.  Accordingly, the Parties agree that this Agreement shall be considered a mutually drafted agreement and none of the Parties shall be considered the drafting party and that no rule of construction resolving contractual ambiguities against the drafting party shall be applicable.

15.    **Final Agreement**.  This Agreement contains the full and complete agreement of the Parties regarding the subject matter hereof and entirely supersedes and replaces any and all statements or commitments that may have been made during prior discussions and negotiations, whether written or oral.  As such, the Parties shall solely look to the terms, provisions and obligations contained in this Agreement as a full and final expression of the terms of their Agreement.

16.    **Amendment**.  This Agreement may only be amended in writing executed by all of the Parties hereto.

17.    **Waiver of Jury Trial**.  EACH PARTY HERETO WAIVES THE RIGHT TO A TRIAL BY JURY IN ANY LITIGATION, PROCEEDING, OR OTHER LEGAL ACTION IN CONNECTION WITH OR RELATING TO THIS AGREEMENT, ITS SUBJECT MATTER, OR THE CONSTRUCTION OR PERFORMANCE THEREOF.

18.    **Acknowledgements**.  Each Party hereto expressly acknowledges and warrants that he, she, or it has voluntarily entered into this Agreement, was represented by counsel of his or its own choosing with respect hereto, and understands the nature and binding effect of this Agreement.

19.    **Authority to Bind**.  Except for the pre-conditions and requirements of obtaining the approval and authorization of the Court of this Agreement and that the Settlement Approval Order becoming a Final Order, each Party represents to the other Parties that he, she or it has the full and sole authority to enter into this Agreement and that he, she or it has not previously assigned to any third party any proofs of claim, claims, demands, rights, or causes of action or any rights related thereto that are the subject of this Agreement.

20.    **Moglia Has No Personal Liability**.  The Parties agree and acknowledge that Moglia is solely acting in his official capacity as the chapter 7 Trustee of the Debtors' consolidated bankruptcy estate and not as an individual.  As such, the Parties agree and acknowledge that Moglia, personally, shall have no obligations or liability under or related to this Agreement.

IN WITNESS WHEREOF, the Parties hereto execute this Agreement on and as of this _____ day of December, 2023.

**Dawn Chapman, personally**

_____

_____
**Alex D. Moglia, not personally or individually, but solely as the chapter 7 trustee of the substantively consolidated bankruptcy estate of BCause Mining LLC and BCause LLC**