**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| BCause Mining LLC, *et al.* | ) | Case No. 19-10562 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Hon. Janet S. Baer |
| | ) | |

**NOTICE OF MOTION**

**TO:**   See attached list

PLEASE TAKE NOTICE that on Tuesday, **April 9, 2024**, at the hour of **10:00 a.m.**, I will appear before the Honorable Janet S. Baer, United States Bankruptcy Judge or any judge sitting in that judge's place, **either** in courtroom 615 of the Everett McKinley Dirksen United States Courthouse, 219 Dearborn Street, Chicago, IL 60604 or electronically as described below, and present the THIRD INTERIM APPLICATION FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES TO MASON POLLICK & SCHMAHL LLC AS COUNSEL TO CHAPTER 7 TRUSTEE AND TO SHORTEN NOTICE (the "Motion"), a copy of which is attached.

**Important: Only parties and their counsel may appear for presentment of the motion electronically using Zoom for Government.  All others must appear in person.**

**To appear by Zoom using the Internet**, go to this link: https://www.zoomgov.com/.  Then enter the meeting ID and passcode.

**To appear by Zoom using a telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666.  Then enter the meeting ID and passcode.

**Meeting ID and passcode**.  The meeting ID for this hearing is 160 731 2971, and the passcode is 587656.  The meeting ID and passcode can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date.  If a Notice of Objection is timely filed, the motion will be called on the presentment date.  If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

1

|  |  |
|---|---|
| Dated:  March 22, 2024 | Alex Moglia, Chapter 7 Trustee of the Bankruptcy Estates of BCause Mining LLC and BCause LLC |
|  | By: /s/ Michael M. Schmahl<br>       Michael M. Schmahl |

Michael M. Schmahl
MASON POLLICK & SCHMAHL LLC
70 W. Hubbard, Suite 304
Chicago, Illinois  60654
(312) 312-5531
mschmahl@mps-law.com


## CERTIFICATE OF SERVICE

The undersigned states that on March 22, 2024, he caused the above Notice of Motion and the Motion to be served on the individuals listed on the below service list via the court's ECF system for those who are registered.

By: /s/ Michael M. Schmahl
       Michael M. Schmahl

## *SERVICE LIST*

Patrick S. Layng
Ha M. Nguyen
Office of the U.S. Trustee
219 S. Dearborn Street
Room 873
Chicago, IL 60604
Ha.nguyen@usdoj.gov
*United States Trustee*

David A Agay
Maria G Carr
Shara C Cornell
McDonald Hopkins LLC
300 N. LaSalle
Chicago, IL 60654
312-280-0111
dagay@mcdonaldhopkins.com
mcarr@mcdonaldhopkins.com
scornell@mcdonaldhopkins.com
*Counsel for WESCO Distribution, Inc.*

J Mark Fisher
Sarah K Angelino
Schiff Hardin LLP
233 South Wacker Drive
Suite 7100
Chicago, IL 60606
(312) 258-5861
mfisher@schiffhardin.com
sangelino@schiffhardin.com
Dennis Lewandowski, via email sent to:
dtlewand@kaufcan.com
*Counsel for Hoffland Properties, Inc.*

Marc Ira Fenton
Jamie L Burns
Levenfeld Pearlstein LLC
2 N Lasalle St Ste 1300
Chicago, IL 60602
312-346-8380
mfenton@lplegal.com
jburns@lplegal.com

John M Craig
Law Firm of Russell R Johnson III, PLC
14890 Washington Street
Haymarket, VA 20169
russell@russelljohnsonlawfirm.com
*Counsel for Dominion Energy Virginia*

Shelly A. DeRousse
Devon J Eggert
Elizabeth L Janczak
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606
312-360-6315
312-360-6520 (fax)
sderousse@freeborn.com
deggert@freeborn.com
ejanczak@freeborn.com
*Counsel for Creditors' Committee*

