IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| In re: | ) )  Chapter 7 ) |
| **BCause Mining LLC,** *et al.* | ) )  Case No. 19-10562 ) |
| Debtors. | ) )  Hon. Janet S. Baer ) |

**COVER SHEET FOR THIRD INTERIM AND FINAL APPLICATION FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES TO MOGLIA ADVISORS AS FINANCIAL ADVISOR TO CHAPTER 7 TRUSTEE**

| Name of Applicant: | Moglia Advisors |
|---|---|
| Authorized to Provide Professional Services to: | Alex Moglia, not personally, but solely as the chapter 7 trustee of the bankruptcy estates of BCause LLC and BCause Mining LLC |
| Date of Order Authorizing Employment: | October 15, 2020 (effective as of October 11, 2019) **[Docket No. 456]** |
| Period for which Compensation is Sought: | |
| From: | April 13, 2022 |
| Through: | Case closing |
| Amount of Fees Sought: | $32,280.00 |
| Amount of Expense Reimbursement: | $ 3,968.30 |
| This is an: | |
| Interim Application:  YES | Final Application:  YES |
| | |

If this is not the first application filed herein by this professional, disclose as to all prior fee applications:

| Date Filed | Period Covered | Total Requested (Fees & Expenses) | Total Allowed (Fees & Expenses) | Fees & Expenses Previously Paid |
|---|---|---|---|---|
| February 18, 2021 **[Docket No. 467]** | 10/11/2019 – 12/31/2020 **[Docket No. 467]** | Fees: $16,280.00; Exp.: $1,929.17; Total: $18,209.17 **[Docket No. 467]** | Fees: $16,280.00; Exp.: $1,929.17; Total: $18,209.17 **[Docket No. 474]** | Fees: $16,280.00; Exp.: $1,929.17; Total: $18,209.17[1] |

---

[1] In Moglia Advisors' First Interim Application for Allowance of Compensation and Reimbursement of Expenses (the "First Interim Application") [**Docket No. 467**] and Second Interim Application for Allowance of Compensation and Reimbursement of Expenses (the "Second Interim Application, and collectively with the First Interim Application, the "Prior Applications") [**Docket No. 505**], Moglia Advisors mistakenly referenced a prior reimbursement of $1,087.84 (the "QuickBooks Expense") for expenses previously paid related to QuickBooks charges that were necessary to preserve the Debtors' books and records that the Debtors maintained online and could

| June 2, 2022 **[Docket No. 505]** | 1/1/2021 – 4/12/2022 **[Docket No. 505]** | Fees: $9,645.00; Exp.: $1,789.95; Total: $11,434.95 **[Docket No. 505]** | Fees: $9,645.00; Exp.: $1,789.95; Total: $11,434.95 **[Docket No. 517]** | Fees: $9,645.00; Exp.: $1,789.95; Total: $11,434.95 |

State the aggregate amount of fees and reimbursement of expenses paid to Applicant as of the date of this Application: $29,644.12.

MOGLIA ADVISORS

Dated: 9/25/2024                    /s/ Alex D. Moglia
                                    Alex D. Moglia
                                    Moglia Advisors
                                    1325 Remington Rd Ste H
                                    Schaumburg, IL  60173
                                    847-884-8282
                                    amoglia@mogliaadvisors.com
                                    *Chapter 7 Trustee*

---

not be downloaded in a usable format as allowed by a prior order [**Docket No. 409**] entered by the Court under Section 503.  This order [**Docket No. 409**] authorized both the payment of the QuickBooks Expense by and the reimbursement thereof to either the Trustee or Moglia Advisors, depending on whose credit card was used to pay the QuickBooks Expense.  Ultimately, the Trustee was able to reduce the amount of these charges and actually paid these QuickBooks Expenses of $1,087.84 with the Trustee's credit card.  Therefore, the reimbursement of these QuickBooks Expenses was actually paid to the Trustee, not Moglia Advisors.  Although this error did not result in any duplicative allowance of reimbursable expenses, the expense should not have been previously listed on Moglia Advisors' Prior Application.  This error has also been corrected in the Trustee's Second Interim and Final Application for Allowance of Compensation and Reimbursement of Expenses that will be filed either substantially contemporaneously or after the filing of this Application.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| BCause Mining LLC, *et al.* | ) | Case No. 19-10562 |
| | ) | |
| | ) | |
| | ) | |
| Debtors. | ) | Honorable Janet S. Baer |