Russell R. Johnson, III
John M. Craig
Law Firm of Russell R Johnson III, PLC
2258 Wheatlands Drive
Manakin Sabot, VA 23103
804-749-8861
russell@russelljohnsonlawfirm.com
john@russelljohnsonlawfirm.com
*Counsel for Dominion Energy Virginia*

Brian L Shaw
Christina Sanfelippo
Fox Rothschild LLP
321 N Clark Street
Suite 1600
Chicago, IL 60654
312-517-9200
312-517-9201 (fax)

*Counsel for W-R2 Jefferson Owner VIII, LLC*

Jennifer M McLemore
Williams Mullen
200 South 10th Street
Richmond, VA 23219
(804)420-6330
jmclemore@williamsmullen.com
*Counsel for BMG Operations Ltd.*

Jason M Torf
Ice Miller LLP
200 W. Madison St.
Suite 3500
Chicago, IL 60606
312-726-6244
312-726-6214 (fax)
jason.torf@icemiller.com
*Counsel for Dominion Energy Virginia*

Debra Devassy Babu
Askounis & Darcy, PC
444 N. Michigan Avenue
Suite 3270
Chicago, IL 60611
312-784-2400
312-784-2410 (fax)
ddevassy@askounisdarcy.com
*Counsel for CCA Financial, LLC*

Lindsey Conley
Hinshaw & Culbertson LLP
151 N. Franklin Street, Suite 2500
Chicago, IL 60606

bshaw@foxrothschild.com
csanfelippo@foxrothschild.com
*Counsel for BMG Operations Ltd.*

Jason M Torf
Ice Miller LLP
200 W. Madison St.
Suite 3500
Chicago, IL 60606
312-726-6244
312-726-6214 (fax)
jason.torf@icemiller.com
*Counsel for Dominion Energy Virginia*

Scott R Clar
Arthur G Simon
Jeffrey C Dan
Crane, Simon, Clar & Dan
135 S Lasalle Suite 3705
Chicago, IL 60603
312 641-6777
312 641-7114 (fax)
sclar@cranesimon.com
asimon@cranesimon.com
jdan@cranesimon.com
*Counsel for the Debtors*

4

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| In re: | ) )  Chapter 7 ) |
| BCause Mining LLC, *et al.* | )  Case No. 19-10562 )  (Jointly Administered) ) |
| Debtors. | )  Hon. Janet S. Baer ) |

**COVER SHEET FOR THIRD INTERIM APPLICATION FOR ALLOWANCE OF
COMPENSATION AND REIMBURSEMENT OF EXPENSES TO
MASON POLLICK & SCHMAHL LLC AS COUNSEL TO THE TRUSTEE
AND TO SHORTEN NOTICE**

| Name of Applicant: | Mason Pollick & Schmahl LLC f/k/a Pollick & Schmahl, LLC ("MPS") |
|---|---|
| Authorized to Provide Professional Services to: | Alex Moglia, not personally, but solely as the chapter 7 trustee of the bankruptcy estates of BCause LLC and BCause Mining LLC |
| Date of Order Authorizing Employment: | i.   October 16, 2019 (nunc pro tunc to October 8, 2019) **[Docket No. 350]** authorized to generally represent the Trustee; <br> ii.   May 26, 2021 **[Docket No. 479]**, terms of MPS' retention modified to contingent fee relationship solely with respect to representation of Trustee in connection with *Moglia v. Virginia Electric and Power Company d/b/a Dominion Energy Virginia* (Adv. No. 21-0055) (the "Dominion Adversary") |
| Period for which Compensation is Sought: |  |
| From: | May 21, 2020 |
| Through: | March 20, 2024 |
| Amount of Fees Sought: | $80,054.50 |
| Amount of Expense Reimbursement: | $4,497.87 |
| This is an: |  |
| Interim Application:  YES | Final Application:  NO |
|  |  |

If this is not the first application filed herein by this professional, disclose as to all prior fee applications:

5

| Date Filed | Period Covered | Total Requested (Fees & Expenses) | Total Allowed (Fees & Expenses) | Fees & Expenses Previously Paid |
|---|---|---|---|---|
| 6/4/2020 [**Docket No. 435**] | 10/8/2019 – 5/20/2020 | Total: $149,801.38 Fees: $148,610.00 Expenses: $1,191.38 | Total: $149,801.38 Fees: $148,610.00 Expenses: $1,191.38 [**Docket No. 441**] | Total: $149,801.38[1] |
| 6/2/2022 [**Docket No. 504**] | June 5, 2020 – 6/1/2022 (for services solely related to the Dominion Adversary) | Total: $232,552.55 (Solely the Contingent Fee plus Expenses related to the Dominion Adversary) Fees: $232,188.90 Expenses: $368.65 | Total: $232,552.55 [**Docket No. 516**] Fees: $232,188.90 Expenses: $368.65 | Total: $232,552.55 (Solely the Contingent Fee plus Expenses related to the Dominion Adversary) |

State the aggregate amount of fees and reimbursement of expenses paid to Applicant as of the date of this Application: $382,353.93.

MASON POLLICK & SCHMAHL LLC

Dated: March 22, 2024        /s/ Michael M. Schmahl
                             Michael M. Schmahl
                             Mason Pollick & Schmahl LLC
                             70 W. Hubbard, Suite 304
                             Chicago, IL 60654
                             (312) 312-5531
                             mschmahl@mps-law.com
                             ARDC #6275860
                             *Counsel for the Trustee*

---

[1] MPS' First Interim Application for Allowance of Compensation and Reimbursement of Expenses As Counsel to the Trustee [**Docket No. 435**] included a request for compensation on an hourly rate basis for 3.1 hours totaling $1,085.00 in fees specifically related to obtaining a refund of the remainder of a post-bankruptcy deposit Dominion received from the Debtors as collateral for or pre-payment of post-bankruptcy electricity services provided during the Chapter 11 portion of these cases. Those services were provided by MPS entirely in November and December 2019, did not involve litigation, and were not in any way related to the Dominion Adversary, its factual basis or any of claims asserted therein.  MPS began focusing on the factual and legal basis for claims against Dominion Energy, that ultimately resulted in the Dominion Adversary, in June 2020.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | ) )  Chapter 7 ) |
| BCause Mining LLC, *et al.* | ) Case No. 19-10562 ) (Jointly Administered) ) |
| Debtors. | ) Hon. Janet S. Baer ) |

**THIRD INTERIM APPLICATION FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES TO MASON POLLICK & SCHMAHL LLC AS COUNSEL TO THE TRUSTEE AND TO SHORTEN NOTICE**

Pursuant to 11 U.S.C. §§ 327, 328, 330 and 331 and Rule 2016 of the Federal Rules of Bankruptcy Procedure, Mason Pollick & Schmahl LLC f/k/a Pollick & Schmahl, LLC ("MPS")[2], counsel for Alex D. Moglia (the "Trustee"), not individually, but solely as trustee of the substantively consolidated chapter 7 bankruptcy estate of BCause Mining LLC ("BC Mining") and BCause LLC[3] ("BC Holding" and collectively with Mining, the "Debtors"), submits this Third Interim Application for Allowance of Fees and Reimbursement of Expenses (the "Application") as counsel to the Trustee and requests the entry of an order (i) allowing and authorizing the payment of interim compensation in the amount of $80,054.50 (the "Compensation") and reimbursement of expenses in the amount of $4,497.87 (the "Expense Reimbursement") for services provided and expenses incurred by MPS as counsel for the Trustee during the period from May 21, 2020, through an including March 20, 2024 (the "Compensation Period"), (ii) approving the form of notice of this Application, a copy of which is attached hereto as Exhibit 2, and (iii) shortening notice of this Application by approximately 3 days so that it may be heard in

---

[2] MPS was formerly named Pollick & Schmahl, LLC.
[3] BCause LLC is the debtor in bankruptcy case number 19-10731.

conjunction with other matters at a hearing scheduled for April 9, 2024. In support thereof, MPS respectfully states as follows:

### Jurisdiction and Venue

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1334.