**THIRD INTERIM AND FINAL APPLICATION FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES TO MOGLIA ADVISORS AS FINANCIAL ADVISOR TO CHAPTER 7 TRUSTEE**

Pursuant to 11 U.S.C. §§ 330 and 331, Moglia Advisors ("**MA**"), respectfully requests that this Court enter an order allowing $32,280.00 (the "Compensation") in interim compensation for financial advisory services rendered by MA to the Trustee and $3,968.30 in interim reimbursement of expenses (the "Expense Reimbursement") (together, the "**Application**"), for the period from April 13, 2022, through the closing of these cases (the "**Compensation Period**"), the allowance of the Compensation and Expense Reimbursement and all prior awards of interim compensation and interim expense reimbursements on a final basis, and to approve the form of notice as described below. In support of this Application, MA respectfully states as follows:

**JURISDICTION**

1. The Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

## BACKGROUND

2. On April 11 and 12, 2019, respectively, BCause Mining LLC and BCause LLC ("the Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (Doc No. 1).

3. On October 8, 2019 (the "Conversion Date"), the Court converted these cases to cases under Chapter 7 of the Bankruptcy Code (Docket No. 319).

4. On October 11, 2019, the U.S. Trustee appointed Alex D. Moglia as trustee ("Trustee") (Doc No. 334).

5. On October 15, 2020, the Court entered an order approving MA's retention by the Trustee effective as of October 11, 2019.

6. On or about March 10, 2021, the Court entered an order [**Docket No. 474**] granting MA's First Interim Application for Allowance of Compensation and Reimbursement of Expenses and allowed interim compensation in the amount of $16,280.00 and reimbursement of expenses in the amount of $1,929.17 to MA (collectively, the "First Interim Compensation and Reimbursement").[2]

7. On or about June 29, 2022, the Court entered an order [**Docket No. 517**] granting MA's Second Interim Application for Allowance of Compensation and Reimbursement of Expenses and allowed interim compensation in the amount of $9,645.00 and reimbursement of

---

[2] As explained in Footnote 1 above (appearing on the cover page to this Application), MA previously mistakenly listed the reimbursement of the QuickBooks Expense totaling $1,087.84, which was authorized and approved under Section 503 by a prior order of the Court [**Docket No. 409**], as having previously been paid to MA in MA's Prior Applications. In fact, the payment (in the first instance) and the reimbursement for the QuickBooks Expense of $1,087.84 was actually paid to the Trustee, not Moglia Advisors. Although this error did not result in any duplicative requests for or prior allowances of expense reimbursements, or any duplicative payments to either MA or the Trustee, this error is being corrected in this Application and in the Trustee's Second Interim and Final Application for Allowance of Compensation and Reimbursement of Expenses.

expenses in the amount of $1,789.95 (collectively, the "Second Interim Compensation and Reimbursement").

8. On or about July 13, 2022, the Court entered an order [**Docket No. 518**] substantively consolidating the Debtors' bankruptcy estates into a single, consolidated bankruptcy estate.

9. These cases have presented the Trustee with unique challenges. The Debtors did not appear to have anticipated the occurrence of the conversion of the cases to Chapter 7 cases under the U.S. Bankruptcy Code, the Debtors' financial books of account were not up-to-date, the employees had not been properly informed about the situation of the companies, the bankruptcy process, and the role of the Trustee, various employment and tax records had not been prepared or filed with several states, and the Debtors' customers had significant numbers of computers and other equipment that, in many cases, needed to be separated from the Debtors' equipment and removed from the data center in Virginia Beach, VA.