2. This Motion is a core proceeding under 28 U.S.C. § 157(b)(2).

3. Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

### General Background

4. On or about April 11, 2019, BC Mining filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

5. On or about April 12, 2019 (collectively with April 11, 2019, the "Petition Dates"), BC Holding filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

6. On or about May 8, 2019, the Court entered an order [**Docket No. 72**] directing that the Debtors' bankruptcy cases be jointly administered under the above caption.

7. On or about October 8, 2019 (the "Conversion Date"), the Court entered an order [**Docket No. 319**] converting the Debtors' bankruptcy cases to cases under chapter 7 of the Bankruptcy Code, and Richard J. Mason was appointed as the chapter 7 trustee of the Debtors' estates [**Docket No. 320**].

8. On or about October 11, 2019, Mr. Mason resigned as chapter 7 trustee due to a potential conflict that was not readily apparent but that would have been imputed to Mr. Mason as a result of his employment by his former law firm (i.e. not MPS). Later that day, Mr. Moglia was appointed as the Trustee [**Docket No. 334**].

9. On or about October 16, 2019, the Court entered an order [**Docket No. 350**], authorizing the Trustee to retain MPS as his counsel with an effective date as of October 8, 2019, on an hourly rate basis.

10. On or about June 4, 2020, MPS filed its First Interim Application for Allowance of Compensation and Reimbursement of Expenses As Counsel to the Trustee (the "First Interim Fee Application") [**Docket No. 435**]. None of the services for which MPS sought compensation or the reimbursement of expenses in the First Interim Fee Application related to the Dominion Adversary or the investigation of those claims.[4]

11. On or about June 24, 2020, the Court entered an order [**Docket No. 441**] granting the compensation and expense reimbursement requested in the First Interim Fee Application totaling $149,801.38 ("First Interim Compensation").

12. Shortly before the commencement of the Dominion Adversary, the holders of the two largest Chapter 11 administrative claims[5] informed the Trustee that they supported pursuing the Dominion Adversary expressly provided that the Trustee was represented on a contingent fee basis.

13. On or about May 19, 2021, the Trustee filed a motion [**Docket No. 478**] (the "Contingent Fee Motion") seeking to alter the terms of MPS' retention as counsel to the Trustee solely with respect to the Dominion Adversary pursuant to a Contingent Fee Agreement, so that all of MPS' compensation for any services related to the Dominion Adversary would be contingent on the outcome of the Dominion Adversary and calculated based on the contingent fee schedule provided in the Contingent Fee Agreement. MPS began its investigation nearly a year earlier on or about June 5, 2020. Nonetheless, under the Contingent Fee Agreement, MPS agreed to include

---

[4] MPS' First Interim Fee Application included a request for compensation on an hourly rate basis for 3.1 hours totaling fees of $1,085.00 specifically related to obtaining a refund of the remainder of a post-bankruptcy deposit Dominion received from the Debtors as collateral for or pre-payment of electricity services during the Chapter 11 portion of these cases. The refund represented the unapplied remainder of the post-bankruptcy deposit. Those services were provided by MPS entirely in November and December 2019 and were not in any way related to the Dominion Adversary or any of the theories considered or ultimately asserted therein.

[5] At the time, there was only approximately $127,000 in BC Holding's estate and $0.00 in BC Mining's estate, which was insufficient to pay all of the then allowed Chapter 11 administrative expense claims. As such, these two creditors were effectively the two largest creditors of these estates.

9

all prior services investigating the facts and potential legal theories that resulted in the Dominion Adversary within the contingent fee relationship and, thereby, forego any right to have those prior services compensated on an hourly basis.