10. As the case progressed, the depth of some of these issues was better understood and required additional analysis and work on various tax issues, requiring the preparation and filing of amended tax returns for 2019 and the performance of unanticipated additional work.

11. Nonetheless, starting immediately after his appointment, the Trustee, with the active assistance of MA, expeditiously assessed the feasibility of liquidating the Debtors' equipment located in the data center, as well as certain other assets, including, without limitation, Bitcoin funds and certain customized but incomplete software and related intellectual property related to a cryptocurrency exchange that was planned but never launched. In order to meet the Trustee's objectives, MA prepared various financial projections to assist the Trustee and his counsel in evaluating potential options.

12. As these cases progressed, MA assisted the Trustee in evaluating financial analysis of various transactions in connection with the Trustee's adversary proceedings and related efforts to reach settlement and assisted the Trustee in working through various state and federal tax issues.

13. Due to time constraints imposed at different times by the circumstances of these cases, the Trustee also asked the accounting professionals at MA and paraprofessionals to prepare certain analyses to assist the Trustee in fulfilling his duties including, but not limited to, gathering information to respond to certain creditor inquiries, analyzing and reviewing claimants' proofs of claims, and preparing taxes, evaluating potential ranges of costs related to litigation, including potential amounts of expert witness fees, and maintaining the accounting records for the estates.

**SUMMARY OF THE SERVICES RENDERED BY
MA TO THE TRUSTEE DURING THE COMPENSATION PERIOD**

14. The total fees requested by MA for financial advisory services rendered to the Trustee during the Compensation Period aggregate to $32280.00.[3] A breakdown of this amount by each MA professional, including such professional's title, hourly rate, and total hours expended in providing financial advisory services is as follows:

| PROFESSIONAL | TITLE | HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Jill K. Niese | Managing Director | $400 | 57.80 | $23,120.00 |
| Michele Springer | Administrative Advisor | $400 | 18.70 | $7,480.00 |
| Nate Jones | Director of Restructuring and Advisory Services | $350 | 1.40 | $490.00 |
| Karen Nandapreecha | Support Staff | $175 | 6.80 | $1,190.00 |
| **TOTAL** | | | **84.70** | **$32,280.00** |

---

[3] As further described below, this Compensation includes certain estimates for services required following the filing of this Application through the approval of the Trustee's Final Report and closing of these cases. Those estimates can be located on page 1 of Exhibit 1.

15. The hourly rates sought in this Application are the standard hourly rates charged by MA for similar or identical services provided by these in other bankruptcy or non-bankruptcy matters and cases during the Compensation Period.

16. MA made reasonable efforts to have the services it rendered to the Trustee performed by those qualified personnel and paraprofessionals charging the lowest hourly rates, consistent with the level of service, experience, and efficiency required of a given task.

17. All of the fees and expenses for which MA requests interim allowance and payment of compensation and reimbursement of expenses related to the Compensation Period were rendered or incurred in connection with the above-captioned cases, at the Trustee's request, and in the discharge of MA's professional responsibilities as financial advisor to the Trustee. MA respectfully submits that the financial advisory services that it provided to the Trustee during the Compensation Period were, in all respects, reasonable, necessary, and beneficial to these bankruptcy estates.

## SUMMARY BY CATEGORY OF SERVICES RENDERED

18. MA maintains written records of the time expended by its professionals. These time records are prepared and maintained contemporaneously with the rendering of financial advisory services by each MA professional. MA does not seek any compensation for services provided by the Trustee.

19. A detailed Time Statement, attached hereto as **Exhibit 1**, sets forth the financial advisory services rendered to the Trustee during the Compensation Period for which MA seeks compensation. Additionally, each category of financial advisory services provided by MA is summarized below.