14. On or about May 26, 2021, the Court entered an order (the "Contingent Fee Order") [**Docket No. 479**] granting the Contingent Fee Motion and authorized and approved the Trustee's retention of MPS related to the Dominion Adversary pursuant to the terms of the Contingent Fee Agreement, including the contingent fee schedule provided for therein. No creditors or parties in interest objected to the Contingent Fee Motion, the Contingent Fee Agreement or the entry of the Contingent Fee Order.

15. On or about June 2, 2022, MPS filed its Second Interim Application for Allowance of Compensation and Reimbursement of Expenses As Counsel to the Trustee (the "Second Interim Fee Application") [**Docket No. 504**] solely with respect to contingent fee services provided in connection with the Dominion Adversary. None of the services for which MPS sought compensation or the reimbursement of expenses in the First Interim Fee Application related to the Dominion Adversary or the investigation of those claims.[6] Similarly, none of the services for which MPS sought compensation or reimbursement of expenses in the Second Interim Fee Application related to any matters other than the Dominion Adversary Proceeding.

16. On or about June 22, 2022, the Court entered an order [**Docket No. 515**] authorizing and approving a settlement agreement resolving the Dominion Adversary, which resulted in

---

[6] MPS' First Interim Fee Application included a request for compensation on an hourly rate basis for 3.1 hours totaling fees of $1,085.00 specifically related to obtaining a refund of the remainder of a post-bankruptcy deposit Dominion received from the Debtors as collateral for or pre-payment of electricity services during the Chapter 11 portion of these cases. The refund represented the unapplied remainder of the post-bankruptcy deposit. Those services were provided by MPS entirely in November and December 2019 and were not in any way related to the Dominion Adversary or any of the theories considered or ultimately asserted therein.

settlement proceeds of $700,000.00 (the "Proceeds of the Dominion Settlement") coming into the Debtors' estates.

17. On or about June 22, 2022, the Court also entered an order [**Docket No. 516**] granting the Second Interim Fee Application and awarded compensation (at 33.33% of the net Proceeds of the Dominion Settlement pursuant to the previously approved Contingent Fee Agreement) and reimbursement of expenses related to the Dominion Adversary totaling $232,552.55 (the "Second Interim Compensation").

18. On or about July 13, 2022, the Court entered an order [**Docket No. 518**] substantively consolidating the Debtors' estates into a single bankruptcy estate.

## Relief Requested

19. Through this Application, MPS seeks the entry of an order approving and authorizing immediate payment of the Compensation in the amount of $80,054.50 for services provided during the Compensation Period and the Expense Reimbursement of $4,479.87 for expenses incurred during the compensation period. A detailed abstract containing specific summaries of compensable services provided by MPS during the Compensation Period is attached hereto as Exhibit 1. Importantly, none of the Compensation requested in this Application is duplicative of requests in either the First Fee Application or the Second Fee Application (and none of the Compensation requested relates to the Dominion Adversary).

## Summary of MPS' Services During the Compensation Period

20. During the Compensation Period, as summarized below, MPS principally represented the Trustee in resolving various tax issues and disputes with various creditors, including BMG, asserting claims against the Debtors' now consolidated bankruptcy estate, addressing inquiries from various state and other governmental agencies, obtaining orders

11

substantively consolidating the Debtors' estates and establishing a supplemental deadline for any creditors to file proofs of claim, and addressing the various administrative requirements of the Bankruptcy Code, including, among other things, retaining professionals and preparing fee applications.

21. These cases have presented a number of complex challenges for the Trustee and required significant work from MPS.

22. BC Holding, as parent, owns all of the membership interests in BC Mining as well as several other non-debtor subsidiaries, including the non-debtor subsidiary known as BCause Secure LLC ("BC Secure" or "Secure"). The Debtors' equity structure was fairly complicated, because they had raised capital through the sale of membership units in BC Holding to a number of individuals and entities.