Accounting and Auditing (2.90 hours valued at $1,160.00)

20. During the Final Application Period, MA expended 2.90 hours with a value of $1,160.00 on matters related to Accounting & Auditing. **Exhibit 1, pages 2 through 7,** contains detailed descriptions of the time entries attributable to this category of services.

21. A summary of professionals providing services in this category during the Compensation Period, each such professional's title, hourly rate, and total hours expended on financial advisory services in this category and the value attributable to these services, is as follows:

| PROFESSIONAL | TITLE | HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Jill Niese | Managing Director | $400 | 2.90 | $1,160.00 |
| **TOTAL** | | | **2.90** | **$1,160.00** |

Case Administration (10.30 hours valued at $3,670.00)

22. During the Compensation Period, MA expended 10.30 hours with a value of $3,670.00 on matter related to Case Administration. MA assisted the Trustee with reporting obligations related to closing the settlement with Dominion Energy, collecting pleadings and proofs of claim filed in these cases and correspondence from various state agencies and potential creditors received by the Trustee, and preparing the Trustee's interim and final reports. Additionally, Case Administration was used to record time for services that did not lend themselves to a specific category.

23. These services are specifically described in **pages 7 through 11 of Exhibit 1** and summarized in the table below.

| PROFESSIONAL | TITLE | HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Jill Niese | Managing Director | $400 | 3.20 | $1,280.00 |
| Michele Springer | Administrative Advisor | $400 | 5.10 | $2,040.00 |

| Karen Nandapreecha | Support Staff | $175 | 2.00 | $350.00 |
|---|---|---|---|---|
| **TOTAL** | | | **10.30** | **$3,670.00** |

Claims Administration & Objections (46.00 hours valued at $18,105.00)

24. During the Compensation Period, MA expended 46.00 hours with a value of $18,105.00 on matters related to Claims Administration & Objections. **Exhibit 1, pages 11 through 21,** contains detailed descriptions of the time entries attributable to this category of services.

25. A summary of professionals providing services in this category during the Compensation Period, each such professional's title, hourly rate, and total hours expended on financial advisory services in this category and the value attributable to these services, is as follows:

| PROFESSIONAL | TITLE | HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Jill Niese | Managing Director | $400 | 30.00 | $12,000.00 |
| Karen Nandapreecha | Support Staff | $175 | 1.00 | $175.00 |
| Michele Springer | Administrative Advisor | $400 | 13.60 | $5,440.00 |
| Nate Jones | Director of Restructuring and Advisory Services | $350 | 1.40 | $490.00 |
| **TOTAL** | | | **46.00** | **$18,105.00** |

Fee/Employment Applications (16.80 hours valued at $6,292.50)

26. MA reviewed various of the fee applications filed during the Compensation Period.

27. During the Compensation Period, MA expended a total of 16.80 hours with a value of $6,292.50 in services related to fee/employment applications which are specifically described in **pages 21 through 25 of Exhibit 1** and summarized in the table below.

| PROFESSIONAL | TITLE | HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Jill Niese | Managing Director | $400 | 14.90 | $5,960.00 |
| Karen Nandapreecha | Support Staff | $175 | 1.90 | $332.50 |
| **TOTAL** | | | **16.80** | **$6,292.50** |

Tax Issues (3.80 hours valued at $1,520.00)

28.     MA worked with the Trustee and his counsel and accountants in connection with addressing various tax issues raised by the accountants and finalizing tax returns.

29.     During the Compensation Period, MA expended a total of 3.80 hours with a value of $1,520.00 in services related to Tax Issues, which are specifically described in **pages 25 through 26 of Exhibit 1** and summarized in the table below.

| PROFESSIONAL | TITLE | HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Jill Niese | Managing Director | $400 | 3.80 | $1,520.00 |
| **TOTAL** | | | **3.80** | **$1,520.00** |

Estimated Time to Close these Cases (4.90 hours valued at $1,532.50)

30.     MA estimates that following the preparation of this Application it will expend another 4.90 hours with a value of $1,532.50 on matters related to preparing and finalizing the Trustee's Final Report, responding to inquiries from the Office of the U.S. Trustee related thereto and closing these cases, and preparing and issuing checks for the final distributions from the Debtors' consolidated estate.