23. Both prior to the Petition Dates and during the Chapter 11 phase of these cases, the Debtors' operations were principally funded by "hosting fees" paid by BC Mining's customers pursuant to BC Mining's "hosting agreements" for space and various services provided in the Debtors' former data center in Virginia Beach, Virginia. These hosting agreements generally required that customers pre-pay for services approximately one month in advance and also provided for a complex series of potential credits against future hosting fees for deficiencies in services actually received by the customers. As a result, the Debtors' accounting records raised complex accounting and tax issues related to when and how they recognized earnings.

24. These and other circumstances also complicated the analysis and ultimate resolution of various claims asserted against the Debtors by BMG and St. Bitts (specifically discussed below), among others.

25. The Debtors had operated their businesses up to the Conversion Date apparently without any significant apparent preparation for the conversion of these cases to cases under Chapter 7 of the Bankruptcy Code. As a result, the Debtors' books and records, including accounting and equity holder records, were incomplete resulting in the need to amend certain previously filed tax returns and unanticipated additional work to prepare final tax returns.

26. Finally, the Debtors, at least in certain circumstances, did not file certain required forms with various state taxing, employment or other agencies and failed to file either the schedule of unpaid debts or the final report required under Federal Rule of Bankruptcy Procedure 1019(5)(A)(i) and (ii).

27. Although the Trustee principally limited his review of claims to claims asserting potential administrative claims and secured claims, this review was complicated by these and other unique circumstances, including the fact that several proofs of claim were ambiguous and it was not always clear whether a proof of claim asserted a pre-petition claim or a post-petition claim. Further, the Trustee had to resolve certain disputes with certain former employees.

28. These and other similar issues, complicated the Trustee's resolution of various claims, required the Trustee to respond to inquires from several agencies in the States of Illinois, New Jersey, Virginia, and Washington, among others, and to amend previously filed tax returns and perform other unanticipated work to prepare final tax returns.

29. Under the circumstances, the Trustee felt it necessary and prudent to take the unusual step of requesting that the Court enter an order establishing a supplemental claims bar date to identify any previously unknown administrative expense or other claims.

30. MPS represented the Trustee with respect to each of these matters and provided the additional services summarized below.

31. The Trustee is currently holding approximately $551,190.08 in the Debtors' consolidated estate.

32. A summary of the normal hourly rates[7] charged by and the number of hours of services provided by the attorneys at MPS for the period covered by this application are as follows:

| Name | Title | Total Hours | Rate ($/hour) |
|---|---|---|---|
| Michael M. Schmahl | Partner | 145.9 | $350 (-12/31/2022) |
| | | 57.5 | $400 (1/1/2023 -) |
| Richard J. Mason | Partner | 12.1 | $495 (-12/31/2022) |

33. All services performed by MPS for which compensation is being sought were performed for and on behalf of the Trustee.

34. This Application has been prepared with the intention of complying with the applicable standards set forth in the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and Local Rule of Bankruptcy Procedure 5082-1.

35. None of the payments received by MPS will be shared with any party, nor are these payments subject to a sharing arrangement between MPS and any third party.

36. In accordance with Section 330 of the Bankruptcy Code, MPS asserts that the amount of fees and expenses is fair and reasonable given: (a) the complexities involved in these cases; (b) the time expended; (c) the nature and extent of the services rendered; (d) the value of such services; and (e) the costs of comparable services other than in a case under the Bankruptcy Code.