31.     These estimates are specifically described **on page 1 of Exhibit 1** and summarized in the table below.

| PROFESSIONAL | TITLE | HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Jill Niese | Managing Director | $400 | 3.00 | $1,200.00 |
| Karen | Support Staff | $175 | 1.90 | $332.50 |

| Nandapreecha | | | | | |
|---|---|---|---|---|---|
| **TOTAL** | | | | 4.90 | $1,532.50 |

### Expenses

32.  During the Compensation Period, MA incurred or expects to incur expenses totaling $3,428.30 in connection with the financial advisory services that it rendered. These expenses are principally comprised of: (i) fees charged to maintain access to the Debtors' financial records, which the Debtors maintained on Quickbooks totaling $3,285.00[4]; (ii) $89.70 for postage and Federal Express Charges; and (iii) $53.60 for conference call charges. These expenses are listed on Pages 27 through 34 of **Exhibit 1**. Additionally, MA estimates that it will incur additional expenses through the closing of these cases totaling $540.00 solely comprised of QuickBooks charges for the allowance of an Expense Reimbursement totaling $3,968.30.

### THE REQUESTED COMPENSATION SHOULD BE ALLOWED

33.  The professional services provided by MA during the Compensation Period were necessary and appropriate to assist the Trustee with the administration of these estates and in the best interests of the creditors and parties in interest. The compensation requested for the services performed is commensurate with the complexity, importance and the nature of the problems, issues or tasks involved. MA has undertaken significant efforts to ensure that the professional services were performed in an efficient manner without duplication of effort.

34.  Section 330 of the Bankruptcy Code provides that the Court may award a professional employed under Section 327 of the Bankruptcy Code for "reasonable compensation for actual and necessary services rendered …." 11 U.S.C. § 330(a)(1). Further, Section 330 of the Bankruptcy Code sets forth guidelines for the Court to consider for the award of compensation and reimbursement of expenses:

---

[4] The Trustee, MA and his counsel all inquired as to possible ways to eliminate these costs without success. The Debtors maintained their financial records using QuickBooks online and there were no means to download the data so that it could be used without having the QuickBooks online platform.

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, the extent, and the value of such services, taking into account all relevant factors including:
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;
>
> (C)    whether the services were necessary to the administration of, or beneficial at the time at which service was rendered toward completion of, a case under this title;
>
> (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed;
>
> (E)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F)    whether compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.
>
> 11 U.S.C. § 330(a)(3).

35.    In determining the reasonableness of hourly billing rates and the number of hours expended in providing professional services, the Seventh Circuit has used "[the] 'lodestar' approach – multiplying the number of actual and necessary hours *reasonably* expended by a reasonable hourly rate …." In re Wildman, 72 B.R. 700, 712 (Bankr. N.D. Ill. 1987). While the lodestar approach is a good starting point, other factors should be considered in deciding whether the compensation sought is reasonable. Id.

36.    When analyzing whether a professional's hourly billing rate is reasonable, the Seventh Circuit has held that:

> [T]he best measure of [a professional's] time is what that [professional] could earn from paying clients. For a busy [professional], this is the standard rate. If he [or she] were not representing this plaintiff in this case, the [professional] could sell the same time to someone else. That person's willingness to pay establishes the market's valuation of the [professional's] services.