37. For the Compensation Period, MPS provided a wide variety of legal services to the Trustee. The services MPS performed are categorized and described in detail in the itemized

---

[7] MPS has periodically entered into fee arrangements with clients providing for alternative fee structures, contingent fees, flat fee for certain services, or discounted rates under certain, limited circumstances.

statement attached hereto and made apart hereof as Exhibit 1. At the end of each category is a list of each attorney and the total number of hours (and the corresponding dollar value) spent on that matter. The following chart is a brief overview of the services provided by MPS for which it seeks compensation.

| Nature of Services | Hours | Value |
|---|---|---|
| Administrative Matters | 77.0 | $28,000.00 |
| BMG Disputes | 81.8 | $30,384.50 |
| Claims | 56.7 | $21,670.00 |
| Total | 215.5 | $80,054.50 |

38. A general summary of these services includes, but is not limited to:

   a. <u>Administrative Matters</u>: MPS: (i) reviewed all pleadings; (ii) appeared at hearings; (iii) responded to inquiries from various governmental entities principally related to certain licensing apparently obtained by BC Secure in order to prevent such matters from resulting in claims against the Debtors' estate; (iv) responded to inquiries from creditors and equity holders, some of which identified discrepancies in various of the Debtors' records, a need to amend the 2019 tax returns; (iv) prepared papers required to retain professionals, including, without limitation, tax accountants and the Trustee's financial advisors, and to approve MPS' contingent fee engagement in the Dominion Adversary; (v) prepared approximately 12 fee applications; (vi) prepared a motion seeking the substantive consolidation of the Debtors' estates

15

into the single consolidated estate; and (vii) assisted the Trustee in closing BC Holding's 401(k) plan and performing his other statutory obligations.

b. <u>BMG Disputes</u>: BMG was the Debtors' largest customer, including during the Chapter 11 portion of these cases and, prior to the Petition Dates, had provided the Debtors with approximately $7 million of financing, which the Debtors agreed to repay over time in the form of limited credits against hosting fees paid by BMG.  Additionally, BMG asserted both a Chapter 11 administrative expense claim exceeding $1 million related to alleged damage to BMG's miners that allegedly occurred while being operated by the Debtors and a substantial amount of Bitcoin that the Debtors had purportedly wrongfully taken, along with a general unsecured claim for over $6.7 million. MPS represented the Trustee in the investigation of the Trustee's claims against BMG and prepared and filed the adversary proceeding captioned *Moglia v. BMG Operations Ltd.*, Adversary No. 21-00056 (the "BMG Adversary") in which the Trustee asserted various claims against BMG and objected to BMG's claims against the Debtors. These disputes were complicated by the fact that the Debtors and BMG never reduced any agreements related to the $7 million financing or its repayment to writing, numerous factual and legal disputes related to all of the claims and the fact that the Debtors had previously acknowledged having obtained Bitcoin worth $350,000 from the use of BMG's computers.  MPS negotiated, papered and obtain the Court's approval of a settlement of all of these disputes pursuant to which BMG solely received an allowed Chapter 11 administrative expense claim for $275,000 against the Debtors' consolidated estate.

16

c. <u>Claims</u>: MPS represented the Trustee in reviewing all of the administrative expense claims, ambiguous claims, and secured claims asserted against the Debtors' consolidated estate[8], prepared objections to approximately 5 secured claims and several other proofs of claim resulting in the disallowance of the asserted secured claims and many claims that arguably asserted administrative claims, and prepared various stipulations or settlement agreements with certain creditors to resolve objections informally asserted by the Trustee to their asserted secured claims or administrative expense claims. Additionally, MPS evaluated the impact of the Debtors' failure to comply with the Rule 1019 and prepared the motion requesting the Court to establish the supplemental claims bar date and the related notice of the supplemental bar date sent to creditors and parties in interest. MPS represented the Trustee in addressing certain notices and inquiries from certain State agencies and in drafting correspondence to same as well as certain forms required by some of the agencies. Finally, St. Bitts, a large customer of the Debtors, asserted a Chapter 11 administrative expense claim for over $370,000 due to alleged prepayments for services that the Debtors did not provide due to the occurrence of the Conversion Date. MPS investigated this claim and negotiated and obtained the Court's approval of a settlement of the Trustee's informal objection thereto under which St. Bitts received an allowed Chapter 11 administrative expense claim for $120,000.00.