In re Farley, Inc., 156 B.R. 203, 211 (Bankr. N.D. Ill. 1993) quoting Gusman v. Unisys Corp., 986 F.2d 1146, 1150 (7th Cir. 1993). Therefore, when applying the "lodestar" approach, the reasonable hourly rate is presumed to be the professional's normal billing rate. See Pressley v. Haeger, 977 F.2d 295, 299 (7th Cir. 1992) ("It is not the function of judges in fee litigation to determine the equivalent of the medieval price. It is to determine what the [professional] would receive if he [or she] were selling his [or her] services in the market rather than being paid by a court order.") (internal quotation marks and citation omitted).

37. The rates charged by MA in this case are its standard rates for any bankruptcy matter. The rates charged by MA are consistent with the reasonable and customary hourly rates charged by other financial advisors throughout the country in matters of similar complexity, scope and significance. As detailed above and in the exhibits hereto, MA professionals performed services and billed 84.70 hours of time during the Compensation Period totaling $32,280.00 in fees. MA's average hourly billing rate for its professionals during this Compensation Period (its "lodestar" rate) was $381.11.

38. MA respectfully submits that the services for which it is seeking compensation in this Third and Final Application were necessary to the Trustee's efforts in administering the Debtors' estates and beneficial to, and in the best interests of, the Debtors' creditors, parties in interest, and these estates. The compensation sought is reasonable in light of the nature, extent and value of such services provided to the Trustee.

39. The Court may award a professional employed under Section 327 of the

Bankruptcy Code its "reimbursement for actual necessary expenses." 11 U.S.C. § 330(a)(1)(B). "An expense is necessary if it was incurred because it was required to accomplish the proper representation of the client." In re Spanjer Bros., Inc., 191 B.R. 738, 749 (Bankr. N.D. Ill. 1996); See In re Wildman, 72 B.R. 700, 731 (Bankr. N.D. Ill. 1987).

40. MA has requested reimbursement only for actual and necessary expenses incurred on behalf of the Trustee. These expenses were incurred because they were required to accomplish the proper representation of the Trustee in the matter.

41. MA requests the allowance and immediate payment of all fees and expenses sought in the Compensation Period from the approximately $453,913.95 currently in the bank account for the Debtors' consolidated estate.

42. MA further requests that the Court allow the Compensation, the Expense Reimbursement along with the previously awarded First Interim Compensation and Reimbursement and Second Interim Compensation and Reimbursement on a final basis.

### Request to Approve Form of Notice

43. Sections 330 and 331 of the Bankruptcy Code require notice and a hearing before any determination is made on this Application. In compliance with these sections and Federal Rule of Bankruptcy Procedure 2002, MA has mailed or will mail a copy of the notice (the "Notice") of this Application to all creditors and parties in interest listed in the Debtors' schedules or who filed claims against the Debtors at least 21-days prior to the hearing on this Application.

44. Additionally, the Trustee provided a full copy of this Application with all exhibits to all parties who have entered an appearance in these cases through the Court's ECF system 21 days in advance of the hearing on this Application.

45. MA will also make a copy of this Application with all supporting exhibits available to any party in interest that submits a written request to Michael M. Schmahl via mail to MPS at 70 W. Hubbard, Suite 304, Chicago, IL 60654, or via email sent to mschmahl@mps-law.com.

WHEREFORE, MA respectfully requests: (i) allowance of Compensation for professional services rendered during the Compensation Period in the amount of $32,280.00; (ii) allowance of the Expense Reimbursement for the actual and necessary expenses MA incurred or to be incurred in the amount of $3,968.30; (iii) allowing the Compensation, Expense Reimbursement and the previously allowed First Interim Compensation and Reimbursement and Second Interim Compensation and Reimbursement on a final basis; (iv) authorization for the Trustee to immediately pay Compensation and Expense Reimbursement to MA; (v) authorizing and approving the form of the Notice; and (vi) granting such further relief as the Court deems is just and appropriate.

Respectfully submitted,

Dated: 9/25/2024

By: /s/ Alex D. Moglia

Alex D. Moglia
MOGLIA ADVISORS
1325 Remington Rd Ste H
Schaumburg, IL 60173
847-884-8282
*Chapter 7 Trustee*