---

[8] MPS also reviewed all of the claims asserted in the Debtors' cases. Much of that work was done in connection with analysis of potential substantive consolidation during negotiations related to the Dominion Adversary. As such, MPS is not requesting or seeking approval of any fees related to these services or the majority of services related to analyzing substantive consolidation of the Debtors' estates. As is indicated in Exhibit 1 and above, MPS is requesting approval of fees related to the actual preparation of the Motion to Substantively Consolidate the Debtors' estates and the related notice.

17

39. For these services, MPS requests that the Court enter an order allowing Compensation in the amount of $80,054.50 and authorizing the Trustee to immediately pay MPS from the cash in the Debtors' consolidated estate.

## Expenses

40. In addition, MPS incurred certain reasonable and necessary expenses during its representation of the Trustee during the Compensation Period and requests the allowance of the Expense Reimbursement in the amount of such expenses totaling $4,497.87, comprised of the following:

   a. Postage related to various notices of settlements, fee applications, substantive consolidation, and the supplemental claims bar date as well as for five objections to claims: $1,775.97, which includes an estimate of $180.85 for postage related to the mailing notice for this Application, notice for a fee application for Wesler & Associates CPA, PC, the Trustee's accountants, and a notice of settlement resolving certain disputes related to proofs of claim filed by Fredrick Grede. All of those notices are expected to be mailed together;

   b. Printing charges related to various notices of settlements, fee applications, substantive consolidation, and the supplemental claims bar date as well as for five objections to claims: $1,507.90, which includes an estimate of $66.70 related to the related to notice for this Application, notice of a fee application for Wesler & Associates CPA, PC, and notice of a settlement resolving certain disputes related to proofs of claim filed by Fredrick Grede;

   c. Filing fee related to the Trustee's Complaint in the BMG Adversary: $350.00

    d. The Debtors' financial records were solely maintained online using services provided by Quickbooks[9]: $864.00

**Request to Approve Form of Notice And to Shorten Notice**

41. Sections 330 and 331 of the Bankruptcy Code require notice and a hearing before any compensation may be approved. MPS has mailed a copy of a notice (the "Creditor Notice") of this Application to all creditors and parties in interest that have filed proofs of claim with the Court approximately 18 days prior to the presentment of this Application. A true and correct copy of the Amended Notice is attached hereto as Exhibit 2.

42. Additionally, MPS has provided a full copy of this Application with all exhibits to all parties who have entered an appearance in these cases through the Court's ECF system approximately 18 days prior to the presentment of this Application and will make a copy of this Application with all supporting exhibits available to any party in interest that submits a written request to Michael M. Schmahl via mail to MPS at 70 W. Hubbard, Suite 304, Chicago, IL 60654, or via email sent to mschmahl@mps-law.com.

43. MPS requests that the Court shorten notice of this Application to 18 days, a reduction by 3 days from the 21 days generally required under Rule 2002, so that this Application may be heard in conjunction with other matters in this case at a previously scheduled hearing on April 9, 2024.

WHEREFORE, MPS respectfully requests that this Court enter an order: (i) allowing MPS Compensation in the amount of $80,054.50; (ii) allowing the Expense Reimbursement in the amount of $4,497.87; (iii) authorizing the Trustee to immediately pay the Compensation and Expense Reimbursement to MPS from the finds currently in the Debtors' consolidated estate; (iv)

---

[9] The Trustee and MPS investigated and were informed that it was not possible to download the Debtors' financial records in a usable format in an effort to avoid this fee.

19

authorizing and approving the form of Notice; (v) shortening notice; and (vi) granting such other and further relief as this Court deems just or appropriate.

Dated: March 22, 2024 /s/ Michael M. Schmahl
Michael M. Schmahl
Mason Pollick & Schmahl LLC
70 W. Hubbard, Suite 304
Chicago, IL 60654
(312) 312-5531
mschmahl@mps-law.com
ARDC #6275860
*Counsel for the Trustee*